

Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022
+1 212 909 6000

July 12, 2019

Via ECF and Email

The Honorable Andrew L. Carter, Jr.
U.S. District Court for the Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square, Room 435
New York, NY 10007

    Re:    *Schansman, et al. v. Sberbank of Russia PJSC, et al.*, No. 19-CV-2985 (ALC)
             Sberbank of Russia's Request for Pre-Motion Conference

Dear Judge Carter:

    We write on behalf of Defendant Sberbank of Russia ("Sberbank") to request a pre-motion conference regarding a proposed motion to dismiss the Complaint (Dkt. 1) as to Sberbank for lack of personal jurisdiction and failure to plead legally sustainable claims under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq*.

    The Complaint does not present a basis for finding either general or specific personal jurisdiction over Sberbank, because it identifies no conduct by Sberbank in New York that is related to Plaintiffs' claims. General jurisdiction, such that a defendant can be sued here on any matter, does not exist over a corporation unless it is incorporated, has its primary place of business or is otherwise "at home" in New York. *See Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations…when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." (internal citation omitted)). Allegations that Sberbank has an unrelated subsidiary in New York, offers alternative depository receipts in New York or has purposely availed itself of U.S. courts (Compl. ¶¶ 29-33) are insufficient to support general jurisdiction over a non-resident defendant. *See, e.g. Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) (rejecting general jurisdiction even when subsidiary is "at home" in the forum and found an agent of parent, because parent also must be "at home" in the forum); *JihShyr Yih v. Taiwan Semiconductor Mfg. Co.*, No. 18-CV-3844 (CS), 2019 WL 2578306, at *5 (S.D.N.Y. June 24, 2019) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 97 (2d Cir. 2000)) (rejecting jurisdiction predicated on defendant's securities listings in forum); *Hatfield v. Asphalt International, Inc.*, No. 03 Civ. 1372 (DAB), 2004 WL 287680, at *3 (S.D.N.Y. Feb. 11, 2004) (rejecting jurisdiction predicated on defendant's participation in litigation in forum).

    To establish specific jurisdiction, Plaintiffs must establish substantial activity in New York that is directly related to the wrong asserted in the Complaint. When the "relevant plaintiffs are not [forum] residents and do not claim to have suffered harm in that State… [and] all the conduct giving rise to the nonresidents' claims occurred elsewhere[,] [i]t follows that the [forum] courts cannot claim specific jurisdiction." *Bristol-Myers Squibb Co. v.*

*Superior Court of California, San Francisco Cnty.*, 137 S. Ct. 1773, 1782 (2017).  Where, as here, a complaint predicates specific jurisdiction on a foreign bank's use of correspondent accounts at banks in New York used for facilitating international transactions, "there must be an ''articulable nexus'…or 'substantial relationship'…between the business transaction and the claim asserted.'"  *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329 (2016) (quoting *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y.3d 327, 399 (2012)); *see also Hau Yin To v. HSBC Holdings PLC,* No. 15-CV-3590-LTS, 2017 WL 816136, at n.6 (S.D.N.Y. Mar. 1, 2017), *aff'd*, 700 Fed. Appx. 66 (2d Cir. 2017) (no personal jurisdiction based on transactions through foreign bank's U.S. correspondent accounts where any instances of "the passage of money through the U.S. bank accounts were merely incidental and not specifically directed by any of the [bank] entities to facilitate the [] scheme").

The Complaint's discussion of purported Sberbank bank accounts or bank cards in Russia belonging to alleged financial supporters of the Donetsk People's Republic ("DPR") cannot mask the Complaint's fundamental shortcoming of not identifying even a single instance of a transfer originating in the U.S. and flowing to one of these recipients through a U.S. Sberbank correspondent account.  While the Complaint identifies instances where DPR supporters provided website instructions for contributions through U.S. accounts held by *other* Defendants, the Complaint does not cite any website where any of these entities provided instructions about how to contribute to these entities through a New York Sberbank account, much less provide non-conclusory allegations that such transfers actually occurred.  This absence of allegations about purposeful Sberbank activity in New York relating to the claimed wrongs warrants dismissal of Sberbank for lack of personal jurisdiction.

The Complaint also does not plead facts sufficient to support its inference that Sberbank permitted deposits into customer accounts and bank cards in Russia with legally culpable knowledge that the recipients of funds were directing them to terrorist activities.  Under the predicate statutes on which Plaintiffs' ATA claims rely (Compl. ¶¶ 248, 257; 18 U.S.C. §§ 2339A, 2339C), the Complaint must allege that Sberbank provided material support or resources or provided or collected funds with the legally culpable intention or knowledge that such support or funds would be used for terrorist acts.  As the Complaint recognizes, DPR was not established until April 2014 (Compl. ¶ 81), and the U.S. did not list DPR as a Specially Designated National ("SDN") until July 16, 2014 (the day before the downing of MH17), meaning no funds transfer made before that date would have triggered identification of DPR as an improper recipient of funds on any U.S. list (*See* Compl. ¶ 112; *see also* Sanctions Actions Pursuant to Executive Orders 13660, 13661 and 13662, 79 Fed. Reg. 63,021 (Oct. 21, 2014)).  Plaintiffs also do not present allegations about any transfer directly to DPR, as opposed to transfers to alleged supporters—none of whom has ever been on any U.S. list of sanctioned entities that should not receive funds.

