


July 17, 2019

**VIA ECF AND E-MAIL**

The Honorable Andrew L. Carter, Jr.
United States District Judge
United States District Court for the Southern District of New York
40 Foley Square, Room 435
New York, New York 10007

Re: *Schansman, et al. v. Sberbank of Russia PJSC, et al.*, No. 19-CV-2985 (ALC)
Plaintiffs' Response to VTB Bank's Request for a Pre-Motion Conference

Dear Judge Carter:

We write to the Court on the five year anniversary of the murder of Quinn Lucas Schansman, an 18-year-old United States citizen killed when Malaysia Airlines Flight 17 ("MH17") was shot down over territory controlled by the so-called "Donetsk People's Republic" (DPR) terrorist group. On behalf of Quinn's family, we write in response to VTB Bank PJSC's ("VTB") request for a pre-motion conference regarding a proposed motion to dismiss.[1]

President Vladimir Putin's Russian Federation has advanced a ruthless policy in Ukraine, including support for the terrorist activities of the DPR. *See* Compl. ¶¶ 78-83. President Putin's government owns Defendant VTB. *Id.* ¶ 215. VTB's actions, like those of the Russian Federation itself, evince a policy of systematic and deliberate support for the DPR terrorist group—actions for which both the Russian Federation and VTB have been (and still are) sanctioned by the United States Government. *Id.* ¶¶ 110-13, 215-16. Nonetheless, VTB takes the untenable position that it cannot be held liable for its actions under the Anti-Terrorism Act, 18 U.S.C. § 2333 ("ATA"), despite its provision of sustained, knowing, and systematic financial support to the DPR, which murdered Quinn.[2]

VTB's challenges to personal jurisdiction are unavailing. It is well settled that when a foreign bank deliberately and repeatedly uses a New York correspondent account to funnel funds routed to a group engaged in terrorism—as VTB did here—personal jurisdiction will lie. *See Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168-74 (2d Cir. 2013); *see also* Compl. ¶¶ 39, 42, 47-53, 126-28, 142-45.

---

[1] Throughout its letter, VTB cryptically alludes to unnamed "other reasons" why the Complaint against VTB should be dismissed. *See, e.g.*, VTB Ltr. at 1, 3. VTB's failure to enumerate these "other reasons" for dismissal runs contrary to Rule 2(A) of this Court's Individual Practices, which requires the moving party to "set[] forth the basis for the anticipated motion," and deprives Plaintiffs of the opportunity to fully evaluate and respond to VTB's purported defenses.

[2] In responding to the Complaint, VTB raises many of the same arguments articulated by Defendants MoneyGram International, Inc., MoneyGram Payment Systems, Inc. (together, "MoneyGram"), The Western Union Company, Western Union Financial Services, Inc. (together, "Western Union"), and Sberbank of Russia in their pre-motion letters dated May 1, 2019, May 6, 2019, and July 12, 2019. We therefore incorporate by reference our May 6, 2019, May 9, 2019, and July 17, 2019 responses to MoneyGram, Western Union, and Sberbank of Russia.





Starting in 2014, the DPR's fundraising agents carried out a worldwide online campaign to solicit financial support for the DPR and its leader Igor Strelkov (Girkin) for the purpose of procuring specifically enumerated lethal equipment. *See* Compl. ¶¶ 51, 115-21, 129-36, 149-86.[3] The DPR's fundraising agents, including the Coordination Center for New Russia ("Center for New Russia"), Veche Interregional Public Organization ("Veche"), the Rospisatel group, and Voice of Sevastopol, openly and brazenly provided explanations on their websites of how to wire U.S. dollars into VTB accounts held by the DPR using VTB's correspondent accounts in New York City, and explicitly identified correspondent bank account numbers at Deutsche Bank Trust Company Americas and JPMorgan Chase Bank. *Id.* ¶¶ 50-53, 127-28, 150, 156, 158, 173. The DPR's fundraising agents subsequently boasted that they had raised millions of dollars through these online fundraising efforts in support of their terrorist activities and documented the transfer of lethal equipment to the DPR. *Id.* ¶¶ 126, 132, 135-48, 182-83, 185, 188-93. These facts alone are sufficient to defeat a motion to dismiss. Yet, here, because of the online nature of the fundraising campaign that the DPR engaged in, Plaintiffs have uncovered specific uses of VTB's New York correspondent accounts to transfer funds to the DPR for the purpose of acquiring lethal equipment.[4]

When a "foreign bank" "repeatedly approves deposits and the movement of funds through" its New York correspondent account "for the benefit of its customer"—as VTB did here—the bank will be deemed to "transact[] business in New York" for jurisdictional purposes. *Al Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 327-28 (2016) ("Repeated, deliberate use that is approved by the foreign bank on behalf and for the benefit of a customer . . . demonstrates volitional activity constituting transaction of business.").[5]

VTB's responses to the merits of the Complaint—which largely recycle the faulty arguments of its co-defendants[6]—are both factually inaccurate and contrary to settled law. *First*, VTB's contention that the Complaint "does not allege that VTB knew or intended that any transfers effected through it would support a terrorist attack" ignores numerous pleaded facts, including that, three months before the attack on MH17, as publicly reported in the *Kyiv Post*,

---

[3] On June 20, 2014, in response to the terrorist acts perpetrated by the DPR, the U.S. Treasury Department sanctioned Strelkov in his capacity as the "the self-described 'commander-in-chief of the Donetsk People's Republic.'" Compl. ¶ 110-11. And on July 29, 2014, in further response to the situation in eastern Ukraine, the U.S. Treasury Department announced sanctions against VTB and its subsidiaries in an effort to stem the flow of financial support to the DPR and its affiliates. *Id.* ¶ 113.

