UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS SCHANSMAN ET AL.,

                          Plaintiffs,

    -against-

SBERBANK OF RUSSIA PJSC ET AL.,

                          Defendants.

19 Civ. 2985 (ALC)(GWG)

Hon. Andrew L. Carter, Jr.

**ORAL ARGUMENT REQUESTED**

**VTB BANK PJSC'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

BACKGROUND ..............................................................................................................3

      A.    VTB Is a Russian Company with Limited Contacts with the United States
          and New York .......................................................................................................3

      B.    VTB's Alleged Involvement in Providing Financial Services to
          Fundraising Representatives of the DPR .................................................................4

      C.    Alleged Involvement of Other Parties ....................................................................6

ARGUMENT ...................................................................................................................7

I.      THE COURT LACKS PERSONAL JURISDICTION OVER VTB .................................7

      A.    New York Courts May Not Exercise General Jurisdiction over VTB....................8

      B.    The Complaint Fails to Satisfy New York Statutory Requirements for
          Specific Jurisdiction over VTB..............................................................................10

          1.      Plaintiffs' Allegations Fail to Demonstrate that VTB Transacted
                 Business in New York ...............................................................................11

          2.      Plaintiffs' Claims Do Not Arise from Any Transactions within
                 New York ..................................................................................................14

      C.    Due Process Does Not Permit This Court to Exercise Personal Jurisdiction
          over VTB ...............................................................................................................15

II.     THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VTB ............................18

      A.    The Complaint Fails to Satisfy the ATA's Proximate Causation
          Requirement..........................................................................................................19

      B.    Providing Routine Banking Services Is Not an Act of "International
          Terrorism"............................................................................................................21

      C.    The Complaint Does Not Allege the Necessary Element of Knowledge .............22

CONCLUSION................................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Amelius v. Grand Imperial LLC*,
　64 N.Y.S.3d 855 (Sup. Ct. N.Y. Cty. 2017) ............................................................7

*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*,
　480 U.S. 102 (1987).................................................................................................18

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..................................................................................................1

*Aybar v. Aybar*,
　93 N.Y.S.3d 159 (N.Y. App. Div. 2019) ..............................................................7, 8

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
　305 F.3d 120 (2d Cir. 2002)................................................................................15, 16

*Bellepointe, Inc. v. Kohl's Dept. Stores, Inc.*,
　975 F. Supp. 562 (S.D.N.Y. 1997) .........................................................................12

*Brown v. Showtime Networks, Inc.*,
　18 Civ. 11078 (CM), 2019 WL 3798044 (S.D.N.Y. Aug. 2, 2019) .........................9

*Burger King Corp. v. Rudzewicz*,
　471 U.S. 462 (1985).................................................................................................16

*Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*,
　No. 14 Civ. 5216 (DLC), 2015 WL 4164763 (S.D.N.Y. July 10, 2015)................11

*Daimler AG v. Bauman*,
　571 U.S. 117, 134 S. Ct. 746 (2014)....................................................................7, 8

*Daventree Ltd. v. Republic of Azerbaijan*,
　349 F. Supp. 2d 736 (S.D.N.Y. 2004), *opinion clarified on denial of
　reconsideration*, No. 02 Civ. 6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct.
　13, 2005) ..................................................................................................................11

*Ehrenfeld v. Mahfouz*,
　489 F.3d 542 (2d Cir. 2007)....................................................................................15

*Fischbarg v. Doucet*,
　9 N.Y.3d 375 (2007) ................................................................................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
　564 U.S. 915 (2011)..................................................................................................7

*Gucci Am., Inc. v. Weixing Li*,
    135 F. Supp. 3d 87 (S.D.N.Y. 2015)...............................................................7, 16

*IMAX Corp. v. Essel Grp.*,
    62 N.Y.S.3d 107 (N.Y. App. Div. 2017) ...................................................8

*Ingenito v. Riri USA, Inc.*,
    89 F. Supp. 3d 462 (E.D.N.Y. 2015) .......................................................9

*Johnson v. Ward*,
    4 N.Y.3d 516 (2005) ..............................................................................14

*Klinghoffer v. S.N.C. Achille Laura Ed Altri Gestione Motonave Achille Lauro in
    Admministrazione Straordinaria*,
    937 F.2d 44 (2d Cir. 1991)......................................................................10

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996).....................................................................8

*Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia*,
    No. 96 Civ. 1022 (JFK), 1997 WL 458753 (S.D.N.Y. Aug. 11, 1997)..................17

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018).....................................................................21

*Magdalena v. Lins*,
    999 N.Y.S.2d 44 (N.Y. App Div. 2014) ...................................................8

*Mende v. Milestone Tech., Inc.*,
    269 F. Supp. 2d 246 (S.D.N.Y. 2003)..................................................1, 12

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996).....................................................................15

*O'Sullivan v. Deutsche Bank AG*,
    No. 17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446 (S.D.N.Y. March 28,
    2019) ...........................................................................................19, 21, 22

*Paterno v. Laster Spine Inst.*,
    24 N.Y.3d 370 (2014) ............................................................................11

*Ramiro Aviles v. S & P Glob., Inc.*,
    380 F. Supp. 3d 221 (S.D.N.Y. 2019)......................................................11

*Reich v. Lopez*,
    858 F.3d 55 (2d Cir. 2017)........................................................................8

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013)..............................................................................19, 20

*Sikhs for Justice v. Nath*,
  893 F. Supp. 2d 598 (S.D.N.Y. 2012).............................................................12, 14

*Sills v. Ronald Reagan Presidential Found., Inc.*,
  No. 09 Civ. 1188 (GEL), 2009 WL 1490852 (S.D.N.Y. May 27, 2009) ................11

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*,
  No. 10 Civ. 4754 (JGK), 2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011)...........11, 14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC*,
  450 F.3d 100 (2d Cir. 2006)......................................................................10

