UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- X
THOMAS SCHANSMAN, individually, as surviving : Index No. 1:19-CV-02985
Parent of QUINN LUCAS SCHANSMAN, and as : (ALC) (GWG)
legal guardian on behalf of X.S., a minor, and :
: Hon. Andrew L. Carter, Jr.
CATHARINA TEUNISSEN, individually, and as :
surviving Parent and personal representative of the : **ORAL ARGUMENT**
ESTATE OF QUINN LUCAS SCHANSMAN, and : **REQUESTED**
:
NERISSA SCHANSMAN, individually, and as :
surviving Sibling of QUINN LUCAS :
SCHANSMAN, :
:
                     Plaintiffs, :
:
                 -against- :
:
SBERBANK OF RUSSIA PJSC, THE WESTERN :
UNION COMPANY, WESTERN UNION :
FINANCIAL SERVICES, INC., MONEYGRAM :
INTERNATIONAL, INC., MONEYGRAM :
PAYMENT SYSTEMS, INC., and VTB BANK :
PJSC, :
:
                     Defendants. :
---------------------------------------- X

**REPLY MEMORANDUM IN SUPPORT OF MOTION BY SBERBANK OF RUSSIA TO DISMISS THE FIRST AMENDED COMPLAINT**

                                              John S. Kiernan
                                              William H. Taft V
                                              Román J. Rodriguez
                                              DEBEVOISE & PLIMPTON LLP
                                              919 Third Avenue
                                              New York, New York 10022

                                              *Counsel for Defendant Sberbank of Russia*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii
PRELIMINARY STATEMENT ............................................................................................1
ARGUMENT............................................................................................................................3
I.    The AC Lacks Sufficient Factual Allegations To Establish Personal Jurisdiction over Sberbank ................................................................................................................3
II.   The AC Does Not Sufficiently Plead Sberbank's Knowledge or Intent ............................7
     A.    Sberbank Lacks the Requisite *Mens Rea* To Support Liability..............................7
     B.    Sberbank's Alleged Banking Services to DPR Supporters Do Not Meet the Definition of International Terrorism ................................................................10
CONCLUSION.......................................................................................................................10

i

# **TABLE OF AUTHORITIES**

**CASES**

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ...................................................... 6-7

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) ................................ 8

*Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*, No. 14-cv-5216-DLC, 2015 WL 4164763
    (S.D.N.Y. July 10, 2015) ............................................................................................................ 6

*Freeman v. HSBC Holdings PLC*, 1:14-cv-06601-PKC-CLP, 2019 WL 4452364
    (E.D.N.Y. Sept. 16, 2019) ........................................................................................................ 10

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009) ....................................................... 8

*Hussein v. Dahabshiil Transfer Servs.*, 230 F. Supp. 3d 167 (S.D.N.Y. 2017) ............................. 9

*Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019) ................. 9, 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) ................................................................ 4

*Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) ........................................... 7

*Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261 (E.D.N.Y. 2019) ............................. 11

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012) ............................ 5, 6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) ........................ 5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) ...................... 5

*Merritt v. Airbus Ams., Inc.*, 202 F. Supp. 3d 294 (E.D.N.Y. 2016) ............................................. 5

*Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) ................................................ 10

*Rosenberg v. PK Graphics*, 03 Civ. 6655 (NRB), 2004 WL 1057621 (S.D.N.Y. May 10,
    2004) .......................................................................................................................................... 7

*Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016) ............................................................................ 3

*Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL
    4056306 (S.D.N.Y. Sep. 13, 2011) ....................................................................................... 5-6

*Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302 (RJS), 2018 WL 4732426 (S.D.N.Y.
    Sep. 28, 2018) ........................................................................................................................... 4

*Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) ......................... 8-9

*Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196 (2d Cir. 2001) ......................................................6

*Zapata v. HSBC Holdings PLC*, 17-CV-6645(NGG)(CLP), 2019 WL 4918626 (S.D.N.Y. Sept. 30, 2019) ........................................................................................................................10

