UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOMAS SCHANSMAN, individually, as surviving Parent of QUINN LUCAS SCHANSMAN, and as legal guardian on behalf of X.S., a minor, and

CATHARINA TEUNISSEN, individually, and as surviving Parent and personal representative of the ESTATE OF QUINN LUCAS SCHANSMAN, and

NERISSA SCHANSMAN, individually, and as surviving Sibling of QUINN LUCAS SCHANSMAN,

      Plaintiffs,

  -against-

SBERBANK OF RUSSIA PJSC, THE WESTERN UNION COMPANY, WESTERN UNION FINANCIAL SERVICES, INC., MONEYGRAM INTERNATIONAL, INC., MONEYGRAM PAYMENT SYSTEMS, INC., and VTB BANK PJSC,

      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 1:19-CV-02985 (ALC) (GWG)

Hon. Andrew L. Carter, Jr.

**ORAL ARGUMENT REQUESTED**

# REPLY MEMORANDUM IN SUPPORT OF MOTION BY SBERBANK OF RUSSIA TO DISMISS THE SECOND AMENDED COMPLAINT

John S. Kiernan
William H. Taft V
Román J. Rodriguez
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

*Counsel for Defendant Sberbank of Russia*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.  The SAC Lacks Sufficient Factual Allegations to Establish Personal Jurisdiction over Sberbank ........................................................................................................................... 3

   A.  The Insubstantial Scale of the Identified Transfers through U.S. Accounts .......... 4

   B.  The Absence of Basis for Inferring Additional New York Transfers ..................... 6

II. The SAC Does Not Sufficiently Plead Sberbank's Knowledge or Intent ......................... 7

   A.  The SAC Does Not Plead the Requisite *Mens Rea* To Support Liability ............... 8

   B.  Sberbank's Alleged Banking Services to DPR Supporters Do Not Meet the Definition of International Terrorism ................................................................... 10

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES**

*Averbach v. Cairo Amman Bank*, No. 19-cv-0004(GHW)(KHP), 2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) .......... 4-5

*Averbach v. Cairo Amman Bank*, No. 19-cv-0004(GHW)(KHP), 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) .......... 4-5

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) .......... 7

*Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*, No. 14-cv-5216-DLC, 2015 WL 4164763 (S.D.N.Y. July 10, 2015) .......... 5

*Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67 (E.D.N.Y. 2019) .......... 10

*Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, No. 19-cv-5394(BMC), 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020) .......... 8-9

*Henkin v. Kuveyt Turk Katilim Bankasi, A.S.*, No. 19-cv-5394(BMC), 2020 WL 6700121 (Nov. 13, 2020) .......... 9

*Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238 (2002) .......... 4

*Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019) .......... 10

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .......... 6

*Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87 (2d Cir. 1975) .......... 7

*Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261 (E.D.N.Y. 2019) .......... 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50 (2d Cir. 2012) .......... 6-7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327 (2012) .......... 4, 7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013) .......... 7

*Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019) .......... 10

*Rosenberg v. PK Graphics*, No. 03-cv-6655(NRB), 2004 WL 1057621 (S.D.N.Y. May 10, 2004) .......... 7

*Rushaid v. Pictet & Cie*, 28 N.Y.3d 316 (2016) .......... 3

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) .......... 7

*Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302 (RJS), 2018 WL 4732426 (S.D.N.Y. Sep. 28, 2018) ..............................................................................................................6

*Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18-cv-1876(PAE), 2020 WL 4586729 (S.D.N.Y. Aug. 10, 2020) ........................................................................5

*Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342 (S.D.N.Y. 2019)......................................10

**STATUTES**

18 U.S.C. § 2331................................................................................................................10

18 U.S.C. § 2333..................................................................................................................8

18 U.S.C. § 2339A................................................................................................................8

18 U.S.C. § 2339C................................................................................................................8

N.Y. CPLR § 302..................................................................................................................3

**OTHER AUTHORITY**

79 Fed. Reg. 46,302 (Aug. 7, 2014) ....................................................................................2

Defendant Sberbank submits this reply memorandum in further support of its motion to dismiss the Second Amended Complaint (the "SAC"). Sberbank also joins in the other Defendants' submissions in reply to the Plaintiffs' Opposition.

