UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS SCHANSMAN, individually, as surviving Parent of QUINN LUCAS SCHANSMAN, and as legal guardian on behalf of X.S., a minor, and<br><br>CATHARINA TEUNISSEN, individually, and as surviving Parent and personal representative of the Estate of QUINN LUCAS SCHANSMAN, and<br><br>NERISSA SCHANSMAN, individually, and as surviving Sibling of QUINN LUCAS SCHANSMAN,<br><br>     Plaintiffs,<br><br>    -against-<br><br>SBERBANK OF RUSSIA, THE WESTERN UNION COMPANY, WESTERN UNION FINANCIAL SERVICES, INC., MONEYGRAM INTERNATIONAL, INC., MONEYGRAM PAYMENT SYSTEMS, INC., and VTB BANK PJSC<br><br>     Defendants. | No. 1:19-cv-02985-ALC-GWG |

**JOINT PROPOSED DISCOVERY PLAN AND SCHEDULE**

In accordance with Rules 16 and 26(f) of the Federal Rules of Civil Procedure ("Rules") and the Court's Individual Practices, counsel for the parties (collectively, "Parties") submit the following proposed discovery plan and schedule for the Court's consideration:

**I. Summary of Allegations**

 **A. Plaintiffs**

Plaintiffs allege that Quinn Lucas Schansman ("Quinn"), an 18 year-old United States citizen, was killed while traveling aboard Malaysia Airlines Flight 17 ("MH17") on July 17, 2014

1

when a terrorist group, the Donetsk People's Republic ("DPR"), shot down his airplane as it traveled over territory in eastern Ukraine that the DPR acquired and controlled through brute force, intimidation, and violent acts. 298 passengers, including 80 children, were murdered that day, including one young American: Quinn.

Plaintiffs further allege that Defendants are large Russian banks and U.S.-based money transfer companies that provided ongoing financial support to the DPR from supporters around the world, including the United States, for the explicit purpose of purchasing lethal equipment that was necessary (1) for the DPR to acquire and maintain control over the territory from which it launched the missile that took down the passenger plane, and (2) to carry out its terrorist activities. Quinn's family brings this lawsuit to hold Defendants accountable for their participation in Quinn's murder under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 *et seq.*

B.   **Defendants**

Defendants note that they are separate and unaffiliated financial services companies (with the exception of the two affiliated MoneyGram defendants, and the two affiliated Western Union defendants) or foreign banks, and that they are not alleged to have acted collectively or in concert with one another. However, in the interests of judicial economy, Defendants have endeavored to state their positions jointly where possible for purposes of this filing.

Defendants categorically deny any support for terrorism and any involvement in or responsibility for Quinn Schansman's death or the destruction of MH17. Defendants will otherwise respond to the Plaintiffs' allegations in their respective Answers, which are due on November 15, 2021.

## II.     Scope of Discovery

The Parties agree that the scope of discovery includes all information relevant to the Parties' respective claims and defenses.

The Parties agree that discovery in this matter does not need to be conducted in phases or limited to or focused on particular issues, subject to their positions stated below.

### A.     Defendants

With respect to discovery, Defendants intend to ask Plaintiffs (and, if necessary, seek the Court's assistance) to expedite the discovery of facts bearing on threshold issues, such as personal jurisdiction over the foreign defendants, and whether and to what extent each Defendant processed U.S. Dollar transactions received by the alleged DPR fundraisers identified in the Second Amended Complaint, in anticipation of early motions for summary judgment under Fed. R. Civ. P. 56.  Defendants do not seek to delay discovery on any issue, but expedited discovery on transactions and personal jurisdiction is nevertheless warranted.

As to personal jurisdiction, the Court's denial of the foreign Defendants' motion to dismiss for lack of personal jurisdiction was based on Plaintiffs' allegations that "fundraisers for the DPR advertised VTB Bank's and Sberbank's correspondent accounts in New York" and "that the DPR has raised millions of dollars through fundraising, some of which were transferred using VTB Bank and Sberbank's services." ECF No. 185 at 9, 10.  Accepting those allegations as true "at this juncture of the case," and construing them in the light most favorable to Plaintiffs, the Court inferred that the "advertised" methods of making transfers were actually used, and further inferred they were used to an extent sufficient to create a substantial connection between the foreign Defendants' suit-related conduct and New York. *Id*. at 10.  Plaintiffs continue to bear the burden of proving that a substantial connection actually exists.

