UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

THOMAS SCHANSMAN ET AL.,

                               Plaintiffs,

      -against-

SBERBANK OF RUSSIA PJSC ET AL.,

                               Defendants.

19 Civ. 2985 (ALC)(GWG)

Hon. Andrew L. Carter, Jr.

**VTB BANK (PJSC)'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND
JOINDER IN CO-DEFENDANTS' MOTION FOR RECONSIDERATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .............................................................................................................................3

I.      THE COURT'S DETERMINATION THAT PLAINTIFFS ADEQUATELY
ALLEGED THAT VTB BANK USED ITS NEW YORK CORRESPONDENT
ACCOUNTS TO PROVIDE FINANCIAL SERVICES TO THE DPR IS
IMPROPER...........................................................................................................................4

      A.     The Court improperly relied on group pleading to find personal
jurisdiction over VTB Bank....................................................................................8

      B.     The DPR fundraisers' "advertising" of correspondent accounts is
insufficient to support a finding of personal jurisdiction....................................10

      C.     Allegations that the Center for New Russia received "transfers in dollars"
is insufficient to support a finding of personal jurisdiction ...................................14

      D.     There are no allegations that VTB Bank made any relevant transfers
through its New York correspondent accounts "deliberately" ..............................15

II.     THE COURT DID NOT CONSIDER WHETHER PLAINTIFFS' CLAIMS
ARISE FROM ANY OF THE NEW YORK-RELATED TRANSACTIONS.................17

III.    RECONSIDERATION IS NECESSARY TO AVOID SUBSTANTIAL
PREJUDICE TO VTB BANK AND CONSERVE THE COURT'S RESOURCES........17

IV.    PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD CAUSATION
BETWEEN THE ALLEGED TRANSACTIONS AND THE MH17 CRASH................19

V.     IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS DENIAL OF
VTB BANK'S MOTION TO DISMISS FOR IMMEDIATE APPEAL..........................20

CONCLUSION.........................................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................12

*Averbach for Est. of Averbach v. Cairo Amman Bank*,
   2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020) ........................................................13

*Averbach v. Cairo Amman Bank*,
   2020 WL 486860 (S.D.N.Y. Jan. 21, 2020) ...........................................13, 14, 16

*Brown v. Showtime Networks, Inc.*,
   2019 WL 3798044 (S.D.N.Y. Aug. 2, 2019) ........................................................13

*Ingenito v. Riri USA, Inc.*,
   89 F. Supp. 3d 462 (E.D.N.Y. 2015) ....................................................................13

*Johnson v. Ward*,
   4 N.Y.3d 516 (2005) .............................................................................................17

*Licci v. Am. Express Bank Ltd. et al.*,
   Case No. 1:08-cv-07253 (S.D.N.Y. Jan. 22, 2009) ................................................5

*Licci v. Lebanese Canadian Bank*,
   20 N.Y.3d 327 (N.Y. 2012) ....................................................................................6

*Licci ex rel Licci v. Lebanese Canadian Bank, SAL*,
   732 F.3d 161 (2d Cir. 2013)........................................................................ *passim*

*Linde v. Arab Bank, PLC*,
   706 F.3d 92 (2d Cir. 2013).....................................................................................18

*Mende v. Milestone Tech., Inc.*,
   269 F. Supp. 2d 246 (S.D.N.Y. 2003)...................................................................12

*Nesbeth v. N. Y. City Mgmt. LLC*,
   2019 WL 110953 (S.D.N.Y. Jan. 4, 2019) .............................................................8

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
   423 F. Supp. 2d 364 (S.D.N.Y. 2006)...................................................................19

*Schoolcraft v. City of N. Y.*,
   298 F.R.D. 134 (S.D.N.Y. 2014) .............................................................................3

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)..........................................................................................3

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012).......................................................................17

*Singer v. Bank of Palestine*,
   2021 WL 4205176 (E.D.N.Y. Apr. 30, 2021) ......................................................6, 13

*Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*,
   2011 WL 4056306 (S.D.N.Y. Sept. 13, 2011)..........................................................17

*In re SSA Bonds Antitrust Litig.*,
   420 F.Supp.3d 219 (S.D.N.Y. 2019).........................................................................8

*Strauss v. Credit Lyonnais, S.A.*,
   175 F. Supp. 3d 3 (E.D.N.Y. 2016) .....................................................................4, 16

*In re Subpoenas Served on Lloyds Banking Grp. PLC*,
   2021 WL 3037388 (S.D.N.Y. July 19, 2021) ..........................................................18

*Tamam v. Fransabank Sal*,
   677 F. Supp. 2d 720 (S.D.N.Y. 2010)........................................................................7

*Weiss v. Nat'l Westminster Bank PLC*,
   176 F. Supp. 3d 264 (E.D.N.Y. 2016) .................................................................4, 16

## STATUTES

18 U.S.C. § 2339A..........................................................................................................12

28 U.S.C. § 1292(b) ...................................................................................................3, 20

## RULES

C.P.L.R. Section 302(a) ...................................................................................................17

## OTHER AUTHORITIES

U.S. Dep't of State, Russia Judicial Assistance Information,
   https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
   Information/RussianFederation.html .........................................................................18

VTB Bank (PJSC) ("VTB Bank") respectfully moves pursuant to Local Civil Rule 6.3 for reconsideration of this Court's September 30, 2021 Memorandum and Order ("M&O") (ECF No. 185) denying VTB Bank's motion to dismiss, and states as follows:

## PRELIMINARY STATEMENT

VTB Bank respectfully seeks reconsideration of this Court's holding that it may exercise personal jurisdiction over VTB Bank—a foreign bank whose only alleged connection to New York is that it maintains correspondent accounts with U.S. financial institutions here.  Beyond that allegation, Plaintiffs have improperly relied on conclusory and group-pled statements and pure speculation to suggest that, not only did VTB Bank use those accounts to funnel money to support the DPR generally, but that it used those accounts to raise money to support efforts to down flight MH17.  VTB Bank submits that under *Licci ex rel Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013)—the very precedent this Court cites as the basis for its holding that personal jurisdiction exists—such meager allegations are an inadequate basis for this Court to exercise personal jurisdiction.

