UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOMAS SCHANSMAN, individually, as surviving      :
Parent of QUINN LUCAS SCHANSMAN, and as           :
legal guardian on behalf of X.S., a minor, and    :
                                                  :
CATHARINA TEUNISSEN, individually, and as         :
surviving Parent and personal representative of the :
ESTATE OF QUINN LUCAS SCHANSMAN, and              :
                                                  :
NERISSA SCHANSMAN, individually, and as           :
surviving Sibling of QUINN LUCAS                  :
SCHANSMAN,                                        :
                              Plaintiffs,         :
              -against-                           :
                                                  :
SBERBANK OF RUSSIA PJSC, THE WESTERN              :
UNION COMPANY, WESTERN UNION                      :
FINANCIAL SERVICES, INC., MONEYGRAM               :
INTERNATIONAL, INC., MONEYGRAM                    :
PAYMENT SYSTEMS, INC., and VTB BANK               :
PJSC,                                             :
                              Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No. 1:19-CV-02985
(ALC) (GWG)

Hon. Andrew L. Carter, Jr.

## SBERBANK OF RUSSIA'S MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION
## OF THE MEMORANDUM AND ORDER OF SEPTEMBER 30, 2021

John S. Kiernan
William H. Taft V
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte*
WHITE & CASE LLP
701 Thirteenth Street, NW
Washington, D.C.  20005
*admitted pro hac vice*

*Counsel for Defendant Sberbank of
Russia*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................2

ARGUMENT ...............................................................................................................4

I.      The ATA Restricts Primary Liability to Defendants Whose Conduct Was a Direct and
        Substantial Cause, and also a But-For Cause, of Plaintiffs' Injuries..................................5

        A.      The Opinion Did Not Address Whether the SAC Alleges Sberbank's Conduct
                Was a Direct and Substantial Cause of Plaintiffs' Injuries ....................................6

        B.      The ATA Requires a Showing of But-For Causation ..........................................12

        C.      Upon Reconsideration, the Court Should Dismiss the SAC on Causation Grounds
                ....................................................................................................................14

II.     The Opinion Does Not Address Recent Second Circuit Precedent Confirming That The
        Second Amended Complaint's Non-Conclusory, Factual Allegations Are Insufficient to
        Support an Inference of Sberbank's Knowledge and Intent ............................................17

III.    The Opinion's Inferences Underlying Its Personal Jurisdiction Holdings Are Too
        Speculative to be Legally Sustainable ...........................................................................20

CONCLUSION ...........................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Abramov v. I.C. Sys.*, 65 F. Supp. 3d 323 (E.D.N.Y. 2014) ................................................ 1

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ......................................... 5, 6, 7

*Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 209 (D.D.C. 2020) ................................. 10

*Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296 (2017) ......................................... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................... 20

*Boim v. Quaranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002) .................................... 9

*Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) ........................ 13, 14

*Burrage v. United States*, 571 U.S. 204 (2014) ................................................ 6, 12, 13

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020) ......... 3, 6, 13

*Daewoo Int'l. (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ 9629, 2004 WL 1488511 (S.D.N.Y. July 2, 2004) ................................................ 4

*Empire Merchants, LLC v. Reliable Churchill LLLP,* 902 F.3d 132 (2d Cir. 2018) ..................... 7

*Fields v. Twitter, Inc.*, 881 F.3d 739 (9th Cir. 2018) .................................... 7

*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474 (E.D.N.Y. 2012) ................................... 16

*Gross v. FBL Fin. Services*, 557 U.S. 167 (2009) ......................................... 6

*Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) ......................................... 7

*Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258 (1992) ................................... 5, 7, 11

*Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 ...................................... 14, 17, 18

*Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 171 (S.D.N.Y. 2017), *aff'd*, 705 F. App'x 40 (2d Cir. 2017) ................................................ 15

*In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118 (2d Cir. 2013) ..................... *passim*

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) ....................... 17, 18, 19

*Kemper v. Deutsche Bank AG*, 911 F.3d 383 (7th Cir. 2018) ............................... 10, 13

*Lerner v. Fleet Bank, N.A.,* 318 F.3d 113 (2d Cir. 2003) ......................................... 6, 11

*Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571 (E.D.N.Y. 2005)...................................................9

*Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015)................................................14

*Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) ...................................................9, 13, 14

*Miller v. Arab Bank, PLC*, 372 F. Supp. 3d 33 (E.D.N.Y. 2019)..................................................6

*Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018) ...............................................6, 10

*Peoples v. Fischer*, 898 F. Supp. 2d 618 (S.D.N.Y. 2012) .........................................................2

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013)..............................................................*passim*

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995)...........................................................4

*Small v. Nobel Biocare USA, LLC*, No. 05 Civ. 3225, 2012 WL 952396 (S.D.N.Y. Mar. 21, 2012)...................................................................................................................................4

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 214 (E.D.N.Y. 2013)....................................11

*Thompson v. County of Franklin*, 15 F.3d 245 (2d Cir. 1994) ......................................................1

*Vera v. Republic of Cuba*, 867 F.3d 310 (2d Cir. 2017) ..............................................................1

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983) ................................................1

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992) ..........................4

*Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609 (E.D.N.Y. 2006) ...........................9

*Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144 (2d Cir. 2021) .....................................8, 9

**STATUTES AND RULES**

8 U.S.C. § 1189.............................................................................................................................6

18 U.S.C. § 2331...........................................................................................................................8

18 U.S.C. § 2333...............................................................................................................*passim*

18 U.S.C. § 2339A...........................................................................................................3-4, 17, 18

18 U.S.C. § 2339B...........................................................................................................................8

18 U.S.C. § 2339C..........................................................................................................3-4, 17, 18

28 U.S.C. § 1292...........................................................................................................................2

