IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS SCHANSMAN, *et al.*, | Case No. 1:19-cv-02985-ALC-GWG |
| *Plaintiffs*, | Hon. Andrew L. Carter, Jr. |
| v. | ORAL ARGUMENT REQUESTED |
| SBERBANK OF RUSSIA, PJSC, *et al.*, | |
| *Defendants*. | |

**MEMORANDUM OF LAW IN SUPPORT OF SBERBANK'S
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION
<u>UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

December 30, 2021                    *Counsel for Sberbank of Russia*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ..............................................................................................................2

I.      SBERBANK IS AN "AGENCY OR INSTRUMENTALITY OF A FOREIGN
        STATE" AND THUS IS PRESUMPTIVELY ENTITLED TO FOREIGN
        SOVEREIGN IMMUNITY .......................................................................................3

        A.      Sberbank Was An Agency Or Instrumentality When Plaintiffs Filed Their
                Second Amended Complaint And Remains So Today ............................................3

        B.      Sberbank Is Presumptively Immune Regardless Of When It Acquired Its
                Status As An "Agency Or Instrumentality Of A Foreign State" ...........................5

                1.      The FSIA Accords Sberbank Immunity Because Sberbank Is An
                        Agency Or Instrumentality Of The Russian Federation ...........................5

                2.      The ATA Bars Claims Against Sberbank Regardless Of When
                        Sberbank Acquired Its "Agency Or Instrumentality" Status ...................10

                3.      Even If The "Time Of Filing" Rule Applies, It Must Be Applied
                        To The Facts As Alleged And As They Existed When The Second
                        Amended Complaint Was Filed ...............................................................11

        C.      Sberbank Was An Agency Or Instrumentality When Plaintiffs Filed Their
                Original Complaint .............................................................................................12

II.     NO EXCEPTION TO SBERBANK'S SOVEREIGN IMMUNITY APPLIES ...............18

        A.      Plaintiffs Cannot Establish Subject-Matter Jurisdiction Over Sberbank
                Under 28 U.S.C. § 1605B And 18 U.S.C. § 2337(2) ..........................................19

        B.      Plaintiffs Cannot Establish Subject-Matter Jurisdiction Over Sberbank
                Under The Commercial-Activity Exception ........................................................21

III.    THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE THAT THE
        COURT HAS PERSONAL JURISDICTION OVER SBERBANK AS AN
        AGENCY OR INSTRUMENTALITY OF A FOREIGN STATE ...................................23

CONCLUSION ...........................................................................................................24

# TABLE OF AUTHORITIES

## CASES

*Abdulaziz v. Metro Dade Cnty.*,
  741 F.2d 1328 (11th Cir. 1984) ............................................................................8

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989)..............................................................................................2

*Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*,
  298 F. Supp. 3d 631 (S.D.N.Y. 2018)................................................................19

*Atlantica Hldgs., Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
  813 F.3d 98 (2d Cir. 2016)..................................................................................21

*Banco Nacional de Cuba v. Sabbatino*,
  376 U.S. 398 (1964)..............................................................................................9

*Bartlett v. Société Générale de Banque au Liban SAL*,
  No. 19-cv-00007, 2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021),
  *appeal pending* Dkt. No. 21-2019 (2d Cir.)......................................................11

*Berg v. Kingdom of the Netherlands*,
  No. 2:18-cv-3123, 2020 WL 2829757 (D.S.C. Mar. 6, 2020)........................16, 18

*Boelens v. Redman Homes, Inc.*,
  759 F.2d 504 (5th Cir. 1985) ..............................................................................12

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017)..........................................................................2, 3, 7, 9, 18

*Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ*,
  9 F. Supp. 2d 331 (S.D.N.Y. 1998) .....................................................................5

*Carr v. United States*,
  560 U.S. 438 (2010)..............................................................................................6

*Chettri v. Nepal Rastra Bank*,
  834 F.3d 50 (2d Cir. 2016)..............................................................................3, 18

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
  527 U.S. 666 (1999)..............................................................................................8

*ConnectU LLC v. Zuckerberg*,
  522 F.3d 82 (1st Cir. 2008)................................................................................11

*Daou v. BLC Bank, S.A.L.*,
  No. 20-cv-4438, 2021 WL 1338772 (S.D.N.Y. Apr. 9, 2021) ...........................21

*De Csepel v. Republic of Hungary,*
 No. 1:10-cv-1261, 2020 WL 2343405 (D.D.C. May 11, 2020) .............................................15

*Dluhos v. Floating & Abandoned Vessel, Known as N.Y.,*
 162 F.3d 63 (2d Cir. 1998)..................................................................................................12

*Dole Food Co. v. Patrickson,*
 538 U.S. 468 (2003)...........................................................................................6, 7, 11

*Estate of Klieman v. Palestinian Auth.,*
 424 F. Supp. 2d 153 (D.D.C. 2006) ..........................................................................11

*Estates of Ungar ex rel. Strachman v. Palestinian Auth.,*
 315 F. Supp. 2d 164 (D.R.I. 2004)............................................................................11

*Garb v. Republic of Poland,*
 440 F.3d 579 (2d Cir. 2006)......................................................................5, 12, 13, 14, 17

*Gater Assets Ltd. v. Moldovagaz,*
 2 F.4th 42 (2d Cir. 2021) ........................................................................................23

*Gosain v. State Bank of India,*
 689 F. Supp. 2d 571 (S.D.N.Y. 2010)..........................................................................5

*GSS Grp. Ltd. v. Nat'l Port Auth.,*
 680 F.3d 805 (D.C. Cir. 2012) ..................................................................................23

*Gundy v. United States,*
 139 S. Ct. 2116 (2019)...............................................................................................6

*Gwaltney of Smithfield v. Chesapeake Bay Found.,*
 484 U.S. 49 (1987)......................................................................................................6

*Iowa Tribe v. Salazar,*
 607 F.3d 1225 (10th Cir. 2010) ..................................................................................9

*Jam v. Int'l Fin. Corp.,*
 139 S. Ct. 759 (2019)...............................................................................................7, 8

*Jam v. Int'l Fin. Corp.,*
 3 F.4th 405 (D.C. Cir. 2021) ....................................................................................22

*Kensington Int'l Ltd. v. Itoua,*
 505 F.3d 147 (2d Cir. 2007)......................................................................................21

*Knox v. PLO,*
 306 F. Supp. 2d 424 (S.D.N.Y. 2004).........................................................................11

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................... 9

*Lawton v. Republic of Iraq*,
    581 F. Supp. 2d 43 (D.D.C. 2008) ..................................................................... 20

*Lelchook v. Islamic Republic of Iran*,
    224 F. Supp. 3d 108 (D. Mass. 2016) ................................................................ 19

*Nichols v. United States*,
    578 U.S. 104 (2016) ............................................................................................... 6

