IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| THOMAS SCHANSMAN, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SBERBANK OF RUSSIA, PJSC, *et al.*,<br><br>Defendants. | Case No. 1:19-cv-02985-ALC-GWG<br><br>Hon. Andrew L. Carter, Jr. |

## JOINT STATUS REPORT ON PROPOSED JURISDICTIONAL DISCOVERY PLAN

Following the Court's January 13, 2022 Order, ECF No. 266, the parties were unable to agree on a proposed jurisdictional discovery plan. The parties submit the following proposals regarding a discovery plan and schedule for the Court's consideration.

## I.    PLAINTIFFS' PROPOSAL.

### A.    Plaintiffs' Proposed Schedule.

Plaintiffs propose the following schedule for jurisdictional discovery:

| Proposed Deadline | Event |
|---|---|
| February 3, 2022 | Sberbank to supplement its Rule 26(a) initial disclosures with respect to documents or witnesses relevant to its Foreign Sovereign Immunities Act ("FSIA") defense, including documents or witnesses relevant to its defense that it is immune by virtue of its ownership by the Bank of Russia. |
| February 17, 2022 | Sberbank to substantially complete production of documents responsive to Plaintiffs' outstanding RFPs relevant to the jurisdictional discovery ordered on January 13, 2022, including the RFPs identified in Plaintiffs' letter motion for extension of time, ECF No. 262 (RFP Nos. 1-5, 7-12, 15-16, 24-25, 27, 34, 36, 39, 40-43, 44, 51, 55, 57, 59-60), the documents described in the third, sixth, and eighth categories of documents identified in Sberbank's Rule 26(a) disclosures of December 3, 2021, and |

| Proposed Deadline | Event |
|---|---|
| | any additional documents described in its supplemental disclosures of February 3, 2022.  By the same date, Sberbank to respond to the following interrogatories relevant to jurisdictional discovery:  2 and 5-7. |
| February 24, 2022 | Plaintiffs to serve supplemental discovery requests on Sberbank, and for either party to serve discovery requests on third parties, relevant to jurisdictional discovery. |
| March 24, 2022 | Sberbank to complete production responsive to all discovery requests relevant to jurisdictional discovery. |
| March 31, 2022 | Parties to notice no more than five (5) fact depositions relevant to jurisdictional discovery. |
| April 14, 2022 | Parties to complete fact depositions relevant to jurisdictional discovery. |
| April 21, 2022 | Sberbank to disclose any additional expert witness(es) and produce any additional expert report(s) relevant to jurisdictional discovery. |
| May 5, 2022 | Plaintiffs to disclose any expert witness(es) and produce rebuttal expert report(s) relevant to jurisdictional discovery. |
| May 12, 2022 | Completion of expert depositions relevant to jurisdictional discovery. |
| May 26, 2022 | Plaintiffs to file their response and supporting factual evidence and expert testimony in opposition to Sberbank's motion. |
| June 2, 2022 | Sberbank to file its reply brief. |

In the event disputes arise over Sberbank's compliance with discovery, this schedule may need to be adjusted.

> **B.    Plaintiffs are Entitled to Jurisdictional Discovery Consistent with the Court's January 13, 2022 Order.**

The Court's January 13, 2022 Order granted the Plaintiffs' letter motion for extension of time and directed the parties to engage in jurisdictional discovery "for purposes of making an immunity determination with regard to Sberbank" under the FSIA, 28 U.S.C. §§ 1602, *et seq*.  ECF No. 266.  Plaintiffs made clear in their letter motion that discovery related to issues of jurisdiction would aid the Court's decision on Sberbank's claim of immunity.  ECF No 262 at 4 ("After

completion of party document productions, the Plaintiffs should be able to respond more fully to the new arguments advanced by Sberbank (including their fact and expert evidence) and the Court will be appropriately situated to address the status of the Central Bank of Russia and the applicability of the commercial activity exception—both topics expressly raised in Sberbank's FSIA motion to dismiss—based on facts adduced through ongoing discovery."); *id*. ("Sberbank cannot unilaterally decide what information gets exchanged in discovery by proffering its own experts and fact witnesses, while simultaneously stonewalling Plaintiffs' legitimate discovery requests on the belatedly raised (and ever changing) basis that Sberbank is allegedly immune from suit."); *id*. at 4-5 (identifying RFPs Plaintiffs have already propounded on Sberbank that relate to Sberbank's entitlement to immunity).  Sberbank took the opposite position, arguing that the jurisdictional questions at hand are purely legal and that there is no need for any discovery.  ECF No. 265 at 4-5.  The Court thereafter granted Plaintiffs' letter motion for extension of time and authorized jurisdictional discovery.  ECF No. 266.

On January 17, 2022, Plaintiffs sent to Sberbank a proposed schedule for jurisdictional discovery consistent with its letter motion for extension of time and the Court's order authorizing jurisdictional discovery.  That same proposal is reproduced in Section I.A above, except that Plaintiffs shortened the time allotted for jurisdictional discovery in light of Judge Gorenstein's intervening Order of January 18, 2022, which stated that "the contemplated jurisdictional discovery should take place as soon as possible."  ECF No. 269.  Plaintiffs' proposal authorizes Plaintiffs to serve document requests and take up to five fact depositions, and allows the parties to engage in mutual expert discovery.

On January 18, 2022, Sberbank responded with its proposal, which is the same as the proposal set forth in this submission.  The proposal stated that Sberbank would produce five

documents that were already filed in conjunction with Sberbank's second motion to dismiss, ECF No. 259-1 through ECF No. 259-5, and a set of Russian legal authorities pertaining to the Central Bank of Russia, most of which had already been attached to or cited in Sberbank's expert report. Sberbank's proposal did not permit Plaintiffs to initiate any discovery to develop the facts and expert analysis it needs to respond to Sberbank's motion.

