UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| THOMAS SCHANSMAN, individually, as surviving Parent of QUINN LUCAS SCHANSMAN, and as legal guardian on behalf of X.S., a minor, and | :    Index No. 1:19-CV-02985 |
| | :    (ALC) (GWG) |
| | : |
| | :    Hon. Andrew L. Carter, Jr. |

THOMAS SCHANSMAN, individually, as surviving
Parent of QUINN LUCAS SCHANSMAN, and as legal
guardian on behalf of X.S., a minor, and          :          Index No. 1:19-CV-02985
                                                  :          (ALC) (GWG)
                                                  :
CATHARINA TEUNISSEN, individually, and as          :          Hon. Andrew L. Carter, Jr.
surviving Parent and personal representative of the :
ESTATE OF QUINN LUCAS SCHANSMAN, and              :
                                                  :
NERISSA SCHANSMAN, individually, and as            :
surviving Sibling of QUINN LUCAS                   :
SCHANSMAN,                                         :
                              Plaintiffs,          :
                     -against-                     :
                                                  :
SBERBANK OF RUSSIA PJSC, THE WESTERN             :
UNION COMPANY, WESTERN UNION                      :
FINANCIAL SERVICES, INC., MONEYGRAM              :
INTERNATIONAL, INC., MONEYGRAM                   :
PAYMENT SYSTEMS, INC., and VTB BANK              :
PJSC,                                            :
                              Defendants.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### SBERBANK OF RUSSIA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION OF THE MEMORANDUM AND ORDER OF SEPTEMBER 30, 2021[1]

Mark P. Goodman                    Nicole Erb
William H. Taft V                  Claire A. DeLelle
DEBEVOISE & PLIMPTON LLP          Matthew S. Leddicotte*
919 Third Avenue                   WHITE & CASE LLP
New York, New York 10022          701 Thirteenth Street, NW
                                   Washington, D.C.  20005
                                   * admitted pro hac vice

                                   Counsel for Defendant Sberbank of Russia

---

[1]     Sberbank has filed a motion to dismiss the Second Amended Complaint (ECF No. 156) (the "SAC") for lack of subject-matter jurisdiction and personal jurisdiction because Sberbank is immune from jurisdiction and suit in this action under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1601 et seq.  See ECF Nos. 257 & 258.  Sberbank expressly preserves all rights, privileges, defenses and immunities, including the defenses of foreign sovereign immunity and lack of subject-matter and personal jurisdiction under the FSIA.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ III

ARGUMENT ............................................................................................. 2

I.    THE OPINION'S CAUSATION RULING CONTAINS THREE CLEAR ERRORS ...... 2

    A.    Sberbank Was Not the But-For Cause of Plaintiffs' Injuries .................................. 2

    B.    The Attack on MH17 Was *Sui Generis* and Not Foreseeable ................................ 3

    C.    Money Transfers Did Not Cause Plaintiffs' Injuries ............................................. 4

II.   THE  COURT LACKS PERSONAL JURISDICTION OVER SBERBANK ................... 7

III.  RECENT DECISIONS UNDERCUT PLAINTIFFS' SCIENTER ALLEGATIONS ....... 9

CONCLUSION .......................................................................................... 11

## **TABLE OF AUTHORITIES**

**Cases**

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).....................................................2

*Ashton, et al. v. Al Qaeda Islamic Army*, 298 F. Supp. 3d 631, 645..................................5

*Burrage v. United States*, 571 U.S. 204 (2014) .................................................................2

*DeLorenzo v. Viceroy Hotel Group, LLC*, 757 F. App'x 6 (2d Cir. 2018).........................8

*Goldberg v. UBS AG*, 660 F. Supp. 2d 410 (E.D.N.Y. 2009)............................................4

*Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258 (1992) ..........................................1, 2

*Honickman v. BLOM Bank SAL*,  6 F.4th 487 (2d Cir. 2021)  ...............................1, 9, 10

*Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 171 (S.D.N.Y. 2017), *aff'd*, 705 F. App'x 40 (2d Cir. 2017) .............................................................4

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118 (2d Cir. 2013)...................3, 5, 6

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021)  .....................9, 10