In the absence of any formal source of U.S. governmental notice that these alleged recipients of funds were supporters of terrorism during the relevant period before the downing of MH17, the Complaint rests its required allegations of Sberbank's culpable knowledge on the assertion that with effective internet searches or other still more searching inquiries, Sberbank could have learned that the named recipients of funds were directly funneling money to DPR for use in terroristic activities.  Despite the Complaint's contention (Compl. ¶ 229) that the USA PATRIOT Act required Sberbank to acquire this knowledge before allowing funds to flow into any of these entities' accounts or bank cards (none of

which is alleged to be in the U.S.), no authority supports Plaintiffs' contention that this level of diligence regarding entities not listed by the U.S. government as problematic was legally required, such that not acquiring this information through extra investigation could support an inference of legally culpable knowledge that the ultimate recipient of funds was a terrorist organization. To the extent the "know your customer" and customer diligence obligations that Plaintiffs posit applied to correspondent banking arrangements, they would have applied to the financial institutions in the U.S. where those arrangements were maintained, not to Sberbank as the foreign financial institution that owns the accounts. *See, e.g.*, 31 C.F.R. § 1010.610 (imposing due diligence requirements on the financial institution hosting a correspondent account for a foreign financial institution).[1]

Plaintiffs do not even try to assert that Sberbank is liable under a 2016 amendment to the ATA ("JASTA") establishing civil liability for any defendant that "aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed [] an act of international terrorism," 18 U.S.C. § 2333(d)(2). That provision applies only to abetting acts of terrorism "committed, planned or authorized by an organization…designated as a foreign terrorist organization under [8 U.S.C. § 1189]," a designation neither DPR nor any of the asserted recipients of funds has ever received. Plaintiffs cannot remedy the absence of this cause of action by asserting Sberbank's direct liability for knowingly supporting terrorist acts based on an inference the Complaint does not allege—that Sberbank actually knew the entities holding Sberbank accounts or bank cards were mere fundraisers for DPR and as such mere conduits to terrorist acts and intended to support them in that conduct.

The Complaint also does not sustainably plead causation. The Complaint does not and cannot assert the required proximate causal link between the services Sberbank is alleged to have provided to supporters of DPR and the attack allegedly by DPR on July 17, 2014. Many steps must be taken to get from the passive processing of bank transfers to the firing of a missile at a civilian airliner. *See Hemi Group, LLC v. City of N.Y.*, 559 U.S. 1, 8-12 (2010) (construing identical language in a different statute about harm "by reason of" actions of the defendant to require a "direct relationship between the [act] and the harm"). The Complaint does not explain how it would have been foreseeable to Sberbank that facilitating legal retail banking services in the ordinary course to the alleged fundraising entities—none under sanction or on any U.S. list of entities to watch—would lead to the MH17 incident. *See Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (liability of a defendant can extend "only to those with respect to whom [the defendant's] acts were a substantial factor in the sequence of responsible causation and whose injury was reasonably foreseeable or anticipated as a natural consequence" (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003)). "[T]he mere provision of routine banking services to organizations or individuals said to be affiliated with terrorists does not necessarily establish causation." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018) (internal quotation marks omitted).

Sberbank also joins in the explanations of the Complaint's failings presented by the other Defendants' pre-motion letters.

---

[1] *See also* Dept. of the Treasury, Office of Foreign Assets Control, OFAC FAQs: Sanctions Compliance #116 (Jan. 15, 2015) (When the bank hosting a correspondent account "does not know or have reason to know the [ultimate recipient] entity's ownership or other information demonstrating the blocked status of the entity's property…OFAC would not expect the bank to research the non-account parties listed in the wire transfer that do not appear on the SDN List and, accordingly, would not pursue an enforcement action against the bank for having processed such a transaction."), https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_compliance.aspx#116.

Hon. Andrew L. Carter 4

    We look forward to discussing this matter with Your Honor at conference.

                          Respectfully submitted,

                          DEBEVOISE & PLIMPTON LLP

                          By: */s/ John S. Kiernan*

                              John S. Kiernan
                              William H. Taft V
                              Román J. Rodriguez
                              jskiernan@debevoise.com
                              whtaft@debevoise.com
                              rjrodriguez@debevoise.com

                              919 Third Avenue
                              New York, New York 10022
                              (212) 909-6000
                              *Counsel for* Sberbank of Russia

cc:      All counsel of record (via ECF)