[4] For example, the Complaint documents that between June 23 and July 27, 2014—which encompasses the time during which the DPR planned and executed the attack on MH17—Center for New Russia received "transfers in dollars" to its VTB account. Compl. ¶¶ 52, 143-44.

[5] A deposit is "approved" by a foreign bank when the bank credits the funds in the correspondent account to the account of the customer at the foreign bank. *Id.* at 327-28. This differs from "unintended and unapproved use of a correspondent bank, where the non-domiciliary bank is a passive and unilateral recipient of funds later rejected," which "does not constitute personal jurisdiction. *Id*. at 326.

[6] VTB's arguments regarding proximate causation and the statutory element of an "act of international terrorism" rely on two cases cited earlier by MoneyGram. As we have previously explained (May 6, 2019 Ltr. at n.1), those cases are factually distinguishable, and "courts have routinely held that the provision of financial support to fundraisers or agents of a terrorist organization can support a claim for liability under the ATA." *Id*. at 1-2 & n.2 (collecting cases).





Ukrainian authorities were investigating VTB "for violating the law on 'crime and terrorist financing' by providing banking services to terrorist groups in the Donbass." Compl. ¶ 125.

*Second*, adopting a similar defense as its Russian state-owned co-defendant, Sberbank of Russia, VTB claims that Plaintiffs cannot show the requisite scienter because the DPR "has never been designated as a Foreign Terrorist Organization by the United States, and the Treasury Department did not impose sanctions on the DPR until the day before the attack." This extreme position—for which VTB cites no authority—is contrary to the plain language of the ATA, which contains no such requirement, as well as to settled law. *See* July 17, 2019 Sberbank of Russia Opp. Letter at 2-3; *see also Ahmad v. Christian Friends of Israeli Communities*, No. 13 CIV. 3376 JMF, 2014 WL 1796322, at *3 (S.D.N.Y. May 5, 2014), *aff'd*, 600 F. App'x 800 (2d Cir. 2015) ("In order to trigger liability under the ATA, the recipient of a defendant's support need not be a designated foreign terrorist organization.")

Moreover, the DPR's horrific record of terrorist activity was widely known well before the attack on Quinn's plane. In the months prior, the acts of terror perpetrated by the DPR on the Ukrainian civilian population were among the most highly publicized international news stories. *See, e.g.*, Compl. ¶¶ 85, 88, 90, 92, 123-25. Governments around the world condemned the DPR's acts of intimidation, violence, and terrorism, including in May 2014, when the Ukrainian General Prosecutor Office formally and publicly classified the DPR and its affiliates as "terrorist organizations." *Id.* ¶¶ 94, 96-108. The United States also imposed sanctions on numerous Russian entities and DPR leaders for their role enabling terrorism in Ukraine. *Id.* ¶ 110-12. VTB, as a leading Russian-owned bank with extensive operations in the region, was therefore intimately familiar with the DPR and its terrorist activity.

*Third*, although VTB questions "how VTB would have been aware of the various websites allegedly linked to the DPR", the Complaint pleads facts that make it impossible to understand how VTB could be unaware. The Complaint alleges open, pervasive advertisements on the Web to use VTB's banking and financial services to purchase weapons and advance terrorism. Google searches quickly reveal these websites. The DPR's use of crowdsourcing—relying on services provided by Defendants—was widely available and fodder for multiple articles in the press before and after Quinn's death. *See, e.g., id.* ¶¶ 124, 126-27.

*Finally*, the claim that VTB may have been unaware "that money transferred to the entities associated with these websites would be channeled to the DPR" is meritless. Notably, VTB does not challenge the Complaint's numerous allegations that the recipients of the money flowing through VTB were explicit that they were raising funds for the purchase of lethal equipment for the DPR. *See id.* ¶¶ 129-36 (Center for New Russia), 153-54 (Veche), 172-73 (Voice of Sevastopol). For instance, the Center for New Russia, which was specifically established to provide funds and lethal equipment to the DPR, posted regular "Financial Reports" in the weeks leading up to the attack on MH17 showing the flow of funds, including in U.S. dollars, through its account with VTB in direct support of the DPR and its leader, Igor Strelkov (Girkin). *Id.* ¶¶ 110, 130-32, 142-44, 147. As such, the Complaint indisputably establishes that VTB either knew, or was deliberately indifferent to the fact, that the financial support it provided would be used to support the DPR's terrorist activity.





For the foregoing reasons, and the reasons in our May 6, 2019, May 9, 2019, and July 17, 2019 responses to MoneyGram, Western Union, and Sberbank of Russia's similar submissions, VTB's arguments are without merit.

Respectfully submitted,

BOIES SCHILLER FLEXNER LLP

s/ David Pressman
David Pressman
Lee Wolosky

*Attorneys for Plaintiffs Thomas Schansman, individually, and as legal guardian on behalf of X.S., a minor, Catharina Teunissen, individually, and as personal representative of the Estate of Quinn Lucas Schansman, and Nerissa Schansman*

cc: All counsel of record (via ECF)