*Tamam v. Fransabank Sal*,
  677 F. Supp. 2d 720 (S.D.N.Y. 2010)..........................................13, 15, 16, 17

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 659 (2d Cir. 2013).......................................................................10

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016)..........................................................................7

## STATUTES

8 U.S.C. § 1189...........................................................................................4

18 U.S.C.
  § 2331(1)...............................................................................................21
  § 2331(1)(A)..........................................................................................19
  § 2333(a)...............................................................................................21
  § 2339(A)....................................................................................19, 21, 22
  § 2339(C)....................................................................................19, 21, 22

## RULES

C.P.L.R.
  § 301...................................................................................................8, 9
  § 302(a)..............................................................................................11, 14
  § 302(a)(1) ...................................................................................... *passim*

Fed. R. Civ. P.
  12(b)(2) ................................................................................................1, 7
  12(b)(6) ..............................................................................................1, 18

**OTHER AUTHORITIES**

https://www.bloomberg.com/quote/USDRUB:CUR (last visited September 19, 2019) ......................................................................................................................5

## PRELIMINARY STATEMENT

Through this Complaint, Plaintiffs seek to hold VTB Bank PJSC ("VTB") liable for actions allegedly taken by certain members of the Donetsk People's Republic ("DPR"), an anti-Ukrainian militia group formed in April 2014.  Plaintiffs' claims are not only jurisdictionally defective, but also substantively deficient.[1]

Plaintiffs bring two causes of action under the Anti-Terrorism Act ("ATA") against Defendants on the grounds that Defendants provided "banking and money transfer services to the DPR and its affiliates." (Compl. ¶ 194.)  These allegations arise from the events on July 17, 2014—approximately three months after the DPR's formation—when members of the DPR allegedly fired a missile that hit Malaysia Airlines Flight 17 ("MH17") as it flew over eastern Ukraine. Specifically with respect to VTB, Plaintiffs' allegations amount to the following: certain "fundraisers" for the DPR oversaw accounts with VTB; and those fundraisers "advertised" those accounts on their websites and other platforms in order to solicit money.  That is the extent of the allegations as to VTB.  Plaintiffs do *not* (i) identify any transaction where money was wired *to* any of these "fundraising" accounts at VTB; (ii) identify any transaction where money was wired *from* any of these "fundraising" accounts for the benefit of the DPR; or (iii) identify how any funds sitting in these accounts are in any way related to the alleged attack on MH17 on July 17, 2014. Accordingly, and for the following reasons, Plaintiffs' claims against VTB fail.

---

[1]     VTB does not concede that any of the allegations in Plaintiffs' Complaint are true.  Rather, for the purposes of this motion, VTB argues that Plaintiffs' allegations, even if true, nevertheless warrant dismissal under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (holding that, under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and further holding that a court is "not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)); *see also Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (holding that "[c]onclusory allegations are not enough to establish personal jurisdiction" under Rule 12(b)(2)).

*First*, as a preliminary matter, the Court lacks personal jurisdiction over VTB.  As Plaintiffs state in their Complaint:  the alleged planning and execution of the MH17 attack occurred internationally—not in New York, or anywhere in the United States; the VTB accounts for the DPR "fundraisers" are located internationally—not in New York, or anywhere in the United States; and there are no transactions from these VTB accounts that in any way touch New York or any other jurisdiction in the United States—and indeed no allegation of the existence of any such transaction at all.  Indeed, VTB is not incorporated, and has no physical presence, in New York (or anywhere else in the United States).

In an attempt to address this significant deficiency, Plaintiffs allege that VTB maintains certain correspondent accounts in New York.  But they do not (and cannot) identify any actual transaction through any of these New York-based accounts for the benefit of any DPR "fundraiser."  Rather, Plaintiffs merely allege that certain of these "fundraisers" advertised the correspondent accounts—and presumably hope that the Court will leap to the conclusion that any subsequent transfers to their accounts must have been routed through New York.  Of course, this logical leap ignores the various ways that funds—including U.S. dollars—can be cleared and wired to a particular account abroad, including through accounts outside of the United States or with institutions other than VTB.

Even more fundamentally, Plaintiffs do not articulate any connection between the funds in these "fundraiser" VTB accounts and the DPR's alleged attack.  Thus, even if Plaintiffs were able to identify transfers into these accounts that were routed through New York, there are no allegations indicating how these funds were subsequently used to support the alleged attack on MH17.  Such sparse pleading is insufficient to establish personal jurisdiction.

*Second*, and for similar reasons, Plaintiffs do not state an actionable claim under the ATA. In particular, Plaintiffs have not alleged that: (i) VTB's conduct was the proximate cause of Plaintiffs' injuries; (ii) VTB's conduct—the provision of banking services—amounts to an act of "international terrorism"; or (iii) VTB acted with the requisite knowledge under the statute. Accordingly, and as described more fully below, Plaintiffs' Complaint against VTB must be dismissed.

## BACKGROUND

### A.      VTB Is a Russian Company with Limited Contacts with the United States and New York

VTB is "a Russian banking institution with offices and branches worldwide."  (Compl. ¶ 34.)  VTB does not, however, maintain an office or branch in New York.  (Decl. of Andrey S. Puchkov in Support of Defendant VTB Bank (PJSC)'s Motion to Dismiss ("Puchkov Decl.") ¶ 4.) According to the Complaint, VTB "has maintained correspondent bank accounts with JPMorgan Chase Bank, Bank of America, and Citibank, N.A., among other banks in New York City." (Compl. ¶ 42(b).)  The Complaint contains no allegations regarding VTB's state of incorporation or principal place of business.  VTB is in fact incorporated, and has its principal place of business, in the Russian Federation.  (Puchkov Decl. ¶¶ 2-3.)  Plaintiffs allege that VTB operated a subsidiary, VTB Capital, in New York until August 2018, when VTB Capital was sold and renamed Xtellus Capital Partners.  (Compl. ¶¶ 35-36.)