**STATUTES**

18 U.S.C. § 2331 ...............................................................................................................................10

18 U.S.C. § 2339A .............................................................................................................................7

18 U.S.C. § 2339C .............................................................................................................................7

N.Y. CPLR § 302 ......................................................................................................................3, 6, 7

**OTHER AUTHORITIES**

European Union Council Decision 2014/499/CFSP (July 25, 2014) ...........................................7

Defendant Sberbank submits this reply memorandum in further support of its motion to dismiss the First Amended Complaint. Sberbank also joins in the other Defendants' submissions in reply to the Plaintiffs' Opposition.

## PRELIMINARY STATEMENT

Plaintiffs' effort to assert personal jurisdiction over Sberbank suffers from the central and fatal defect that their AC—following extensive factual research, expansive amendment and detailed allegations about ledgers purportedly showing the sources and uses of funds raised and distributed by asserted fundraisers for DPR—does not identify a single transaction in which any Sberbank correspondent bank account in New York was actually used for a contribution to a DPR fundraising entity for a purpose linked to the downing of MH17. Plaintiffs consequently have not satisfied their obligation to plead facts plausibly supporting a finding that their claims regarding MH17 "arise out of" Sberbank actions in New York.

Plaintiffs cannot remedy this defect by purporting to identify instances when fundraisers provided information about Sberbank correspondent accounts and asking the Court to infer that donors must have acted on that information and actually used the accounts to make contributions. Plaintiffs also have not remedied this defect by intermingling allegations about different entities, different times and different recipients of funds in ways calculated to obscure their inability to plead relevant Sberbank conduct in New York, or by simply claiming that they have satisfied obligations of notice pleading through unsupported allegations that Sberbank's accounts with New York banks "were a primary means" by which DPR raised funds. *See, e.g.*, Opp. at 25.

Plaintiffs equally fail to present allegations to satisfy their burden—particularly heavy under the ATA when the alleged recipients of funds have not been designated as FTOs—of

1

pleading facts that plausibly support a finding that Sberbank possessed criminal *mens rea* to support terrorist acts. They identify no authority supporting their position that a court can infer the requisite knowledge and intent because banks are obligated to conduct significant independent research on the internet into every customer for which they provide ordinary banking services to satisfy themselves that the customer is not a supporter of terrorist acts.

Plaintiffs cannot account for the inconsistency of their simultaneous assertions that the fundraisers' terroristic purposes were so obvious that Sberbank is chargeable with knowing those purposes and that DPR raised funds through these separate entities because DPR wanted to conceal that it would receive the funds being raised. *See* Opp. at 1, 12. Sberbank had no legal duty, of which a breach would demonstrate criminal *mens rea*, to determine whether websites or social media postings for alleged fundraising entities, none on any sanctions list, would reveal their support for DPR—itself an organization that the U.S. has never designated an FTO and first sanctioned only one day before MH17 was downed, and that is not alleged to have committed any acts against non-Ukrainian civilians prior to July 17, 2014.

Plaintiffs are also required to plead facts supporting a finding that Sberbank's alleged conduct constituted acts of violence or acts dangerous to human life. As several recent decisions in this Circuit have confirmed, this is a fundamental requirement of a claim for violation of the ATA, and allegations like those made by Plaintiffs that identify only the provision of ordinary banking services to multiple entities that were far from household terrorist names in July 2014 are insufficient to state a claim for committing such violent or dangerous acts by the providing bank.