## PRELIMINARY STATEMENT

Plaintiffs' effort to plead New York personal jurisdiction over Sberbank rests on proposed inferences and extrapolations not consistent with pleading standards or the demonstrated facts. From diffuse allegations about an asserted global "crowd-funding" effort to raise funds for DPR, Plaintiffs speculate that this effort must have led to sufficient use of Sberbank's New York correspondent accounts to support a finding of the required "substantial nexus" between Sberbank's purposeful material use of those accounts and the attack that caused Quinn Schansman's death. That implausible inference does not support jurisdiction.

Plaintiffs' attempt to test their speculation failed when they obtained authorization from Judge Gorenstein to pursue discovery from two U.S. banks about any transfers through Sberbank accounts to any of the large number of alleged DPR Supporters named in the SAC before MH17 was downed. That discovery revealed only two transfers amounting to only $300, which were specified to be for "humanitarian" purposes, to a single individual alleged to be a DPR Supporter but not on any terrorist list and not alleged to have had any role in the downing of MH17. This trivial degree of use of Sberbank accounts in New York confirms the absence of sufficient pleaded nexus between Sberbank activities in New York and the death of Quinn Schansman to support personal jurisdiction over Sberbank in this case.

Plaintiffs' submission similarly mischaracterizes their obligation to plead facts plausibly supporting a conclusion that Sberbank possessed criminal *mens rea* to support terrorist acts and directly engaged in "acts of violence" or "acts dangerous to human life." Relying on decisions involving support for organizations like Hamas, Hezbollah and Al Qaeda that the United States

1

has formally designated as Foreign Terrorist Organizations ("FTOs"), Plaintiffs repeatedly disregard the fundamental statutory differences between claims based on support of FTOs and claims based on support of individuals or entities not so listed. As explained in Sberbank's opening brief, the ATA's statutory regime and the related JASTA statute establish causes of action for aiding and abetting terrorism only when the ultimate recipient of the alleged support has been designated by the U.S. as an FTO. This requirement reflects not only a Congressional determination to impose broader responsibility for supporting terrorism by supporting recognized terrorist organizations, but also pragmatic recognition that institutions like banks can be charged more readily with responsibility for preventing transactions with entities or individuals named on formal lists that compliance personnel can monitor than with responsibility for preventing routine transfers to recipients who otherwise present no obvious red flags.

Here, the Court should decline Plaintiffs' invitation to disregard the status of the alleged recipients of routine transfers through Sberbank accounts. Not one of those entities or individuals alleged to be a supporter of DPR was ever designated an FTO or ever appeared on any U.S. formal published list of terrorists on which a bank compliance officer could find them before MH17 was shot down, and even DPR itself has never been identified as an FTO and was placed on a lesser sanctions list as an SDN only one day before MH17 was downed.[1]

---

[1] Despite Plaintiffs' attempt to muddy the record of governmental actions, *see* Opp. at 14-15, 55 n.42, the SAC does not allege any actionable governmental information available to Sberbank prior to downing MH17. None of the entities alleged to be DPR Supporters in the SAC has ever been named on a U.S. sanctions list. As for individuals named in the SAC, the EU sanctioned Pavel Gubarev and Ekaterina Gubareva only after July 17, 2014, and while the U.S. identified three alleged DPR leaders, Denis Pushilin, Andrey Pugin and Igor Girkin (none of whom the SAC alleges received transfers directly from Sberbank) in a press release dated June 20, 2014, these names and associated non-FTO sanctions were not formally listed in the Federal Register (*i.e.*, officially designated in ways compliance personnel could find in a list check) until August 7, 2014, after MH17 was downed. *See* Designation of Individuals and Entities Pursuant to Executive Order 13660 or Executive Order 13661, 79 Fed. Reg. 46,302 (Aug. 7, 2014). DPR was named a Specially Designated National ("SDN") on July 16, 2014, one day before the MH17 crash, and has never been designated an FTO.