### B. Plaintiffs

The Plaintiffs note that the Parties have agreed on a complete schedule for discovery in the case (below), that the deadlines contemplated in the proposed schedule encompass discovery on all issues relevant to the Parties' respective claims and defenses, and that it would introduce significant unfair delay and prejudice to prioritize discovery into Defendants' defenses over other issues in the case. In fact, prioritizing personal jurisdiction is particularly inappropriate after the Court found personal jurisdiction based on factually supported allegations and evidence. ECF No. 185 at 9, 10 (concluding "that Plaintiffs have made a prima facie showing that jurisdiction exists and that Defendants VTB Bank and Sberbank provided financial services to the DPR using New York's banking system," and that "the Court may therefore exercise personal jurisdiction over VTB Bank and Sberbank for Plaintiffs' claims"). In reaching its conclusion, the Court considered "declarations and exhibits" submitted by the parties, *see, e.g.,* ECF No. 170 (declaration from VTB Bank executive opposing personal jurisdiction), and rejected the Defendants' argument that "Plaintiffs have not provided factual support" for their jurisdictional allegations. *Id*. at 5, 9. Further, on the motions to dismiss, the parties briefed the issue of whether jurisdictional discovery was appropriate, ECF No. 172 at 36, ECF No. 175 at 7, ECF No. 176 at 10, and the Court decided that such discovery was not necessary, ECF No. 185 at 9-10 (finding personal jurisdiction).

Quinn's family's case has been pending for more than two-and-a-half years. The Court has considered and rejected voluminous arguments on personal jurisdiction by both Sberbank and VTB Bank. It is time to get to the merits.

### III. Anticipated Issues with Discovery

#### A. Foreign Non-Party Discovery

The Parties anticipate that they will pursue discovery from foreign non-parties. The Parties agree to cooperate to efficiently obtain discovery from foreign non-parties with the goal of minimizing any delays that may arise from such discovery.

#### B. Depositions

Due to the number of plaintiffs (five), the number of defendants (six), the number of relevant third-party witnesses, and the number of issues in this case, Plaintiffs will seek to exceed the presumptive limit on depositions provided in the Federal Rules of Civil Procedure. Plaintiffs first need discovery from the Defendants to identify party employees and third parties with relevant knowledge, but presently anticipate needing to take at least forty (40) fact witness depositions, not including depositions of testifying experts whom Defendants designate. Defendants consist of global financial services corporations which played different roles; a range of personnel at each organization—including in divisions as varied as "Know Your Customer" ("KYC"), legal and compliance, risk management, auditing, international operations, law enforcement relations, and management—are likely to possess substantial relevant information that cannot be obtained from other sources; and witnesses from one Defendant will not duplicate information discoverable from other Defendants. Nor would it be unduly burdensome for each Defendant to prepare (approximately) six fact witnesses for depositions. In addition, Plaintiffs must take discovery from third parties on issues related to the nature of the DPR and its activities. It is appropriate to authorize additional depositions at the outset of the case where it is clear that a modification will be necessary. *See, e.g., In re Bank of Am. Corp. Sec. Derivative an Emp. Retirement Income Sec. Act (ERISA) Litig.*, No. 09-MD-2058 (PKC), ECF No. 453 (S.D.N.Y. Sept. 7, 2011) (authorizing plaintiffs to take 38 depositions in initial scheduling order). Plaintiffs reserve the right to revisit

its requested number of depositions in light of information adduced during discovery or based upon further pleadings or papers that Defendants file in this case. Plaintiffs also reserve the right to take additional depositions by agreement of the Parties.