In *Licci*, as this Court rightly identified, the Second Circuit and the New York Court of Appeals held that the "determinative" facts supporting personal jurisdiction over a foreign bank that maintains a New York correspondent account is an adequately-pled allegation that the bank (1) "repeatedly" and (2) "deliberately" routed illicit transactions through a specified New York correspondent account.  But in stark contrast to *Licci* and the other precedent on which this Court relied, here, those two determinative factual allegations are both missing: Plaintiffs do not adequately allege that VTB Bank routed any transaction through its New York correspondent accounts; and even if they did, Plaintiffs do not allege that VTB Bank chose to use the New York correspondent accounts.

1

Indeed, after two amendments to their original complaint, and receiving discovery from certain correspondent banks, Plaintiffs still have not pled facts that connect VTB Bank's maintenance of correspondent bank accounts in New York to the wrongs alleged in this case, much less that VTB Bank deliberately chose to use those accounts for any such transfers. In its opinion, the Court observed that, notwithstanding these notable missing links in Plaintiffs' complaint, the Second Amended Complaint ("SAC") (ECF No. 156) pleads that "VTB Bank . . . provided financial services to the DPR using New York's banking system." M&O at 9. Respectfully, the SAC says no such thing—nor does it plead facts that raise such an inference. The SAC lacks any non-conclusory allegation that VTB Bank facilitated any transaction (i) via a New York correspondent account (ii) for a Fundraiser Entity (iii) to financially support the DPR, much less "repeatedly." And there is certainly no well-pled allegation that VTB Bank chose to use the correspondent accounts for such a purpose.

VTB Bank appreciates its burden on a motion for reconsideration. But it respectfully submits that this case presents an opportunity for the Court to correct and clarify its holding on this important area of the law—without which, foreign banks could be hailed into U.S. courts on little more than an allegation that they maintain correspondent accounts, followed by the speculative leap that, upon information and belief, those accounts were used in connection with the underlying wrong. Plaintiffs had ample opportunity to seek jurisdiction-related discovery before—or between—both of their amendments to the complaint. And the discovery that they did obtain during that time did not reveal anything to bridge the inferential leap between VTB Bank's New York-based correspondent accounts and the downing of MH17.

Accordingly, upon reconsideration, VTB Bank asks this Court to dismiss Plaintiffs' SAC as to VTB Bank for lack of personal jurisdiction. In the alternative to granting this motion for

reconsideration, VTB Bank respectfully requests that the Court certify for immediate appeal pursuant to 28 U.S.C. § 1292(b) the question of personal jurisdiction, as well as the Court's denial of VTB Bank's motion to dismiss for failure to state a claim.[1]

## ARGUMENT

Reconsideration under Local Civil Rule 6.3 is appropriate where, among other reasons, there is a "need to correct a clear error" or the Court "overlooked . . . material facts that were before it on the original motion, and that 'might materially have influenced its earlier decision.'" *Schoolcraft v. City of N. Y.*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014). That is because such "matters . . . might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). VTB Bank's alleged provision of "financial services to the DPR using New York's banking system" was integral to the Court's finding of personal jurisdiction. *See* M&O at 9 . The SAC, however, does not contain allegations sufficient to conclude that the *existence* of New York-based correspondent accounts necessarily means that those accounts were *used* to facilitate transfers in connection with the downing of MH17.[2] Plaintiffs fail to allege that any transactions were routed through VTB Bank's New York correspondent accounts, and accordingly fail to allege facts sufficient to establish personal jurisdiction over VTB Bank.

---

[1]    VTB Bank submits with this motion a letter requesting permission to move to certify for appeal the Court's M&O, pursuant to the Court's Individual Practice Rule 2.A. As explained further in that submission, VTB Bank respectfully seeks certification of the M&O for appeal should the Court decline to grant VTB Bank's motion for reconsideration.

[2]    VTB Bank intentionally limits the arguments in this Motion for Reconsideration to those that are appropriate at this juncture. It does not include here all arguments for reversing the M&O, and the absence of any such argument is not intended as a waiver of such argument and should not be interpreted that way.