28 U.S.C. § 1330...........................................................................................................................1

28 U.S.C. § 1601 ................................................................................................................1

Pub. L. No. 114-222 (2016)................................................................................................6

Fed. R. Civ. P. 12 ...............................................................................................................1

Local Civil Rule 6.3 .......................................................................................................1, 4

**OTHER AUTHORITY**

Restatement (Third) of Torts § 34 .....................................................................................10

Defendant Sberbank of Russia ("Sberbank") submits this memorandum in support of its motion for reconsideration, pursuant to Local Civil Rule 6.3, of the Court's decision (ECF No. 185) ("Opinion" or "Op.") on Sberbank's motion to dismiss (ECF No. 165) the Second Amended Complaint (ECF No. 156) (the "SAC").   Sberbank joins in and expressly incorporates the submissions by VTB Bank PJSC and by The Western Union Company and Western Union Financial Services, Inc. (the "Western Union Defendants") in support of their respective motions for reconsideration.

Sberbank has filed a letter requesting a pre-motion conference on a proposed motion to dismiss the Second Amended Complaint for lack of subject-matter jurisdiction because Sberbank is immune from jurisdiction and suit in this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1601 *et seq.   See* ECF No. 206.  Sberbank respectfully submits that its assertion of sovereign immunity is a threshold, jurisdictional issue that must be resolved before this Court may adjudicate Plaintiffs' claims against Sberbank.  *Vera v. Republic of Cuba*, 867 F.3d 310, 316-17 (2d Cir. 2017) ("At the threshold of every action in a district court against a foreign state…the court must satisfy itself that one of the exceptions [to the FSIA] applies…If the court fails to undertake that analysis and determine for itself that an exception applies, it has no authority to hear the claim.") (*quoting Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983)) (cleaned up); *Abramov v. I.C. Sys.*, 65 F. Supp. 3d 323, 326 (E.D.N.Y. 2014) (Fed. R. Civ. P. 12(g)(2) and (h)(3) permit filing successive motions challenging subject matter jurisdiction: "This is so because courts have an independent obligation to examine [their] subject-matter jurisdiction at all successive stages of litigation.") (*citing Thompson v. County of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)).  Sberbank expressly preserves all rights, privileges,

defenses and immunities, including the defenses of foreign sovereign immunity and lack of subject-matter and personal jurisdiction under the FSIA.

In the event that the Court determines it has subject-matter jurisdiction over Plaintiffs' claims against Sberbank, then this Court should grant Sberbank's motion for reconsideration for the reasons set forth herein. And if the Court disagrees that it should reconsider its decision and dismiss the SAC, it should certify this case for appeal for the reasons explained in Sberbank's pre-motion letter submitted to the Court today.

## PRELIMINARY STATEMENT

Sberbank respectfully submits that the Opinion overlooked controlling Supreme Court and Second Circuit precedent when it erroneously concluded that the SAC plausibly alleges that Sberbank's provision of financial services constituted an act of international terrorism that proximately caused Plaintiffs' injuries, and that Sberbank acted with the requisite knowledge and intent. The Opinion also erred by making unsustainable inferences as to the volume of transactions flowing through Sberbank's U.S. correspondent accounts to find personal jurisdiction over Sberbank. The Court should exercise its discretion to correct these errors on reconsideration.[1] *See Peoples v. Fischer*, 898 F. Supp. 2d 618, 623 (S.D.N.Y. 2012) ("A motion for reconsideration is appropriate where the moving party can point to controlling decisions…that the court overlooked") (internal quotes and citation omitted). Alternatively, the Court should certify the Opinion for appeal to the Second Circuit under 28 U.S.C. § 1292(b).[2]

---

[1]    In seeking reconsideration on these grounds, Sberbank expressly preserves and does not waive any defense or argument regarding the legal sufficiency of any other part of Plaintiffs' claims.

[2]    Sberbank explains in further detail the reasons supporting a certification for interlocutory appeal in this matter in the letter requesting a pre-motion conference filed with the Court today, pursuant to Your Honor's Individual Practice Rule 2.A. Even if the Court disagrees that it should reconsider its decision and dismiss the SAC, it should certify this case for appeal because it presents issues as to which decisions from the Second Circuit and other courts in this District

Sberbank joins in and expressly incorporates the arguments in the respective motions for reconsideration submitted by VTB Bank PJSC and by The Western Union Defendants and focuses this motion primarily on the Opinion's application of the wrong legal standard for causation under the ATA.  With respect to causation, the Opinion erred by overlooking controlling decisions of the Second Circuit that require proximate causation under the ATA and numerous Supreme Court decisions confirming that the statutory phrase "by reason of" also requires a showing of "but for" causation.  *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013); *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013); *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015-16 (2020).  The SAC fails to plausibly allege that Sberbank's purported conduct (namely, facilitating transfers of money to alleged DPR Supporters[3] before July 17, 2014) (1) was the direct and substantial cause of the MH17 crash and (2) was a "but-for" cause of Plaintiffs' injuries.

The Court should also reconsider its Opinion insofar as it denied Sberbank's motion to dismiss for lack of personal jurisdiction.  As explained further below, and in the motion submitted by Defendant VTB Bank in which Sberbank joins, the Opinion draws unsustainable inferences as to the volume of transactions flowing through Sberbank's U.S. correspondent accounts.

Finally, as explained below and for the reasons set forth in the Western Union Defendants' motion for reconsideration, the Court should reconsider its Opinion that the SAC plausibly alleges that Sberbank had the requisite knowledge and intent to establish violations of

---

reflect a substantial difference in opinion on controlling questions of law, the prompt resolution of which would greatly accelerate the disposition of this case.