*NML Capital Ltd. v. Space Expl. Techs. Corp.*,
    No. 14-cv-2262, 2015 WL 1334291 (C.D. Cal. Mar. 6, 2015) ......................... 14

*Nnaka v. Federal Republic of Nigeria*,
    238 F. Supp. 3d 17 (D.D.C. 2017) ..................................................................... 22

*O'Bryan v. Holy See*,
    566 F.3d 361 (6th Cir. 2009) ............................................................................... 7

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ......................................................................................... 21, 22

*Owasso Indep. Sch. Dist. No. I-011 v. Falvo*,
    534 U.S. 426 (2002) ............................................................................................. 10

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) ............................................................................. 4

*Republic of Argentina v. Weltover, Inc.*,
    504 U.S. 607 (1992) ............................................................................................. 17

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) .......................................................................................... 7, 9

*Republic of Iraq v. Beaty*,
    556 U.S. 848 (2009) ............................................................................................. 8

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) ............................................................................................. 12

*Roeder v. Islamic Republic of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ........................................................................... 14

*Rosner v. Bank of China*,
    528 F. Supp. 2d 419 (S.D.N.Y. 2007) ................................................................. 5

*S.K. Innovation, Inc. v. Finpol,*
  854 F. Supp. 2d 99 (D.D.C. 2012) ........................................................................4

*Saudi Arabia v. Nelson,*
  507 U.S. 349 (1993) ..........................................................................2, 3, 21, 22

*SerVaas Inc. v. Republic of Iraq,*
  653 F. App'x 22 (2d Cir. 2011) .........................................................................14

*Singh v. Caribbean Airlines Ltd.,*
  798 F.3d 1355 (11th Cir. 2015) .........................................................................17

*Sokolow v. PLO,*
  583 F. Supp. 2d 451 (S.D.N.Y. 2008) ..............................................................11

*Sosa v. Alvarez-Machain,*
  542 U.S. 692 (2004) ...........................................................................................22

*Taylor v. Kingdom of Sweden,*
  No. 18-cv-1133, 2019 WL 3536599 (D.D.C. Aug. 2, 2019) ......................14, 15

*Transaero, Inc. v. La Fuerza Aerea Boliviana,*
  30 F.3d 148 (D.C. Cir. 1994) ............................................................................13

*Ungar v. PLO,*
  402 F.3d 274 (1st Cir. 2005) .............................................................................10

*Vera v. Republic of Cuba,*
  867 F.3d 310 (2d Cir. 2017) ................................................................................3

*Verlinden B.V. v. Central Bank of Nigeria,*
  461 U.S. 480 (1983) ....................................................................................2, 6, 9

*Zschernig v. Miller,*
  389 U.S. 429 (1968) .............................................................................................9

*Zuza v. Off. of the High Representative,*
  857 F.3d 935 (D.C. Cir. 2017) .........................................................................8, 9

## STATUTES & RULES

Anti-Terrorism Act, 18 U.S.C. § 2331, *et seq.*

  18 U.S.C. § 2333 .............................................................................10, 11, 19, 20

  18 U.S.C. § 2337 ..............................................................................1, 2, 10, 19, 20

  18 U.S.C. § 2337(2) ..................................................................................... *passim*

Dictionary Act,
   1 U.S.C. § 1 ..................................................................................................6

Fed. R. Civ. P. 12(b)(1) ...................................................................................1, 2, 24

Fed. R. Civ. P. 12(h)(3) ...........................................................................................3

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602, *et seq.*

   28 U.S.C. § 1330(a) ...............................................................................2

   28 U.S.C. § 1331 .................................................................................11

   28 U.S.C. § 1603 .......................................................................1, 5, 6, 9

   28 U.S.C. § 1603(a) ...............................................................3, 10, 12, 13, 18

   28 U.S.C. § 1603(b) ...................................................................... *passim*

   28 U.S.C. § 1604 ................................................................................2, 10

   28 U.S.C. § 1605(a)(2) ..........................................................................21

   28 U.S.C. § 1605B .....................................................................1, 2, 19, 20

   28 U.S.C. § 1605B(b) .........................................................................19, 20

   28 U.S.C. § 1605B(c) .........................................................................19, 20

International Organizations Immunities Act,
   11 U.S.C. § 288 *et seq.*........................................................................7

Justice Against Sponsors of Terrorism Act,
   Pub. L. No. 114-222, 130 Stat. 852 (2016)...........................................19

**OTHER U.S. AUTHORITIES**

Black's Law Dictionary (10th ed. 2014)....................................................10

Gary Lutz & Diane Stevenson,
   Grammar Desk Reference (2005) .........................................................10

Merriam-Webster's Collegiate Dictionary (10th ed. 1999)........................10

**RUSSIAN LAW AUTHORITIES**

Constitution of the Russian Federation ....................................................15

Decision of the Supreme Court of the Russian Federation,
   No. GKPI02-860 (Oct. 29, 2002)..............................................................................15

Federal Law of the Russian Federation on the Central Bank of the
   Russian Federation (Bank of Russia) SZ RF 2002, No. 86 ........................................15, 17, 18

Civil Code of the Russian Federation, Art. 48(4) ........................................................17

Pursuant to this Court's Order (ECF No. 247), Defendant Sberbank of Russia submits this memorandum in support of its motion to dismiss the Second Amended Complaint ("SAC") under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act and the Anti-Terrorism Act.

## PRELIMINARY STATEMENT

As a financial institution directly and majority-owned by the Ministry of Finance of the Russian Federation, Sberbank is an "agency or instrumentality of a foreign state" within the meaning of § 1603 of the Foreign Sovereign Immunities Act ("FSIA"). Sberbank has held this status since at least April 30, 2020, when the Ministry of Finance of the Russian Federation acquired direct majority ownership of Sberbank. Even before this ownership change, Sberbank was directly and majority-owned by the Bank of Russia, a "political subdivision" of the Russian Federation within the meaning of § 1603 of the FSIA. Therefore, Sberbank is, and has been at all times relevant to this action, an "agency or instrumentality of a foreign state" under the FSIA.

As an agency or instrumentality of the Russian Federation, Sberbank generally enjoys presumptive immunity from jurisdiction and suit in U.S. courts under the FSIA, subject to certain enumerated statutory exceptions. With respect to claims under the Anti-Terrorism Act ("ATA"), the ATA itself bars claims against foreign states and their agencies or instrumentalities, subject to the exception to sovereign immunity set forth in § 1605B of the FSIA. Because the requirements of § 1605B are not satisfied here, and no other FSIA exception to immunity is available or applies in this case, this Court lacks subject-matter jurisdiction over the claims against Sberbank in this action.