The parties thereafter held a meet-and-confer on Wednesday, January 19 and discussed their respective proposals for approximately 45 minutes. During the meet-and-confer, counsel for Sberbank maintained the position asserted in its letter opposing Plaintiffs' motion for extension of time, ECF No. 265 at 5, that its new argument pertaining to the Central Bank of Russia is a legal question and no factual or expert discovery is required beyond Sberbank's proposal to produce five documents unilaterally selected by Sberbank and filed with its motion to dismiss.

Sberbank's proposal ignores the basic tenet of discovery that a producing party must do more than simply identify the documents in its possession which it would like to produce. "Discovery, in other words, is not a one-way proposition," as "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). In the context of jurisdictional discovery, a court "has 'considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction,' but it must give the plaintiff 'ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'" *Wyatt v. Syrian Arab Republic*, 225 F.R.D. 1, 3 (D.D.C. 2004).

Sberbank instead proffers a limited and largely irrelevant set of documents that, at most, only purport to establish the identity of Sberbank's majority owner at various points in time. The relevant and disputed factual questions pertaining to Sberbank's new argument, much of which Plaintiffs outlined at the meet-and-confer and in its letter motion for extension of time, center

around whether the commercial functions of its former majority owner, the Central Bank of Russia, "predomina[te]" over its alleged governmental functions, as required by *Garb v. Republic of Poland*, 440 F.3d 579, 591 (2d Cir. 2006). Courts have repeatedly authorized jurisdictional discovery to examine just such questions, and they authorize an examination of much more than the five publicly available corporate documents selected by Sberbank. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 792 (S.D.N.Y. 2005) (authorizing jurisdictional discovery "to explore [the Saudi Public Investment Fund's] function, organizational structure, and place within the Kingdom of Saudi Arabia" in light of Defendants' FSIA argument that the PIF was a "political subdivision" of the Kingdom of Saudi Arabia and the limitations of the record, where "the affidavits on which the parties ask the Court to rely have not been subjected to cross examination and are rather self-serving") (subsequent history omitted); *Intelsat Glob. Sales & Mktg., Ltd. v. Cmty. of Yugoslav Posts Telegraps & Telephones*, 534 F. Supp. 2d 32, 33 (D.D.C. 2008) (authorizing jurisdictional discovery to assess foreign entity's status as an "organ" of a foreign state under the FSIA and viewing as relevant to that inquiry the communications of defendant's senior officer, which "provide circumstantial evidence of [defendant's] governmental status at the time of the filing of the complaint"). So too here. Factual discovery is warranted to evaluate the nature and frequency of allegedly government conduct undertaken by the Central Bank of Russia, the character of the Central Bank of Russia's ownership of Sberbank, and the relationship between the Central Bank of Russia and the Russian Federation generally. Sberbank's "willingness to produce [only] sufficient documents to evidence its ownership," as their proposal expressed it to Plaintiffs, is thus wholly insufficient.

Similarly, courts routinely authorize jurisdictional discovery to evaluate the applicability of the FSIA's exceptions to a foreign entity's immunity. *Leutwyler v. Off. of Her Majesty Queen*

*Rania Al-Abdullah*, 184 F. Supp. 2d 277, 296 (S.D.N.Y. 2001) (authorizing jurisdictional discovery to evaluate extent of defendants' participation in commercial activity underlying claim); *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 185 F. Supp. 2d 335, 340 (S.D.N.Y. 2002) (authorizing jurisdictional discovery to probe foreign state's use of agent in the United States even though the "inquiry conceivably may overlap with facts and issues relevant to the merits" of the case). Sberbank's proposal does not allow Plaintiffs to discover evidence regarding whether the FSIA's commercial activity exception applies, and Sberbank did not offer to produce any documents bearing on that issue. But Sberbank's second motion to dismiss expressly argues that the Court lacks subject matter jurisdiction over it under FSIA's commercial activity exception, ECF No. 258 at 21-23, and relies on the results of preliminary, partial discovery, *id.* at 23. Sberbank cannot simultaneously inject one-sided facts into its motion to dismiss and also avoid discovery on those disputed facts; rather, the Court must ensure that the motion is decided based on "[m]utual knowledge of all the relevant facts." *Hickman*, 329 U.S. at 507. In an action that centers around Sberbank's provision of consumer financial services, discovery is clearly warranted into Sberbank's commercial activity before evaluating whether Sberbank is entitled to immunity.

The Court has already determined that the parties "shall" engage in jurisdictional discovery and that such discovery is necessary to evaluate the applicability of the FSIA. ECF No. 266. Sberbank is unwilling to discuss or agree to a discovery schedule that includes the Plaintiffs having an opportunity to ask it to produce anything. That, of course, is not discovery. Plaintiffs' proposal allows for a limited period of time to develop the core factual issues relevant to Sberbank's second motion to dismiss, while Sberbank's refusal to engage in anything properly characterized as "discovery" should be rejected.

### C.    Plaintiffs Are Entitled To Take Jurisdictional Discovery Relevant to Factual Disputes Regarding Sberbank's Immunity.

#### 1.    Sberbank's Ownership.

In its latest (continually evolving) description of itself before this Court, Sberbank now insists that it is immune because the Central Bank of Russia is not a "separate legal person" from the Russian Federation and is instead a political subdivision of the Russian Federation.  ECF No. 258 at 12-18 (citing 28 U.S.C. § 1603(b)).  Plaintiffs seek discovery not only regarding the basic facts of the ownership of Sberbank, and how, when, and why that ownership changed after this action commenced, but also regarding the Central Bank of Russia's "function, organizational structure, and place within" the Russian Federation.  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 792.  The Russian Federation—currently on the precipice of invading Ukraine, where Quinn Lucas Schansman was killed—is led by President Vladimir Putin.  As has been widely acknowledged, and may be judicially noticed, President Putin wields enormous power and authority in the Russian Federation.[1]  So it is striking that while Sberbank insists to this Court that the Central Bank of Russia is one and the same as the Russian Federation itself, the President of the Russian Federation disagrees:  he stated that the "Central Bank, in accordance with the law and worldwide practice, is an independent entity, which in its core function is outside of Government control and acts exclusively independently."[2]

---

[1] Yevgenia Albats *et al.*, *How Putin Changed Russia Forever*, Foreign Policy (May 7, 2020), https://foreignpolicy.com/2020/05/07/how-putin-changed-russia-forever/.