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013).........8

*Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018) ..............................................5, 10

*O'Sullivan v. Deutsche Bank AG*, 17-cv-8709-LTS-GWG, 2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ..........................................................................................7

*Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013) .........................................1, 2, 3, 4, 5

*Strauss v. Crédit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) .......................6

*Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014)...............................5

The Opposition cannot overcome the Opinion's clear error in failing to apply controlling law with respect to causation. *See, e.g.*, *Rothstein*, 708 F.3d at 95 (quoting *Holmes*, 503 U.S. at 268). Plaintiffs' non-conclusory allegations fail to plausibly assert that Sberbank's conduct was the but-for cause of Plaintiffs' injuries, or that injury to an American airline passenger was a foreseeable consequence of Sberbank's alleged conduct, or that Sberbank's conduct was a direct and substantial cause of Plaintiffs' injury—all three of which are required to plead causation under the ATA. None of the financial services allegedly provided to DPR Supporters are claimed to have enabled DPR to obtain the military-grade missile system needed for the attack on MH17 or otherwise financed that attack, opening an unbridgeable gap in the chain of causation. Instead, Plaintiffs allege that money transferred through Sberbank was used to purchase guns, which were in turn provided to partisans, who captured territory, into which a mechanized air-defense missile system (of unidentified origin) was transported and then fired at a commercial airliner passing overhead. This is just the type of attenuated chain of events that courts have held cannot support causation in an ATA case. *Id.* at 97.

The Opposition also fails to rehabilitate the Opinion's clear error in drawing an impermissible inference that millions of dollars might have flowed through Sberbank's U.S. correspondent accounts, when the SAC alleges only that some of the money DPR Supporters claimed to have received flowed through those accounts. And although Plaintiffs recognize the dispositive force of *Honickman*, they fail to rehabilitate the Opinion's error in not addressing that intervening controlling authority. As in that case, the SAC's reliance on limited publicly available information, as opposed to media publications discussing bank customers, does not support a plausible inference that Sberbank *knew* that its services were being used to benefit the DPR, let alone that Sberbank intended to facilitate DPR transactions, prior to the MH17 attack.

Sberbank joins in and expressly incorporates the submissions by the other Defendants in support of their motions for reconsideration.

## ARGUMENT

## I.    THE OPINION'S CAUSATION RULING CONTAINS THREE CLEAR ERRORS

The Opinion did not analyze the "substantial factor" prong of proximate cause (as Plaintiffs concede was required); did not consider whether harm specifically to an *American* was reasonably foreseeable; and did not address whether Sberbank's conduct constituted a but-for cause of Plaintiffs' injuries. Even resolving all doubts in Plaintiffs' favor, the SAC at most alleges that Defendants' actions enhanced DPR's ability to conduct terrorist operations—a classic aiding-and-abetting theory—and not that Defendants' actions were necessary to, and the substantial, direct and foreseeable cause of, Plaintiffs' harm.

### A.    Sberbank Was Not the But-For Cause of Plaintiffs' Injuries

Plaintiffs do not dispute that, had the Court applied a but-for causation test, the SAC would have to be dismissed, nor do they argue that the Opinion addresses the applicability of this test, despite Defendants having briefed it in their motions. Rather, Plaintiffs argue that the Court should ignore Supreme Court and Second Circuit authority interpreting "by reason of" to require a showing of both proximate (legal) causation and but-for (factual) causation. Despite their dismissive attitude, Plaintiffs can cite to no controlling authority holding (contrary to the plain language of the statute) that the ATA does not require but-for causation.

The but-for causation requirement is apparent from the ATA's use of the phrase "by reason of." *See Rothstein*, 708 F.3d at 95 (*quoting Holmes*, 503 U.S. at 268, including the "but for" requirement). Multiple Supreme Court cases have interpreted "by reason of" to require but-for causation across many statutes. *See Anza*, 547 U.S. at 456-57 (requiring "but for" causation under RICO); *Burrage*, 571 U.S. at 213 (same, Controlled Substances Act); MFR Br. at 6