**B.  VTB's Alleged Involvement in Providing Financial Services to Fundraising Representatives of the DPR**

As alleged, the DPR is an organization that "seek[s] to advance an ideological agenda of Russian supremacy by creating a proto-state, Novorossiya,[2] through the control of territory in Ukraine acquired through acts of intimidation and coercion."  (*Id.* ¶ 77.)  Although Plaintiffs characterize the DPR as a notorious terrorist group whose violent exploits were widely known at the time of the DPR's alleged attack on MH17, (*id.*), Plaintiffs do not assert that the DPR has ever been designated as a Foreign Terrorist Organization by the United States.[3]  Further, Plaintiffs acknowledge that the DPR was not placed on sanctions by the U.S. Treasury Department until July 16, 2014—the day immediately before the attack on MH17 and *after* any alleged conduct by VTB relevant to the Complaint.  (*Id.* ¶ 112.)

The Complaint broadly alleges that VTB and the other Defendants provided financial services to a number of third parties—who Plaintiffs characterize as "fundraising representatives" or "fundraising arm[s] of the DPR"—and who purportedly transferred funds to the DPR.  (*See, e.g.*, *id.* ¶¶ 53, 59.)  The Complaint does not allege that VTB itself directly engaged in or provided any such fundraising.  Moreover, Plaintiffs allege that only certain fundraising representatives had any contact with VTB—namely, the Coordination Center for New Russia (the "Center for New Russia"), Veche, the Rospisatel Group, World Crisis, and the Voice of Sevastopol (collectively, the "Third-Party Fundraisers").  According to Plaintiffs, the Third-Party Fundraisers "openly advertised" their accounts with VTB or VTB's correspondent accounts in New York in 2014.  (*Id.*

---

[2]    As Plaintiffs allege, "Novorossiya (or 'Novorossia') refers both to an aspirational geographical territory . . . as well as a violent extremist political movement," and is associated with "an effort to create a pro-Russia confederated state."  (Compl. ¶ 4 n.1.)

[3]    Under the ATA, a "Foreign Terrorist Organization" is designated by the U.S. Secretary of State pursuant to 8 U.S.C. § 1189.

¶¶ 128, 150 (Center for New Russia), 154-155 (Veche), 156 (the Rospisatel Group), 158 (World Crisis), 173 (the Voice of Sevastopol).)  The Third-Party Fundraisers allegedly solicited money for the "explicit purpose of purchasing military or lethal equipment" for the DPR.  (*Id*. ¶ 204.)

Plaintiffs, however, do not identify a single transaction to or from any Third-Party Fundraisers that was completed through VTB's correspondent accounts in New York.  Rather, Plaintiffs merely allege that the Third-Party Fundraisers *advertised*, on their respective websites, their accounts with VTB and information related to VTB's correspondent accounts.  (*Id*. ¶¶ 128, 150 (Center for New Russia), 154-155 (Veche), 156 (the Rospisatel Group), 158 (World Crisis), 173 (the Voice of Sevastopol)).  Plaintiffs do not identify specific transfers that the Third-Party Fundraisers received into their VTB correspondent accounts, or that were processed through a VTB correspondent account on the behalf of Third-Party Fundraisers.  (*See id*. ¶¶ 118, 197.)

The most specificity Plaintiffs provide is with respect to the Center for New Russia. Plaintiffs allege that, between June 3 and June 23, 2014, the Center for New Russia allegedly maintained an account with VTB that had received transfers of 56,011.17 rubles—the equivalent of roughly $875.[4]  (*Id*. ¶ 142.)  The Complaint contains no allegation regarding any connection between the 56,011.17 rubles and the United States, and Plaintiffs provide no details concerning when or how this account received this money, or how it was actually used.  Plaintiffs also claim that between June 23 and July 27, 2014, the Center for New Russia allegedly reported that "its account with [] VTB" received "1,673.55" in "transfers in dollars."  (*Id*. ¶ 52.)  The Complaint, however, fails to identify any transaction that was actually processed through VTB's New York

---

[4]     Based    on    the    exchange    rate    as    of    September    19,    2019. *See* https://www.bloomberg.com/quote/USDRUB:CUR (last visited September 19, 2019).

correspondent accounts to or from the Center for New Russia.   Nor does the Complaint attempt to articulate when or how these funds were provided to the DPR, much less what they were used for.

Based on these allegations, Plaintiffs claim that VTB provided financial services to the Third-Party Fundraisers.  (*Id.* ¶ 215.)  According to Plaintiffs, the financial services VTB allegedly provided to these entities facilitated (in some unspecified way) the DPR's alleged attack on MH17 on July 17, 2014.  (*Id.* ¶¶ 3, 238-245.)

### C.    Alleged Involvement of Other Parties

In addition to VTB, Plaintiffs have named as Defendants: Sberbank of Russia PJSC ("Sberbank"), the Western Union Company and Western Union Financial Services, Inc. (together, "Western Union"), and MoneyGram International, Inc. and MoneyGram Payment Systems, Inc. (together, "MoneyGram").  Similar to their allegations against VTB, Plaintiffs allege that these Defendants provided financial services to the Third-Party Fundraisers, in addition to other fundraising representatives, including Essence of Time, Save Donbass, ICORPUS, and Sputnik & Pogrom.  (*See, e.g.*, *id.* ¶¶ 159-162, 192 (allegations concerning Essence of Time); 163-169, 191 (allegations concerning Save Donbass); 170-171 (allegations concerned ICORPUS); 181-186 (allegations concerning Sputnik & Pogrom).)  The allegations often (and impermissibly) lump VTB and the other Defendants together.  (*See, e.g.*, *id.* ¶ 194 ("Since at least April 2014, Defendants have provided extensive banking and money transfer services to the DPR and its affiliates.").)  The Complaint, however, contains no allegations connecting VTB to Essence of Time, Save Donbass, ICORPUS, or Sputnik & Pogrom, and no allegation that any VTB account or correspondent account processed any transactions on behalf of these entities.