**ARGUMENT**

I. **The AC Lacks Sufficient Factual Allegations To Establish Personal Jurisdiction over Sberbank**

Despite extensive allegations through two iterations of the Complaint about websites, social media postings, "crowdfunding," "telethon" solicitations and ledgers describing money allegedly raised and assistance provided to DPR by a dozen alleged fundraisers, Plaintiffs do not identify a single instance of an alleged transfer of funds to DPR or any of these fundraisers through a U.S. correspondent banking account belonging to Sberbank, much less sufficient transactions involving U.S. actions by Sberbank at times relevant to the downing of MH17 to establish that Plaintiffs' claim "arises out of" conduct by Sberbank in New York. Having unsurprisingly abandoned any claim of general jurisdiction over Sberbank, Plaintiffs cannot sustain a claim of specific personal jurisdiction under CPLR § 302(a)(1) without pleading facts supporting a finding that the claims at issue have a nexus to or "arise from the transactions" in New York. *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 323 (2016). Assertions of personal jurisdiction against a non-New York bank cannot rest solely on contentions that the defendant has opened correspondent accounts to permit dollar transactions in New York. Instead, the plaintiffs must present plausible allegations of purposeful and substantial use of the accounts in ways materially linked to the substantive wrongdoing alleged. *See id.* at 329.

After failing to identify or allege a single instance of use of a New York Sberbank correspondent account for a transaction related to the claims in this case, Plaintiffs cannot remedy their inability to establish jurisdiction over Sberbank, a foreign non-domiciliary, by merely contending that because fundraisers identified Sberbank correspondent accounts as an available mechanism for contributions, the Court can infer that donors must have used this

3

mechanism. When the allegations against Sberbank are isolated and looked at individually—despite Plaintiffs' efforts to muddy the facts by intermingling accusations involving periods after the downing of MH17, conduct having no relation to activities in the U.S. and allegations concerning different Defendants—Plaintiffs' extensive research has identified *only two* postings in which alleged fundraisers identified Sberbank correspondent accounts as an available vehicle for making contributions. Plaintiffs offer no substantive response to Sberbank's demonstration—*see* Kiernan Dec., Exs. 1 and 2—that the first of these postings expressly sought funds for the Lugansk People's Militia (which is not alleged to have anything to do with DPR), and the second identified multiple potential U.S. vehicles for contributions in addition to Sberbank and was expressly directed to "self-defense units" who were "organizing… humanitarian aid…, providing material assistance to the victims at the hands of militants [and] disseminat[ing]…reliable and objective information."[1] Kiernan Dec., Ex. 2.

Plaintiffs are equally misguided in their contention that they have satisfied the obligations of notice pleading simply by alleging, without the need for factual support, "repeated, overt use of Sberbank and VTB Bank's New York correspondent accounts to transfer funds to the DPR," and that "large sums of money…[were] routed to the DPR…through Sberbank and VTB's correspondent accounts." Opp. at 28. When personal jurisdiction is challenged, plaintiffs cannot satisfy their pleading obligation merely by conclusorily stating that the defendant has engaged in relevant activities with the required nexus to the claimed wrongdoing in New York. Rather,

---

[1] The AC's allegations about others' transactions or postings do not support imputing jurisdiction over Sberbank based on others' alleged acts. Imputing alleged activities of one defendant to another is "group pleading of the rankest kind" and is "plainly insufficient, because '[e]ach defendant's contacts with the forum…must be assessed individually.'" *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302 (RJS), 2018 WL 4732426, at *3 (S.D.N.Y. Sep. 28, 2018) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

4

Plaintiffs must allege facts plausibly supporting a finding that defendant has engaged in such activities. *See, e.g.*, *Merritt v. Airbus Ams., Inc.*, 202 F. Supp. 3d 294, 300-301 (E.D.N.Y. 2016) (conclusory statements of transaction of business in New York cannot support jurisdiction). The Court must accept specific factual allegations as true, but need not "not draw argumentative inferences in the plaintiffs' favor" to fill gaps in plaintiffs' pleading. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012) (internal quotation omitted).