U.S. sanctions against Sberbank itself were not imposed until Sept. 12, 2014, without reference to DPR, but generally to "impose additional significant costs on the Russian Government" for its Ukraine policy. *See* Press Release, U.S. Dept. of the Treasury, Announcement of Expanded Treasury Sanctions within the Russian Financial

Plaintiffs' extensive briefing does not identify a single authority supporting their position that a court can infer the requisite knowledge and intent on Sberbank's part when no alleged DPR Supporter (and not even DPR as ultimate alleged beneficiary) was a designated FTO, on the basis that banks are obligated to conduct significant independent research on the internet into every customer for whom they provide routine banking services, sufficient to affirmatively satisfy themselves that the customer is not supporting terrorist acts. Plaintiffs also do not and cannot distinguish the recent decisions in this Circuit confirming that a plaintiff does not adequately allege that a bank is directly liable for committing acts of violence or acts dangerous to human life—as a complaint must allege for defendants charged under the ATA because they are not alleged to have supported an FTO—when the bank is only alleged to have provided ordinary banking services to non-FTO entities or individuals.

## **ARGUMENT**

### **I. The SAC Lacks Sufficient Factual Allegations to Establish Personal Jurisdiction over Sberbank**

Plaintiffs have abandoned any claim of general jurisdiction over Sberbank. They cannot sustain a claim of specific personal jurisdiction under CPLR § 302(a)(1) without pleading facts showing a course of Sberbank's engaging in transactions in New York and an "articulable nexus" or "substantial relationship" between those transactions and the SAC's claims of wrongdoing such that the claims "arise from" those transactions. *Rushaid v. Pictet & Cie*, 28 N.Y.3d 316, 329 (2016). Plaintiffs' two core arguments—that the identification through discovery of two transfers through Sberbank U.S. correspondent accounts amounting to $300 is sufficient to establish the required "substantial nexus" such that Plaintiffs' claims "arise out of" Sberbank

---

Services, Energy and Defense or Related Materiel Sectors (Sept. 12, 2014), https://www.treasury.gov/press-center/press-releases/pages/jl2629.aspx. As the Opposition acknowledges, while the SAC alleges the Ukrainian government made "allegations" and conducted an "investigation" (which Sberbank cooperated in), the SAC makes no allegation of findings by Ukrainian government authorities concerning DPR or DPR Supporters prior to July 17, 2014. *See* Opp. at 14-15; ECF. No. 166 at 20.

3

conduct in New York and that if these transactions are not sufficient, the SAC's crowdfunding allegations support an inference that many more and larger such transfers took place—are inconsistent with logic and established law.

### A. The Insubstantial Scale of the Identified Transfers through U.S. Accounts

Courts have recognized that whether a complaint adequately alleges personal jurisdiction requires attention to the "quality" of the alleged connections between the defendant's transactions of business in New York and the claims, and reject jurisdiction based on transactions that are "completely unmoored" from the ultimate asserted wrongdoing. *Licci v. Lebanese Canadian Bank, SAL,* 20 N.Y.3d 327, 338-39 (2012). Here, the SAC does nothing to establish the required "substantial relationship" between the transfer of $300 (stated to be for "humanitarian purposes") to an individual who assertedly supported the DPR and the SAC's allegations, SAC at ¶ 79, that DPR took "control over a missile defense army unit equipped with Buk missile defense systems" previously in possession of a national army and expended the costs associated with training, maintaining, deploying and firing a missile to shoot down MH17.

Plaintiffs unsurprisingly cite no decision finding transactions of this small size and number sufficient to confer jurisdiction under New York's long arm statute. While Plaintiffs cite *Indosuez Int'l Fin. B.V. v. Nat'l Reserve Bank*, 98 N.Y.2d 238 (2002), as an instance where "less than a dozen transactions" were found sufficient to confer jurisdiction, Opp. at 28 n.17, the court in that case expressly found jurisdiction because the defendant bank had itself entered into 14 related currency contracts comprising a course of dealing with a single entity (not just passively processing funds transfers) as to which six contracts for individual transactions contained a New York forum selection clause, others "designate[d] New York as the place of performance," and still others helped establish a clear arrangement that all transactions in question were to be performed in New York. *Id.* at 246-47. Plaintiffs further rely on *Averbach v. Cairo Amman*

4

*Bank*, No. 19-cv-0004(GHW)(KHP), 2020 WL 486860, at *7 (S.D.N.Y. Jan. 21, 2020), *R&R adopted* 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020), but the court in that case predicated jurisdiction on identification of "a total of twenty-three fund transfers" over two years amounting to over $555,881, after characterizing this amount (almost 2,000 times greater than what Plaintiffs have identified here) as "small" and expressing reservations about whether these transactions were sufficient relative to the larger amounts and longer time periods in *Licci*. *See Averbach*, 2020 WL 486860, at *3, *6, *15 & Appendix D.