Defendants oppose Plaintiffs' request.[1] Defendants submit that it is manifestly unreasonable to permit plaintiffs to take forty fact depositions. Forty depositions would impose a disproportionate burden on all parties in this action. Leave to take more than ten depositions depends on "whether (1) the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less extensive, (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, and (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Galgano v. Cty. of Putnam*, 16 Civ. 3572 (KMK)(PED), 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021) (internal quotes and citation omitted). Plaintiffs' request at this stage does not identify any proposed deponents, let alone demonstrate that "each and every" of the *thirty* proposed additional deponents possesses "sufficiently unique information, not cumulative or duplicative of others, to justify the additional burden" when discovery has not begun, and when the value of the information from the ten as-of-right depositions has not even been averred to. *See In re Weatherford Int'l Sec. Litig.*, 2013 WL 5762923, at *2 (S.D.N.Y. Oct. 24, 2013); *Galgano*, 2021 WL 2138759, at *1-2 (denying party

---

[1] If the Court construes Plaintiffs' request as properly made under Fed. R. Civ. P. 30(a)(2) and Your Honor's Individual Practices for leave to take additional depositions, Defendants respectfully request an opportunity to oppose Plaintiffs' request more fully in a letter, as permitted under Your Honor's individual Practices, Rule 2 (Discovery Motions). If necessary, Plaintiffs also request an opportunity to explain the basis of its request more fully in a letter at the appropriate time.

"*carte blanche*" and "blanket authority to conduct three times the presumptive maximum number of depositions" early in discovery in a "single-plaintiff civil rights action").

### C. Document Preservation

The Parties agree that they have had an ongoing obligation to preserve relevant documents. On April 24, 2020, Plaintiffs sent preservation letters to Sberbank and VTB, which identified specific categories of documents for preservation. On May 27, 2020, Sberbank and VTB agreed to preserve the categories of documents identified in Plaintiffs' letter for a period from January 1, 2014 through June 1, 2020.

At the Parties' conference on October 15, 2021 held pursuant to Rule 26(f), Plaintiffs asked each Defendant about steps that had been taken to preserve relevant evidence. *See* Fed. R. Civ. P. 26(f)(2) (requiring parties to "discuss any issues about preserving discoverable information"). Defendants state that each Defendant has taken steps to preserve potentially relevant material, including by issuing document preservation holds at the following times: Western Union (January 2019); MoneyGram (April 22, 2019); Sberbank (August 2019; December 2019; and September 2020); and VTB Bank (August 12, 2020).

### D. Protective Order

The Parties agree that Defendants will prepare a proposed draft protective order and will provide it to Plaintiffs ten days after receiving initial party document requests from Plaintiffs (due on December 17, 2021).

### E. Electronically-Stored Information ("ESI")

The Parties agree to negotiate in advance of the initial document production an ESI protocol that will govern the production of ESI in this action.

## F. Documents Protected as Attorney-Client Privileged and as Attorney Work Product

To the extent documents are withheld on grounds of privilege or the doctrine of attorney work product, Plaintiffs propose the Parties produce a document-by-document privilege log within a reasonable time after each corresponding production. Plaintiffs do not expect that the information sought in this case will implicate a large volume of privileged material. *Auto. Club of New York, Inc. v. Port Auth. of New York & New Jersey*, 297 F.R.D. 55, 63–64 (S.D.N.Y. 2013) ("[T]he justification for a categorical log of withheld documents is directly proportional to the number of documents withheld.").

Defendants disagree and submit that any assertion or claim of privilege should be governed by Local Rule 26.2, which provides that, "when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide information … by group or category." Local Rule 26.2(c). Defendants also note that the burden of preparing any privilege logs will necessarily fall disproportionately on Defendants.

The Parties will separately negotiate the terms governing the production of privilege logs.