I.   **THE COURT'S DETERMINATION THAT PLAINTIFFS ADEQUATELY ALLEGED THAT VTB BANK USED ITS NEW YORK CORRESPONDENT ACCOUNTS TO PROVIDE FINANCIAL SERVICES TO THE DPR IS IMPROPER**

In its M&O, the Court "relie[d]" on and "[took] . . . into consideration" certain allegations from the SAC to conclude that it has personal jurisdiction over VTB Bank.  *See* M&O at 8-9.  First, the Court noted Plaintiff's allegation that "the DPR advertised VTB Bank's . . . correspondent accounts in New York."  *Id.* at 9 (citing SAC ¶¶ 173, 178, 216, 220).  Second, the Court noted the conclusory allegation that VTB Bank "routed U.S. Dollar [denominated] transactions to or on behalf of the DPR" through New York-based correspondent accounts.  *Id.* at 9 (citing SAC ¶¶ 27, 56, 177-332).  Third, the Court referenced that Plaintiffs alleged that "the DPR has raised millions of dollars through fundraising, some of which were transferred using VTB Bank['s] . . . services."  *Id.* at 10 (citing SAC ¶¶ 171, 298).  Based on these allegations, the Court concluded that Plaintiffs made a "prima facie showing that . . . VTB Bank . . . provided financial services to the DPR using New York's banking system."  *Id.* at 9.

In reaching that decision, the Court cited *Licci* for the proposition that "'the selection and repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs' under the ATA is sufficient for a bank to be subject to the specific jurisdiction of a district court in New York."  M&O at 7-8.  VTB Bank agrees that *Licci*—and the other cases to which the Court cites[3]—is relevant.  But VTB Bank respectfully disagrees that the *Licci* plaintiffs' allegations, and that court's conclusions, are analogous to the allegations in the SAC so as to permit

---

[3]      In addition to *Licci*, the Court principally relied on *Weiss v. Nat'l Westminster Bank PLC*, 176 F. Supp. 3d 264 (E.D.N.Y. 2016), and the related case *Strauss v. Credit Lyonnais, S.A.*, 175 F. Supp. 3d 3 (E.D.N.Y. 2016).

a finding of personal jurisdiction over VTB Bank.  In reality, the SAC falls short of what *Licci* requires.  When applied to the allegations here, *Licci* disproves a finding of personal jurisdiction.

In *Licci*, the defendant bank was, like VTB Bank, a foreign bank not alleged to have any "operations, branches, or employees in the United States," but alleged to "maintain[] a correspondent bank account" in New York with a U.S. financial institution.  *Licci,* 732 F.3d  at 165.  Plaintiffs in *Licci* further "allege[d] that [defendant foreign bank] executed wire transfers using its correspondent account in New York, for an account held by . . . a 'financial arm' of Hizbollah."  *Id.* at 166.  But critically different from here, plaintiffs in *Licci* specifically alleged that there were "dozens" of "repeated" and "intentional" transfers, *id.* at 169, 171, that amounted to "millions of dollars," *id.* at 166, that were expressly alleged to be routed through a particular New York correspondent account of the foreign bank.  In doing so, the *Licci* plaintiffs specifically identified dates and amounts of funds that were wired through defendant's New York correspondent account.  *Licci v. Am. Express Bank Ltd. et al.*, Case No. 1:08-cv-07253 (S.D.N.Y. Jan. 22, 2009), Dkt. No. 23, Amended Complaint at ¶ 53.

Further, in stark contrast to the SAC, the *Licci* plaintiffs alleged that the *defendant foreign bank* made the decision to use its New York correspondent account, rather than its other correspondent accounts throughout the world.  *Licci*, 732 F.3d  at 171 ("In light of the widespread acceptance and availability of U.S. currency, [defendant foreign bank] could have, as it acknowledges, processed U.S.-dollar-denominated wire transfers for the Shahid account through correspondent accounts anywhere in the world.  But [defendant foreign bank] deliberately chose to process the many Shahid wire transfers through AmEx in New York.") (internal citation omitted).

Upon being presented with a certified question from the Second Circuit to evaluate the propriety of exercising personal jurisdiction in such circumstances, the New York Court of Appeals held that New York's long arm statute reached the foreign defendant bank in light of the well-pled allegations showing the bank's deliberate and repeated use of its New York-based correspondent accounts, demonstrating its purposeful availment of New York's banking system. *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327 (N.Y. 2012). As the Second Circuit explained— and as is key to adjudicating personal jurisdiction over VTB Bank—the New York Court of Appeals "found both the frequency and deliberate nature of [defendant foreign bank's] use of its correspondent account to be determinative." *Licci*, 732 F.3d at 168.[4]

Critically, in reaching that holding, the Second Circuit noted that a "U.S.-dollar denominated wire transfer" could be routed through "correspondent accounts anywhere in the world." *Licci*, 732 F.3d at 171. That is why it is so important—indeed, "determinative" to the personal jurisdiction analysis—that a plaintiff allege that the defendant foreign bank routed illicit transactions both (1) *deliberately* and (2) *repeatedly* through a particular correspondent account. *See id.* at 168; *see also Singer v. Bank of Palestine*, 2021 WL 4205176, at *7 (E.D.N.Y. Apr. 30, 2021) (identifying "key" facts that a complaint must plead upon amendment that "courts have relied upon to find a prima facie showing of personal jurisdiction," including the "number of transfers, dates, and monetary amounts" involving a particular New York correspondent account).

---

[4]      The New York Court of Appeals also noted that plaintiffs' allegations in that case were supported by an expert declaration describing in detail transfers made through the defendant bank's U.S. correspondent account at the direction and for the benefit of Hizbolah. *See Licci*, 20 N.Y.3d at 332 (relying on Shaya Decl. No. 08-cv-07253-GBD, ECF No. 43). By contrast, Plaintiffs in this case have provided no factual basis for their conclusory claims regarding use of VTB Bank's U.S. correspondent accounts.