[3]        "DPR Supporters" refers to the large number of individuals and groups the SAC alleges were fundraisers soliciting donations to support DPR's activities from individuals in Russia and abroad prior to July 17, 2014.  *See, e.g.*, SAC ¶ 7.

18 U.S.C. §§ 2339A and 2339C, so that the Court may address rulings of the Second Circuit on the sufficiency of allegations based on public reporting of banking customers' relationships to terrorist organizations.

For these reasons, the Court should reconsider its decision and dismiss the SAC, or in the alternative, certify these issues for appeal.

## ARGUMENT

A motion for reconsideration is appropriate when a party "can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Small v. Nobel Biocare USA, LLC*, No. 05 Civ. 3225 (NRB), 2012 WL 952396, at *1-2 & n.5 (S.D.N.Y. Mar. 21, 2012) (granting in part motion for reconsideration based on "all relevant precedent"). "Additionally, a motion for reconsideration may be granted to correct a clear error, or prevent 'manifest injustice.'" *Daewoo Int'l. (Am.) Corp. Creditor Trust v. SSTS Am. Corp.*, No. 02 Civ. 9629, 2004 WL 1488511, at *1 (S.D.N.Y. July 2, 2004) (*quoting Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *see also* Local Civil Rule 6.3.

Sberbank respectfully submits that reconsideration of the Court's decision on causation is appropriate because the decision rests on infirm precedential authority, overlooks or misapplies controlling precedent, and would work a manifest injustice in this case if left undisturbed. As alleged, Sberbank's purported conduct in processing bank transfers to alleged DPR Supporters was not the direct and substantial cause of the MH17 crash. The SAC actually pleads DPR directly and substantially caused the crash, *see, e.g.*, SAC ¶ 77 (DPR leader claims responsibility: "we just downed a plane…We have video confirming"), and alleges multiple intermediary steps necessary to link Sberbank to the injuries, including (1) the use of funds to purchase small arms

and ammunition; (2) the provision of those weapons to fighters; (3) the fighters' use of those weapons to control territory in eastern Ukraine; (4) the infiltration into that controlled territory of a mechanized air defense missile system obtained from some unspecified source; and (5) the act of firing a missile at a plane flying through Ukrainian airspace on July 17, 2014.  *See* SAC ¶¶ 394, 396.  Nor does the SAC plausibly allege that Sberbank was the but-for cause of the crash; no fact allegations in the SAC plausibly support a reasonable inference that, without Sberbank's provision of the alleged banking services, DPR would not have obtained, deployed, and fired the expensive and highly sophisticated missile that downed the plane as the SAC alleges.

## I.    The ATA Restricts Primary Liability to Defendants Whose Conduct Was a Direct and Substantial Cause, and also a But-For Cause, of Plaintiffs' Injuries

To state a claim of primary liability under the ATA, the SAC was required to allege facts that plausibly support a reasonable inference that Plaintiffs were "injured…by reason of" "an act of international terrorism" committed by Sberbank.  18 U.S.C. § 2333(a).  Under controlling Supreme Court and Second Circuit precedent, "by reason of" imposes the same proximate causation standards as applied under RICO and other statutes using the "by reason of" formulation.  *In re Terrorist Attacks*, 714 F.3d at 123 ("[W]e held in *Rothstein* that Congress did not intend to permit recovery under § 2333 on a showing of less than proximate cause, based on the Supreme Court's interpretation of the well-understood meaning of the phrase 'by reason of' across multiple statutes") (*citing Rothstein*, 708 F.3d at 95) (cleaned up).  To satisfy that standard, plaintiffs must allege both proximate causation and but-for causation.  *See, e.g., Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-57 (2006) (requiring in RICO context a "showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well") (*quoting Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268 (1992)).

The Supreme Court has repeatedly confirmed over the past decade that the phrase "by reason of" (the same language used in the ATA) requires but-for causation. *See Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015-16 (2020); *Burrage v. United States*, 571 U.S. 204, 213 (2014) ("Our insistence on but-for causality has not been restricted to statutes using the term 'because of.' We have, for instance, observed…that the phrase, 'by reason of,' requires at least a showing of 'but for' causation") (cleaned up); *see also Gross v. FBL Fin. Servs*, 557 U.S. 167, 176 (2009) (interpreting "because of" as used in the Age Discrimination in Employment Act to mean "by reason of," and imposing a but-for causation requirement). Notwithstanding the ATA's use of language that the Supreme Court has consistently held to require *at least* a showing of but-for causation, the Opinion (at 16-17) did not apply the but-for standard of causation, *see* Joint Western Union & MoneyGram Br. (ECF No. 161) (the "WU/MG Br.") at 13-14, or consider whether the SAC plausibly alleges that MH17 would not have been destroyed but for Sberbank's purported conduct. Accordingly, Plaintiffs must allege that Sberbank's processing of financial transfers (and not a subsequent intervening act by DPR) was itself (1) the direct and substantial (*i.e.* proximate) cause and also (2) the but-for cause of the injuries to Plaintiffs.

### A. The Opinion Did Not Address Whether the SAC Alleges Sberbank's Conduct Was a Direct and Substantial Cause of Plaintiffs' Injuries

To establish proximate causation, the defendant's conduct must be a "substantial factor" that "led directly" to the injury. *See Rothstein*, 708 F.3d at 91, 95 (*quoting Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 123 (2d Cir. 2003) and *Anza*, 547 U.S. at 461, addressing proximate causation under RICO statute, and applying them to the ATA); *see also Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 n.8 (D.C. Cir. 2018) ("As we read *Rothstein*, the Second Circuit's discussion of proximate causation implies that requiring an act to be 'a substantial factor in the

sequence of responsible causation' likewise requires sufficient directness."); *Fields v. Twitter, Inc.*, 881 F.3d 739, 746 (9th Cir. 2018) (requiring under the ATA that "provision of support have some direct relation to a plaintiff's injuries"). For an action to be the direct cause of an injury, "the general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 10 (2010) (*quoting Holmes*, 503 U.S. at 271-72); *see also Anza*, 547 U.S. at 461 ("When a court evaluates...proximate causation, the central question...is whether the alleged violation led directly to the plaintiff's injuries."). The causation theory alleged by Plaintiffs stretches far beyond the first step in an alleged chain of events, but the Opinion did not consider whether the alleged financial transactions directly caused Plaintiffs' injuries.