Specifically, 18 U.S.C. § 2337 provides that "no action" under the ATA "shall be maintained" against a foreign state. As the SAC alleges claims exclusively under the ATA, and a

"foreign state" as used in § 2337(2) includes its agencies and instrumentalities, § 2337 raises an insuperable barrier to Plaintiffs' claims against Sberbank. The only available exception to sovereign immunity is the one set forth in § 1605B of the FSIA, which was enacted in 2016 and lifts the bar on ATA claims against foreign states in certain limited circumstances. *See* 28 U.S.C. § 1605B; 18 U.S.C. § 2337(2). But this exception does not apply here because neither the physical injuries or deaths caused by the alleged downing of Malaysia Airlines Flight 17, nor the alleged act of international terrorism asserted to have caused those injuries, occurred in the United States. None of the FSIA's other exceptions is available or applies here.

Accordingly, this action should be dismissed with prejudice as to Sberbank pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction under the FSIA. Because the Court lacks subject-matter jurisdiction under the FSIA, the Court also lacks personal jurisdiction under the FSIA. *See* 28 U.S.C. § 1330(b).

## ARGUMENT

The FSIA provides the "sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989); *see* 28 U.S.C. §§ 1330(a), 1604. Under the FSIA, a foreign state, its political subdivisions, and its agencies and instrumentalities are "presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)); *see also Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1320 (2017) (stating the FSIA "starts from a premise of immunity and then creates exceptions to the general principle" (citation omitted)). Where the defendant establishes a *prima facie* case that it is a

foreign state within the meaning of the FSIA, the "plaintiff must then demonstrate" that the defendant "lacks immunity due to an FSIA exception." *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 55 (2d Cir. 2016) (citation omitted).  Courts must resolve this question of subject-matter jurisdiction and "reach a decision about immunity as near to the outset of the case as is reasonably possible." *Helmerich*, 137 S. Ct. at 1317; *see also Vera v. Republic of Cuba*, 867 F.3d 310, 316 (2d Cir. 2017) ("Federal courts may not proceed at all" without subject-matter jurisdiction); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## I.    SBERBANK IS AN "AGENCY OR INSTRUMENTALITY OF A FOREIGN STATE" AND THUS IS PRESUMPTIVELY ENTITLED TO FOREIGN SOVEREIGN IMMUNITY

By virtue of its direct majority ownership by a "foreign state or political subdivision thereof," Sberbank is an "agency or instrumentality of a foreign state" within the meaning of § 1603(a) and (b) of the FSIA.  As such, Sberbank is presumptively immune from jurisdiction and suit in this case.  *Nelson*, 507 U.S. at 355.

### A.    Sberbank Was An Agency Or Instrumentality When Plaintiffs Filed Their Second Amended Complaint And Remains So Today

Under § 1603(a) of the FSIA, a "foreign state" includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)."  28 U.S.C. § 1603(a).  Under § 1603(b),

An "agency or instrumentality of a foreign state" means any entity—

(1) which is a separate legal person, corporate or otherwise, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in [28 U.S.C. § 1332(c) and (e)], nor created under the laws of any third country.

*Id.* at § 1603(b).  As alleged in the SAC, and as established in the Declaration of Oleg Tsvetkov ("Tsvetkov Decl."), the Corporate Secretary and Head of the Corporate Secretary Service of Sberbank, Sberbank plainly satisfies the FSIA's definition of "agency or instrumentality of a foreign state."

The SAC repeatedly alleges that Sberbank is majority-owned by "the Government of the Russian Federation."  *See* SAC ¶ 37 ("[T]he Government of the Russian Federation . . . owns 51% of the bank."), ¶ 363 ("At all relevant times, Defendant[] Sberbank . . . [was] owned by the Government of the Russian Federation."); *see also id.* ¶ 33 ("Defendant Sberbank is a Russian state-owned banking institution").  These allegations in the operative complaint in this case are sufficient to demonstrate a *prima facie* case that Sberbank is an agency or instrumentality of the Russian Federation entitled to presumptive immunity under the FSIA and the ATA.  *See, e.g.*, *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124-25 (9th Cir. 2010) (finding that a defendant is a foreign state within the meaning of the FSIA "if it is apparent from the pleadings"); *S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 107-08 (D.D.C. 2012) (reviewing plaintiffs' allegations to conclude defendants qualified as foreign states under the FSIA).

The Tsvetkov Declaration further establishes that on April 30, 2020, the Ministry of Finance of the Russian Federation acquired "a 50% plus one share stake of Sberbank's total authorized capital" from the Bank of Russia.  Tsvetkov Decl. ¶ 7; *see also id.* ¶¶ 7-8 (explaining the Ministry's share amounts to "52.32% of all voting Sberbank shares" and that the Ministry "does not own any preferred Sberbank shares"); *id.* Ex. C (Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at 30 April 2020); *id.* Ex. D (excerpt from Sberbank's 2020 Annual Report).  Since April 30, 2020 through today, "the Ministry of Finance directly owns a 50% plus one stake of Sberbank's total

authorized capital."  Tsvetkov Decl. ¶ 11; *see also id.* Ex. E (Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at 27 December 2021).

The Ministry of Finance forms part of the Russian state for purposes of the FSIA.  *See Garb v. Republic of Poland*, 440 F.3d 579, 596 n.21 (2d Cir. 2006) (collecting "case law holding that departments or ministries of a central government qualify as 'political subdivisions of a foreign state' under FSIA").  This Court has repeatedly held that a bank that is directly, majority-owned by a foreign state is an "agency or instrumentality" of that foreign state within the meaning of the FSIA.  *See, e.g.*, *Gosain v. State Bank of India*, 689 F. Supp. 2d 571, 579 (S.D.N.Y. 2010) (bank majority-owned by India), *vacated in part on other grounds*, 414 F. App'x 311, 314-15 (2d Cir. 2011); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 424 (S.D.N.Y. 2007) (bank majority-owned by China); *Brenntag Int'l Chems., Inc. v. Norddeutsche Landesbank GZ*, 9 F. Supp. 2d 331, 333 & n.1 (S.D.N.Y. 1998) (bank majority-owned by India).  Thus, Sberbank was an agency or instrumentality of a foreign state before and at the time the SAC was filed on October 5, 2020, and Sberbank remains an agency or instrumentality of a foreign state today.  As such, Sberbank is entitled to presumptive immunity from jurisdiction and suit under the FSIA and Section 2337(2) of the ATA in this case.

### B.    Sberbank Is Presumptively Immune Regardless Of When It Acquired Its Status As An "Agency Or Instrumentality Of A Foreign State"

#### 1.    The FSIA Accords Sberbank Immunity Because Sberbank Is An Agency Or Instrumentality Of The Russian Federation

An agency or instrumentality of a foreign state must be accorded presumptive sovereign immunity under the FSIA, even if it acquires that status during the course of a pending litigation. Section 1603's express use of the present tense compels this conclusion.  Subsections 1603(b)(1), (2), and (3) each use the present-tense phrase "which *is*" to describe the conditions an entity must

satisfy for purposes of "agency or instrumentality" status.  28 U.S.C. § 1603(b) (emphasis added).