[2]    Большая пресс-конференция Президента РФ Владимира Путина, http://szfo.gov.ru/press/events/1743/ (Dec. 14, 2017) (translated from official Russian language transcript of President Putin's press conference).

From publicly available statements, Sberbank's Chairman and CEO Herman Gref agrees with President Putin (and disagrees with Sberbank's representations in this Court). In announcing the change of ownership from the Central Bank of Russia to the Ministry of Finance (through the National Wealth Fund) in April 2020, Mr. Gref stated that "[i]n fact, via the National Wealth Fund the whole nation of Russia is becoming a Sberbank shareholder and the main beneficiary of its operations."[3]  Mr. Gref apparently understood that Sberbank's prior ownership by the Central Bank of Russia did not equate to majority ownership by the Russian Federation. Rather than being a "political subdivision" of the Russian Federation prior to April 2020, as Sberbank now insists, its Chief Executive Officer and the President of the Russian Federation have recognized the opposite.

Given that both the President of the Russian Federation and the Chairman and CEO of Defendant Sberbank contradict the representations advanced by Sberbank in this Court, discovery is essential to ensure that Sberbank's representations are thoroughly and carefully tested. Instead, Sberbank has maintained that it need only produce factual documents it has selected, which establish the bare fact of the identity of Sberbank's majority owners. Sberbank rejects any fact discovery that would illuminate the Central Bank of Russia's "function, organizational structure, and place within" the Russian Federation, *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 792, in a manner that would enable the Court to evaluate the relevant inquiry on Sberbank's second motion to dismiss:  whether the Central Bank of Russia's commercial functions "predomina[te]" over its alleged governmental functions, *Garb v. Republic of Poland*, 440 F.3d

---

[3] Press Release, Sberbank, Sberbank Announces its Controlling Stake Sold to Russian Ministry of Finance as Part of National Wealth Fund Placement (Apr. 10, 2020), https://www.sberbank.ru/en/press_center/all/article?newsID=c5272937-f2c4-4205-a606-38970f1e9042&blockID=1539&regionID=77&lang=en&type=NEWS.

579, 591 (2d Cir. 2006).  In similar cases, courts have endorsed these exact types of discovery requests.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d at 792; *Intelsat Glob. Sales & Mktg., Ltd.*, 534 F. Supp. 2d at 33; Endorsed Joint Discovery Plan at 2, *Agurcia v. República de Honduras*, No. 8:19-cv-00038-TPB-SPF (M.D. Fla. July 20, 2020), ECF Nos. 49-50 (endorsing discovery of, among other things, "the extent to which the Republic of Honduras directs, leads, influences, and/or controls the operations of the Electric Company and the Property Institute" (cleaned up)).

Because Sberbank is regulated by and was commercially owned by the Central Bank of Russia, Sberbank possesses information related to the nature and frequency of allegedly governmental conduct undertaken by the Central Bank of Russia, the character of its majority ownership, and the relationship between the Central Bank of Russia and the Russian Federation generally, topics that are already addressed in Plaintiffs' pending requests for production related to Sberbank's relationship to the Central Bank of Russia.  *See* RFP Nos. 40-43, 51.  Specific other topics of discovery relevant to the *Garb* inquiry include, by way of example, documents relevant to the Central Bank of Russia's rights, duties, and obligations as a shareholder of Sberbank; communications concerning Sberbank's transfer of ownership from the Central Bank of Russia to the Government of the Russian Federation, including the legal effect thereof;[4] documents related to changes in federal law required to permit the Central Bank of Russia's alienation of Sberbank's shares; and documents concerning the alleged conflict of interest created by the Central Bank of Russia's ownership and control of Sberbank.  Plaintiffs are entitled to inquire about these and other

---

[4] Contrary to Sberbank's contentions, the transfer of Sberbank's ownership from the Central Bank of Russia to the Ministry of Finance is directly relevant to its immunity argument based on the Central Bank of Russia's ownership because the circumstances surrounding that transfer illuminate the relationships that two vastly different entities have with the Russian Federation.

issues through document requests and a limited number of fact and expert depositions. *See, e.g.*, *Reiss*, 185 F. Supp. 2d at 340 (authorizing fact depositions into questions relevant for plaintiff to "demonstrate subject matter jurisdiction under the FSIA"); *Bugliotti v. Republic of Argentina*, 952 F.3d 410, 413 (2d Cir. 2020) (noting that Federal Rule of Civil Procedure Rule 44.1, governing questions of foreign law, "preserves a district court's freedom to employ fact-like procedures, including by taking written and oral testimony, as sometimes may be required to adjudicate foreign legal questions."). Additionally, expert depositions are required to probe the basis and credibility of the expert's opinions and to understand how those opinions reconcile the contradictory factual and legal evidence that will be developed in jurisdictional discovery, such as President Putin's statement above.

To be sure, Sberbank may not agree to produce documents responsive to all of Plaintiffs' jurisdictional discovery requests. But the process to handle that is for a discovery schedule to be set, requests for production to be served, appropriate objections to be made, and disputes to be resolved on the basis of that record. Instead, Sberbank has been unwilling to discuss a schedule for Plaintiffs to serve *any* document requests related to its majority ownership by the Central Bank of Russia or the role of the Central Bank of Russia. Given these circumstances, unfortunately, Plaintiffs must ask the Court to order a basic discovery schedule to allow, well, discovery—both document requests and depositions—so that usual process can play out.