2

(collecting cases), ECF No. 221.  Plaintiffs cannot dispute that in these cases the Supreme Court interprets the same language that appears in the ATA to require both proximate and but-for causation, but argue instead that none of them interpret the ATA.  This proffered distinction crumbles in the face of *In re Terrorist Attacks,* which confirms that the "well-understood meaning" of "by reason of" is "based on the Supreme Court's interpretation of…the phrase…across multiple statutes."  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 123. *Rothstein* similarly held that the ATA mirrors RICO, and that causation had not been pled where the complaint did not allege that "Iran would have been unable to fund the attacks by [the FTOs] without the cash provided by UBS."  *Id.* at 97.  In other words, the complaint had not alleged that UBS's provision of financial services was a but-for cause of plaintiffs' injuries.

The Opinion erroneously relies on pre-JASTA cases that were decided before many of the Supreme Court decisions interpreting the phrase "by reason of" in a like manner across multiple statutes, and that have been criticized by the Second Circuit as reflecting outdated analyses.  Op. at 16; MFR Br. at 14.  Those earlier decisions reflect a concern that a but-for requirement might limit access to relief given the fungibility of money.  Congress later addressed that concern by enacting JASTA, but only when an FTO is involved, which is not the case here.

Plaintiffs do not contend (as they must) that, but-for the action of each Defendant, MH17 would not have been shot down.  Indeed, the SAC does not allege that any funds at all were needed or used to obtain the missile system used to down MH17, and in any case affirmatively alleges that DPR had alternative sources of financing.  *See, e.g.*, SAC ¶ 161 (alleging "a diversified global supply chain" of funding for the DPR).

### B.    The Attack on MH17 Was *Sui Generis* and Not Foreseeable

The Opposition acknowledges that under the foreseeability prong of the proximate cause test an injury to an American citizen (not just civilians generally) must be foreseeable.  *See* Pls.

Opp. at 50 n.30 (inaccurately claiming "Plaintiffs alleged facts showing that it was foreseeable that Americans could be targeted"); *Hussein*, 230 F. Supp. 3d at 171, *aff'd*, 705 F. App'x 40 (2d Cir. 2017) ("Courts have…interpreted the ATA to require some evidence that the defendant was aware of a 'substantial probability' that Americans would be injured"); *Goldberg*, 660 F. Supp. 2d at 415 (noting factual allegations in the complaint that "[a]mong those said to have been killed in Hamas's terrorist attacks have been a number of United States citizens."). The Opinion, which mistakenly relied on a case discussing foreseeability in a different context, unrelated to causation, never addressed whether harm to Americans was foreseeable. Op. at 16; MFR Br. at 8.

The SAC is bereft of non-conclusory allegations that it was foreseeable that Americans would be killed by DPR. Plaintiffs point generally to DPR's "anti-American tone" and State Department warnings not to travel to eastern Ukraine due to the risk of being detained (not killed) in the conflict zone.[2] *See* Pls. Opp. at 50 n.30. While the allegations suggest a dangerous situation on the ground, they do not support an inference that an American who never stepped foot in Ukraine could or would be targeted. The unforeseeability of harm to an American on a plane *en route* to Malaysia from Amsterdam is bolstered by the absence of allegations of other attacks targeting Americans or other foreigners or passenger jets before or after the crash of MH17. Applying the correct test, the Court should dismiss the SAC because it alleges injuries caused by a *sui generis* attack that did not foreseeably target Americans.

## C.    Money Transfers Did Not Cause Plaintiffs' Injuries

The proximate causation requirement limits liability to defendants whose conduct is a "substantial factor" that "led directly" to plaintiffs' injury. *Rothstein*, 708 F.3d at 91-92; MFR Br. at 6-7. The SAC does not allege that the missile system that destroyed MH17 was purchased,

---

[2]    *See* U.S. Dep't of State, Ukraine Travel Warning, June 5, 2014 (cited in SAC ¶ 139) (warning Americans of checkpoints on the ground where unnamed "separatist groups" have "threatened, detained, or kidnapped individuals, including U.S. citizens, for hours or days").