**ARGUMENT**

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER VTB

Plaintiffs have not alleged sufficient facts to support a finding of personal jurisdiction over VTB.  "It is fundamental that a court must acquire personal jurisdiction over a defendant before it can render a judgment against that defendant."  *Aybar v. Aybar*, 93 N.Y.S.3d 159, 163 (N.Y. App. Div. 2019).  "Federal courts must satisfy three primary requirements to lawfully exercise personal jurisdiction over an entity:  (1) the entity must have been properly served, (2) the court must have a statutory basis for exercising personal jurisdiction, and (3) the exercise of personal jurisdiction must comport with constitutional due process."  *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015).  For the reasons described below, Plaintiffs have failed to demonstrate a statutory basis for exercising personal jurisdiction or how doing so would comport with due process.  Accordingly, the Complaint should be dismissed in its entirety as to VTB under Federal Rule of Civil Procedure 12(b)(2).

"Personal jurisdiction falls into two main categories:  specific jurisdiction and general jurisdiction."  *Amelius v. Grand Imperial LLC*, 64 N.Y.S.3d 855, 865-66 (Sup. Ct. N.Y. Cty. 2017).  "A court may assert general personal jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render [it] essentially at home in the forum State.'"  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotation marks omitted)).  On the other hand, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  A plaintiff bears the burden of establishing jurisdiction over a defendant by a

preponderance of the evidence.  *See Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).

The Court lacks personal jurisdiction over VTB under either a theory of general or specific jurisdiction.  General jurisdiction does not exist because VTB is not domiciled in New York, nor are its ties to the state "so constant and pervasive as to render [it] essentially at home" in New York.  *Daimler AG v. Bauman*, 571 U.S. 117, 122, 137 (2014) (alteration in original) (internal quotation marks omitted).  Specific jurisdiction does not exist because Plaintiffs' allegations fail to show that VTB transacted business in New York, as C.P.L.R. § 302(a)(1) requires, or the existence of a sufficient nexus between VTB's alleged conduct in New York and Plaintiffs' injury. Furthermore, subjecting VTB to the jurisdiction of New York courts would be inconsistent with due process.

### A.     New York Courts May Not Exercise General Jurisdiction over VTB

Plaintiffs cannot show that general jurisdiction exists over VTB.  C.P.L.R. § 301 provides the bases for general jurisdiction in New York.  *See Aybar*, 93 N.Y.S.3d at 163.  Section 301 permits courts to exercise general jurisdiction over a defendant in only two circumstances:  (i) where the defendant is domiciled in the state, or (ii) in an "exceptional" case, where a foreign corporate defendant's contacts with the forum state are so extensive as to support general jurisdiction notwithstanding domicile elsewhere.  *See IMAX Corp. v. Essel Grp.*, 62 N.Y.S.3d 107, 109 (N.Y. App. Div. 2017) (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760-61 (2014), *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017), and *Magdalena v. Lins*, 999 N.Y.S.2d 44 (N.Y. App Div. 2014)).

Plaintiffs' allegations are insufficient to establish general jurisdiction over VTB under the first prong of Section 301, based on a defendant's domicile in New York—*i.e.*, the state of incorporation or principal place of business for a corporation.  *See Magdalena*, 999 N.Y.S.2d at

45 ("Among other things, there is no basis for general jurisdiction pursuant to C.P.L.R. § 301, since Glendun is not incorporated in New York and does not have its principal place of business in New York.")   The Complaint lacks *any* allegations regarding VTB's state of incorporation or principal place of business.   In fact, VTB is incorporated, and has its principal place of business, in the Russian Federation.   (Puchkov Decl. ¶¶ 2-3.)   There is accordingly no basis for general jurisdiction over VTB.

Plaintiffs' allegations are also insufficient to warrant the exercise of general jurisdiction under Section 301's second prong, which is based on a defendant's extensive contacts with New York.   Plaintiffs suggest that VTB is subject to jurisdiction in this Court because: (i) it "maintain[s] offices through [its] subsidiaries in Manhattan, New York," and (ii) VTB "deliberately and repeatedly routed U.S. dollar-denominated transactions through correspondent accounts located in Manhattan, New York."   (Compl. ¶ 22.)   Neither allegation is sufficient to give rise to general jurisdiction.

*First*, allegations regarding the presence of a subsidiary in New York do not trigger general jurisdiction over the parent.   *See Brown v. Showtime Networks, Inc.*, 18 Civ. 11078 (CM)(JLC), 2019 WL 3798044, at *6 (S.D.N.Y. Aug. 2, 2019) ("[T]he existence of BBC's New York subsidiary (BBC Studios) does not mean that general jurisdiction can be exercised over the parent corporation."); *see also Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 474 (E.D.N.Y. 2015) (holding that plaintiff failed to allege facts that would support a finding that exercising general jurisdiction would comport with due process where plaintiff asserted that parent maintained a "presence" in New York through wholly-owned subsidiary).   Plaintiffs allege that VTB's subsidiary, VTB Capital, was sold and renamed Xtellus Capital Partners around August 2018.

(Compl. ¶¶ 35-36.)  If a subsidiary does not trigger general jurisdiction, neither would a subsidiary that was later sold.

*Second*, allegations regarding the use of correspondent accounts in New York cannot support a theory of general jurisdiction.  *See In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 680-81 (2d Cir. 2013) (holding that "the alleged use of correspondent bank accounts . . . are insufficient to support the exercise of general personal jurisdiction").[5]  Without any allegations of "extensive" contacts with New York, Plaintiffs are unable to demonstrate the existence of general personal jurisdiction over VTB.