Plaintiffs mischaracterize the *Licci* decisions by suggesting that mere conclusory allegations that the defendant bank engaged in transactions through New York correspondent accounts satisfy the obligations of notice pleading to establish personal jurisdiction. In *Licci*, the court found personal jurisdiction over the bank based on allegations of the bank's purposeful support of Hezbollah (an FTO) through correspondent account transfers "that numbered in the dozens and totaled several million dollars," allegations supported with an expert's declaration describing bank records that substantiated many transfers via the bank's correspondent account at the defendant bank's specific request. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171 (2013); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 332 (2012) (relying on Shaya Decl., No. 1:08-cv-07253-GBD, ECF No. 43).

Neither *Licci* nor any other case supports Plaintiffs' view that bare allegations of processing correspondent transactions involving terrorist payees *without more—i.e.*, not identifying any relevant transactions involving a bank's account in New York—is sufficient to plead personal jurisdiction. *See, e.g.*, *Société d'Assurance de l'Est SPRL v. Citigroup Inc.*, No. 10 Civ. 4754 (JGK), 2011 WL 4056306, at *7 (S.D.N.Y. Sep. 13, 2011) (allegations lacking a "direct and substantial connection between [correspondent account use] and the wrongful

5

conduct that forms the basis of [the] cause of action" are insufficient to establish jurisdiction) (internal quotes and citation omitted); *Whitaker v. Am. Telecasting, Inc.,* 261 F.3d 196, 208 (2d Cir. 2001) (requiring "averment of facts…to establish jurisdiction over the defendant") (internal quotes and citation omitted). Even if Plaintiffs' allegations could support an inference that one or more contributions to a DPR Supporter passed through Sberbank correspondent accounts in New York (and they cannot), the scale of the transactions that could be inferred would fall far short of the "dozens" of transactions amounting to "millions of dollars" alleged and supported by declaration in *Licci*. The AC's allegations regarding dollar transactions suggest only a small number of total dollars contributed—none attached in the AC to Sberbank activity in New York—and certainly not the scale of support that suggests a link to financing the missile that assertedly shot down MH17. *See, e.g.*, Opp. at 58, fn. 35 (summarizing Plaintiffs' evidence of U.S. dollar transfers to DPR Supporters, and identifying total transfers of less than $200,000 (including none involving Sberbank U.S. correspondent accounts and not limited to before July 17, 2014)); *see Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*, No. 14-cv-5216-DLC, 2015 WL 4164763, at *4 (S.D.N.Y. July 10, 2015) ("[P]rovid[ing] evidence of only one transaction which relates to the claim at hand" will not meet the nexus requirement under CPLR § 302(a)(1)) (citing *Licci,* 20 N.Y.3d at 338).

Because Plaintiffs present no factual allegations identifying a transfer linked to the claimed wrongdoing involving Sberbank in New York, and no plausible basis for inferring that such a transfer took place, their claim of personal jurisdiction over Sberbank should be rejected.[2]

---

[2] Plaintiffs have not pleaded sufficient facts to justify the exceptional relief of jurisdictional discovery. A court is "within its discretion" to deny jurisdictional discovery when "the plaintiff ha[s] not made out a prima facie case for jurisdiction," *Best Van Lines, Inc. v. Walker*, 490 F.3d

6

## II. The AC Does Not Sufficiently Plead Sberbank's Knowledge or Intent

Plaintiffs' submission disregards the degree to which the authorities on which it relies involve disputes over alleged conduct in support of FTOs, as to which the ATA's statutory scheme is simply different from the law applicable here—where neither DPR nor any alleged fundraiser has ever been designated an FTO. As explained in Sberbank's opening brief, these differences mean that Plaintiffs (i) cannot rely on secondary "aiding and abetting" liability theories, but must establish direct criminal conduct by Sberbank; (ii) must establish that Sberbank knew or intended that its actions would support acts of terrorism, not just a terrorist organization; and (iii) must establish Sberbank's knowledge and intent even though the alleged recipients of funds were not named on U.S. government (or other government) lists where terrorists can be identified.[3] Plaintiffs' pleadings do not satisfy these requirements.