These cases finding jurisdiction all rely on more and larger transactions in New York and/or stronger links between the transactions and the issues in dispute. Meanwhile, Plaintiffs cannot distinguish the cases cited by Sberbank that reject personal jurisdiction because the small size and importance of the transactions prevents substantive connection between them and the alleged wrong. While Plaintiffs, Opp. at 31, claim the single transaction in *Cmty. Fin. Grp. Inc. v. Stanbic Bank Ltd.*, No. 14-cv-5216(DLC), 2015 WL 4164763 (S.D.N.Y. July 10, 2015) was insufficient only because the "account was used only once by happenstance," the court did not find the use of the account was a coincidence as Plaintiffs say but instead concluded that the single transaction by itself was simply insufficient to show "an established course of dealing." *Id.* at *4. Similarly, in *Vasquez v. Hong Kong & Shanghai Banking Corp., Ltd.*, No. 18-cv-1876(PAE), 2020 WL 4586729, at *16 (S.D.N.Y. Aug. 10, 2020), the court found three transactions insufficient in the context of "limited use of the correspondent accounts in connection with plaintiffs' claims; the passive role of [the bank], which did nothing to encourage use of that account [for plaintiffs]; and the lack of any other New York contacts on [the bank]'s part." These cases (and the others cited in Sberbank's brief at 12-13) support the conclusion that

5

the two identified transfers are insufficient to support a finding of personal jurisdiction over Plaintiffs' claims that Sberbank is responsible for Quinn Schansman's death.

### B.     The Absence of Basis for Inferring Additional New York Transfers

Plaintiffs cannot remedy their inability to establish jurisdiction over Sberbank on the basis of these two transfers by asking the Court to infer that there must have been additional New York transfers given the DPR's asserted crowd-funding efforts.  The SAC identifies only two instances of indications on alleged DPR Supporters' social media accounts that contributions can be made through Sberbank correspondent accounts in New York as a mechanism for contributing.[2]  Even as to these, Plaintiffs cannot dispute Sberbank's demonstration that the first posting sought funds only for the Lugansk People's Militia (not alleged to have anything to do with DPR), and the second identified multiple potential U.S. vehicles for contributions in addition to Sberbank and mentioned only Sberbank's Bank of New York Mellon account (as to which Plaintiffs have confirmed through discovery the absence of any actual transfers to the entity mentioned in the posting).  *See* Kiernan Dec., Exs 1, 2.[3]

While Plaintiffs cite *Licci* as endorsing the proposition that they need only allege conclusorily that other such transfers were made, the Second Circuit and the New York Court of Appeals held to the contrary in that case.  Those courts confirmed that their obligations to accept specific factual allegations as true do not include an obligation to "draw argumentative inferences in the plaintiffs' favor" to fill gaps in plaintiffs' pleading, *Licci ex rel. Licci v.*

---

[2]     The SAC's allegations about others' transactions or postings do not support imputing jurisdiction over Sberbank based on others' alleged acts.  *See, e.g.*, *Tera Grp., Inc. v. Citigroup, Inc.*, No. 17-cv-4302(RJS), 2018 WL 4732426, at *3 (S.D.N.Y. Sep. 28, 2018) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984)).

[3]     Plaintiffs repeatedly characterize the discovery they have obtained from two of Sberbank's correspondent banks as "partial and incomplete," Opp. at 25 n.14, but the record makes clear the banks provided full records of all transfers through Sberbank accounts in the U.S. to any of the individuals or entities named in the SAC before the downing of MH17, and Plaintiffs have not complained to Judge Gorenstein (who granted their request to subpoena banks of Plaintiffs' choosing) about the adequacy or comprehensiveness of the productions.  Plaintiffs present no reason to extrapolate an assumption of other transfers from these immaterial numbers.

*Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012). They stressed that their finding of jurisdiction was based on an expert declaration describing correspondent account transfers in support of Hezbollah, at the defendant bank's specific request, "that numbered in the dozens and totaled several million dollars." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 171 (2nd Cir. 2013); *Licci,* 20 N.Y.3d 327, 332 (relying on Shaya Decl. No. 08-cv-07253-GBD, ECF No. 43). "Jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 616 (S.D.N.Y. 2012) (internal citation omitted).

Having presented no basis for an inference of substantial nexus between transfers of funds through Sberbank accounts in New York and the death of Quinn Schansman even after substantial discovery and two amendments to the Complaint, Plaintiffs have not presented sufficient facts to justify the exceptional relief of further jurisdictional discovery.[4] Plaintiffs' request for an inference that once "afforded the opportunity to commence discovery…it is reasonable to conclude that many more…transfers will be discovered," Opp. at 30, is not only purely speculative but also strongly negated by the results of the discovery already taken. The inference to be drawn from these facts is that the SAC presents no basis to assume more discovery will reveal a number and scale of transactions sufficient to support jurisdiction.

## II. The SAC Does Not Sufficiently Plead Sberbank's Knowledge or Intent

Plaintiffs' submission overwhelmingly seeks to ground its view of required pleading obligations on authorities addressing alleged assistance to FTOs, disregarding that the ATA

---

[4] A court is "within its discretion" to deny jurisdictional discovery when "the plaintiff ha[s] not made out a prima facie case for jurisdiction," *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007). Plaintiffs' allegations must reveal more than mere "speculations or hopes" of jurisdiction before jurisdictional discovery is granted. *Rosenberg v. PK Graphics*, No. 03-cv-6655(NRB), 2004 WL 1057621, at *1 (S.D.N.Y. May 10, 2004). Plaintiffs have not earned jurisdictional discovery given their "threshold failure [] to establish any basis for finding [defendant] committed any tortious activity in New York." *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975).

7

provides broader grounds for liability for supporting FTOs than it does here, where neither DPR nor any alleged fundraiser has ever been designated an FTO. As explained in Sberbank's opening brief, these differences mean that Plaintiffs (i) cannot rely on secondary "aiding and abetting" liability theories, but must establish direct criminal conduct by Sberbank; (ii) must establish that Sberbank knew or intended that its actions would support acts of terrorism, not just a terrorist organization; and (iii) must establish Sberbank's knowledge and intent (which cannot be based on assertions that Sberbank could have learned relevant information through an internet search) that its conduct would support terrorist acts, even though the alleged recipients of funds were not named on government lists of terrorists and DPR had never taken any action remotely like the downing of MH17 before July 2014. Plaintiffs do not meet these requirements.

### A. The SAC Does Not Plead the Requisite *Mens Rea* To Support Liability

The Opposition conflates the standards of JASTA, a statute providing for secondary liability for aiding and abetting FTOs, with the ATA standard for direct liability for supporting acts of international terrorism. Under the predicate statutes of 18 U.S.C. §§ 2339A and 2339C, the SAC must plead facts plausibly supporting a finding of Sberbank's criminal *mens rea*. No legal authority supports Plaintiffs' position that they have adequately pleaded *mens rea* by charging Sberbank with knowledge of DPR Supporters' connection to DPR and alleged purposes to fund terrorist acts (even though DPR had never previously committed such acts) to the extent Sberbank could have discovered those connections and purposes through internet searches.

To obscure this deficiency, Plaintiffs ask the Court (Opp. at 50-51) to adopt a decision expressly embracing a minority position contrary to other recent decisions evaluating the knowledge element under JASTA's aiding and abetting rubric, 18 U.S.C. § 2333(d)(2), which itself embraces conduct not reachable in an ATA direct liability case like this one. *Henkin v.*