## IV. Proposed Schedule

The Parties propose the following schedule for this case:

| Event | Proposed Deadline |
|---|---|
| Initial disclosures | December 3, 2021 |
| Deadline for service of initial party document requests and interrogatories (response deadlines to be governed by FRCP 33 and 34) | December 17, 2021 |
| Substantial completion of party document productions | July 19, 2022 |
| Deadline for service of party document requests and interrogatories | November 15, 2022 |
| Completion of fact discovery | January 13, 2023 |
| Amendment of the pleadings or joining additional parties | February 3, 2023 |

| | |
|---|---|
| Disclosure of affirmative experts and expert reports on issues as to which the disclosing party bears the burden of proof | March 17, 2023 |
| Disclosure of rebuttal experts and expert reports | May 18, 2023 |
| Depositions of experts | June 23, 2023 |
| Completion of all discovery | June 23, 2023 |
| Dispositive motions | August 4, 2023 |
| Pretrial order | August 7, 2023 (or within 30 days of ruling on motions for summary judgment) |
| Pretrial motions, if no dispositive motions filed | September 25, 2023 (or 45 days after pretrial order) |

Defendants reserve all rights to seek extensions from the Court, including (1) until final judgment is rendered in the criminal case currently being heard in district criminal court in The Hague, Netherlands relating to the MH17 crash, the conclusion of the ongoing investigation into the crash of MH17 by the MH17 Joint Investigation Team, or the conclusion or any other relevant foreign proceeding relating to the crash of MH17; and (2) for delays in the production of documents by Defendants or third parties located outside the U.S. as a result of restrictions imposed under U.S. or foreign law or treaty, as well as for any currently unforeseen reasons.

Plaintiffs will respond to any extension requests made by Defendants at the appropriate time. Plaintiffs observe that the referenced foreign criminal proceeding concerns criminal liability under the Dutch Criminal Code of four individuals (three of whom are not mentioned in the Second Amended Complaint), while this case concerns the civil liability of the Defendants under U.S. statutory law for the provision of financial and material support to the responsible terrorist group—a subject beyond the scope of the foreign criminal proceeding and the focus of the Joint Investigation Team. Moreover, given the length of the Parties' agreed-upon schedule, Plaintiffs do not anticipate that delays in the production of documents by Defendants or third parties will justify additional extensions to the schedule.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: October 25, 2021 |  |
|  | /s/ David J. Pressman |
|  | David J. Pressman<br>Andrew J. Lichtman<br>Jenner & Block LLP<br>919 Third Avenue<br>38th Floor<br>New York, NY 10022<br>212-891-1654<br>dpressman@jenner.com<br>alichtman@jenner.com |
|  | Terri L. Mascherin (admitted *pro hac vice*)<br>Jenner & Block LLP<br>353 N. Clark St.<br>Chicago, IL 60654<br>(312) 923-2799<br>tmascherin@jenner.com |
|  | *Counsel for Plaintiffs* |
| /s/ Thomas J. Heiden | /s/ John S. Kiernan |
| Christopher R. Harris<br>Thomas J. Heiden<br>Latham & Watkins LLP<br>1271 Avenue of the Americas<br>New York, NY 10020<br>212-906-1200<br>christopher.harris@lw.com<br>thomas.heiden@lw.com | John S. Kiernan<br>William H. Taft V<br>Debevoise & Plimpton LLP<br>919 Third Avenue<br>New York, NY 10022<br>(212) 909-6000<br>Fax: (212) 909-6836<br>jskiernan@debevoise.com |
| *Counsel for Defendant VTB Bank PJSC* | *Counsel for Defendant Sberbank of Russia* |

| | |
|---|---|
| /s/ Jessica Sombat Carey | /s/ Christopher N. Manning |
| Jessica Sombat Carey<br>H. Christopher Boehning<br>Jeffrey John Recher<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York, NY 10019<br>212-373-3061<br>jcarey@paulweiss.com<br>cboehning@paulweiss.com<br>jrecher@paulweiss.com<br><br>*Counsel for Defendants Western Union Company and Western Union Financial Services, Inc.* | David M. Zinn*<br>Christopher N. Manning<br>Amy B. McKinlay*<br>Haley L. Wasserman<br>Williams & Connolly LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>650 Fifth Avenue, Suite 1500<br>New York, NY 10019<br>(202) 434-5000<br>DZinn@wc.com<br>CManning@wc.com<br>AMcKinlay@wc.com<br>HWasserman@wc.com<br><br>*Counsel for Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*<br><br>* *admitted pro hac vice* |