Absent such allegations, a court would be forced to make an impermissibly large speculative leap to conclude that the defendant foreign bank deliberately routed funds through its New York correspondent account even once, much less "repeatedly." *See also Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 727, 733 (S.D.N.Y. 2010) (dismissing complaint where plaintiff failed to identify transfers through New York correspondent account and recognizing that "U.S. dollars are easily obtained through correspondent banks worldwide").

Respectfully, VTB Bank submits that the Court's finding of personal jurisdiction relies on this type of impermissible leap. *First*, the Court relied on group pleading allegations in the SAC relating to transactions made through Defendants' New York correspondent accounts, with no specific allegations as to VTB—and in fact, many of the portions of the SAC to which the Court cites make no reference to VTB Bank at all. *Second*, even with respect to allegations that do reference VTB, the Court concluded that, because of the existence of VTB Bank's New York correspondent accounts, and the advertisement of those accounts by the DPR and its alleged fundraisers, those accounts must necessarily have been used for the benefit of the DPR—notwithstanding the absence of particular transactions. *Third*, the Court concluded that, because Plaintiffs allege the DPR received some donations in U.S. dollars, those donations must have necessarily passed through VTB Bank's correspondent account in New York. But that is not pled in the SAC, and the Court may not draw such an inference consistent with *Licci*'s observation that U.S. dollar denominated transactions may be routed "anywhere in the world." *Licci*, 732 F.3d at 171; *see* M&O at 9. *Fourth*, there are no allegations whatsoever that VTB Bank made the deliberate decision to use New York correspondent accounts for any transfers.

For these reasons, taken together, reconsideration is appropriate.

A.   *The Court improperly relied on group pleading to find personal jurisdiction over VTB Bank*

The Court relies on allegations in the SAC that resort to group pleading.  "[I]t is well-established in this Circuit that plaintiffs cannot simply lump defendants together for pleading purposes" because group pleading "fails to give each defendant fair notice of the claims against it."  *Nesbeth v. N. Y. City Mgmt. LLC*, 2019 WL 110953, at *3 (S.D.N.Y. Jan. 4, 2019) (internal citation and quotation marks omitted).

In particular, plaintiffs group together claims against VTB Bank and Sberbank relating to transactions from their New York correspondent accounts, without making any specific allegations as to VTB Bank – and the Court relies on those claims in declining to dismiss VTB Bank from the case.  *See, e.g.,* M&O at 9 (citing SAC ¶ 27).  The only allegation in the SAC alleging *any* transaction from a New York correspondent account relates solely to Sberbank, s*ee* SAC ¶ 191, which is insufficient.  *See In re SSA Bonds Antitrust Litig.*, 420 F.Supp.3d 219, 233 (S.D.N.Y. 2019) (dismissing foreign banks for lack of personal jurisdiction where plaintiff group pled a general allegation as to several banks, but cited only one transaction involving the New York office of only one bank).  The Court's M&O cites to this transaction—but then lumps VTB and Sberbank together—stating, "[m]oreover, Defendants' argument that the two identified transfers amounting to $300 are insufficient is equally unavailing in light of the second amended complaint.  Plaintiffs have alleged that the DPR has raised millions of dollars through fundraising, some of which were transferred using VTB Bank and Sberbank's services . . . Construing this in the light most favorable to Plaintiffs, the inference is that some of those funds raised were transferred using VTB Bank and Sberbank's services."  *See* M&O at 10.  But the SAC did not make any specific allegation regarding transactions from VTB Bank's New York correspondent account.  Accordingly, absent group pleading, the SAC does not plead jurisdiction as to VTB Bank individually.

8

In fact, many of the paragraphs from the SAC on which the Court relies make no mention of VTB Bank whatsoever.  For example, the Court relies on Plaintiffs' allegations in paragraph 58 of the SAC for the proposition that: "prior to the attack on MH17, the DPR provided instructions on how to send transfers in U.S. Dollars to Sberbank and VTB Bank's correspondent accounts in New York."  M&O at 9.  But paragraph 58 makes no mention of VTB Bank; it only references advertisements about Sberbank's New York-based correspondent accounts.

The Court also references paragraphs 171 and 298 to support a conclusion that "DPR has raised millions of dollars through fundraising, some of which were transferred using VTB Bank and Sberbank's services."  *See* M&O at 10 (citing SAC ¶¶ 171, 298).  Critically, however, neither paragraphs 171 nor 298 make any mention of VTB Bank.  In particular, Paragraph 171 does not make any mention of any "transfers" via VTB Bank's correspondent account.  It states only:

> By June 2015, the New York Times reported that the DPR and its affiliates had "raised millions of dollars" through these online fundraising efforts in support of their terrorist activities. Specifically, in an article titled, "Russian Groups Crowdfund the War in Ukraine," the New York Times reported that, beginning in May 2014, more than a dozen groups had "solicited funds from abroad using large American and European financial institutions, including banks and companies like Western Union."

*See* SAC ¶ 171.  On its face, an allegation about transactions routed through VTB Bank's correspondent accounts is nowhere to be found in this paragraph.  Rather, it references a press report on unspecified online fundraising efforts for the DPR "using" a group of financial institutions, with no mention of VTB Bank.[5]

---

[5]     Paragraph 298 is similarly bereft of any mention of VTB Bank.  To the extent the Court was referencing Paragraph 297—which alleges, among other things, that "[Boris Alexandrovich] Rozhin openly and publicly provided the VTB Bank banking account information, including New York correspondent account information"—that allegation is insufficient to permit a finding of personal jurisdiction for the reasons discussed *supra*, in this section.