Application of the proximate causation standard is particularly important in complex cases involving multiple parties. A proximate causation standard that asks merely whether harm is foreseeable, to the exclusion of inquiries into whether a defendant's conduct was the direct and substantial factor in causing the harm, could result in a plethora of (at best) remotely involved parties being treated as liable for the same single harm, in which none of their conduct was a direct and substantial cause. This in turn could give rise to complex allocations of liability which rigorous application of the proximate cause standard is specifically intended to avoid. *Empire Merchants, LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 143-45 (2d Cir. 2018) (discussing proximate cause in RICO context); *Anza*, 547 U.S. at 460. The ATA, like RICO and other statutes providing a private right of action for harm suffered "by reason of" wrongful conduct, addresses that problem by limiting primary liability claims to Defendants whose conduct directly and substantially caused a plaintiff's injury.

### 1.    The Opinion's Foreseeability Test Does Not Establish Proximate Cause

The Opinion mistakenly applies a proximate cause standard that focuses solely on whether the harm suffered was "reasonably foreseeable," without considering whether Sberbank's conduct was the direct and substantial cause of the harm. Op. at 16, 17. Although foreseeability is an element of the proximate cause test—which requires that the injury was "reasonably foreseeable or anticipated as a natural consequence" of defendant's conduct, *Rothstein*, 708 F.3d at 91—"foreseeability alone is not sufficient to establish proximate cause." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1305 (2017) (analyzing proximate cause standard under the Fair Housing Act).

The Opinion drew the substance of its "reasonably foreseeable" standard from a passage in *Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144 (2d Cir. 2021) discussing the definition of "international terrorism" under the ATA. *Id.* at 161. That decision never addresses the test for proximate causation, and the *Weiss* court's inquiry was into whether it was foreseeable that funds transferred to an FTO "would enable it to kill more people in the territory," such that a reasonable juror could find that transferring funds to a charity linked to Hamas could "appear to be intended" to coerce a population or government, *id.*, and these facts would, in any event, be insufficient to establish proximate causation in a non-FTO case. That is true because the *Weiss* plaintiffs could rely on 18 U.S.C. § 2339B, which clearly permits liability for material support of a group, as opposed to support for specific *acts*, and because the inquiry in *Weiss* was focused on the intent requirement in 18 U.S.C. § 2331(1)(B), rather than the "by reason of" causation requirement of 18 U.S.C. § 2333.

Other cases cited by the Court conflict with more recent Second Circuit decisions applying proximate causation. The reliance on Judge Sifton's dated decision in *Weiss v. Nat'l*

*Westminster Bank PLC*, 453 F. Supp. 2d 609, 632 (E.D.N.Y. 2006) for the proposition that "plaintiffs plead proximate cause [when] they allege[] that [a] bank provided financial services to terrorists before [a] terrorist attack" is illustrative. Op. at 17. That decision relies on another dated district court opinion in *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 575 (E.D.N.Y. 2005), as to which the Second Circuit found the District Court's ultimate causation instructions at trial to be legally erroneous. *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018). Moreover, the *Weiss* district court's reasoning that proximate cause should be read expansively in light of Congress's supposed intent to impose "liability at any point along the causal chain of terrorism," and that money is fungible between peaceful and non-peaceful activities, was expressly addressed and rejected by the Second Circuit in *Rothstein*.[4] Moreover, the proposition accepted by the Opinion that providing financial services to terrorist fundraisers before a terrorist attack itself sufficiently alleges proximate cause runs contrary to the holding of *In re Terrorist Attacks*, 714 F.3d at 124 (holding that "providing routine banking services to organizations and individuals said to be affiliated with al Qaeda" insufficient to establish proximate cause for the September 11, 2001 attacks).[5] The Opinion's reliance on *Weiss* to support its proximate causation holding, without any discussion of the Second Circuit's subsequent rulings on

---

[4]    *See Rothstein*, 708 F.3d at 95 ("Although the legislative history of the ATA indicates that Congress intended to create impediments to terrorism by 'the imposition of liability at any point along the causal chain of terrorism,'…[if] Congress had intended to allow recovery upon a showing lower than proximate cause, we think it either would have so stated expressly or would at least have chosen language that had not commonly been interpreted to require proximate cause for the prior 100 years.").

[5]    *Weiss* is also irreconcilable with another case cited in the Opinion, *Boim v. Quaranic Literacy Inst.*, 291 F.3d 1000 (7th Cir. 2002), which held that proximate cause was not pled even though the case involved donations directly to Hamas. *Id.* at 1012 ("[F]unding *simpliciter* of a terrorist organization, is insufficient because it sets too vague a standard, and because it does not require a showing of proximate cause.").

proximate causation in *Rothstein* and *In re Terrorist Attacks*, which apply different and more rigorous standards, warrants reconsideration and ultimately reversal.