The Supreme Court has repeatedly "looked to Congress' choice of verb tense to ascertain a statute's temporal reach."  *Gundy v. United States*, 139 S. Ct. 2116, 2127 (2019) (quotation omitted); *see also Carr v. United States*, 560 U.S. 438, 448 (2010)) (observing the Dictionary Act provides that, "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] . . . words used in the present tense include the future as well as the present" (quoting 1 U.S.C. § 1)); *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 59 (1987) (stating that one of "the most striking indicia of the prospective orientation of [a statute] is the pervasive use of the present tense" throughout the relevant provision); *see also Nichols v. United States*, 578 U.S. 104, 109-10 (2016) (finding that the statute's use of present tense precluded its application to defendant to whom the present-tense requirements no longer applied).  Therefore, by its terms, § 1603 requires that "agency or instrumentality" status be established in the present and not be fixed at any earlier point in time.

The Supreme Court's decision in *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003), underscores the significance of the use of the present tense in § 1603(b).  In *Dole*, the Supreme Court examined "whether a corporation's instrumentality status is defined as of the time an alleged tort or other actionable wrong occurred or, on the other hand, at the time suit is filed."  *Id.* at 471. The *Dole* Court construed § 1603(b) "so that *the present tense has real significance*."  *Id.* at 478 (holding corporation's "agency or instrumentality" status is not tied to the time the alleged wrong occurred, but rather to the present when the action was commenced) (emphasis added).  The Supreme Court reasoned that the FSIA was intended "to give foreign states and their instrumentalities some protection from the inconvenience of suit as a gesture of comity between the United States and other sovereigns."  *Id.* at 479 (citing *Verlinden*, 461 U.S. at 486)); *see also*

*Helmerich*, 137 S. Ct. at 1319 (explaining that the FSIA and sovereign immunity are grounded in principles of international comity and respect for "the independence and dignity" of states). Thus, in cases in which a defendant becomes an agency or instrumentality of a foreign state during the pendency of litigation, both the text of the FSIA and the rationale underlying foreign sovereign immunity require recognition of that defendant's presumptive immunity to avoid subjecting a foreign state to the burdens of litigation.

The Supreme Court in *Republic of Austria v. Altmann*, 541 U.S. 677 (2004), echoed *Dole*'s focus on the importance of the use of the present tense in the FSIA—in that case when determining whether the FSIA applies retroactively to pre-enactment conduct. The *Altmann* Court stressed the fluid nature of foreign sovereign immunity, stating that "the principal purpose of [immunity] has never been to permit foreign states and their instrumentalities to shape their conduct in reliance on the promise of future immunity from suit in United States courts." *Id.* at 696. "Rather," the Court continued, "such immunity reflects current political realities and relationships, and aims to give foreign states and their instrumentalities some *present* 'protection from the inconvenience of suit as a gesture of comity.'" *Id.* (quoting *Dole*, 538 U.S. at 479); *see also O'Bryan v. Holy See*, 556 F.3d 361, 372 n.3 (6th Cir. 2009) (extending foreign sovereign immunity "even to prior conduct" by the foreign state because "the purpose of FSIA is to grant immunity based on the current relationship between the United States and the relevant foreign sovereign").

In a similar vein, the Supreme Court in *Jam v. Int'l Fin. Corp.*, 139 S. Ct. 759, 768 (2019), interpreted the present-tense phrase "as is enjoyed" in the International Organizations Immunities Act ("IOIA"), 11 U.S.C. § 288 *et seq.*, to require a continuing analysis of the present state of that immunity, while noting that immunity under the IOIA is "continuously link[ed]" to the immunity of foreign states under the FSIA. *See* 139 S. Ct. at 772 ("The International Organizations

Immunities Act grants international organizations the 'same immunity' from suit *'as is enjoyed by foreign governments' at any given time*. Today that means that the Foreign Sovereign Immunities Act governs the immunity of international organizations." (emphasis added)). *Jam* therefore suggests that under the FSIA, too, an evolving analysis of the present state of an entity's immunity is required.

Consistent with the Supreme Court's rationale in *Dole* and *Jam*, courts have recognized the importance of assessing immunity in circumstances that changed during the pendency of litigation. In *Republic of Iraq v. Beaty*, 556 U.S. 848 (2009), the Supreme Court unanimously held that "the District Court lost jurisdiction over" two suits that were pending against Iraq when the President exercised his statutory authority to make a terrorism-related FSIA exception to immunity (then codified at 28 U.S.C. § 1605(a)(7)) inapplicable so that Iraq's immunity "kicked back in." *Id.* at 865. Similarly, in *Zuza v. Off. of the High Representative*, 857 F.3d 935 (D.C. Cir. 2017), the D.C. Circuit held that "the district court lacked subject matter jurisdiction" over two officials of an international organization "regardless of the date [their] immunity vested." *Id.* at 938. The court reasoned that the IOIA's statutory immunity for international organizations shields defendants "from the burden of defending themselves" and thus "does not operate only at a lawsuit's outset; it compels prompt dismissal even when it attaches mid-litigation." *Id.*

Indeed, the D.C. Circuit remarked that its holding in *Zuza*—that dismissal is required even when immunity attaches mid-litigation—"is not [] anomalous." *Id.* ("Courts have found that other forms of immunity acquired *pendente lite* mandate dismissal of a validly commenced lawsuit.") (citing *Abdulaziz v. Metro Dade Cnty.*, 741 F.2d 1328, 1329-30 (11th Cir. 1984)); *see also College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999) ("We have even held that a State may, absent any contractual commitment to the contrary, alter the conditions

of its waiver and apply those changes to a pending suit."); *Iowa Tribe v. Salazar*, 607 F.3d 1225, 1236 (10th Cir. 2010) ("[W]e cannot endorse a rule that freezes [tribal] sovereign immunity status at the time a complaint is filed."). The D.C. Circuit reasoned that this conclusion "makes sense" because "[f]ederal courts are tribunals of 'limited jurisdiction,' possessing 'only that power authorized by Constitution and statute[.]'" *Zuza*, 857 F.3d at 938 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Accordingly, when "intervening events deprive a court of its adjudicative authority," as is the case with respect to Sberbank here, "the litigation must end." *Id.*

Common to each of the examples addressed above is the rationale that actions against foreign states in U.S. courts "raise sensitive issues concerning the foreign relations of the United States." *Verlinden*, 461 U.S. at 493 (citing *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423-25 (1964) & *Zschernig v. Miller*, 389 U.S. 429, 440-41 (1968)). Denying sovereign immunity to an entity that gained "agency or instrumentality" status in the middle of litigation therefore undermines the "international comity" the FSIA was intended to promote. *See Helmerich*, 137 S. Ct. at 1319 (explaining that the FSIA and sovereign immunity generally "recognize[] the absolute independence of every sovereign authority and help[] to induc[e] each nation state, as a matter of international comity, to respect the independence and dignity of every other" (citation omitted)). Construing the FSIA to disregard Sberbank's present and uncontested sovereign status would run directly counter to the important policy objectives underlying sovereign immunity. Because Sberbank currently is an "agency or instrumentality of a foreign state" within the meaning of § 1603, and because Congress intended immunity determinations under the FSIA to "reflect[] current political realities and relationships," *Altmann*, 541 U.S. at 696, Sberbank is entitled to presumptive FSIA immunity from jurisdiction and suit in this action.