## 2. *Commercial Activity Exception*

The Court has already "made a finding that limited jurisdictional discovery is warranted for purposes of making an immunity determination with regard to Sberbank," ECF No. 266—a determination that necessarily requires consideration of the commercial activity exception of the FSIA, as Sberbank itself has recognized. *See, e.g.*, ECF No. 258 at 21-23; ECF No. 265 at 5. Despite the Court's Order, Sberbank now contends that jurisdictional discovery into Sberbank's

commercial activities is not necessary "for purposes of making an immunity determination with regard to Sberbank." ECF No. 266. Limiting jurisdictional discovery to only the question of whether Sberbank may be considered a foreign sovereign under the FSIA will be inefficient, because even if Sberbank is a foreign sovereign as Sberbank's continually evolving immunity theory now contends, the immunity determination does not end there. The Court would also need to determine whether the commercial activity exception strips Sberbank of its immunity, and that determination would undoubtedly require jurisdictional discovery. Rather than face the prospect of multiple rounds of jurisdictional discovery, the most efficient manner is to proceed with jurisdictional discovery on all facts necessary to assist the Court in "making an immunity determination with regard to Sberbank," ECF No. 266, including the reasonable discovery requests that Plaintiffs have already propounded and identified in its letter motion for extension of time, ECF No. 262 at 4-5, to establish that the commercial activity exception applies.

Crucially, Sberbank argues in its motion to dismiss that the commercial activity exception does not apply because "even after comprehensive documentary discovery . . . Plaintiffs identified only two transfers that were passively processed through Sberbank correspondent accounts in New York . . . ." ECF No. 258 at 29-31. Contrary to Sberbank's contention, nothing remotely close to "comprehensive documentary discovery" has occurred in this litigation—Sberbank itself has produced no documents, and most U.S.-based banks that had a correspondent banking relationship with Sberbank have also not yet produced documents. Plaintiffs need discovery on these issues, and Sberbank should not be permitted to avoid discovery regarding its commercial activities on the ground that information already produced by some third parties is not sufficient to defeat Sberbank's new arguments.

As Defendants have noted, the commercial activity exception under the FSIA provides that a foreign entity is stripped of its sovereign immunity and treated like any private party to a litigation in actions "based" upon (1) "a commercial activity carried on in the United States by the foreign state"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2); *see also* ECF No. 258 at 21. Sberbank's "material support and financing to the DPR," which took place both outside the United States and "using the New York banking system," supports a finding that the commercial activity exception applies. ECF No. 185 at 2 (citing SAC ¶ 79); *id.* at 8-9. Accordingly, given both Sberbank's acknowledgement of the relevance of the commercial activity exception to the Court's immunity determination with regard to Sberbank and the Court's subsequent order, Plaintiffs are entitled to discovery into the facts necessary to establish Sberbank's "commercial activity carried on in the United States" and Sberbank's "commercial activity . . . elsewhere." 28 U.S.C. § 1605(a)(2); *see also United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 349 (2d Cir. 2021) (finding commercial activity exception applied where defendant bank majority-owned by Government of Turkey participated in "schemes to launder Iranian oil and gas proceeds through non-U.S. transactions" and caused U.S. financial institutions to participate, finding bank's activities in the United States were "plainly the type of activity in which banks, including privately owned correspondent banks, routinely engage"); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 424 (S.D.N.Y. 2007) (finding commercial activity exception applied where defendant bank was alleged to have "participated in a fraudulent enterprise by providing the banking services necessary to allow the removal of stolen funds from the United States"); *Rodriguez v. Pan American Health Organization*, 502 F. Supp. 3d 200 (D.D.C.

2020) (finding commercial activity exception applied where plaintiffs alleged that defendant organization knowingly transferred funds in the United States in violation of the Trafficking Victims Protection Act).

As Plaintiffs observed in their letter motion for extension of time, ECF No. 262 at 4-5, Plaintiffs have propounded reasonable discovery requests that go to the core of Sberbank's entitlement to immunity, including the application of the commercial activity exception, which are intertwined with the merits of Plaintiffs' claims against Sberbank. For example, Plaintiffs' targeted requests seek documents reasonably calculated to establish Sberbank's commercial activity at issue; namely, Sberbank's funding and material support of the DPR both in the United States and elsewhere (see RFPs identified in Section I.A above). Consistent with Plaintiffs' letter motion for extension of time and the Court's subsequent order, Plaintiffs are entitled to this discovery before resolution of Sberbank's second motion to dismiss. *See Exxon Mobil Corp. v. Corporación CIMEX S.A.*, 534 F. Supp. 3d 1 (D.D.C. 2021) (ordering jurisdictional discovery concerning topics related to defendants' activities that may have caused direct effects in the United States); *Agurcia v. República de Honduras*, No. 8:19-cv-00038-TPB-SPF (M.D. Fla. July 20, 2020), ECF Nos. 49-50 (endorsing discovery of, among other things, "the extent to which the Electric Company and the Property Institute, including their affiliates, subsidiaries, partners, or joint venturers, engage in commercial activities within the United States"); *Intercontinental Industries Corp. v. Wuhan Stated Owned Industrial Holdings Co., Ltd.*, No. 2:10-cv-04174-JAK-E (C.D. Cal. May 20, 2016), ECF No. 153 (ordering defendants to produce documents relevant to the commercial activity exception). That this discovery "conceivably may overlap with facts and issues relevant to the merits of [Plaintiffs'] claims" does not affect Plaintiffs' entitlement to it. "To

some extent that prospect is unavoidable because not uncommonly jurisdictional and substantive issues are integrally connected." *Reiss*, 185 F. Supp. 2d at 340.