nor does it contain any other non-conclusory allegations that financing from any source was used in connection with the attack. *See, e.g.*, SAC ¶¶ 3, 14, 160, 342-44. The intervening steps alleged in the SAC between the funding of DPR and the launching of the missile preclude a finding of direct causation as required under the ATA. To avoid this result, Plaintiffs lean on the truism that money is fungible. But each of Plaintiffs' cited cases (Opp. at 44), like the sole case relied on in the Opinion for this point (Op. at 17), concern the fungibility of money when sent to FTOs and/or in aiding-and-abetting cases brought under JASTA. The JASTA cases are inapplicable because, in a direct liability case against a non-FTO under the ATA, the injury must be caused directly by the Sberbank's conduct—here, the alleged provision of financial services.[3]

Egregiously, Plaintiffs cite *Weiss*, 768 F.3d at 206, a case concerning support for an FTO, for the proposition that providing any financing to a terrorist organization suffices to establish proximate cause. Pls. Opp. at 44 (asserting the Second Circuit held a "plaintiff may establish proximate cause…by showing…material support to a terrorist organization, *irrespective of whether the support aided terrorist activities*.") (internal quotations omitted) (emphasis added). But *Weiss* never addresses proximate causation; it *only* addresses scienter. *Weiss*, 768 F.3d at 204, 212 (addressing plaintiffs' contention "on this appeal that the district court used an incorrect standard for determining whether NatWest acted with the requisite scienter" and remanding for consideration of other defenses). Plaintiffs' absurd contention that proximate causation can be established by alleging conduct "irrespective" of whether that conduct supported terrorist activities does not require any connection to plaintiffs' injuries, much less the direct and

---

[3]    *See Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018) ("After JASTA, plaintiffs are not limited to proving their ATA claim on a theory of…primary liability. They can now urge Arab Bank's liability on the alternative theory that it aided and abetted acts of terrorism by others, which acts caused plaintiffs' injuries."); *Ashton, et al. v. Al Qaeda Islamic Army*, 298 F. Supp. 3d 631, 645 & n.8 (S.D.N.Y. 2018) (contrasting causation requirements under JASTA to causation requirements under the ATA, as presented in *Rothstein* and *In re Terrorist Attacks*).

substantial connection required under the ATA.

Other cases cited by Plaintiffs are also unavailing. *Strauss*, 925 F. Supp. 2d 414, for example, again involved an FTO. There, the court relied on statements from other cases that funds transferred to FTOs are tainted, such that they do not require specific tracing. However, that finding is specific to FTOs, because FTOs "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." *Id*. at 433. This "taint" was created by statutorily-enacted Congressional findings in the legislation creating FTOs, *see id.*, that do not apply in in this case involving a non-FTO.

Moreover, Plaintiffs fail to make any non-conclusory allegations that the attack on MH17 involved any financing whatsoever. To the contrary, the SAC cites public reports that "DPR 'have taken control over a missile defense army unit….,'" while alleging "the material support and financing of Defendants" was used only in "taking control of territory, government buildings, and weapons," not specifically the missile at issue. SAC ¶ 79. Even accepting that money is fungible, the SAC cannot be sustained in the absence of non-conclusory allegations that *any* funds were used to obtain and operate the mechanized air defense system used in the attack. *See In re Terrorist Attacks*, 714 F.3d at 124 (holding that proximate causation was not pled where the complaint alleged neither that the funds were transferred to Al Qaeda nor that the funds aided in the September 11 attacks). Even accepting that funds were transferred to DPR (under Plaintiffs' amorphous definitions and theories), the lack of allegations tying that funding to the attack on MH17 breaks the chain of causation.

Plaintiffs attempt to elide intervening actors in the causal chain by arguing that support for intermediaries raising funds for DPR amounts to support for DPR itself. Pls. Opp. at 45. This argument seeks to avoid the clear holding in *In re Terrorist Attacks*, which was not

addressed in the Opinion, that "providing routine banking services to organizations and individuals said to be affiliated with" a terror group is insufficient to establish proximate cause for a subsequent attack. 714 F.3d at 124. DPR's intermediaries cannot be the same as DPR itself. The websites cited by the SAC belie such an interpretation, because the parties allegedly raising funds for DPR claimed they were raising funds for other groups and purposes as well. Plaintiffs belatedly argue "the Defendants provided financial services to individuals and organizations that existed for the sole purpose of financing the DPR's campaign of terrorism." Pls. Opp. at 45. No such allegation is made in the SAC, nor is it plausible that the various individuals named in the SAC had no "existence"—and no need for financial services—distinct from the activities of DPR.