### B.    The Complaint Fails to Satisfy New York Statutory Requirements for Specific Jurisdiction over VTB

Plaintiffs' allegations are similarly insufficient to warrant the exercise of specific jurisdiction under New York law.  C.P.L.R. § 302(a)(1) permits a court to exercise personal jurisdiction over a foreign defendant who "transacts any business with the state or contracts anywhere to supply goods or services in the state."  To establish personal jurisdiction under this section, Plaintiffs must allege sufficient facts to satisfy two requirements:  (1) the defendant must have transacted business within New York, and (2) the claim asserted must arise from that business activity.  *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt, LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  Plaintiffs do not satisfy either prong.

---

[5]    Plaintiffs' also allege that VTB has availed itself of the courts of New York, "having done so as recently as 2017."  (Compl. ¶ 38.)  In the Second Circuit, however, the law is clear:  "A party's consent to jurisdiction in one case, however, extends to that case alone.  It in no way opens that party up to other lawsuits in the same jurisdiction in which consent was given, where the party does not consent and no other jurisdictional basis is available."  *Klinghoffer v. S.N.C. Achille Laura Ed Altri Gestione Motonave Achille Lauro in Admministrazione Straordinaria*, 937 F.2d 44, 50 n.5 (2d Cir. 1991).  Accordingly, allegations regarding VTB's participation in previous litigation in New York are irrelevant for the purpose of establishing general jurisdiction in this matter.

1.      Plaintiffs' Allegations Fail to Demonstrate that VTB Transacted Business
in New York

Plaintiffs have failed to allege sufficient facts to warrant a finding that VTB "transacted

business within New York."  In order to satisfy this prong of C.P.L.R. § 302(a), Plaintiffs must

allege "purposeful" activities within the state.  *See Paterno v. Laster Spine Inst.*, 24 N.Y.3d 370,

376 (2014) ("More than limited contacts are required for purposeful activities sufficient to

establish that the non-domiciliary transacted business in New York.").  Even then, "jurisdiction

will not extend to cover defendants with nothing more than petty contacts to the state." *Sills v.

Ronald Reagan Presidential Found., Inc.*, No. 09 Civ. 1188 (GEL), 2009 WL 1490852, at *6

(S.D.N.Y. May 27, 2009) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007)) (internal

quotation marks omitted).  In particular, the mere existence of correspondent banking accounts in

New York is not sufficient to establish that VTB transacted business in New York.  *See Societe

d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL 4056306, at *7

(S.D.N.Y. Sept. 13, 2011) ("[M]erely maintaining correspondent bank accounts in New York is

not sufficient to establish personal jurisdiction."); *Daventree Ltd. v. Republic of Azerbaijan*, 349

F. Supp. 2d 736, 762 (S.D.N.Y. 2004), *opinion clarified on denial of reconsideration*, No. 02 Civ.

6356 (SHS), 2005 WL 2585227 (S.D.N.Y. Oct. 13, 2005) (same).  Rather, Plaintiffs must identify

specific transactions that VTB processed through those accounts.  *See Ramiro Aviles v. S & P

Glob., Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019) (holding that, to survive a motion to dismiss

for lack of personal jurisdiction, allegations must "state specific facts supporting th[e] conclusion

that jurisdiction is proper" (alteration in original) (internal quotation marks omitted)); *see also

Cmty. Fin. Grp., Inc. v. Stanbic Bank Ltd.*, No. 14 Civ. 5216 (DLC), 2015 WL 4164763, at *2, *4-

*5 (S.D.N.Y. July 10, 2015) (holding that "a plaintiff may not rely on conclusory statements

without any supporting facts" and dismissing the complaint for lack of personal jurisdiction despite

allegations regarding one wire transfer routed through defendant's correspondent account in New York).  Plaintiffs are unable to do so.

Plaintiffs may attempt to base their assertion of specific jurisdiction on their conclusory allegations that VTB "deliberately and repeatedly routed U.S. dollar-denominated transactions" through its correspondent accounts.  (Compl. ¶ 22.)  That allegation, however, is not supported by the remainder of the Complaint.  Plaintiffs fail to identify any specific transaction that was effectuated through VTB's New York correspondent accounts.  Instead, Plaintiffs claim merely that the Third-Party Fundraisers advertised their bank accounts with VTB or VTB's correspondent accounts and, based on these advertisements, ask the Court to find that VTB actually processed transactions on their behalf.  (*See id.* ¶¶ 128, 150 (Center for New Russia), 154-155 (Veche), 156 (Rospisatel Group), 158 (World Crisis), 173 (Voice of Sevastopol)).  Such conclusory assertions—utterly lacking in detail and premised entirely on inference—are fatal to Plaintiffs' attempt to establish specific jurisdiction. *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622-23 (S.D.N.Y. 2012)  (holding that "[c]onclusory allegations are not enough to establish personal jurisdiction and the allegations must be well-pled" (internal quotation marks omitted)).

To make a prima facie showing of jurisdiction, a plaintiff must "plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Bellepointe, Inc. v. Kohl's Dept. Stores, Inc.*, 975 F. Supp. 562, 564 (S.D.N.Y. 1997); *see also Mende v. Milestone Tech. Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) ("Conclusory allegations are not enough to establish personal jurisdiction." (internal quotation marks omitted)).  Here, Plaintiffs' conclusory allegations are not "sufficient in themselves to establish jurisdiction," *Bellepointe, Inc.*, 975 F. Supp. at 564, but rather

require an impermissible "speculative leap" to establish jurisdiction over VTB.  *See Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727 (S.D.N.Y. 2010).[6]

In fact, the instant case closely resembles the facts in *Tamam*.  There, the plaintiffs argued that the defendants were subject to personal jurisdiction because of dollar-clearing wire transfers through correspondent banks in New York.  *Id.* at 726.  Although the defendant banks maintained accounts for, and provided services to, parties associated with Hizbullah, there were "no allegations that any money from these accounts was exchanged for U.S. dollars through a correspondent bank in New York."  *Id.* at 727.  Rather, the plaintiffs argued that personal jurisdiction existed based on the defendant banks' maintenance of correspondent bank accounts in New York, and because third parties must use those accounts to exchange currency for dollars in order to support Hizbullah.  *Id.* at 725, 727.