### A. Sberbank Lacks the Requisite *Mens Rea* To Support Liability

Under the predicate statutes of 18 U.S.C. §§ 2339A and 2339C underlying Plaintiffs' ATA claim, the AC must plead facts plausibly supporting a finding of Sberbank's criminal *mens rea*. While criminal knowledge or intent can be established by proof of reckless indifference,

---

239, 255 (2d Cir. 2007). Plaintiffs' allegations must reveal more than mere "speculations or hopes" of jurisdiction before jurisdictional discovery is granted. *Rosenberg v. PK Graphics*, 03 Civ. 6655 (NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004). After extensive research generating substantial allegations, *see* Opp. at 30, Plaintiffs have not earned jurisdictional discovery given their "threshold failure [] to establish any basis for finding [defendant] committed any tortious activity in New York." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975) (no jurisdictional discovery required because "[b]land assertion of conspiracy or agency is insufficient to establish jurisdiction" for purposes of CPLR § 302(a)(2)).

[3] None of the DPR Fundraiser entities is alleged to have been on any sanctions list in any country at any time. As for individuals, the EU's sanctioning of Pavel Gubarev and Ekaterina Gubareva postdated July 17, 2014, and the first U.S. sanctions of DPR-related individuals (none alleged to be a DPR Fundraiser) were not published in the Federal Register until August 7, 2014, *see* ECF No. 115 at 5; Council Decision 2014/499/CFSP (July 25, 2014), eur-lex.europa.eu/legal-content/EN/TXT/?qid=1571253595634&uri=CELEX:02014D0499-20140725.

Plaintiffs do not dispute that to plead reckless indifference they must present facts plausibly supporting a finding that Sberbank "kn[e]w of the substantial probability" that transactions it was facilitating would be used to support terrorist acts and "d[id] not care." Opp. at 45 (quoting *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 693 (7th Cir. 2008)).

Plaintiffs do not satisfy this standard. Their claim of *mens rea* relies on imputing to Sberbank knowledge of DPR Supporters' alleged purposes to fund the terrorist acts of DPR itself—which they allege Sberbank could have discovered through internet searches—in ways no legal authority has ever embraced. Plaintiffs do not even try to rebut Sberbank's opening brief demonstrating that the USA PATRIOT Act does not impose the duty of inquiry Plaintiffs assert it imposes. Instead, Plaintiffs rely on two decisions pre-*Iqbal* that suggest a duty of inquiry far narrower than the broad investigatory obligations Plaintiffs seek to impose here. *See Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009); *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006). Both cases involved alleged support for a well-recognized FTO, Hamas, and entities long linked to the organization and themselves identified on multiple formal lists of terrorists. While both cases talk about expectations regarding what banks should know, *Goldberg* made clear that its reference to the bank's responsibility for "public knowledge" corresponded with the obligation to check lists of known terrorists, 660 F. Supp. 2d at 428-29, and *Weiss*, 453 F. Supp. 2d at 619, equally stressed that plaintiffs rested their claims of imputed knowledge on the Financial Action Task Force ("FATF") standards, a set of guidelines that do

8

not have the force of law,[4] calling on banks to check if recipients of funds are on recognized terrorist lists and to scrutinize previously identified "high risk customers."

Neither case supports the duty Plaintiffs seek to impose on Sberbank or excuses Plaintiffs from their obligation to present plausible allegations of Sberbank's *mens rea*. Plaintiffs have identified no red flags that called for an intensive internet investigation of any of the alleged recipients of funds through Sberbank. They take no account of the incongruousness of their suggestion that under the FATF standards Sberbank could have discovered the red flags that would justify further investigation if only it had undertaken the investigation it was not required to undertake unless red flags under the FATF standards were already present.[5]

Even if Plaintiffs could establish that Sberbank fell short on some legal duty of investigation, that would not by itself present a basis for a finding of Sberbank's criminal level *mens rea* to support terrorist acts by DPR. *See Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019) (failure to perform required due diligence or adhere to sanctions laws, or even knowing violations of banking regulations "do not, on their own, equate to knowingly playing a role in terrorist activities."). As *Kaplan* reconfirmed, even detailed allegations of "notorious public knowledge as evidenced by news articles, reports and Hizbollah's own media sources" are insufficient to plead a bank knew of its customers' terrorist acts absent an allegation the bank "read or was aware of such sources." *Id.* at 529, 535.