8

*Kuveyt Turk Katilim Bankasi, A.S.*, No. 19-cv-5394(BMC), 2020 WL 6143654 (E.D.N.Y. Oct. 20, 2020), *mot. for interlocutory appeal granted*, 2020 WL 6700121 (Nov. 13, 2020). The *Henkin* court acknowledged that in JASTA aiding and abetting cases, the "trend" has been for courts to hold that the existence of public information (like websites and social media) about the alleged ultimate beneficiary of the funds and the connection between alleged supporters and that beneficiary is insufficient to permit inferring a defendant's criminal knowledge of the purposes of their customers, much less those of alleged ultimate wrongdoers, absent plausible allegations that the defendant "read or was actually aware of" that information. *Id.* at *8; *see also* ECF No. 166 at 19-20. While the *Henkin* court rejected this view expressed by multiple other courts in this Circuit (while certifying its decision for immediate appeal), the court predicated its minority views about the scope of imputable knowledge on the notoriousness of the ultimate beneficiary (Hamas) and on an analysis of the elements of aiding and abetting liability, which cannot apply where, as here, plaintiffs attempt to claim direct wrongdoing by Sberbank.

Plaintiffs have cited no case finding adequate pleading of a bank's knowledge of intended terrorist acts based on information that could allegedly be learned about recipients of routine transfers through independent research apart from consulting formal government lists, when neither the immediate or alleged ultimate recipient of funds has been designated an FTO.

Nor does the SAC plausibly allege other red flags that would call for an intensive investigation of any of the alleged recipients of funds through Sberbank. Plaintiffs disregard the incongruousness of their suggestion that, under the USA PATRIOT Act or FATF standards, Sberbank could have discovered red flags justifying further investigation if it had undertaken the investigation *it was not required to undertake* in the absence of those red flags. Even if Plaintiffs could establish that Sberbank did not meet some legal duty to investigate, that alone would not

9

support finding Sberbank's criminal-level *mens rea* to support terrorist acts by DPR. *See Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 535 (S.D.N.Y. 2019) (failure to perform required due diligence or adhere to sanctions laws, or even knowing violations of banking regulations "do not, on their own, equate to knowingly playing a role in terrorist activities.").

### B. Sberbank's Alleged Banking Services to DPR Supporters Do Not Meet the Definition of International Terrorism

The SAC does not allege that Sberbank's actions were violent or dangerous to human life within the meaning of 18 U.S.C. § 2331(1)(A), relying instead on contentions of violence by the ultimate recipient. These are inapplicable outside of aiding and abetting claims, which may be sustained only if the recipient is an FTO. *See* Opp. at 40-42. Here, Sberbank's "*own* actions" must meet the definition of international terrorism. *Kaplan*, 405 F. Supp. 3d at 532; *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 355 (S.D.N.Y. 2019) (a complaint alleging ATA violations by providing banking services to a non-FTO "must plausibly allege not that the attacks…were acts of international terrorism, but that [bank's activities] were").[5] Moreover, as in *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 91 (E.D.N.Y. 2019), "[g]iven the many legitimate activities that these [intermediate, non-FTO] entities engage in, the mere act of providing financial services to them cannot be violent or dangerous," particularly as the SAC does not plead facts supporting a finding Sberbank knew how its customer's accounts would be used and alleges instead (*see* ¶¶ 45-47) that it acted with commercial motives.

### CONCLUSION

For the foregoing reasons, the Court should dismiss the SAC as to Sberbank.

---

[5] Cases Plaintiffs cite for their contrary position all involve banks' provision of services to recognized FTOs under JASTA. *See, e.g.*, *Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33, 45 (E.D.N.Y. 2019) (§ 2331(1)(A) is satisfied by allegations of knowingly "incentivizing" acts of violence where bank knew it was working for Hamas and administered a payment scheme for families of suicide bombers); *Lelchook v. Islamic Republic of Iran*, 393 F. Supp. 3d 261, 266 (E.D.N.Y. 2019) (bank knowingly funding Hezbollah (an FTO) met § 2331(1) by "enhanc[ing] [Hezbollah's] ability to commit terrorist attacks").

Dated: New York, New York
December 14, 2020

                                                  Respectfully submitted,

                                                  DEBEVOISE & PLIMPTON LLP

By: */s/ John S. Kiernan*
        John S. Kiernan
        William H. Taft V
        Román J. Rodriguez
        jskiernan@debevoise.com
        whtaft@debevoise.com
        rjrodriguez@debevoise.com

        919 Third Avenue
        New York, New York 10022
        (212) 909-6000

        *Counsel for Sberbank of Russia*