To be sure, paragraph 171 references "*these* online fundraising efforts" (emphasis added). But even giving Plaintiffs the benefit of an extraordinarily generous reading by looking to the broader context in which paragraph 171 appears, "*these* online fundraising efforts" does not refer to any transactions via VTB Bank's correspondent accounts.  The only other paragraphs in this section of the SAC that mention VTB Bank are paragraphs 168, 169 and 173.  Paragraph 168 alleges that a *Kyiv Post* article "reported that Defendant VTB Bank was also under investigation by Ukrainian authorities for violating the law on 'crime and terrorist financing' by providing banking services to terrorist groups in the Donbass."  But the alleged report on an investigation into VTB Bank providing unspecified "banking services" at an unspecified time and an unspecified place to unspecified terrorist groups does not support concluding that Plaintiffs allege that funds were transferred to the DPR via VTB Bank New York correspondent accounts.  Paragraph 169 fares no better for Plaintiffs; it says only that VTB Bank provided a comment to the *Kyiv Post* "confirm[ing] their actual knowledge of the investigation."  And Paragraph 173 references only "advertise[ments]" of VTB Bank's correspondent accounts by an alleged DPR fundraiser, which, again, says nothing about any transactions actually occurring.

**B.**     ***The DPR fundraisers' "advertising" of correspondent accounts is insufficient to support a finding of personal jurisdiction***

In any event, even the portions of the SAC that do reference VTB Bank do not allege the existence of particular transactions to warrant a finding of personal jurisdiction.  In contrast to the *Licci* plaintiffs—who alleged the key facts of an approximate date range, frequency, and dollar amount of the transfers that were routed through a particular New York correspondent account— Plaintiffs here only allege that purported DPR fundraisers solicited and received U.S. dollar denominated funds.  Notably, they do not allege *how* they received it, i.e. that VTB Bank routed such funds through its New York correspondent account.  Specifically, the SAC states: "VTB

Bank's United States correspondent bank accounts have been prominently advertised by the fundraising arm of the DPR as channels for providing direct funding to the DPR using foreign currencies, such as United States dollars."  SAC ¶ 56.

On its face, this says nothing about VTB Bank actually routing any transactions through New York.  Rather, it alleges only that purported DPR fundraisers "advertised" VTB Bank's correspondent accounts as a channel for donations.  Such an allegation would support concluding, for example, that the DPR fundraisers allegedly solicited donations and pointed potential donors to VTB Bank's New York correspondent accounts.  But it does not support the conclusion that Plaintiffs alleged that any transactions involving VTB Bank's New York correspondent accounts actually occurred—much less that they occurred "repeatedly".

Similarly, the allegations about specific DPR fundraisers fail to adequately plead that any donations they solicited or received were routed through VTB Bank's New York correspondent accounts.  Plaintiffs' allegation regarding the "Women's Battalion of People's Militia Donbass" offers a paradigm example of what the SAC does and *does not* allege.  At paragraphs 194-195, Plaintiffs allege:

> 194. A May 21, 2014 post by the "Women's Battalion of People's Militia Donbass" also solicited funds for the DPR to a VTB account held by Ekaterina Gubareva, the "foreign minister" of the DPR. The May 21, 2014 post stated that the only way to transfer US Dollars to the DPR's "foreign minister" Gubareva was through VTB's New York correspondent accounts at Deutsche Bank Trust Company Americas, the details of which were published openly online.

> 195. At all relevant times, the DPR utilized the funds raised by Humanitarian Battalion and Women's Battalion of People's Militia Donbass—including those funds raised relying upon the material support of Defendants Sberbank and VTB Bank—in furtherance of its terrorist activities.

As these paragraphs make apparent, Plaintiffs plead only that a certain alleged DPR fundraiser "solicited" funds for the DPR and directed prospective financial supporters to VTB

Bank's New York correspondent account.  Plaintiffs then allege that the DPR "utilized" funds raised by this alleged fundraiser "in furtherance of its terrorist activities."  And critically Plaintiffs then *assume* that among the funds used were "those funds" that must have been "raised relying upon the material support of . . . VTB Bank."  *See* SAC ¶ 195; *see also*, SAC ¶¶ 255-71 (similar).

But assuming that certain funds were raised with the unspecified "material support" of VTB Bank does not amount to alleging that VTB Bank *routed funds through its New York correspondent account*.  This is just a "threadbare recital" of the "material support" element of Plaintiffs' Claim 1 (*see* SAC ¶¶ 400-09[6]), and is not a factual averment that the Court may credit to find in favor of personal jurisdiction.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Tellingly, even after jurisdiction-related discovery, that allegation of deliberately routing funds through a New York correspondent account is nowhere to be found here or anywhere else in the SAC.

Perhaps recognizing that the SAC does not allege that any particular suit-related transactions through VTB Bank's New York correspondent accounts, Plaintiffs resort to fill-in-the-blank pleading.  In paragraph 27, Plaintiffs plead: "Defendants Sberbank and VTB Bank deliberately and repeatedly routed U.S. dollar-denominated transactions, including transactions to or on behalf of the DPR, through correspondent bank accounts located in Manhattan, New York."[7] But this and other similar examples in the SAC are nothing more than vague, conclusory statements of what is necessary for finding personal jurisdiction under *Licci* that are not well-pled allegations that can be credited.  *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y.