> **2.    Superseding Causes Alleged in the SAC Preclude a Finding of Proximate Causation**

When intervening causes separate the defendants from the acts that directly caused the plaintiff's harm, proximate cause is lacking. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) (ATA complaint against bank did not allege proximate cause when numerous criminal acts separated the bank from the terror attack, noting "acts that are either criminal or intentionally tortious...are more likely to be adjudged superseding causes.") (*citing* Restatement (Third) of Torts § 34, cmt. E); *see also Atchley v. AstraZeneca UK Ltd.*, 474 F. Supp. 3d 194, 209 (D.D.C. 2020) ("[T]he presence of an independent intermediary makes a defendant more than one step removed from a terrorist act or organization, it creates a more attenuated chain of causation than one in which a supporter of terrorism provides funds directly to a terrorist organization.") (*quoting Owens*, 897 F.3d at 273) (internal quotations omitted).  For example, in *Rothstein*, the Second Circuit held that plaintiffs failed to allege proximate causation based on allegations that hundreds of millions of dollars provided by UBS to Iran over a period of eight years in turn enabled Iran, a state sponsor of terrorism, to provide Hizbollah and Hamas with hundreds of millions of dollars to fund terrorist attacks during that time period in which plaintiffs were injured.  708 F.3d at 97 ("We see no nonconclusory allegation in the Complaint that plausibly shows that the moneys UBS transferred to Iran were in fact sent to Hizbollah or Hamas or that Iran would have been unable to fund the attacks by Hizbollah and Hamas without the cash provided by UBS."); *see also In re Terrorist Attacks*, 714 F.3d at 124.  Under these controlling precedents, allegations that Sberbank processed fund transfers to alleged DPR Supporters does not assert that Sberbank proximately caused Plaintiffs' injuries.

Construing the pleadings in Plaintiffs' favor, the SAC at most alleges that Defendants transferred funds to alleged DPR Supporters that were used to create conditions in eastern Ukraine from which an attack on MH17 was possible. But merely increasing an entity's ability and willingness to support terrorist activity does not proximately cause any specific terrorist act and is insufficient under the ATA. *See Rothstein*, 708 F.3d at 97. Rather, as confirmed by controlling Supreme Court and Second Circuit precedents addressing the proximate causation standard, Plaintiffs were required to allege facts plausibly showing that the passengers on MH17 were the "targets…and intended victims" of the Defendant's conduct, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 123 (2d Cir. 2003), and that Defendants' conduct was the substantial and direct cause of the plane's destruction. *See Holmes*, 503 U.S. at 268-69. Plaintiffs cannot make this proximate cause showing, and instead plead a number of other intervening and more substantial and direct causes for the downing of MH17 than the alleged processing of banking transactions by Defendants.

Instead of addressing the numerous intervening steps between Sberbank's alleged conduct and Plaintiffs' harm, as alleged in the SAC, the Opinion relies on the fungibility of money in order to excuse Plaintiffs from pleading a direct connection between the financial transfers and the attack on MH17. Op. at 17 (*citing Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013)).[6] But the SAC makes no attempt to trace the money allegedly

---

[6]     *Strauss* involved allegations that the defendant bank transferred millions of dollars to charities that supported Hamas and that were alleged alter egos of Hamas, an FTO. Neither *Strauss*, nor the cases relied on by *Strauss*, support the proposition that, where money is transferred to a non-FTO organization like DPR, a plaintiff can demonstrate proximate causation without pleading that the funds were directly linked to the attack that caused the harm. *Cf. Rothstein v. UBS AG*, 772 F. Supp. 2d 511, 516 (S.D.N.Y. 2011) ("The Supreme Court's finding [in *Holder v. Humanitarian Law Project*] that FTOs are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct is specific to FTOs.") (citation omitted).

flowing through Sberbank to an attack on MH17; it does not even allege that the missile that downed MH17 was purchased by DPR.[7]  Instead, the SAC contends, to the contrary, that the money was expended on uses *other* than the attack (such as night vision goggles, bullet proof vests, uniforms, weapons and ammunition), allegedly provided to soldiers located in territory in which it was possible to deploy and launch an anti-aircraft missile obtained from an unspecified source.  *Cf.* SAC ¶ 396 ("Defendants' conduct and actions were a substantial factor in DPR's ability to launch a surface-to-air missile and to control territory, including the territory necessary to set up, operate, and ultimately launch the missile system that brought down MH17; *the DPR controlled this territory utilizing weapons, tactical equipment, and ammunition procured with the material support of Defendants.*") (emphasis added).  Even accepting the funds were used for the specific purposes alleged, the SAC does not describe a direct and substantial link between Defendants' alleged conduct and Plaintiffs' injuries.

The Court should reconsider its ruling in order to apply the required proximate causation test, rather than an inapplicable lower standard based on mere foreseeability.

### B.    The ATA Requires a Showing of But-For Causation

In addition to overlooking controlling precedent and applying an incorrect causation standard, the Opinion erred by not addressing whether the SAC alleges that the Defendants' conduct constituted a but-for cause of the injury, *i.e.*, whether the harm could have occurred without Sberbank's alleged conduct.  *See* WU/MG Br. at 13.  The statutory language "by reason of" requires both proximate cause and but-for causation.  *Burrage*, 571 U.S. at 213 ("the phrase, 'by reason of,' requires at least a showing of 'but for' causation") (citations omitted); *see also*

---

[7]    Moreover, even if there were an allegation that such funds were used by DPR to conduct the attack, the choice by alleged DPR Supporters to transfer funds to DPR is itself an intervening and more direct cause of Plaintiffs' harm than Sberbank's alleged routine provision of banking services to them.