**2.    The ATA Bars Claims Against Sberbank Regardless Of When Sberbank Acquired Its "Agency Or Instrumentality" Status**

The ATA contains an express bar against maintaining an ATA action against a foreign state as defined in the FSIA: "No action *shall be maintained* under section 2333 of this title against— . . . (2) a foreign state [or] an agency of a foreign state . . . ." 18 U.S.C. § 2337 (emphasis added). The statutory language—"shall be maintained"—requires an ongoing assessment of the defendant's "agency or instrumentality" status throughout the case and underscores the correctness of a present-tense interpretation of § 1603(b). Section 2337 thus requires dismissal of Plaintiffs' claims against Sberbank, because this ATA action cannot "be maintained" against Sberbank.

The plain meaning of the verb "maintain" is "to continue (something)." Black's Law Dictionary (10th ed. 2014); *see also* Merriam-Webster's Collegiate Dictionary (10th ed. 1999) ("Maintain" – "to keep in an existing state"). The Supreme Court agrees. *See Owasso Indep. Sch. Dist. No. I-011 v. Falvo*, 534 U.S. 426, 433 (2002) (citing dictionary for the proposition that "[t]he ordinary meaning of the word 'maintain' is to keep in existence or continuance; preserve; retain"); *see also* Gary Lutz & Diane Stevenson, Grammar Desk Reference 24 (2005) (noting "shall can substitute for will" to indicate future tense).

Thus, if an entity becomes an "agency or instrumentality of a foreign state" in the course of an ATA action, § 2337(2) bars such action from continuing against that entity. The fact that § 2337 refers to "a foreign state [or] an agency of a foreign state" but does not expressly mention "instrumentalities" is immaterial. Under the FSIA a foreign state "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). For purposes of determining the scope of immunity, the ATA and the FSIA should "be read *in pari materia*" because § 2337(2) is "functionally equivalent to an assertion of sovereign immunity under the FSIA, 28 U.S.C. § 1604." *Ungar v. PLO*, 402 F.3d 274, 282, 283 (1st Cir. 2005); *see*

*also Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 158 (D.D.C. 2006) (reaching same conclusion that "an assertion of sovereign immunity under Section 2337(2) of the ATA is the functional equivalent of an assertion of sovereign immunity under [the FSIA]"); *Sokolow v. PLO*, 583 F. Supp. 2d 451, 457 (S.D.N.Y. 2008) (applying FSIA's definition of "foreign state" in an ATA action); *Estates of Ungar ex rel. Strachman v. Palestinian Auth.*, 315 F. Supp. 2d 164, 176 (D.R.I. 2004) (relying on FSIA definition of "foreign state" to determine immunity from ATA suit under § 2337); *Knox v. PLO*, 306 F. Supp. 2d 424, 430 (S.D.N.Y. 2004) (same).

3.    **Even If The "Time Of Filing" Rule Applies, It Must Be Applied To The Facts As Alleged And As They Existed When The Second Amended Complaint Was Filed**

Some courts have mechanically applied the Supreme Court's holding in *Dole*—that "agency or instrumentality" status should be determined at the time of filing of the complaint (instead of at the earlier time that the wrongful conduct occurred)—to post-complaint changes in status. *See, e.g.*, *Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-cv-00007, 2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021), *appeal pending* Dkt. No. 21-2019 (2d Cir.). But those cases overlook that *Dole* did not consider post-filing changes to status and that *Dole* was a removal case, in which the "time of filing" rule imported from the diversity-jurisdiction context is more readily deemed to apply. *See ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 92 & n.8 (1st Cir. 2008) ("The only consistent use of the time-of-filing rule in federal question cases occurs in the area of removal.").

This case is clearly not based in either the diversity-jurisdiction or the removal contexts. Here, the SAC invokes federal-question jurisdiction. *See* SAC ¶ 24 ("This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2333(a) . . . ."). Accordingly, if this Court is to look at the time of filing of a complaint at all, it must look to the SAC, rather than fixing the analysis on the original complaint which has been superseded. *See*

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (assessing subject-matter jurisdiction on the basis of allegations in an amended complaint and pre-trial order, and stating, "When a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction"); *Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*, 162 F.3d 63, 68 (2d Cir. 1998) (in determining jurisdiction "it is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect") (citing cases). Thus, if the Court looks to the time of filing of a complaint, the Court must assess Sberbank's entitlement to presumptive immunity based on the facts as they stand at the time of the operative complaint, at which point Sberbank was alleged to be—and plainly was—an agency or instrumentality of the Russian Federation. Indeed, in a case relied upon by the Supreme Court in *Rockwell*, the Fifth Circuit held: "Our conclusion that we must look to the amended complaint in assessing original federal question jurisdiction is consistent with the general rule that an amended complaint ordinarily supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (collecting cases).

### C. Sberbank Was An Agency Or Instrumentality When Plaintiffs Filed Their Original Complaint

Even if the time-of-filing rule applied to Sberbank's status as of the time of the original complaint, Sberbank was an "agency or instrumentality" of the Russian Federation by virtue of its direct majority ownership by the Central Bank of the Russian Federation (or "Bank of Russia"), a "political subdivision" within the meaning of § 1603(a) and under the Second Circuit's "core functions" test in *Garb*, 440 F.3d at 594.

Plaintiffs filed the original complaint on April 4, 2019. *See* Compl., ECF No. 1. At that time, Sberbank was directly, majority-owned by the Bank of Russia. *See* Tsvetkov Decl. ¶¶ 3-4

("As of 4 April 2019 . . . the Bank of Russia (also called the Central Bank of Russia) owned a 50% plus one share stake of Sberbank's total authorized capital."); *id.* Decl. Ex. A (Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at 4 April 2019); *id.* Ex. B (excerpt from Sberbank's 2019 Annual Report).