## II.    SBERBANK'S PROPOSAL.

The Court's January 13 Order directs Plaintiffs and Sberbank to conduct "jurisdictional discovery limited to the *specific facts* relevant to determining whether Sberbank is a foreign sovereign." Order 1 (emphasis added), ECF No. 266.  The limitations that the Court imposed on this jurisdictional discovery are consistent with controlling Second Circuit precedent holding that, "[w]hen sovereign immunity is at issue, discovery is warranted '*only* to verify allegations of *specific facts crucial to an immunity determination*.'"  *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 207 (2d Cir. 2016) (emphasis added) (quoting *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2d Cir. 2007)).  Accordingly, Sberbank submits that the scope of jurisdictional discovery as ordered by the Court is strictly limited to the "specific facts" relevant to the Court's determination of whether Sberbank is a "foreign state" within the meaning of § 1603(a) and (b) of the FSIA.  This discovery can be completed in a few short weeks, whereas Plaintiffs' counter-proposal would extend "jurisdictional" discovery for roughly six-months and delve into issues wholly unrelated to the specific facts relevant to Sberbank's sovereign status.

In its motion to dismiss, Sberbank asserts that it is an "agency or instrumentality of a foreign state" within the meaning of § 1603(b) of the FSIA because "a majority of [Sberbank's] shares or other ownership interest is owned by a foreign state or political subdivision thereof." Mot. to Dismiss Br. 3-5, 12-13 (discussing definitions under § 1603(b)), ECF No. 258.  The "specific facts relevant to determining whether Sberbank is a foreign sovereign" are therefore limited to (1) what entity owns (or, in Plaintiffs' view, owned) a "majority" of Sberbank's "shares or other ownership interest," and (2) whether the entity that owns (or owned) a majority of

Sberbank's shares qualifies as "a foreign state or political subdivision thereof" within the meaning of the FSIA.

Accordingly, Sberbank proposes the following plan for jurisdictional discovery:

▪ On or before **Thursday, February 3, 2022**:  Sberbank will produce to Plaintiffs (1) additional documents evidencing the ownership structure of Sberbank on April 4, 2019, on October 5, 2020, as well as at the present; and (2) documents relied upon by Professor Efimova in forming the opinions expressed in her declaration of Russian law.  Sberbank's document production will include, without limitation, the following documents:

  o Sberbank's 2019 Annual Report;

  o Sberbank's 2020 Annual Report;

  o Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at April 4, 2019;

  o Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at April 30, 2020;

  o Certificate from the Register of Securities Owners about Shareholders Holding One and More 5 of the Charter Capital as at December 27, 2021;

  o Foreign Banking Law (Banking Law of the European Union, France, Switzerland, Germany, the United States, People's Republic of China, the United Kingdom. Monograph/ Responsible Editor: L.G. Efimova, Doctor of Juridical Science, Professor. Moscow, Prospekt Publishing, 2016;

  o S. A. Avakyan. On Fundamental Constitutional Principles of the Bank of Russia's Status. In the book titled Constitutional Law Status of the Central Bank the Russian Federation/Publication Editor: P. D. Barenboim.  Moscow: Yustitsinform Legal House, 2000.  Pages 28-31;

  o Ya. A. Geyvandov. Central Bank of the Russian Federation. Legal Status. Structure. Functions. Authorities. Moscow. 1997. Page 25;

  o L.G. Efimova. Banking Law. Volume 1 Banking System of the Russian Federation. Moscow: Statut Publishing. 2010;

  o Constitution of the Russian Federation;

  o Federal Law No. 86-FZ dated 10 July 2002 "On the Central Bank of the Russian Federation (Bank of Russia)" ("Law on the Bank of Russia");

  o Code on Administrative Offences of the Russian Federation, Article 23.74;

o   Civil Code of the Russian Federation, Article 48(4);

o   Ruling of the Constitutional Court of the Russian Federation No. 268-O dated December 14, 2000;

o   Ruling of the Constitutional Court of the Russian Federation No. 45-O dated January 15, 2003;

o   Case Law Overview of the Supreme Court of the Russian Federation for the First Quarter of 2013 (approved by the Presidium of the Supreme Court of the Russian Federation on July 3, 2013);

o   Decision of the Supreme Court of the Russian Federation No. GKPI02-860 dated October 29, 2002;

o   Decree No. 21 dated 21 January 2020 "On Structure of Federal Bodies of Executive Power";

o   Regulation of the Bank of Russia No. 762-P dated June 29, 2021 "On Money Transfer Rules";

o   Regulation of the Bank of Russia No. 579-P dated February 27, 2017 "On Chart of Accounts for Credit Organizations and Procedure for Application Thereof";

o   Ruling of the Constitutional Court of the Russian Federation No. 2133-O dated Oct. 19, 2021;

o   Information "Constitutional Legal Protection of Entrepreneurship: Relevant Aspects (based on Decisions of the Constitutional Court of the Russian Federation in 2018 - 2020)" (approved by Ruling of the Constitutional Court of the Russian Federation dated Dec. 17, 2020);

o   Ruling of the Constitutional Court of the Russian Federation No. 867-O dated Apr. 11, 2019;

o   L. L. Arzumanova, A. O. Logvencheva. Gold and Foreign Currency Reserves Management: Revisiting the Issue of the Concept //Actual Problems of Russian Law. 2020. No. 11 (excerpts);

o   L.G. Efimova. Again on the Legal Personality of the Bank of Russia // paper Business and Banks. 1999. No. 3 (reflected in L.G. Efimova. Banking Law. Volume 1 Banking System of the Russian Federation. Moscow: Statut Publishing. 2010) (excerpts);

o   Ruling of the Supreme Commercial Court of the Russian Federation No. VAS-12945/12 dated 11 October 2012 in case No. A41-37148/11; and

o Ruling of the Supreme Commercial Court of the Russian Federation No. 10166/07 dated 23 August 2007 in case No. 8192/07.