This case is similar to *O'Sullivan,* 2019 WL 1409446, at *5, and the other cases Plaintiffs seek to distinguish, Pls. Opp. at 45-46, involving defendants alleged to have provided services to banks, groups or countries that in turn had links to the actual perpetrators of the attacks. As in *O'Sullivan*, where a terrorist group in turn provides support to the "'Special Groups' that actually perpetrated the attacks against plaintiffs," there is "another link to the causal chain." 2019 WL 1409446, at *5. Moreover, allegations of provision of services to groups with multifarious purposes and goals—but not to the acquisition or firing of the missile—break the chain of causation, preventing a finding that Sberbank's acts were a direct and substantial cause of Plaintiffs' injuries.

## II.    THE  COURT LACKS PERSONAL JURISDICTION OVER SBERBANK

No case has found personal jurisdiction on the basis of correspondent accounts with allegations as thin as those in the SAC. Plaintiffs seek to minimize the requirement of a "nexus" between the claim and the use of correspondent accounts, which requires an examination of the transactions for their amount and quality to ensure there is a substantial connection between the

defendant's in-forum conduct and the alleged wrong.  *See* Sberbank's MTD Br. at 12, ECF No. 166.

Because previous cases required non-speculative allegations of "dozens" of transfers and "several million dollars," *see Licci*, 732 F.3d at 171; MTD Br. at 12-13 (citing cases showing the number of transactions considered), Plaintiffs assure the Court "many more specific transfers will be discovered in the Russian-bank Defendants' records and the records of other U.S. correspondent banks."  Pls. Opp. at 27.  But speculation in a brief that transfers of that magnitude may have occurred cannot meet Plaintiffs' burden to plead non-conclusory facts supporting personal jurisdiction.  *DeLorenzo v. Viceroy Hotel Group, LLC*, 757 F. App'x 6, 8 (2d Cir. 2018) ("Conclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a *prima facie* showing of jurisdiction.") (cleaned up). Despite the absence of factual allegations, the Opinion (Op. at 8-10) inferred that, because DPR Supporters claimed to have raised millions of dollars, those transfers actually occurred, and that a meaningful number of those transfers passed through Sberbank's U.S. correspondent accounts.[4] Those inferences are unsustainable as a matter of law, and at odds with the limited discovery conducted by Plaintiffs, which showed only two transactions totaling $300, each expressly designated for humanitarian purposes, passing through Sberbank's correspondent accounts.

Plaintiffs' actual jurisdictional allegations are far less compelling than portrayed in the Opinion.  At best, the Plaintiffs allege that "at least some of [the money transferred to DPR Supporters] was routed through VTB Bank and Sberbank's correspondent accounts."  Pls. Opp. at 28.  But saying that "at least some" money flowed through the accounts does not support an

---

[4]    Even if "small donations…may meet the standard for civil liability" under the ATA, as Plaintiffs contend at Plt. Opp. 27 n.7 (and Sberbank disputes in this case), the ability to state a cause of action has no bearing on whether personal jurisdiction exists over a particular defendant.

inference that the correspondent accounts were sufficiently utilized as part of the alleged misconduct to support personal jurisdiction. And it hardly supports an inference that "some" means millions of dollars, the amounts at issue in the cases primarily relied upon by Plaintiffs. Plaintiffs did not allege that millions of dollars passed through Sberbank's correspondent accounts, as they lack any factual basis to make that assertion. These tenuous inferences needed to establish personal jurisdiction are unwarranted and should be abandoned upon reconsideration. *See* MFR Br. at 20-21; Sberbank's MTD Reply at 6-7, ECF No. 175.