The *Tamam* Court rejected the invitation to make such a speculative leap, holding that it "need not draw argumentative inferences in the plaintiff's favor."  *Id.* at 725 (internal quotation marks omitted).  Significantly, it pointed to a "missing link" in the plaintiffs' theory supporting a finding of personal jurisdiction:  "the actual transfer of money through New York."  *Id.* at 727.  Accordingly, the Court determined that exercising jurisdiction was not proper.  *Id.* at 725, 727.  Here, the same "link" is missing from Plaintiffs' claims—namely, that VTB actually processed any relevant transaction in New York.  Without any such allegations, and with nothing more than

---

[6]     Elsewhere in the Complaint, Plaintiffs advance allegations that lump several Defendants together and fail to differentiate any relevant conduct or delineate specific transactions.  (*See, e.g.*, Compl. ¶¶ 128 (alleging that fundraising representatives advertised their account numbers with Sberbank and VTB), 193 (alleging that Center for New Russia allegedly received transfers to its accounts with VTB and Sberbank and via Western Union); 194 (alleging that "[s]ince at least April 2014, Defendants have provided extensive banking and money transfer services to the DPR and its affiliates").)  Such generalized allegations are insufficient to permit a court to find specific jurisdiction over VTB.  *See Tamam*, 677 F. Supp. 2d at 725-27.

allegations that VTB maintained correspondent accounts in New York, Plaintiffs are unable to establish that specific personal jurisdiction is proper.

> 2.    Plaintiffs' Claims Do Not Arise from Any Transactions within New York

Plaintiffs also fail to allege sufficient facts to satisfy the second prong of C.P.L.R. § 302(a): a connection between VTB's alleged business activity in New York and the claims asserted.  In order to satisfy this part of Section 302(a), "plaintiffs must allege a 'direct' and 'substantial' connection between those bank accounts and the wrongful conduct that forms the basis of their cause of action."  *Societe d'Assurance*, 2011 WL 4056306, at *7.  A connection that is "merely coincidental" is insufficient to support jurisdiction.  *See Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005).  Again, Plaintiffs must articulate such allegations with specificity.  *See Sikhs for Justice*, 893 F. Supp. 2d at 622-23 (holding that "[c]onclusory allegations are not enough to establish personal jurisdiction and the allegations  must be well-pled" (internal quotation marks omitted)).

Plaintiffs have failed to satisfy this standard.  At most, they allege that (1) between June 23 and July 27, 2014, the Center for New Russia advertised the account number of VTB's correspondent bank in New York, and (2) between the same dates, the same entity reported that "its account with Defendant VTB Bank received '1,673.55' in 'transfers in dollars.'"  (Compl. ¶ 52.)  But even if Plaintiffs had alleged that this "1,673.55" in "transfers in dollars" occurred in New York—which, as noted above, they do not—they utterly fail to allege that this transfer was subsequently used to finance the MH17 attack.  Notably, they allege nothing at all on the use of this $1,673.55.  (*Compare id.* ¶ 143 *with* ¶ 144.)  This attenuated theory relies entirely on a connection between VTB's correspondent accounts in New York and the attack on MH17 that is not just "merely coincidental," but entirely conclusory.  *See Johnson*, 4 N.Y.3d at 520 (holding that plaintiffs could not establish long-arm jurisdiction under C.P.L.R. § 302(a)(1) because the relationship between the claim and the New York transaction was "merely coincidental"); *see also*

*Tamam*, 677 F. Supp. 2d at 729 ("[A] defendant may not be subject to personal jurisdiction under CPLR § 302(a)(1) simply because [its] contact with New York was a link in a chain of events giving rise to a cause of action" (alteration in original) (internal quotation marks omitted)).[7]

### C.   Due Process Does Not Permit This Court to Exercise Personal Jurisdiction over VTB

Even if the Complaint satisfied New York statutory requirements for jurisdiction, exercising jurisdiction would not comport with due process. *See Ehrenfeld v. Mahfouz*, 489 F.3d 542, 547 (2d Cir. 2007). To assess due process, courts analyze two components: (i) the "minimum contacts" test and (ii) the "reasonableness" inquiry. *See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002). A court must first analyze the "minimum contacts" prong and determine "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). At the second stage, a court must determine whether "the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable under the circumstances of the particular case." *Id.* at 568 (internal quotation marks omitted). "The import of the 'reasonableness' inquiry varies inversely with the strength of the 'minimum contacts' showing—a strong (or weak) showing by the plaintiff on 'minimum contacts' reduces (or increases) the weight given to 'reasonableness.'" *Bank Brussels Lambert*, 305 F.3d at 129 (quoting *Metro. Life*, 84 F.3d at 568-69).

Plaintiffs' allegations are inadequate under the minimum contacts test. "Determining whether an entity has sufficient 'minimum contacts' with a forum turns on whether the entity "'purposefully directed" [its] activities at . . . the forum and [whether] the litigation results from

---

[7]      Indeed, as the court noted in *Tamam*: "U.S. dollars are easily obtained through correspondent banks worldwide." 677 F. Supp. 2d at 733.

alleged injuries that "arise out of or relate to" those activities.'" *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 96 (S.D.N.Y. 2015) (alterations in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Here, for the same reasons that Plaintiffs fail to show VTB's purposeful availment for purposes of transacting business under C.P.L.R. § 302(a)(1), they also fail to demonstrate how VTB "purposefully directed" its activities at New York in a manner that is connected to Plaintiffs' injuries.  Indeed, Plaintiffs have not even alleged facts showing that VTB repeatedly used its New York-based correspondent accounts.  (*See* Compl. ¶¶ 52, 143-44, 150-52, 193, 197(a).)   Rather, at its core, Plaintiffs' Complaint against VTB amounts to assertions that (i) VTB maintained correspondent accounts in New York, and (ii) certain fundraising entities advertised these correspondent account numbers.  (*See, e.g.*, *id.* ¶¶ 42(b), 127-28, 150, 155-56, 158, 173, 176, 188, 193, 197(a), (b).)  In other words, the only action by VTB is the maintenance of correspondent accounts.  This is not sufficient to establish VTB's minimum contacts with New York.  *See Tamam*, 677 F. Supp. 2d at 731-32 ("The mere maintenance of a correspondent account in New York no more establishes minimum contacts with the United States than it does provide a basis for the exercise of long-arm jurisdiction.").