---

[4] *See* FATF, "Who We Are," https://www.fatf-gafi.org/about ("FATF is [] a 'policy-making body' which works to generate the necessary political will to bring about national legislative and regulatory reforms").

[5] The AC also does not credibly allege the "red flags" highlighted in *Hussein v. Dahabshiil Transfer Servs.*, 230 F. Supp. 3d 167 (S.D.N.Y. 2017) as Plaintiffs urge, Opp. at 54 n.33, since the AC alleges transfers to DPR Supporters, none of which are alleged to have received Sberbank services when under U.S. sanction and prior to July 17, 2014. Moreover, *Hussein* once again involved transfers to sanctioned individuals or entities.

### B. Sberbank's Alleged Banking Services to DPR Supporters Do Not Meet the Definition of International Terrorism

Sberbank's actions are not properly alleged to be violent or dangerous to human life within the meaning of 18 U.S.C. § 2331(1)(A), because the AC alleges only that Sberbank provided DPR Supporters routine financial services such as bank cards and wire transfers into customer accounts. *See* Opp. at 39. Sberbank's "*own* actions" must meet the definition of international terrorism. *Kaplan*, 405 F. Supp. 3d at 532; *Zapata v. HSBC Holdings PLC*, 17-CV-6645(NGG)(CLP), 2019 WL 4918626, at *9 (S.D.N.Y. Sept. 30, 2019) (a complaint alleging ATA violations by providing banking services to a non-FTO "must plausibly allege not that the attacks…were acts of international terrorism, but that [bank's activities] were").[6] As in *Freeman v. HSBC Holdings PLC*, 1:14-cv-06601-PKC-CLP, 2019 WL 4452364, at *15 (E.D.N.Y. Sept. 16, 2019), "[g]iven the many legitimate activities that these [intermediate, non-FTO] entities engage in, the mere act of providing financial services to them cannot be violent or dangerous," particularly as the AC does not plead facts supporting a finding Sberbank knew how its customer's accounts would be used, but is alleged to have acted with commercial motives. *See* AC ¶¶ 45-47*;* Kiernan Decl. Ex. 2 ("delivery of humanitarian aid" as a purpose of fundraising).

### CONCLUSION

For the foregoing reasons, the Court should dismiss the AC as to Sberbank.

---

[6] The cases Plaintiffs cite for their contrary position all involve banks' provision of services to recognized FTOs, under predicate statutes and standards unavailable here. *See, e.g.*, *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 45 (E.D.N.Y. 2019) (where bank had knowledge it was working for Hamas (an FTO) and administered a payment scheme for families of Hamas's suicide bombers, § 2331(1)(A) was satisfied by the allegations of knowingly "incentivizing" acts of violence); *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019) (bank knowingly funding Hezbollah (an FTO) met § 2331(1) by "enhanc[ing] [Hezbollah's] ability to commit terrorist attacks").

Dated: New York, New York
January 21, 2020

                            Respectfully submitted,

                            DEBEVOISE & PLIMPTON LLP

                            By: */s/ John S. Kiernan*
                                  John S. Kiernan
                                  William H. Taft V
                                  Román J. Rodriguez
                                  jskiernan@debevoise.com
                                  whtaft@debevoise.com
                                  rjrodriguez@debevoise.com

                                  919 Third Avenue
                                  New York, New York 10022
                                  (212) 909-6000

                                  *Counsel for Sberbank of Russia*