---

[6]     Among the elements necessary for liability, Plaintiffs must show that Defendants provided "material support or resources" to the DPR, which may include "financial services" or any number of other enumerated services.  *See* 18 U.S.C. § 2339A.

[7]     As explained in Section I(A), *supra*, this specific allegation suffers from the defect of group pleading, as it impermissibly groups Sberbank and VTB together without specific allegations as to either.

2003) (holding that "[c]onclusory allegations are not enough to establish personal jurisdiction" under Rule 12(b)(2)); *Singer*, 2012 WL 4205176 at *6 (holding that "vague[ly]" alleging that "large volume" or "multiple" allegedly illicit transfers occurred through a foreign bank's New York correspondent account was part of a "conclusory web" that did not suffice for pleading personal jurisdiction over the defendant foreign bank).  Unlike the plaintiffs in *Licci*—who pled approximated dates, amounts, and number of allegedly illicit transfers the defendant foreign bank purposefully routed through its New York correspondent accounts—Plaintiffs here cannot offer any non-conclusory pleadings to show that any funds were routed to a purported DPR fundraiser via VTB Bank's New York correspondent accounts.[8]

In its M&O, the Court cites to *Averbach v. Cairo Amman Bank* for the proposition that Plaintiffs "need not allege dozens of transfers over an extended period."  M&O at 10 (citing *Averbach*, 2020 WL 486860, at *6 (S.D.N.Y. Jan. 21, 2020), report and recommendation adopted sub nom. *Averbach for Est. of Averbach v. Cairo Amman Bank*, 2020 WL 1130733 (S.D.N.Y. Mar. 9, 2020)) (internal quotation marks omitted).  VTB Bank does not dispute that authority—and it does not contend otherwise.  The Court's decision in *Averbach*, however, was premised on the plaintiffs' ability to identify seven specific transfers through New York-based correspondent

---

[8]    Paragraph 27 also baldly claims that VTB Bank "maintain[s] offices through [its] subsidiaries in Manhattan, New York."  But that is not true; VTB Bank does not maintain any physical presence in New York.  *See* VTB Bank's Mem. of Law at 3 (citing Puchkov Decl. ¶ 4). While Plaintiffs do allege that VTB Bank at one time operated a subsidiary in New York, this is irrelevant to the specific personal jurisdiction analysis.  Plaintiffs have never alleged nor argued that Defendants' alleged suit-related conduct—which is the only conduct the Court evaluates for specific personal jurisdiction purposes—involved their alleged former New York-based subsidiary.  And as VTB Bank has already argued, and as Plaintiffs have not contested, "allegations regarding the presence of a subsidiary in New York do not trigger general jurisdiction over the parent."  *See* VTB Bank's Mem. of Law at 10 (citing *Brown v. Showtime Networks, Inc.*, 2019 WL 3798044, at *6 (S.D.N.Y. Aug. 2, 2019), and *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 474-75 (E.D.N.Y. 2015).

accounts. *Averbach*, 2020 WL 486860, at *6. The Court held that was sufficient to establish a "course of dealing," particularly given that the transfers occurred in a relatively compressed timeframe, so as to establish "purposeful availment" of the privilege of conducting business in New York. *Id.* Plaintiffs here, however, cannot even identify with particularity *one* transaction through a New York based VTB Bank correspondent account—let alone seven. *Averbach* is accordingly inapposite.

C.   **Allegations that the Center for New Russia received "transfers in dollars" is insufficient to support a finding of personal jurisdiction**

Plaintiffs have repeatedly pointed to their allegations regarding Center for New Russia's fundraising activities as an example of well-pled allegations to support a finding of personal jurisdiction over VTB Bank. *See* Opp. at 19, 49 n. 32, 59 n. 45 (ECF No. 172). Specifically, Plaintiffs alleged that a purported "Financial Report stated that [Center for New Russia's] account with VTB Bank had received '1,673.55' in 'transfers in dollars,' followed by a withdrawal of $1,600 in cash." SAC at ¶ 244. Likewise, the Court cited to allegations that the "Center for New Russia website also openly and publicly listed an account number with VTB Bank, including New York City correspondent bank information," and allegations that "Center for New Russia repeatedly emphasized its receipt of U.S. dollar donations, while simultaneously advertising correspondent bank accounts in New York City." *See* M&O at 9 (citing SAC at ¶¶ 216, 220).

But those allegations do not support a reasonable inference that the SAC pleads that any transfers were made via VTB Bank's New York correspondent accounts. Plaintiffs only allege that U.S. dollar denominated transactions occurred—but, again, do not allege *how* they occurred, such as whether these alleged transactions were routed through VTB Bank's New York correspondent accounts or otherwise. As this Court and the Second Circuit have acknowledged, U.S. dollar denominated wire transfers can be processed "through correspondent accounts

14

anywhere in the world."  *See* M&O at 8  (citing *Licci*, 732 F.3d at 171).  And after two amendments to their complaint, and certain jurisdiction-related discovery, Plaintiffs still do not allege that VTB Bank's New York correspondent accounts were used for particular suit-related transaction, or even that the New York correspondent account was the only way VTB Bank could receive U.S. dollar funds.  Thus, these allegations plead only that it is possible that—out of a global universe of available channels for routing U.S. dollar denominated transactions—these particular transactions flowed through VTB Bank's New York correspondent accounts.