*Comcast Corp.*, 140 S. Ct. at 1015-16. The Second Circuit's leading case addressing the causation element of the ATA likewise supports the conclusion that proximate causation under the ATA also requires a showing of but-for causation. *See Rothstein*, 708 F.3d at 97 (affirming dismissal of complaint due to lack of proximate cause where complaint did "not allege that if UBS had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured"). In light of the SAC's acknowledgement that the DPR received funding through multiple channels and from multiple sources, and its failure to allege facts plausibly supporting any reasonable inference that the attack on MH17 could not have occurred without funding transferred by any particular Defendant, the Court, upon reconsideration, should dismiss the SAC for failure to allege that Defendants' conduct was the but-for cause of Plaintiffs' harm.

The statutory language used in the ATA plainly requires but-for causation, as confirmed by the Supreme Court's decisions in *Comcast* (2020) and *Burrage* (2017), and the Second Circuit has not held otherwise. *See Linde*, 882 F.3d. at 333 ("We need not here decide…whether…the district court should charge the jury as to proximate or but-for causation as such a decision would only be necessary in the event of a new trial."). The decisions of other circuits holding that the ATA does not require but-for causation pre-date *Burrage* and *Comcast*, and some have been called into question following *Burrage*. *See, e.g.*, *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 391 (7th Cir. 2018) (noting argument that *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*) ("*Boim III*") "is no longer good law…because later Supreme Court decisions have held that when a statute such as the ATA uses the phrase 'by reason of,' liability under that statute requires but-for causation"). Those earlier ATA decisions, and some more recent ones, express concern that imposing a but-for causation

requirement to claims against financial intermediaries would deprive plaintiffs of an effective remedy given the fungibility of money. *See, e.g.*, *Boim III*, 549 F.3d at 698; *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015), *vacated by Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018). But the ATA was amended in 2016 by the enactment of JASTA, which provided for (among other things) claims of secondary liability in certain circumstances. The Second Circuit has since rejected as "inapposite" pre-JASTA cases that permitted attenuated theories of causation, including in particular the Seventh Circuit's decision in *Boim III*, on which the Opinion relies *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 n.14 (2021) (distinguishing *Boim III* as "a pre-JASTA case" and describing *Boim III* as "inapposite" and "insufficient to overcome the binding effects of [the Second Circuit's holdings in] *Linde* and *Kaplan*").

In short, applying a but-for causation standard to primary-liability ATA claims against financial intermediaries is entirely consistent with the plain language of the statute, as confirmed by binding Supreme Court precedent. Because the Opinion overlooks this controlling precedent on but-for causation, reconsideration should be granted.

### C.    Upon Reconsideration, the Court Should Dismiss the SAC on Causation Grounds

Applying the correct causation standards, even construing all reasonable inferences in Plaintiffs' favor, the SAC does not allege that Defendants' conduct was the proximate and but-for cause of the destruction of MH17.

Plaintiffs do not allege a direct connection between Defendants' conduct and their harm. To the contrary, their causal chain includes multiple intervening steps between the alleged direct use of the transferred funds (buying small arms and ammunition), the immediate objective of controlling territory and the ultimate act of launching a missile. Multiple intervening events, including most obviously DPR's ability to obtain, arm, site, target and fire an advanced radar-

guided missile system, so substantially attenuate the Defendants' alleged conduct of processing banking transactions from the destruction of MH17 that the SAC has not sustainably pleaded that Sberbank's conduct was the direct cause of Plaintiffs' harm.

Plaintiffs also do not allege facts showing that Defendants' conduct was a substantial factor in the destruction of MH17. Although the SAC includes allegations as to the total amount of funds raised by DPR, it does not allege how much was transferred by any Defendant, or how that amount compares to the resources available to DPR from other sources. In the absence of factual allegations about the extent of funding provided by each Defendant, it is impossible to infer that any one of them was a substantial source of funds used for DPR's military operations. The allegations in the SAC to the contrary are of an entirely conclusory nature, similar to the allegations rejected by the Second Circuit in *Rothstein* and *In re Terrorist Attacks*. *See Rothstein*, 708 F.3d at 97 (rejecting as conclusory complaint's allegation that "UBS knew full well that *the cash dollars it was providing* to a state-sponsor of terrorism *such as* Iran *would be used to cause and facilitate terrorist attacks* by Iranian-sponsored terrorist organizations *such as* Hamas, Hizbollah and PIJ"); *In re Terrorist Attacks*, 714 F.3d 118, 124 (same as to allegation that "The September 11th Attack was a direct, intended and foreseeable product of [] defendants' participation in al Qaida's jihadist campaign.").

Even if applying a foreseeability analysis, courts have recognized that an element of the analysis is the foreseeability of injury specifically to American nationals, since that is an essential element of the underlying ATA claim. *See Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 171 (S.D.N.Y. 2017), *aff'd*, 705 F. App'x 40 (2d Cir. 2017) ("Courts have…interpreted the ATA to require some evidence that the defendant was aware of a 'substantial probability' that Americans would be injured by the 'unlawful acts' involved")

(*citing Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 506 (E.D.N.Y. 2012). Plaintiffs recognize this American-injury foreseeability requirement in pleading each of their counts for violations of the ATA. *See* SAC ¶¶ 408 ("Due to the facts described above, including but not limited to the anti-American sentiment associated with the DPR, and the U.S. Department of State warnings relating to the risk to Americans of traveling in the Donbass region, Defendants reasonably could have foreseen that their provision of financial services to the DPR would result in injury to one or more United States citizens."), 418 (same). These allegations suggest that injury to Americans traveling in the Donbass region was foreseeable; but the SAC is bereft of allegations of DPR engaging in any activity reaching beyond Ukraine's borders, or doing anything even remotely resembling the downing of a plane filled with non-combatants who might include Americans before the downing of MH17. The SAC does not allege facts plausibly supporting a conclusion that in the period before MH17, specific actions by DPR made it reasonably foreseeable that DPR would seek to advance its alleged proto-nationalist agenda by firing a missile at a commercial airliner (not flying to or from the United States) killing the lone American national who turned out by unfortunate happenstance to be on board. The SAC therefore does not establish proximate causation even under the insufficiently stringent test applied in the Opinion.