Section 1603(b)(2) provides, in relevant part, that an "agency or instrumentality" is an entity "a majority of whose shares . . . [are] owned by a foreign state or political subdivision thereof." Plaintiffs do not dispute that, at the time of the original complaint, "the Government of the Russian Federation . . . own[ed] 51% of [Sberbank]." Compl. ¶ 31. Significantly, Plaintiffs do not name the "Central Bank of the Russian Federation" or the "Bank of Russia" but instead use the general term "Government of the Russian Federation" as regards Sberbank's ownership, suggesting that the Bank of Russia is part of the Russian Federation. *Id.* Indeed, Plaintiffs' own characterization fits with the Bank of Russia's status and functions under Russian law. As demonstrated below, and supported by the Declaration of Professor Lyudmila Georgievna Efimova ("Efimova Decl."), the Bank of Russia exercises predominantly governmental functions and thus is a "political subdivision" of the Russian Federation itself under § 1603(a). Sberbank is therefore entitled to the presumption of sovereign immunity as an "agency or instrumentality" of a "political subdivision" by virtue of its ownership structure on the day that Plaintiffs filed the original complaint.

Courts in the Second Circuit apply the so-called "core functions" test to determine whether an entity constitutes a "political subdivision." *Garb*, 440 F.3d at 594. Specifically, courts "inquire 'whether the core functions' of the [entity] 'are predominantly governmental or commercial'" in nature. *Id.* (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994)). "If an entity's core functions are predominantly governmental, then it is a political

subdivision.  If the entity's core functions are predominantly commercial, then it is an agency or instrumentality." *NML Capital Ltd. v. Space Expl. Techs. Corp.*, No. 14-cv-2262, 2015 WL 1334291, at *5 (C.D. Cal. Mar. 6, 2015) (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003)).  The "core functions" inquiry typically considers the entity's status under the foreign jurisdiction's law and whether the entity's primary functions are "quintessentially governmental." *SerVaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 25 (2d Cir. 2011) (finding that a "regulatory function" was "quintessentially governmental"); *see also Garb*, 440 F.3d at 595 (entity's management of state-owned assets supported finding that its "core function" was "indisputably governmental").

Courts have found that a variety of entities qualify as "political subdivisions" within the meaning of the FSIA under the "core functions" test.  *See, e.g., SerVaas Inc.*, 653 F. App'x at 25 ("regulatory function" of Iraqi Ministry of Industry was governmental in nature); *Garb*, 440 F.3d at 595 (Polish Ministry of Treasury's management of state-owned property supported finding of "political subdivision"); *Taylor v. Kingdom of Sweden*, No. 18-cv-1133, 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019) (Swedish national museums were "closely bound up with the structure of the [sovereign itself]") (quotations and citation omitted); *NML Capital*, 2015 WL 1334391, at *6 (Argentinian space exploration agency's "focus [was] directed toward government objectives").

Here, the Bank of Russia's status and primary functions under Russian law support a finding that the Bank of Russia is a "political subdivision" under the FSIA.  The Bank of Russia formulates economic policy in coordination with other branches of government and possesses wide regulatory authority, including the issuance of legal normative acts and the imposition of administrative fines.  Efimova Decl. ¶¶ 8-13, 40.

The Bank of Russia's core functions are set forth in Chapter 3 ("The Federal Structure") of the Constitution of the Russian Federation. *Id.* ¶ 5. Specifically, Article 75 of the Constitution of the Russian Federation establishes that the Bank of Russia's primary functions are to issue currency and to ensure the stability of the Russian ruble, and to do so "independently from *other* state power bodies." Efimova Decl. ¶ 6 (quoting Article 75(2) of the Constitution of the Russian Federation (emphasis added)). As Professor Efimova explains, the Bank of Russia maintains the same level within the Russian constitutional structure as other governmental bodies. *Id.* ¶ 16.

The Supreme Court of the Russian Federation further establishes that the Bank of Russia has a "distinctive legal status" that allows it to "exercise[], among other things, the state power functions, and is entrusted with certain authority powers." *Id.* ¶ 44 (citing Decision of the Supreme Court of the Russian Federation, No. GKPI02-860 (Oct. 29, 2002)). *Compare Taylor*, 2019 WL 3536599, at *3 ("political subdivision" national museums were "created by Act of Swedish Parliament") *with De Csepel v. Republic of Hungary*, No. 1:10-cv-1261, 2020 WL 2343405, at *8 (D.D.C. May 11, 2020) ("joint-stock company" was "outside of the hierarchy of the Hungarian government [because it is] considered a company").

As regards accountability, the Bank of Russia, unlike a commercial enterprise, does not answer to shareholders (it has no shareholders). Rather, the Bank of Russia operates under the aegis of the legislative and executive branches of the Russian Government. Specifically, in accordance with the Law on the Bank of Russia ("Bank Law"), the Bank of Russia is accountable to the State in several ways, including to the State Duma of the Russian Federation (the lower house of parliament). Efimova Decl. ¶¶ 33-36. Among other oversight functions, the State Duma (1) appoints and holds the power to dismiss the Governor of the Bank of Russia and members of the Board of Directors; (2) sits directly (via three representatives) on the Bank of Russia's National

Financial Board, a supervisory body that approves the Bank of Russia's annual report and budget, and participates in the formulation of the Bank of Russia's policies; and (3) hears and makes decisions upon reports by the Bank of Russia's Governor.  *Id.* ¶¶ 34, 37-40.  Likewise, the President of the Russian Federation and the Government of the Russian Federation also participate, through three representatives, respectively, in the National Financial Board.  *Id.* ¶¶ 35-37; *see also Berg v. Kingdom of the Netherlands*, No. 2:18-cv-3123, 2020 WL 2829757, at *7 (D.S.C. Mar. 6, 2020) (holding that the fact that entity reported to prime minister rather than board of directors supported a "political subdivision" finding).

Consistent with the Bank of Russia's status within the federal structure of the Russian Federation, the Bank of Russia's primary activities are quintessentially governmental in nature. The Bank of Russia conducts a wide variety of governmental functions, including:  ensuring the stability of the Russian financial market, regulating the Russian banking and financial sectors, managing the Russian Government's currency and gold reserves, setting the exchange rate of foreign currencies against the ruble, and compiling various official statistics used in the formulation and public communication of Russian economic policy.  Efimova Decl. ¶ 8.

Significantly, as mentioned above, the Bank of Russia issues normative legal acts (*e.g.*, ordinances, regulations, and instructions) and imposes administrative fines and penalties pursuant to its regulatory authority.  *Id.* ¶¶ 9-13.  As stated by the Constitutional Court of the Russian Federation, such "powers by their legal nature belong to state power functions, because their exercis[e] involves the application of measures of state coercion."  *Id.* ¶ 42 & n.12 (citing decision of the Constitutional Court of the Russian Federation).  As Professor Efimova notes, the Bank of Russia's "significant number of additional functions which are inherent to executive power bodies," render it as such within the Russian Government.  *Id.* ¶ 15; *see also id.* ¶ 42 ("[T]he Bank

of Russia is a state governance body that exercises the executive power of the State in the manner in which it functions.").