▪ On or before **Thursday, February 24, 2022**, Plaintiffs will file their response to Sberbank's motion to dismiss, along with any supporting declarations by fact witnesses or experts. Plaintiffs also will produce to Sberbank any documents or other materials relied upon by such fact witnesses or experts.

▪ On or before **March 17, 2022**, Sberbank will file its reply brief in support of its motion to dismiss, along with any rebuttal declarations by fact witnesses or experts.

Sberbank's proposal contemplates the production of documents sufficient to show the ownership structure of Sberbank both at the time of the operative Second Amended Complaint and the original Complaint.

On a nearly hour-long meet-and-confer call, Plaintiffs' counsel refused to articulate what additional categories of documents are necessary to evidence Sberbank's ownership structure or what "specific facts" are in dispute or otherwise need to be discovered. Indeed, Plaintiffs have never suggested that they dispute the facts of Sberbank's ownership structure, which Plaintiffs themselves allege. *See* Compl. ¶ 31 ("[T]he Government of the Russian Federation . . . owns 51% of the bank."), ECF No. 1; SAC ¶ 37 (same), ¶ 363 ("At all relevant times, Defendant[] Sberbank . . . [was] owned by the Government of the Russian Federation."), ECF No. 156; *see also* Compl. ¶ 215 (describing Sberbank as a "Russian state-owned Defendant[]"); SAC ¶ 33 ("Defendant Sberbank is a Russian state-owned banking institution."); ECF No. 228 at 2 & Ex. 1 (conceding that, at the time the original complaint was filed, Sberbank was majority "owned by the Bank of Russia" and that in April 2020 the Bank of Russia "sold its equity stake in Sberbank to the Government of the Russian Federation"). As Sberbank's counsel stated on the meet-and-confer call, had Plaintiffs articulated any specific facts in dispute relevant to Sberbank's ownership structure, Sberbank would include in its February 3 document production documents responsive

to such facts that may exist beyond those already identified in Sberbank's proposed jurisdictional discovery plan.

At one point, Plaintiffs' counsel suggested that Sberbank's proposal would deny Plaintiffs the opportunity to propound jurisdictional discovery requests. But Sberbank has indicated its willingness to produce sufficient documents to evidence its ownership without the need for formulaic requests.

Plaintiffs' counsel also stated that Plaintiffs were entitled to documents concerning the transfer of majority ownership in Sberbank from the Bank of Russia to the Ministry of Finance. But again, Sberbank has agreed to produce documents evidencing the fact of that transfer and Plaintiffs refused to articulate why evidence concerning the mechanics of how the transfer was effectuated would inform the Court's immunity determination; it would not. Plaintiffs have not contended up to this point that the transfer of ownership had anything to do with this litigation, and they should not be permitted to open the door to broad discovery based on nothing more than speculation. Indeed, inquiry into the sovereign decisions concerning such transfer, untethered from any immunity determination, would contravene the Second Circuit's strong admonition that jurisdictional discovery under the FSIA be limited and circumspect, and would encroach upon the affairs and acts of state of a foreign sovereign in violation of basic principles of international comity.

The only question that arguably may warrant further inquiry is whether the Bank of Russia is a "political subdivision" within the meaning of the FSIA. Sberbank maintains that the issue of the status of the Bank of Russia as a political subdivision of the Russian Federation can be decided as a matter of law. *See* Mot. to Dismiss Br. 12-18, ECF No. 258; *see also Funnekotter v. Agric. Dev. Bank of Zimbabwe*, No. 13-cv-1917-CM, 2015 U.S. Dist. LEXIS 73221, at *21 (S.D.N.Y.

June 3, 2015) (holding that entity's "status under 28 U.S.C. § 1603(b) . . . presents a question of law for the court to decide"); *Agudas Chasidei Chabad of United States v. Russian Federation*, 729 F. Supp. 2d 141, 146 (D.D.C. 2010) (applying core functions test and noting that whether the relevant entities "are agencies or instrumentalities . . . is a question of law"); *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 301 (D.C. Cir. 2005) (explaining that core functions test is "concerned with the meaning of the statutory terms 'foreign state' and 'agency or instrumentality'" under the FSIA); *Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) (noting that "the meaning of a statutory term" "presents pure questions of law"); Fed. R. Civ. P. 44.1 ("The court's determination" of foreign law "must be treated as a ruling on a question of law."). Nevertheless, Sberbank has agreed to produce the documents upon which Professor Efimova relies — regardless of their citation in her Russian law declaration — in forming her opinions.

Plaintiffs cite *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 792 (S.D.N.Y. 2005), as an example of an instance in which the Court authorized jurisdictional discovery to help determine whether an entity was a political subdivision under the FSIA. But the Court in that case was applying the "legal characteristics" test, rather than the "core functions" test, which required the Court to consider different, more fact-based factors than the "core functions" test requires. *Id.* at 790-92 (setting forth elements of "legal characteristics" test and declining to adopt "core functions" test). Since this decision, the Second Circuit has adopted the "core functions" test instead. *See Garb*, 440 F.3d at 593-94 (adopting and applying the "core functions" standard (citing *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151-52 (D.C. Cir. 1994)). Accordingly, the *In re Terrorist Attacks* Court's holding that jurisdictional

discovery is warranted is inapplicable here, as it was granted to assist the Court with a different analysis.