## III.    RECENT DECISIONS UNDERCUT PLAINTIFFS' SCIENTER ALLEGATIONS

The Second Circuit's recent decision in *Honickman* warrants reconsideration in this case. The Opposition (at 41) cannot distinguish *Honickman* on the basis that *Honickman* deals with "overtly benevolent organizations" that "are covertly funding terrorism," whereas the DPR "advertised for all the world to see." *Honickman* analyzed whether the complaint plausibly alleged "as a threshold requirement" that the defendant bank was aware of its customers' connections with a terrorist organization before the relevant attacks and held that the allegations of the complaint could not support such an inference. *Honickman*, 6 F.4th at 501. The Second Circuit found that "the public sources cited in the complaint do not plausibly support an inference" that the defendant bank had the requisite knowledge "at the time that it provided banking services to" its customers. *Id.* The same is true here.

None of the news articles published before the MH17 crash—i.e., types of "public sources" credited by the Second Circuit in *Honickman* and *Kaplan*—cited by Plaintiffs mentions the DPR, let alone specific customers of Sberbank. MTR Br. at 18-19. Plaintiffs concede (at 16 n.3) that The New York Times article on which the Opinion relies (at 15) was published nearly one year *after* the MH17 attack, and thus cannot support an inference of knowledge and intent. *Honickman*, 6 F.4th at 501 (holding press coverage dated "more than a year after the last relevant

attack" was insufficient to establish knowledge). The remaining articles from *Forbes*, *Reuters*, and *Kyiv Post* (*see* Op. at 15-16; MTR Br. 18-19), refer to an announcement of an investigation by Ukraine's Attorney General, but do not mention the DPR or specific customers of Sberbank. Thus, in contrast to *Kaplan*, the articles do not support a plausible inference that Sberbank knew that its customers were raising funds for the DPR. *See Kaplan*, 999 F.3d at 849.

Plaintiffs argue (at 4) that the SAC "alleged an abundance of publicly available information" regarding the DPR's activities. *See also* Opp. At 41 (citing SAC ¶¶ 157, 188-90, 225, 227, 299). But an examination of the SAC's citations highlighted in Plaintiffs' Opposition reveals the allegations are sourced from DPR-created YouTube videos (e.g. ¶ 157), allegedly DPR-affiliated organizations' websites and blogs (e.g. ¶¶ 188-90, 225, 227), and personal social media accounts of an alleged "DPR supporter" (e.g. ¶ 299). In *Honickman* the Second Circuit expressly distinguished between "publicly available evidence" and "public sources such as media articles." *Honickman*, 6 F.4th at 502 n.18 (2d Cir. 2021). The court dismissed the "publicly available evidence" Plaintiffs rely on as insufficient to infer knowledge as that would "require the implausible inference that the defendant was aware of those facts even before the news media." *Id.*; *see also* MTR Br. at 18.

If these types of allegations are insufficient to establish "general awareness" under 18 U.S.C. § 2333(d), they most certainly cannot establish the knowledge and intent required by § 2333(a). *Compare Linde*, 882 F.3d at 329-30 (describing intent required for aiding-and-abetting under JASTA) *with id.* at 330, n. 11 (holding that§ 2339A "requir[es] proof of knowledge or intent that material support be used in preparation for or in carrying out specified crimes," and § 2339C "requir[es] proof of unlawful and willful collection or provision of funds with knowledge funds to be used, at least in part, to carry out terrorist activities").

## CONCLUSION

For the foregoing reasons, Sberbank respectfully submits that the Court should grant the

motion for reconsideration and dismiss the SAC as to Sberbank with prejudice.

Dated: New York, New York
      January 21, 2022

                Respectfully submitted,

                DEBEVOISE & PLIMPTON LLP

                By: _/s/ William H. Taft V_

                    Mark P. Goodman
                    William H. Taft V
                    mpgoodman@debevoise.com
                    whtaft@debevoise.com

                    919 Third Avenue
                    New York, New York 10022
                    (212) 909-6000

                WHITE & CASE LLP

                    Nicole Erb
                    Claire A. DeLelle
                    Matthew S. Leddicotte*
                    nerb@whitecase.com
                    claire.delelle@whitecase.com
                    mleddicotte@whitecase.com

                    701 Thirteenth Street, NW
                    Washington, D.C.  20005
                    (202) 626-3600
                    _* admitted pro hac vice_

                    _Counsel for Sberbank of Russia_

11