Moreover, exercising personal jurisdiction over VTB would be unreasonable. Courts consider five factors in evaluating reasonableness:  "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the state in furthering substantive social policies." *Id.* (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002)).

All five of these factors weigh in favor of a finding that exercising jurisdiction over VTB would be unreasonable.  *With respect to the first factor*, subjecting VTB, a Russian-owned and operated bank without a branch office in New York, to jurisdiction in New York would be unduly burdensome.  *With respect to the second and third factors*, New York has no unique interest in adjudicating claims against VTB, as Plaintiffs are citizens of, and domiciled in, the Netherlands, VTB is incorporated and primarily doing business in Russia, and the alleged attack and resulting injuries happened outside the United States.  (*See* Compl. ¶¶ 23-26, 66; Puchkov Decl. ¶¶ 2-3).  Indeed, were the mere maintenance of correspondent accounts found to be sufficient and reasonable for purposes of establishing personal jurisdiction, "this Court, located in one of the world's largest and busiest financial centers, would be burdened with countless international financial disputes having no real, substantive link to New York."  *See Lan Assocs. XVIII, L.P. v. Bank of Nova Scotia*, No. 96 Civ. 1022 (JFK), 1997 WL 458753, at *6 (S.D.N.Y. Aug. 11, 1997) (finding that New York had "virtually no link to this action" where "[n]one of the parties is a citizen of New York, and no events occurred here other than an alleged wire transfer of funds").

*With respect to the fourth factor*, the assertion of personal jurisdiction here would not further the interstate judicial system's interest in obtaining the most efficient resolution of the controversy.  *See Tamam*, 677 F. Supp. 2d at 733 (holding that the United States "has little to no interest in this litigation," where defendants were not incorporated in the United States, the bank accounts at issue were based in Lebanon, the underlying attacks took place in the Middle East, and the "only real link to this country arises because of its currency").  Further, given that the nexus of VTB's operations is in the Russian Federation, and in light of the international scope of Plaintiffs' allegations, many of the witnesses and much of the evidence will be located abroad.

And finally, *with respect to the fifth factor*, the assertion of jurisdiction in a case with such a barebones connection to the United States does not further substantive social policies among nations.  As the Supreme Court has cautioned, "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field."  *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 115 (1987).

## II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VTB

The Complaint against VTB should also be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In essence, Plaintiffs allege that:  (i) VTB has maintained correspondent bank accounts in New York; (ii) certain fundraising representatives have advertised VTB's "United States correspondent bank accounts"; and (iii) a single fundraiser, the Center for New Russia, reported that its account with VTB received "'56,011.17' rubles" (approximately $875) between June 6 and June 23, 2014, and "1,673.55" in "transfers in dollars" between June 23 and July 27, 2014.  (Compl. ¶¶ 42(b), 50, 52, 127-28, 142, 150, 155, 173, 188, 193, 197(a), (b).)

Plaintiffs do not identify any specific transactions for the benefit of any of the Third-Party Fundraisers that VTB processed through its New York-based correspondent accounts; they do not identify any transactions that VTB processed out of these accounts and for the benefit of the DPR; they do not allege that any funds at VTB actually went to the DPR—much less how those modest amounts (less than $2,600) were a substantial factor in the MH17 attack; and they do not allege that VTB knew or intended that any such funds (even assuming that such transfers *did* occur) would support an alleged terrorist attack.  Rather, as explained above—and in more detail below— the allegations concerning VTB's involvement rest solely on inference and speculation.  *See infra* Section I.B.1-2.

In addition to the arguments set forth below, VTB joins: (i) Western Union's and MoneyGram's joint legal arguments that the Complaint fails to plead the required causal link between Defendants' alleged conduct and Plaintiffs' harm; (ii) Western Union's and MoneyGram's joint legal arguments that Defendants' acts were not acts of "international terrorism" within the meaning of 18 U.S.C. § 2331(1)(A); and (iii) Western Union's and MoneyGram's joint legal arguments, and Sberbank's legal arguments, that the Complaint fails to plead that Defendants acted with the knowledge or intent necessary to establish a predicate violation under 18 U.S.C. §§ 2339(A) or 2339(C).[8]

## A.   The Complaint Fails to Satisfy the ATA's Proximate Causation Requirement

Plaintiffs' allegations are not sufficient under the ATA's demanding proximate causation standard.  To establish proximate causation under the ATA, Plaintiffs must plausibly allege that VTB's acts were a substantial factor in the sequence of events that led to Plaintiffs' injuries, and that Plaintiffs' injuries were reasonably foreseeable or anticipated as a natural consequence of VTB's conduct.  *See Rothstein v. UBS AG*, 708 F.3d 82, 91, 97 (2d Cir. 2013); *see also O'Sullivan v. Deutsche Bank AG*, No. 17 Civ. 8709 (LTS) (GWG), 2019 WL 1409446, at *5 (S.D.N.Y. March 28, 2019).  The claim should be dismissed where plaintiffs "rel[y] solely on indirect allegations of causation." *See O'Sullivan*, 2019 WL 1409446, at *5.