For the reasons described above, such an inferential leap is too far, even at the pleading stage, to establish jurisdiction.  Indeed, VTB Bank is aware of no court in this Circuit that has held that personal jurisdiction lies over a foreign bank where the plaintiffs plead only that (i) the defendant bank maintained a correspondent account in New York and (ii) U.S. dollar denominated funds appeared in an account at that foreign bank, but (iii) does not actually plead that any such funds were routed through the foreign bank's New York correspondent account.  To permit the exercise of personal jurisdiction in such a scenario would break new ground, setting a new outer limit for personal jurisdiction that flies headlong into precedent from the Second Circuit, the New York Court of Appeals, and sister district courts.  They have thoroughly considered the issue and uniformly conclude that a "key," "determinative" allegation, which is missing here, is that illicit funds flowed through a foreign bank defendant's New York correspondent accounts.  Plaintiffs have twice amended their complaint and are still unable to plead such facts.

**D.    *There are no allegations that VTB Bank made any relevant transfers through its New York correspondent accounts "deliberately"***

Finally, even if there were well-pled allegations that suit-related transfers flowed through VTB Bank's New York correspondent accounts, and that such transfers occurred repeatedly, that would still fail under *Licci* because there are no allegations whatsoever that VTB Bank made the

decision to use the New York correspondent accounts.  Absent such a decision, VTB Bank did not "purposefully avail" itself of New York's banking system with suit-related conduct.

As noted above, it was critical to both the Second Circuit and the New York Court of Appeals' decisions in *Licci* that the foreign bank there made the decision to route the transfers through its New York correspondent accounts.  *See Licci*, 732 F.3d at 168 (noting that the New York Court of Appeals "found both the frequency *and deliberate nature* of [defendant foreign bank's] use of its correspondent account to be determinative") (emphasis added).  Here, however, there is no allegation whatsoever that VTB made any such decision (or indeed was even aware of the transfers).

VTB Bank is not aware of any case that has found personal jurisdiction over a foreign bank based on the existence of New York correspondent accounts when that foreign bank did not deliberately choose to use those accounts for the relevant transactions.  Notably, all of the cases this Court cited in support of finding personal jurisdiction over VTB Bank involved defendant foreign banks alleged to have purposefully routed suit-related transfers through New York correspondent accounts or branches.  *See Weiss*, 176 F. Supp. 3d at 271 ("Each New York Transfer was initiated by [defendant foreign bank] and routed through a correspondent bank account in New York."); *Strauss*, 175 F. Supp. 3d at 11 ("The relevant electronic transfer records reflect that each New York Transfer was initiated by [defendant foreign bank] in Paris and routed through its New York Branch."); *Averbach v. Cairo Amman Bank*, 2020 WL 486860, at *3 (S.D.N.Y. Jan. 21, 2020) (observing that defendant foreign bank was alleged to have "used the Correspondent Banks' infrastructure to effect fund transfers . . . a total of twenty-three" times).  Without such an allegations, a complaint fails to satisfy the required "deliberateness" prong for personal jurisdiction.

16

## II.     THE COURT DID NOT CONSIDER WHETHER PLAINTIFFS' CLAIMS ARISE FROM ANY OF THE NEW YORK-RELATED TRANSACTIONS

In addition to being required to plead that VTB Bank transacted business in New York, Plaintiffs must also plead that their claims arise from such business.  In particular, C.P.L.R. Section 302(a) requires that "plaintiffs must allege a 'direct' and 'substantial' connection between those [New York correspondent] bank accounts and the wrongful conduct that forms the basis of their cause of action."  *Societe d'Assurance de l'Est SPRL v. Citigroup Inc.*, 2011 WL 4056306, at *7 (S.D.N.Y. Sept. 13, 2011).  A connection that is "merely coincidental" is insufficient to support jurisdiction. *See Johnson v. Ward*, 4 N.Y.3d 516, 520 (2005).  And Plaintiffs must articulate such allegations with specificity.  *See Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 622-23 (S.D.N.Y. 2012) (holding that "[c]onclusory allegations are not enough to establish personal jurisdiction and the allegations must be well-pled" (internal quotation marks omitted)).

Notably—even if there were sufficient transactions through VTB Bank's correspondent accounts so as to satisfy Section 302(a)'s "transacting business" prong—Plaintiffs have failed to adequately allege that their claims arise from those transactions.  *See* VTB Bank Mem. of Law in Supp. of Mot. To Dismiss SAC at 14-15 (ECF No. 171).  The Court did not analyze this critical prong of Section 302(a) in its decision, which provides an independent basis for dismissal for lack of personal jurisdiction.  *See id.*

## III.    RECONSIDERATION IS NECESSARY TO AVOID SUBSTANTIAL PREJUDICE TO VTB BANK AND CONSERVE THE COURT'S RESOURCES

Reconsideration must occur without delay rather than waiting for a renewed motion after further discovery or later appellate review.  Under Judge Gorenstein's pretrial order, *see* Dkt. No. 197, initial disclosures are to begin in just over two weeks on December 3, 2021.  Fact discovery will continue from then for over a year until January 13, 2023.  If VTB Bank is made to remain as a Defendant, Plaintiff will no doubt seek extensive discovery into documents VTB Bank keeps in

17

Russia and depositions from VTB Bank officials who live and work in Russia. Such discovery will be highly burdensome and is not needed for the Court to correct its ruling.