The SAC also does not allege that Sberbank's conduct was necessary for the attack on MH17, or that DPR would have been unable to launch the attack without the funding from each (or any one) Defendant, so as to constitute a but-for cause of the injury. To the contrary, the SAC recognizes that DPR had other resources available to it and that Defendants' alleged conduct may have only "freed up" funds otherwise made available to DPR so that they could

fund violent acts. *See* SAC ¶ 394. Accordingly, the SAC should be dismissed on reconsideration because it does not adequately allege but-for causation.

## II. The Opinion Does Not Address Recent Second Circuit Precedent Confirming That The Second Amended Complaint's Non-Conclusory, Factual Allegations Are Insufficient to Support an Inference of Sberbank's Knowledge and Intent

Sberbank joins in and expressly incorporates the submission of the Western Union Defendants seeking reconsideration of the Opinion's holdings regarding the required elements for a claim under 18 U.S.C. § 2333(a). In finding that the SAC plausibly alleged that Sberbank had the requisite knowledge and intent to establish violations of 18 U.S.C. §§ 2339A and 2339C, the Opinion relied on allegations that four "news outlets" "report[ed] the DPR's funding scheme" (*citing* SAC ¶¶ 162-67) and an "investigation by Ukrainian authorities into VTB Bank and Sberbank" (*citing* SAC ¶¶ 167-69). *See* Op. at 15-16.

But in doing so the Opinion overlooked the recent Second Circuit precedent of *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), and *Kaplan v. Lebanese Canadian Bank*, SAL, 999 F.3d 842 (2d Cir. 2021), that were decided after briefing on Sberbank's motion to dismiss was completed. Both of these cases address the type of factual allegations that are required to plausibly support an inference of "general awareness" for ATA aiding-and-abetting claims under JASTA, 18 U.S.C. § 2333(d)—a less-demanding standard than the *mens rea* required for ATA direct-liability claims under the ATA and § 2333(a). Nevertheless, even under this lower standard, in *Honickman* the Second Circuit held that "the public sources cited in the complaint do not plausibly support an inference that BLOM Bank had the requisite general awareness *at the time that it provided banking services to the Three Customers*." 6 F.4th at 502 (emphasis added).

The Second Circuit distinguished the insufficient allegations in *Honickman* from those deemed sufficient in *Kaplan*, concluding that the "limited public sources Plaintiffs cite" in

*Honickman* "pale in comparison to the detailed, numerous sources that sufficed in *Kaplan*," which included multiple public statements by Hizbollah itself confirming that the defendant bank's customers were "integral parts of Hizbollah." *Id.* (citing *Kaplan*, 999 F.3d at 864). Specifically:

> The *Kaplan* complaint alleged Hizbollah made public statements identifying the defendant-bank's customers as "integral parts of Hizbollah" prior to the relevant attacks which were "specific as to the status of the speaker," "the circumstances in which the statements were made," and "the other specific media in which they were made," including Hizbollah's own websites.

*Id.* (quoting *Kaplan*, 999 F.3d at 864).

The allegations against Sberbank on which the Opinion relies (at 15-16) are remarkably similar to the allegations that the Second Circuit in *Honickman* deemed insufficient to plausibly allege general awareness.  The SAC only alleges that DPR's activities were "widely reported" prior to the attack on MH17.  It does not contain any allegations that the individuals who are alleged to be Sberbank's accountholders were publicly reported to be linked with DPR or were designated as terrorists or sanctioned persons by the United States (or any other government) prior to the MH17 crash.  *Cf. Kaplan*, 999 F.3d at 850 (stating that the complaint "described *a dozen* published English-language articles that recounted the connection between Hizbollah and" one customer in particular) (emphasis added).

The *New York Times* article (*see* SAC ¶ 171) on which the Opinion relies (at 15) was not published until nearly one year *after* the MH17 attack.  The Second Circuit held in *Honickman* that post-dated news reports are insufficient to plausibly support an inference of even general awareness, let alone the requisite knowledge and intent required for 18 U.S.C. § 2339A or § 2339C.  6 F.4th at 501 (holding press coverage referenced in the complaint that was dated "more than a year after the last relevant attack" was insufficient to establish defendant's general awareness); *see also* Sberbank Br. at 14 (ECF No. 166).  The remaining three articles cited in the

Opinion (at 15-16)—*Forbes* (*see* SAC ¶ 164 & n.26), *Reuters* (*see* SAC ¶ 166)[8] and *Kyiv Post* (*see* SAC ¶ 167 & n.27)—all report only that Sberbank was one of several Russian banks being investigated by the Ukraine's Attorney General.  None of the articles mentions DPR or specific customers of Sberbank, let alone identifies any Sberbank customer as being associated with or an integral part of DPR.

Moreover, allegations that an investigation merely has been opened but has not reached any publicly reported conclusions, stands in stark contrast to the allegation that the Second Circuit credited in *Kaplan* of an investigation's publicly reported findings.  As the Second Circuit recounted in *Kaplan*, the complaint against LCB (a Lebanese bank) alleged that in 2002 (four years before the attacks at issue) a publicly issued U.N. report "found that 'LCB had a banking relationship' with 'a Hizbollah-linked money laundering gang'; that '[i]n response to [that U.N.] report,' 'LCB stated that 'we consider such allegation as part of the propaganda and war launched by the Jewish state against Lebanon'; and that LCB 'not only refused to end the relationship, but instead authorized an increase in credit limits for the Hizbollah gang.'"  *Kaplan*, 999 F.3d at 849 (quoting *Kaplan* complaint) (alterations in original; complaint emphases omitted).