Even though the Bank of Russia engages in some activities (*e.g.*, providing loans) that resemble those of a normal commercial bank, there are multiple crucial differences between the Bank of Russia and ordinary commercial banks, illustrating that the Bank of Russia is not merely "a private player within [the market]." *Republic of Argentina v. Weltover*, 504 U.S. 607, 614 (1992).

First, Article 48(4) of the Civil Code of the Russian Federation expressly provides that, unlike other legal persons, the Bank of Russia's "legal position . . . shall be determined by the Constitution of the Russian Federation and the Law on the Central Bank of the Russian Federation." *See* Efimova Decl. ¶¶ 17 & Ex. 4; *Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1359-60 (11th Cir. 2015) (finding that entity's exclusion from law governing private companies "weigh[ed] in favor of governmental status and against commercial status").

Second, the Bank of Russia has "limited rights . . . to engage in banking activities." Efimova Decl. ¶ 30.  For example, the Bank of Russia may extend unsecured loans only "for a period of no more than one year." *Id.* ¶ 31.  And, as a general matter, only credit organizations and the Government of the Russian Federation may be the Bank of Russia's clients. *Id.* ¶ 30.

Third, the Bank of Russia possesses limited rights in property.  For example, "the charter capital and other property of the Bank of Russia shall be in federal ownership," and the Bank of Russia may only use and dispose of the property allocated to it pursuant to the Bank Law or other federal law. *Id.* ¶ 18 (quoting Article 2 of the Bank Law); *see also Garb*, 440 F.3d at 594-98 (finding that the "core function" of the Polish Ministry of the Treasury—"to hold and administer the property of the Polish state—is indisputably governmental") (citation omitted).

–17–

Lastly, Article 3 of the Bank Law expressly states that "deriving profit shall not be the purpose of the Bank of Russia." Efimova Decl. ¶ 32 (quoting Article 3 of the Bank Law); *see also Berg*, 2020 WL 2829757, at *7 (concluding that entity was a "political subdivision," and reasoning that "[w]hile the [entity] may engage in some commercial transactions, there is no evidence that the commercial transactions occur for the purpose of individual profit, but rather for a civic and political purpose"). Indeed, as Professor Efimova explains, this means that "banking operations and transactions performed by the Bank of Russia are auxiliary to performing the public-law functions [of] the Bank of Russia." Efimova Decl. ¶ 32.

In sum, because the Bank of Russia's "core functions" are predominantly governmental in nature, the Bank of Russia constitutes a "political subdivision" under 1603(a). Accordingly, Sberbank was an "agency or instrumentality" at the time of the original complaint, and is thereby entitled to the presumption of sovereign immunity under § 1603(b)'s "political subdivision" prong.

## II.    NO EXCEPTION TO SBERBANK'S SOVEREIGN IMMUNITY APPLIES

Where the defendant establishes a *prima facie* case that it is a foreign state, as Sberbank has above, the burden shifts to the plaintiff to show that the foreign state lacks immunity under an FSIA exception. *See, e.g.*, *Chettri*, 834 F.3d at 55 (affirming district court's lack of subject-matter jurisdiction over foreign sovereign defendants where plaintiffs failed to plead any exception); *see also Helmerich*, 137 S. Ct. at 1324 (holding that subject-matter jurisdiction exists under the FSIA "only if [plaintiffs] do show (and not just arguably show)" that an exception applies). Here, Plaintiffs cannot show that any exception to Sberbank's FSIA immunity applies.

**A.    Plaintiffs Cannot Establish Subject-Matter Jurisdiction Over Sberbank Under 28 U.S.C. § 1605B And 18 U.S.C. § 2337(2)**

The SAC alleges only ATA claims.  SAC ¶¶ 15, 23, 400-19.  As discussed above, the ATA expressly bars claims against foreign states.  18 U.S.C. § 2337(2) ("No action shall be maintained under section 2333 of this title against . . . a foreign state [or] an agency of a foreign state.").

In 2016, Congress enacted the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 852 ("JASTA"), which contained certain amendments to the FSIA and the ATA. Relevant here, JASTA created a new exception to sovereign immunity that lifts the bar on ATA claims against foreign states in certain limited circumstances.  *See* 28 U.S.C. § 1605B.  As this Court recognized, the enactment of § 1605B as part of JASTA:

> permits United States nationals to assert claims against foreign states under the ATA, provided that the requirements of its newly-created FSIA exception are otherwise met.  *See* 28 U.S.C. § 1605B(c).  Pre-JASTA, the ATA had explicitly barred claims brought thereunder from being asserted against foreign states.  *See* 18 U.S.C. § 2337.

*Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*, 298 F. Supp. 3d 631, 642 & n.6 (S.D.N.Y. 2018) (citing 28 U.S.C. § 1605B(b) and (c)); *see also Lelchook v. Islamic Republic of Iran*, 224 F. Supp. 3d 108, 113 n.1 (D. Mass. 2016) ("JASTA amends the Foreign Sovereign Immunities Act to allow suits under the ATA against foreign states" (citation omitted)).

Section 1605B(b) waives sovereign immunity in cases against foreign states involving, among other things,

> physical injury to person or property or death *occurring in the United States* caused by — (1) an act of international terrorism *in the United States*; and (2) a tortious act or acts of the foreign state, or of any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment, or agency, regardless where the tortious act or acts of the foreign state occurred.

28 U.S.C. § 1605B(b) (emphases added).  And § 1605B(c) provides:

> Notwithstanding section 2337(2) of title 18, a national of the United
> States may bring a claim against a foreign state in accordance with
> section 2333 of that title *if the foreign state would not be immune
> under subsection (b)*.

*Id.* § 1605B(c) (emphasis added).  In other words, under § 1605B(b) and (c), courts lack subject-matter jurisdiction over ATA claims brought against a foreign state or an agency or instrumentality of a foreign state *unless* (among other things) *both* the alleged act of international terrorism *and* the physical injuries or deaths such act allegedly caused occur within the United States.

Section 1605B(b) and § 2337(2)'s exception to foreign sovereign immunity plainly does not apply against Sberbank here, because the death and physical injuries alleged in the SAC did not occur in the United States.  *See* SAC ¶¶ 1, 75 (acknowledging that Quinn Schansman's death occurred in eastern Ukraine).  Because § 2337 bars all claims under the ATA, except for the limited exception provided by the JASTA amendment enacted as § 1605B, no other FSIA exception to sovereign immunity is available for ATA claims or even purports to lift the bar on ATA claims against foreign states.  *See Lawton v. Republic of Iraq*, 581 F. Supp. 2d 43, 45 (D.D.C. 2008) (granting motion to dismiss pre-JASTA ATA claim against Republic of Iraq and rejecting argument that "once a[n] FSIA exception is established, the ATA exemption [§ 2337] is overcome and the ATA becomes available as a basis for pursuing claims against a foreign state" (quotations and alterations omitted)).  JASTA articulates very narrow requirements for permissible ATA claims against foreign states (28 U.S.C. §§ 1605B(b), (c)); nowhere does JASTA suggest that § 2337's categorical bar on ATA claims against foreign states is subject to the other FSIA exceptions to sovereign immunity.