Sberbank's proposal for expedited and limited jurisdictional discovery regarding the "specific facts" of Sberbank's ownership structure stands in stark contrast to Plaintiffs' proposal for roughly six months of far-flung discovery with multiple rounds of document requests, depositions, and exchange of expert reports, followed by another month to complete briefing on Sberbank's motion to dismiss.

More importantly, Plaintiffs' proposal reflects a fundamental misunderstanding of the highly circumscribed nature of jurisdictional discovery in the FSIA context. The law in the Second Circuit is well-established and clear that courts must be "circumspect" in allowing discovery under the FSIA and that jurisdictional discovery is appropriate "only to verify allegations of specific facts crucial to an immunity determination." *Arch Trading*, 839 F.3d at 206, 207 (holding that "sovereign immunity protects" foreign states from "the expense, intrusiveness, and hassle of litigation").

Plaintiffs' proposed jurisdictional discovery plan is neither limited nor circumspect. On the meet-and-confer call, Plaintiffs' counsel pointed to 29 document requests previously propounded by Plaintiffs to Sberbank in merits discovery that Plaintiffs insist are "relevant" to jurisdictional discovery. But even a cursory examination of those document requests reveals that they are not targeted at the "specific facts" of Sberbank's ownership or relevant to the Court's determination of whether Sberbank is an "agency or instrumentality of a foreign state" under the FSIA.

These document requests were served on December 5, 2021, well before the Court ordered jurisdictional discovery under the FSIA, and were not crafted with that narrow purpose in mind.

The vast majority of the requests Plaintiffs now assert are necessary for jurisdictional purposes are wholly unrelated to Sberbank's status as an agency or instrumentality of a foreign state, and focus instead on the substantive aspects of Plaintiffs' claims.  For example, Plaintiffs point to requests seeking documents concerning transactions by certain individuals or involving certain accounts entirely outside the United States; Sberbank's compliance with international, national, and internal rules prohibiting the financing of terrorism and money laundering' and "all documents" concerning *all* of Sberbank's claims or defenses.  *See* Pls.' RFPs to Sberbank Nos. 1-5, 7-12, 15-16, 27, 34, 51, 57, 59-60.  Plaintiffs thereby seek to convert this Court's Order permitting limited jurisdictional discovery into a full-blown merits-discovery exercise, extending past the scheduled close of document discovery, and covering practically all of the same substantive topics.

Further, on the meet-and-confer call, Plaintiffs' counsel asserted incorrectly that Plaintiffs were entitled to jurisdictional discovery as to the application of the FSIA's commercial activity exception.  But Sberbank established in its motion to dismiss that the question of whether an FSIA exception to immunity applies in this case may be decided as a matter of law, so jurisdictional discovery on this point is wholly unnecessary.  Mot. to Dismiss Br. 21-23, ECF No. 258. Moreover, controlling Second Circuit precedent establishes that where, as here, the Court must decide the "threshold issue" of whether a defendant "qualifies as an agency or instrumentality of a foreign state," jurisdictional discovery is properly limited to only "specific facts" of ownership and structure.  *See Funk v. Belneftekhim*, 861 F.3d 354, 367 (2d Cir. 2017).  In *Funk*, the Second Circuit affirmed the district court's denial of jurisdictional discovery relative to plaintiffs' assertion of the "commercial activity exception" to foreign sovereign immunity.

Plaintiffs' cited cases on jurisdictional discovery in the context of commercial activity exception cases do not advance their expansive jurisdictional discovery plan.  *See Wyatt v. Syrian*

*Arab Republic*, 225 F.R.D. 1, 3 (D.D.C. 2004) (defendants challenged factual basis of court's jurisdiction); *Intelsat Glob. Sales & Mktg., Ltd. v. Cmty. of Yugoslav Posts Telegraps & Telephones*, 534 F. Supp. 2d 32, 33 (D.D.C. 2008) (defendant denied being agency or instrumentality and plaintiff came forward with specific allegation that cast doubt on defendant's denial); *Leutwyler v. Off. of Her Majesty Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 296 (S.D.N.Y. 2001) (factual challenge to commercial-activity exception); *Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 185 F. Supp. 2d 335, 340 (S.D.N.Y. 2002) (plaintiffs sufficiently alleged detailed facts that if true supported court's jurisdiction under commercial-activity exception); *Exxon Mobil Corp. v. Corporación CIMEX S.A.*, 534 F. Supp. 3d 1 (D.D.C. 2021) (factual disputes existed that informed application of commercial-activity exception).  First, as a fundamental threshold matter, the commercial-activity exception is irrelevant here because it does not apply to ATA claims against foreign states.  *See* Mot to Dismiss Br. 19-20, ECF No. 258. The FSIA provides only one, narrow exception to immunity for ATA claims (28 U.S.C. § 1605B), which Plaintiffs do not contend applies and do not suggest they need discovery with respect to. This threshold legal issue should be resolved by the Court before allowing any discovery unrelated to Sberbank's ownership.  The commercial-activity exception would also fail as a matter of law for independent reasons.[5]  *See* Mot. to Dismiss Br. 21-13, ECF No. 258.  Second — in sharp

---

[5] In any event, in quoting from Sberbank's motion to dismiss in an effort to mislead the Court that the commercial-activity exception could apply, Plaintiffs purposefully elided the words "from two U.S. banks with Sberbank correspondent accounts," in order to create the misimpression that Sberbank contends Plaintiffs have obtained "comprehensive document discovery" from all sources.  The full quote reads:  "even after comprehensive documentary discovery *from two U.S. banks with Sberbank correspondent accounts*, Plaintiffs identified only two transfers that were passively processed through Sberbank correspondent accounts in New York . . . ."  The purpose of this argument is not to suggest that more discovery would be useful or proper, but rather to show Plaintiffs' inability to plead facts showing that the gravamen of their complaint concerns actions in the United States.  They have not even alleged that it does.

contrast to here — the plaintiffs came forward with specific facts in dispute that could, if proved true, establish the applicability of the commercial activity exception or the defendants themselves had raised factual challenges to subject matter jurisdiction.