Here, as in *Rothstein*, VTB is not alleged to have participated in the alleged attack on MH17, nor do Plaintiffs' allege that VTB provided services directly to the DPR.  708 F.3d at 97.  Absent such allegations, Plaintiffs cannot satisfy the ATA's proximate causation requirement.  *See O'Sullivan*, 2019 WL 1409446, at *5  (dismissing ATA claim brought against various financial

---

[8]   VTB does not incorporate any descriptions of the factual allegations contained in Sberbank's, Western Union's, or MoneyGram's respective memoranda of law in support of their motions to dismiss.

institutions on the ground that "the [c]omplaint does not allege that [d]efendants participated in the attacks or provided money or goods directly" to the perpetrators of the attack when the facts required several "link[s] to the causal chain" between defendants' financial services and plaintiffs' injuries because defendants allegedly provided financial services to various institutions connected to IRGC-QF, Hezbollah, and Al-Qaeda, which funded and supported the groups that perpetrated the attacks).

Further, the allegations that such funds were provided to DPR "fundraisers" are not enough to support a claim under the ATA for two additional reasons. *First*, as in *O'Sullivan*, Plaintiffs proffer no non-conclusory allegations that the alleged transactions that VTB processed were subsequently provided to the DPR. *See id.* (holding that plaintiffs failed to plausibly allege proximate causation in part because plaintiffs only made conclusory allegations to show that the funds the defendants processed were transferred to groups that "actually perpetrated the attacks against [p]laintiffs"). *Second*, Plaintiffs do not allege facts sufficient to show that the fundraising representatives would have been unable to assist the DPR in carrying out the attack without VTB's alleged assistance. *See id.* (holding that plaintiffs failed to plausibly allege proximate causation in part because they did not show that the recipients of defendants' services would have been "unable to assist [the groups that actually attacked the plaintiffs] in carrying out the attacks without [d]efendants' assistance"); *see also Rothstein*, 708 F.3d at 97 (holding that plaintiffs failed to plead proximate causation where plaintiffs did not sufficiently allege that "Iran would have been unable to fund the attacks by Hizbollah and Hamas" without the funds provided by the defendant). Plaintiffs have merely identified transactions involving Center for New Russia's VTB accounts in the amounts of $1,673.55 and 56,011.17 rubles. But they fail to allege how—or even if—these

specific funds were transferred to the DPR, let alone whether any such transfers were connected to the alleged attack on MH17.  (Compl. ¶¶ 52, 142.)[9]

**B.    Providing Routine Banking Services Is Not an Act of "International Terrorism"**

Plaintiffs' allegations also do not establish that VTB's alleged conduct constitutes an act of "international terrorism" under the ATA.  The ATA's civil remedy provision provides a cause of action to a United States national "injured in his or her person, property, or business by reason of an act of international terrorism[.]"  18 U.S.C. § 2333(a).  "International terrorism," in turn, is defined as activities that:  "(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States . . . (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States[.]"  18 U.S.C. § 2331(1).  A violation of § 2339A or § 2339C—as alleged by Plaintiffs—is "not necessarily sufficient in and of itself to constitute an act of international terrorism under the ATA." *See O'Sullivan*, 2019 WL 1409446, at *7 (citing *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d Cir. 2018)).

Plaintiffs' allegations do not establish the element of an act of "international terrorism" under 18 U.S.C. § 2331(1).  Indeed, the *O'Sullivan* Court held that the provision of banking services is not "dangerous to human life" because it is "not [an] inherently violent or dangerous"

---

[9]    Plaintiffs claim that the Center for New Russia's financial report for June 23 to July 27 shows transfers of U.S. dollar-denominated funds to the DPR.  (Compl. ¶ 147.)  This claim is inadequate for at least two reasons.  First, there is no asserted connection between the alleged transfer and any VTB account or service.  Second, the date of the alleged transaction is not stated and, given the period covered by the financial report, there is nothing to suggest that the alleged transaction took place prior to July 17, 2014, the date of the attack on MH17.

activity.  *Id.* at \*8.  This is especially true where, as here, the relationship between the banking services and the alleged terrorist attack is "attenuated" through third-party "fundraisers."  *Id.*  Plaintiffs accordingly fail to plead this necessary element to establish liability.

### C.    The Complaint Does Not Allege the Necessary Element of Knowledge

Finally, the Complaint does not adequately allege the "knowledge" element required to establish violations of 18 U.S.C. §§ 2339A and 2339C.  Both provisions require a defendant to "intend[]" or "know[]" that its material support or financing will be used for terror attacks.  *See* 18 U.S.C. § 2339(A) (penalizing the provision of material support "knowing or intending" that such support will be used in preparing or carrying out enumerated violations); 18 U.S.C. § 2339C (penalizing the provision or collection of funds with the intention that such funds be used, or with the knowledge that such funds are to be used, to carry out specified violations).

The Complaint does not plausibly allege that VTB knew or intended that any funds transferred through its banking services would support a terrorist attack.  Notably, Plaintiffs do not allege that the DPR—or *any* fundraising representative referenced in the Complaint—has ever been designated as a Foreign Terrorist Organization by the United States.  Moreover, as the Complaint concedes, the Treasury Department did not impose sanctions on the DPR until *the day before* the attack (and well after any transfers that could have facilitated the attack).  (Compl. ¶ 112.)  Furthermore, the Complaint contains no non-conclusory allegations that show how VTB would have been aware of the various websites allegedly linked to the DPR, or that money transferred to the entities associated with these websites would (allegedly) be channeled to the DPR to fund the attack.  Plaintiffs have accordingly failed to plead a necessary element to establish VTB's liability, and the claims against VTB must be dismissed.

## CONCLUSION

For each of the foregoing reasons, Plaintiffs' Complaint against VTB should be dismissed in its entirety.

Dated:  September 19, 2019
          New York, New York

LATHAM & WATKINS LLP

By: /s/ Christopher Harris
Christopher Harris
Thomas J. Heiden, admitted *pro hac vice*
885 Third Avenue
New York, New York 10022
Tel: (212) 906-1200
Email: christopher.harris@lw.com
Email: thomas.heiden@lw.com

*Attorneys for Defendant*
*VTB Bank PJSC*