Two reasons counsel in favor of reconsideration now in light of the impending onslaught of discovery. *First*, VTB Bank and its personnel are bound by certain Russian laws governing disclosure of documents and testimony in financial matters that are not consistent with U.S. discovery obligations. VTB Bank does not here purport to exhaustively catalogue all of its and its employees' obligations under Russian law.[9] As a preliminary observation, the U.S. State Department notes that "The Russian Federation does not permit the taking of voluntary depositions of willing witnesses in civil and commercial matters."[10]

Thus, at best, discovery requests would potentially force VTB Bank into potentially protracted litigation before this Court (and potentially on appeal to a higher court), and/or courts in Russia, to reconcile its ability to comply with its discovery obligations in the United States without running afoul of Russian privacy laws. At worst, if the Court blesses Plaintiffs' right to disputed discovery, VTB Bank will be in the untenable position of having to choose between facing sanction from this Court for disobeying discovery orders, or sanction from Russian authorities for violating its relevant laws. *See Linde v. Arab Bank, PLC*, 706 F.3d 92, 114 (2d Cir. 2013) (collecting cases where courts compelled discovery and imposed sanctions for failure to comply with such discovery order, "notwithstanding competing foreign legal obligations"); *In re Subpoenas Served on Lloyds Banking Grp. PLC*, 2021 WL 3037388, at *7 (S.D.N.Y. July 19, 2021) (holding that "something more than potential conflict [with foreign banking laws] is needed"

---

[9]     If an appropriate juncture is reached, VTB Bank intends to submit affidavits from Russian law experts discussing the relevant obligations under Russian law.

[10]     U.S. Dep't of State, Russia Judicial Assistance Information, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/RussianFederation.html.

to quash a subpoena).  Reconsidering the personal jurisdiction issue (and properly ruling that this Court may not exercise personal jurisdiction) at this pre-merits discovery stage avoids such discovery-related litigation and the likelihood that VTB Bank will have to choose between its obligations to two sovereigns.

*Second*, with all of VTB Bank's offices, business operations, and staff in Russia—many thousands of miles and several time zones away from New York—it would be highly prejudicial to submit to discovery if it is later held that VTB Bank was not subject to this Court's jurisdiction in the first place.  Moreover, no further discovery is needed into personal jurisdiction.  Plaintiffs have had two opportunities to amend their pleadings and they cannot allege any suit-related contacts between VTB Bank and New York.  *See* VTB Bank's Mem. of Law at 7-8 (discussing the limited new allegations in the SAC that followed jurisdiction-related discovery); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 409-10 (S.D.N.Y. 2006) (denying leave to amend where further amendment "would only include more of the same conclusory allegations").

## IV.     PLAINTIFFS HAVE FAILED TO ADEQUATELY PLEAD CAUSATION BETWEEN THE ALLEGED TRANSACTIONS AND THE MH17 CRASH

VTB Bank incorporates by reference, and joins in the motions for reconsideration filed by defendants Sberbank of Russia PJSC, The Western Union Company, Western Union Financial Services, Inc., MoneyGram International, Inc., and MoneyGram Payment Systems, Inc., with respect to the Court's conclusion that Plaintiffs have adequately pled causation between defendants' alleged conduct and the downing of MH17.  For the reasons stated in those motions for reconsideration, VTB Bank respectfully submits that reconsideration of the Court's decision to uphold the SAC's causation theory is appropriate because the M&O rests on infirm precedent, overlooks or misapplies controlling precedent, and would result in a manifest injustice if left undisturbed.

V.    **IN THE ALTERNATIVE, THE COURT SHOULD CERTIFY ITS DENIAL OF VTB BANK'S MOTION TO DISMISS FOR IMMEDIATE APPEAL**

VTB Bank appreciates the Court's requirement under Rule 2.A of its Individual Practices that a pre-motion conference must be requested prior to making certain motions, including a motion to certify a holding for interlocutory appeal.  Accordingly, VTB Bank submits with this motion for reconsideration a letter requesting a pre-motion conference to permit VTB Bank to make such a motion, should the Court decline to grant its motion for reconsideration.

### CONCLUSION

For the aforementioned reasons, VTB Bank respectfully requests that this Court grant its motion for reconsideration and dismiss all claims against it for lack of this Court's personal jurisdiction, or, in the alternative, certify the question of personal jurisdiction over it for immediate appeal pursuant to 28 U.S.C. § 1292(b).  For the reasons set forth in co-Defendants' motions for reconsideration, which VTB Bank joins and incorporates herein by reference, VTB Bank respectfully requests that this Court grant the motion for reconsideration and dismiss all claims against it for failure to state a claim, or, in the alternative, certify the question of whether the SAC adequately states a claim for relief for immediate appeal pursuant to 28 U.S.C. § 1292(b).

Dated:  November 15, 2021
       New York, NY

/s/ Christopher Harris
LATHAM & WATKINS LLP
Christopher Harris
Thomas J. Heiden (admitted *pro hac vice*)
Zachary L. Rowen
1271 Avenue of the Americas
New York, New York 10020
Tel: (212) 906-1200
Email: Christopher.Harris@lw.com
       Thomas.Heiden@lw.com
       Zachary.Rowen@lw.com

*Attorneys for Defendant VTB Bank (PJSC)*