Thus, applying the Second Circuit's recent precedents in *Honickman* and *Kaplan*, the SAC's allegations on which the Opinion relied are insufficient to plausibly support an inference of Sberbank's "general awareness," let alone the *mens rea* required under the criminal statutes incorporated into an ATA primary-liability claim under § 2333(a).

---

[8]    Reuters, Ukraine Says Investigating Russia's Sberbank for Financing Terrorists (Apr. 16, 2014), https://www.reuters.com/article/ukraine-crisis-sberbank/ukraine-says-investigating-russias-sberbank-for-financing-separatists-idUSL6N0N84XI20140416

### III.    The Opinion's Inferences Underlying Its Personal Jurisdiction Holdings Are Too Speculative to be Legally Sustainable

Sberbank joins in the submission of VTB Bank seeking reconsideration of the Opinion's personal jurisdiction holdings, and adds this submission only to discuss the allegations underlying the Opinion's inferences as they specifically relate to personal jurisdiction over Sberbank.

The Opinion's finding of personal jurisdiction is explicitly based (*see* Op. at 8-10) on the combination of evidence of two transfers passively processed through Sberbank correspondent accounts in New York of trivial amounts as to which it cannot be said that Plaintiffs' claims "arise from" those transfers, plus two inferences drawn from allegations in the SAC that require such a high degree of speculation (and in one instance is categorically at odds with facts revealed in Plaintiffs' pre-Opinion discovery) that they do to satisfy legally required pleading standards because they "stop[] short of the line between possibility and plausibility." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

The Opinion relies on allegations in the SAC that two alleged DPR Supporters presented information on their websites about Sberbank correspondent accounts in New York as a mechanism to contribute dollars in support of DPR, from which the Opinion determined that the disclosure of those accounts supports an inference that donors used those accounts in sufficient volumes to support jurisdiction. That inference is unwarranted, to a degree that extends beyond reasonable inference from pleaded fact and amounts to pure speculation. The inference is particularly unsustainable with respect to the SAC allegation in ¶ 58 on which the Opinion especially relies (Op. at 9). That allegation identifies Sberbank's BNY Mellon account as the means for contributing dollars identified by a particular alleged DPR fundraiser, but the discovery that Plaintiffs obtained from BNY Mellon indicated that there was not a single transfer

to that alleged fundraiser (or to any other DPR Supporter named in the SAC) through the account before the MH17 crash. The other alleged solicitation identified in SAC ¶ 58 was on its face for a different organization from DPR, the Luhansk People's Republic. *See* Kiernan Decl. in Sup. of Mot. to Dismiss, Ex. 1 (ECF No. 167-1) (translating website).

The Opinion equally rests on speculation when it concludes that it is reasonable to infer from SAC allegations that "Sberbank routed U.S. Dollar denominated transactions to or on behalf of the DPR" that "some…were transferred using…Sberbank's services."[9] Allegations that Sberbank provided banking services to DPR Supporters located outside the United States does not support an inference that a jurisdictionally meaningful volume of transactions passed through New York correspondent accounts, and the allegation that a large total amount of alleged transfers came to DPR Supporters generally does not non-speculatively support a finding that the SAC sustainably pleads that those transfers came through Sberbank's New York correspondent accounts specifically. That inference is simply a guess, one not consistent with the evidence Plaintiffs found when they tested their assumptions about use of Sberbank correspondent accounts by taking discovery from two of the banks where Sberbank had correspondent accounts: Bank of America and BNY Mellon.

While the Opinion is correct in stating that a single transaction can be sufficient to support jurisdiction, Op. at 7, that is true only where the transaction is pivotal to the claim asserted. As fully explained in Sberbank's submissions, *see* Sberbank Reply Br. at 4-5 (ECF No.

---

[9]    Although the Opinion partially predicates this inference on the SAC's allegation that DPR "has raised millions of dollars through fundraising," the Opinion also recognizes that the SAC did not refer to "millions of dollars" as though dollars were the denomination of the funds raised, but only as an indicator of the value of the rubles they had raised." *See, e.g.*, Op. at 10; SAC ¶ 321 (alleging "Zhuchkovsky alone raised approximately 89 million rubles for the DPR, or roughly $2.5 million U.S. dollars in the months surrounding the attack on MH17"). The SAC makes no allegations that the alleged fundraising efforts raised "millions" of dollar-denominated contributions, let alone in contributions passing through the U.S.

175), no court has found personal jurisdiction over a bank based on transactions as small, as few in number, as trivial to the underlying claims and as passive as the transactions Plaintiffs have actually identified based on the results of their discovery.  The Opinion's ruling that the SAC alleges a *prima facie* case of personal jurisdiction over Sberbank should be reversed upon reconsideration.

<u>**CONCLUSION**</u>

For the foregoing reasons, Sberbank respectfully submits the Court should grant the motion for reconsideration and dismiss the SAC as to Sberbank with prejudice.

Dated: New York, New York
            November 15, 2021

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: */s/ John S. Kiernan*
            John S. Kiernan
            William H. Taft V
            jskiernan@debevoise.com
            whtaft@debevoise.com

            919 Third Avenue
            New York, New York 10022
            (212) 909-6000

WHITE & CASE LLP

            Nicole Erb
            Claire A. DeLelle
            Matthew S. Leddicotte*
            nerb@whitecase.com
            claire.delelle@whitecase.com
            mleddicotte@whitecase.com

            701 Thirteenth Street, NW
            Washington, D.C.  20005
            (202) 626-3600
            *admitted pro hac vice*

            *Counsel for Sberbank of Russia*