Because no exception to Sberbank's sovereign immunity applies, the Court lacks subject-matter jurisdiction over the ATA claims against Sberbank in this action.

### B.  Plaintiffs Cannot Establish Subject-Matter Jurisdiction Over Sberbank Under The Commercial-Activity Exception

Even if the FSIA's other exceptions to sovereign immunity were available to abrogate Sberbank's sovereign immunity from Plaintiffs' ATA claims, the SAC neither references them nor pleads any of them successfully.  Indeed, the allegations in the SAC *preclude* application of the commercial-activity exception here.

The commercial-activity exception of the FSIA applies where a plaintiff can establish that its action is "based upon" either (1) "commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside . . . the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States."  28 U.S.C. § 1605(a)(2).

To determine whether any of these three clauses of the exception applies, the Court must first evaluate what the action is "based upon"—that is, what is the "gravamen" of the complaint, or the "core" conduct that "actually injured" the plaintiff.  *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 35 (2015); *Nelson*, 507 U.S. at 356-57; *see also Atlantica Hldgs., Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 106, 111 (2d Cir. 2016) (finding that the "based upon" requirement applies to each clause of the commercial-activity exception); *Daou v. BLC Bank, S.A.L.*, No. 20-cv-4438, 2021 WL 1338772, at *6 (S.D.N.Y. Apr. 9, 2021) (explaining that § 1605(a)(2)'s "based upon" language requires that a "significant nexus [exist] . . . between the alleged commercial activity and the conduct at the core of the plaintiff's complaint" (citing *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 156 (2d Cir. 2007)).  Then, once the court identifies the gravamen of the complaint, it determines whether the gravamen satisfies any of the exception's three clauses.  *See Nelson*, 507 U.S. at 358.

The gravamen of the SAC—the act that "actually injured" Plaintiffs—was the alleged downing of the Malaysian Airlines plane. That Plaintiffs bring "material support" and "financing terrorist activity" claims against Sberbank does not change the analysis: The Supreme Court in *Sachs* rejected an approach to identifying the gravamen that would "individually analyz[e] each . . . cause[] of action" and instead directed courts to "zero[] in on the core of [the] suit." *Sachs*, 557 U.S. at 35.

Indeed, when courts analyze the gravamen of a complaint, they typically look to the "acts that actually injured" plaintiffs. *Id.*; *see also, e.g.*, *Jam v. Int'l Fin. Corp.*, 3 F.4th 405, 409 (D.C. Cir. 2021) (holding that gravamen of action was "wrongful conduct in India" that caused the injuries for which plaintiffs sought relief, not the U.S.-based activities that "facilitated" the injurious conduct in India); *Nnaka v. Federal Republic of Nigeria*, 238 F. Supp. 3d 17, 29 (D.D.C. 2017) ("Because most torts are not complete until the plaintiff suffers an injury, the locus of the tort will usually be 'the place where the injury occurred.'" (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 705 (2004))). In *Sachs*, the Court held that the gravamen of the plaintiff's suit was the incident on an Austrian railroad platform that actually caused the plaintiff's injury, not the more attenuated U.S.-based conduct. 577 U.S. at 35-36; *see also Nelson*, 507 U.S. at 358 (holding that the gravamen was the tortious conduct that injured plaintiffs, "not the arguably commercial activities that preceded [the torts'] commission"). Here, similarly, the alleged downing of Malaysia Airlines Flight 17, not Sberbank's alleged financial services, is what actually caused Plaintiffs' injury.

Further, the SAC alleges that the downing of the aircraft occurred in eastern Ukraine. *See* SAC ¶¶ 1, 75 (alleging Malaysia Airlines Flight 17 was shot down "over eastern Ukraine" by a missile launched from that region). Because Plaintiffs do not allege that the conduct constituting

the gravamen of the SAC was "carried on in" or "performed in the United States," or caused a "direct effect in the United States," the commercial-activity exception cannot apply to withdraw Sberbank's immunity from suit.  And even if the provision of financial services was somehow the gravamen of the SAC, by Plaintiffs' own allegations, the gravamen of the SAC does not focus on the United States.  SAC ¶ 3 ("Defendants are corporate entities that provided ongoing and essential financial support to DPR *from around the world*, including the United States.").  And, even after comprehensive documentary discovery from two U.S. banks with Sberbank correspondent accounts, Plaintiffs identified only two transfers that were passively processed through Sberbank correspondent accounts in New York (*see* ECF No. 143), underscoring that the gravamen of Plaintiffs' claims against Sberbank is demonstrably *not* commercial activity in the United States.

## III.    THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE THAT THE COURT HAS PERSONAL JURISDICTION OVER SBERBANK AS AN AGENCY OR INSTRUMENTALITY OF A FOREIGN STATE

Because the Court lacks subject-matter jurisdiction under the FSIA, the Court also lacks personal jurisdiction under the FSIA.  28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title.").  In addition, for the reasons stated in Sberbank's original motion to dismiss and its motion for reconsideration—which are incorporated by reference as though asserted herein—the SAC fails to allege the requisite minimum contacts required for an assertion of personal jurisdiction over an agency or instrumentality of a foreign state.  *See Gater Assets Ltd. v. Moldovagaz*, 2 F.4th 42, 49 (2d Cir. 2021) ("Agencies and instrumentalities of foreign sovereigns retain their status as 'separate legal person[s],' [28 U.S.C.] § 1603(b)(1), and receive protection from the exercise of personal jurisdiction under the Due Process Clause." (first alteration in original)); *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012) (holding that juridically independent governmental

entities are "separate 'person[s]' entitled to due process protection," which "includes the right to assert a minimum contacts defense"); Sberbank's Mot. for Recon. Br. 20-22, ECF No. 221.

## CONCLUSION

For the foregoing reasons, Sberbank respectfully requests that the Court dismiss the Second Amended Complaint in its entirety with prejudice as against Sberbank pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction under the FSIA.

December 30, 2021                          Respectfully submitted,

**WHITE & CASE**

 /s/ *Nicole Erb*
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (admitted *pro hac vice*)
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:      + 1 202 626 3600
Facsimile:      + 1 202 639 9355
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com

DEBEVOISE & PLIMPTON LLP
Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, New York 10022
Telephone:      + 1 212 909 6000
mpgoodman@debevoise.com
whtaft@debevoise.com

*Counsel for Sberbank of Russia*