Plaintiffs also propose "no more than five (5) fact depositions relevant to jurisdictional discovery." Plaintiffs' counsel provided no explanation whatsoever as to why this large, and seemingly arbitrary, number of deponents is needed or why depositions are needed at all. Plaintiffs mistakenly believe that they are entitled to any and all modes of discovery in an FSIA jurisdictional discovery context but this is not so. Despite pressing Plaintiffs' counsel during the meet and confer, counsel could not identify any facts, much less disputed facts, that might warrant verification through such depositions or any defensible basis as to why a deposition of Professor Elfimova may be necessary, despite having had her declaration in hand for almost three weeks.

The D.C. Circuit has emphasized that for jurisdictional discovery in the FSIA context, the purported "[r]elevance" of a proposed deposition "is not enough." *In re Papandreou*, 139 F.3d 247, 253 (D.C. Cir. 1998). In that case, the district court authorized two depositions of the Greek Government defendants for the purpose of ruling on an FSIA immunity claim. *Id.* at 249. The Greek Government defendants petitioned for a writ of mandamus to vacate that discovery order. *Id.* at 249-50. The D.C. Circuit found that the district court "failed to consider less intrusive means of obtaining the information the respondents seek" and issued the writ. *Id.* at 250. The D.C. Circuit rejected the defendants' argument that the facts plaintiffs sought through deposition are irrelevant to the FSIA inquiry. *Id.* at 252. But the D.C. Circuit held that the district court erred in ordering depositions, even where the depositions did "relate to facts on which a FSIA determination could turn" because inter alia "the district court failed to explore the ease with which other potentially dispositive jurisdictional defenses could be evaluated." *Id.* at 254.

This Court has followed suit. For example, in *Scheidemann*, this Court denied the plaintiffs' request for a deposition related to waiver of sovereign immunity where "proffered testimony ha[d] no bearing on" the threshold determination of whether defendants "are not 'organs'" under the FSIA. *See Scheidemann v. Qatar Football Ass'n*, No. 04-cv-3432-LAP, 2008 U.S. Dist. LEXIS 2852, at *21-22 (S.D.N.Y. Jan. 15, 2008); *see also Solgas Energy Ltd. v. Fed. Gov't of Nigeria*, No. H-09-368, 2010 U.S. Dist. LEXIS 153121, at *31-33 (S.D. Tex. Feb. 9, 2010) (quashing deposition request on Central Bank of Nigeria, and ordering that the plaintiff propound a more narrowly tailored discovery request "directed only to ownership and use, which may include requesting information and documentation regarding" relevant funds).

Had Plaintiffs articulated any disputed facts (which they have not) regarding the ownership structure of Sberbank, Sberbank at most would have been willing to agree to one Rule 30(b)(6) deposition strictly limited to Sberbank's ownership structure. *See* Order 3, ECF No. 54, *Funk v. Belneftekhim*, No. 14-cv-0376-BMC (E.D.N.Y. July 9, 2015) (holding that "only a 30(b)(6) witness for defendant [], who can speak to its ownership and structure, is relevant to whether that defendant is an agency or instrumentality of Belarus"); *Funk*, 861 F.3d. at 367 (citing *EM Ltd.*, 473 F.3d at 486) (holding that "the district court's discovery order was appropriately circumspect in limiting inquiry to the 'specific facts' of ownership and structure that are 'crucial to an immunity determination' in this case").

U.S. courts also have routinely found that they are perfectly equipped to decide matters of foreign law on the parties' written submissions from foreign law experts. *See, e.g.*, *Kashef v. BNP Paribas SA*, No. 16-cv-3228, 2017 U.S. Dist. LEXIS 92581, at *5 (S.D.N.Y. June 15, 2017) (denying plaintiffs' request to lift stay of discovery to depose defendants' Sudanese law expert, who submitted a declaration in support of defendants' motion to dismiss, and concluding that "the

24

determination of foreign law is generally a question of law for the Court to decide"); *Wultz v. Islamic Republic of Iran*, No. 08-cv-1460, 2010 U.S. Dist. LEXIS 111424, at *2 (D.D.C. Oct. 20, 2010) (denying plaintiffs' motion for leave to depose defendant's Israeli law experts prior to court's adjudication of motion to dismiss claims based on Israeli law).  But regardless, on the parties' meet-and-confer call, Plaintiffs' counsel could not articulate any defensible basis as to why a deposition of Professor Elfimova may be necessary, despite having had her declaration in hand for almost three weeks.  Had Plaintiffs' counsel articulated any such basis, Sberbank would have been agreeable to expert deposition discovery.

*     *     *

For the above reasons, Sberbank respectfully submits that the Court enter Sberbank's proposed jurisdictional discovery plan and briefing schedule regarding its motion to dismiss for lack of subject-matter jurisdiction under the FSIA.

Respectfully submitted,

/s/ *David J. Pressman*

JENNER & BLOCK LLP
David J. Pressman
Jason P. Hipp
1155 Avenue of the Americas
New York, NY 10022
212-891-1600
dpressman@jenner.com
jhipp@jenner.com

Terri L. Mascherin (admitted *pro hac vice*)
353 N. Clark St.
Chicago, IL 60654
312-923-2799
tmascherin@jenner.com

*Counsel for Plaintiffs*

/s/ *Nicole Erb*

WHITE & CASE LLP
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (admitted *pro hac vice*)
701 13th Street, NW
Washington, DC 20037
202-626-3600
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com

DEBEVOISE & PLIMPTON LLP
Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, NY 10022
212-909-6000
mpgoodman@debevoise.com
whtaft@debevoise.com

*Counsel for Sberbank of Russia*