1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER&BLOCK LLP

David Pressman
Tel +1 212 891 1654
DPressman@jenner.com

February 7, 2022

VIA ECF

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

### *Schansman et al. v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG (S.D.N.Y.) – Plaintiffs' Supplemental Letter to Address the "Different" Basis for Sberbank's Claim of Immunity Asserted by Sberbank for the First Time After Its Answer

Dear Judge Gorenstein:

Plaintiffs submit this supplemental letter brief in further opposition to Sberbank's motion to stay discovery, ECF No. 244, pursuant to Your Honor's order requesting that Plaintiffs address the "different" basis of immunity first raised by Sberbank in its motion to dismiss, ECF No. 258.

For the first two-and-a-half years of this litigation, Sberbank never once asserted it was immune under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq.* (the "FSIA"). When Sberbank finally indicated its intention to raise an FSIA defense, Sberbank asserted that it was immune because "[a]s of April 30, 2020 the Ministry of Finance has owned a 50% equity stake plus one ordinary share in Sberbank." ECF No. 223 at 155 (Nov. 15, 2021 Answer).[1] Clear precedent forecloses Sberbank's claim, however, because mid-litigation acquisition by a foreign state cannot vest an entity with immunity. *See, e.g.*, ECF No. 248 at 4-7 (discussing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003) and other cases rejecting Sberbank's position because ownership at the time of filing is dispositive). In an apparent last-ditch attempt to avoid discovery, Sberbank changed course yet again. Sberbank has now filed a motion to dismiss contending that it has been immune from this Court's jurisdiction all along because the Central Bank of Russia (the "Central Bank")—its prior owner of almost thirty years—is a "political subdivision" rather than an "agency or instrumentality" of the Russian Federation. *See* ECF No. 258 at 20-26.

To justify a stay of discovery, Sberbank must establish a "'strong showing' that [it] will prevail on [its] motion." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 73 (S.D.N.Y. 2013) (internal citation omitted). Sberbank cannot make that "strong showing" here, for at least two reasons.

---

[1] *See also* ECF No. 206 at 2 (Nov. 14, 2021 Letter) (same); ECF No. 226 at 155 (Nov. 17, 2021 Answer) (same); ECF No. 233 at 3 & n.3 (Nov. 19, 2021 Letter) (same); Sberbank's Initial Disclosures at 1-2, Dec. 3, 2021 (same); ECF No. 244 at 1 (Dec. 7, 2021 Letter) (same).

First, the latest version of Sberbank's immunity argument has been waived. A claim of immunity predicated on the Central Bank's majority ownership could have been asserted (but was not) when this suit was first filed in April 2019. Likewise, that immunity claim could have been asserted (but was not) during the voluminous pre-Answer briefing on motions to dismiss. Instead, Sberbank asserted no FSIA defense at all until the evening before it filed its Answer, ECF No. 206 (Pre-Motion Conference Letter), and neither that pre-motion letter nor its Answer included this latest version of its defense. Under clear FSIA case law, that course of action is an "unmistakable" waiver. Sberbank cannot establish a "strong showing" based on an argument that it has waived. *See infra* Section I.

Second, Sberbank's new immunity defense fails on the merits. *See infra* Section II. Every court to have considered the question has rejected the argument (like the one Sberbank makes here) that a central bank is a "political subdivision" of a foreign state, and Congress explicitly stated when enacting the FSIA that central banks do not qualify for that status. *See infra* Section II.A. Even a cursory review of Russian law and the extensive commercial functions of the Central Bank of Russia show that there is no reason to depart from that well-settled rule here. *See infra* Sections II.B & II.C. And even if Sberbank could somehow establish a presumption of immunity, the commercial activity exception would render Sberbank's defense a nullity. *See infra* Section II.D.

As Plaintiffs have previously explained, the Court should exercise its discretion and not reward Sberbank with a stay of discovery for raising a belated second motion to dismiss three years into this action, with the parties already in the midst of discovery pursuant to a schedule agreed to by Sberbank and ordered by the Court. *See* ECF No. 248 at 2-3. Halting discovery now, simply because Sberbank has filed a second motion to dismiss, is alien to interests of justice and the normal course of litigation, where FSIA claims are promptly raised in initial motions to dismiss soon after the filing of a complaint. When belated FSIA claims are asserted in subsequent motions to dismiss, discovery is allowed to proceed. *See Ungar v. Palestinian Org.*, 402 F.3d 274, 294 (1st Cir. 2005) (subjecting foreign state defendant to discovery prior to final determination of its immunity claim because defendant "deliberately chose to hold off on asserting a sovereign immunity defense—and [it] must live with the consequences of that choice"); *see also Hachette Distrib., Inc. v. Hudson Cty. News Co.*, 136 F.R.D. 356, 359 (E.D.N.Y. 1991) (grant of stay "would effectively impede the just and speedy administration" of lawsuit's progress, where discovery had commenced and was being "expeditiously pursued" among non-moving parties).

I.   **Sberbank Has Waived Any Claim Of Immunity Predicated On Ownership By The Central Bank Of Russia.**

The FSIA expressly provides that a foreign state may waive its claim of immunity "either explicitly or by implication." 28 U.S.C. § 1605(a)(1). Consistently, the Second Circuit has instructed that district courts have considerable discretion to determine whether waiver has occurred "in light of the circumstances of a particular case." *Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 278 (2d Cir. 1984); *accord Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 558 (S.D.N.Y. 2001).

Crucially, the failure to assert a sovereign immunity defense in a party's first responsive pleading—the Answer—has been treated as an unambiguous waiver. For example, the Second Circuit has described waiver as "unmistakable" where "a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity." *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991) (quoting H.R. Rep. No. 94-1487, at 18 (1974)); *see*

*also Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 326 (2d Cir. 1993) (describing the first responsive pleading as the "*last chance* to assert FSIA immunity if the defense has not been previously asserted" (emphasis in original)).

It is "unmistakable" that Sberbank has waived an immunity defense based on the Central Bank's ownership at the time of filing. *Shapiro*, 930 F.2d at 1017. In its Answer to the Second Amended Complaint, Sberbank asserted an immunity defense solely based on the Ministry of Finance's April 2020 acquisition. *See* ECF No. 226 at 155. Sberbank's new immunity defense based on Central Bank ownership was raised for the first time in its post-Answer motion to dismiss, ECF No. 258 at 20-26, as Your Honor has already recognized, ECF No. 269 (Jan. 18, 2022 Order) (describing Sberbank's "different" immunity defense raised for the first time in its motion to dismiss). This is precisely the "unmistakable" and "unambiguous" conduct contemplated by the FSIA's waiver provision. *See Shapiro*, 930 F.2d at 1017.

The circumstances of this case reinforce Sberbank's waiver. Sberbank argued in three dispositive motions that any attempt "to present Sberbank as an instrumentality of Russia" was "false," thereby taking "position[s] before the court inconsistent with the assertion of the sovereign immunity defense." *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, Civ. A. No. 82-0220, 1988 WL 122568, at *6 (D.D.C. Nov. 8, 1988) (describing inconsistent positions as the "most important[]" factor in the court's FSIA waiver analysis). *See* ECF No. 166 at 26 n.7 (Nov. 2, 2020 Motion to Dismiss); ECF No. 115 at 26 n.5 (Nov. 5, 2019 Motion to Dismiss); ECF No. 98 at 26 n.6 (Sept. 19, 2019 Motion to Dismiss).

Even as the case proceeded to discovery, Sberbank did not assert an immunity defense. Instead, following the denial of Sberbank's first motion to dismiss, Sberbank requested—and Plaintiffs consented to—an adjournment of its deadline only "to answer the Second Amended Complaint and to file any motion for reconsideration" until a later date. ECF No. 194 at 1 (Oct. 12, 2021 Letter). Sberbank requested no adjournment of other deadlines, nor did it reserve the right to bring any other motions, including a motion to dismiss for lack of subject matter jurisdiction. *Cf. Canadian Overseas*, 727 F.2d at 276 (finding no waiver where foreign entity had "reserved its right to assert sovereign immunity in three separate documents").

Sberbank then participated in the litigation by agreeing to a complete discovery schedule, which Your Honor adopted. *See* ECF Nos. 196, 197; *Eitzen Bulk A/S v. Bank of India*, 827 F. Supp. 2d 234, 241 (S.D.N.Y. 2011) (finding waiver where party delayed one-and-a-half years to raise issue of sovereign immunity and had both responded to and served discovery requests); *Canadian Overseas*, 727 F.2d at 278 (viewing party's participation in litigation as factor supporting waiver).

Because Sberbank has waived at least its claim of immunity based on its ownership by the Central Bank, Sberbank cannot demonstrate the "strong showing," *Hong Leong Fin. Ltd.*, 297 F.R.D. at 73, necessary to obtain a stay of discovery.[2]

---

[2] At minimum, Sberbank has waived a right to be free from the burdens of discovery while its immunity defense is litigated. Where parties attempt to use an assertion of immunity to manipulate the course of the litigation, courts have consistently held that parties forfeit at least some of the rights attendant to a valid claim of sovereign immunity and must participate in the litigation while their claim of immunity remains pending. *See Ungar*, 402 F.3d at 292-94 (sustaining default judgment for party's failure "to comply with the court's discovery orders" after defendant lost initial motions to dismiss but continued to assert right to an immediate determination of a second

## II. Sberbank's Assertion That The Central Bank Of Russia Is A "Political Subdivision" Of The Russian Federation Lacks Merit.

On the merits, Sberbank's newest immunity defense likewise lacks the requisite "strong showing" necessary to support a stay of discovery.

If the Central Bank is an "agency or instrumentality," then Sberbank is not immune under the FSIA. *See, e.g.*, *Filler v. Hanvit Bank*, 378 F.3d 213, 220 (2d Cir. 2004). Sberbank thus now claims that the Central Bank is a "political subdivision" of the Russian Federation, such that Sberbank's ownership by the Central Bank was, for all relevant purposes, equivalent to ownership by the Russian Federation itself. *See* 28 U.S.C. 1603(b)(2) (extending immunity to entities "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof").

To determine whether an entity is a "political subdivision" or an "agency or instrumentality" for FSIA purposes, the Second Circuit employs the so-called "core functions" test. *See Garb v. Republic of Poland*, 440 F.3d 579, 582, 594 (2d Cir. 2006).[3] Under that test, courts consider the relevant entity's structure and function to assess whether it is "predominantly governmental or commercial in nature." *Id.* (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994)). If an entity is predominantly "governmental," then it is a "political subdivision"; if it is predominantly "commercial," then it is (at most) an "agency or instrumentality." *Id.* at 594-98.

Against this backdrop, Sberbank's newfound claim to immunity cannot succeed. *First*, uniform case law and unambiguous legislative history make clear that a central bank is (at most) an "agency or instrumentality" of a foreign state rather than a "political subdivision." *Second*, as President Putin and Central Bank leadership have clearly stated, the Central Bank operates independently from the government, reinforcing that it is not a "political subdivision" of the Russian government. *Third*, the Central Bank exercises predominantly commercial functions, not governmental ones, rendering it an "agency or instrumentality." *Fourth*, Sberbank cannot establish a "strong showing" regardless of the Central Bank's status because the commercial activity exception applies.

### A. Courts Have Invariably Held, And Congress Clearly Stated, That Central Banks Are "Agencies or Instrumentalities" Of Foreign States For Purposes Of The FSIA.

To start, the case law here is clear and dispositive. The Second Circuit and other courts have uniformly held—both before and after the Second Circuit adopted the "core functions" test in 2006—that central banks are "agencies or instrumentalities" of foreign states for purposes of the FSIA rather than "political subdivisions":

---

motion to dismiss based on a newly-raised sovereign immunity defense); *Bolduc v. United States*, 402 F.3d 50, 54 (1st Cir. 2005) (requiring United States to proceed to trial notwithstanding pending but belatedly filed motion to dismiss for lack of subject-matter jurisdiction); *Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) (holding that defendant may waive right to immediate appeal based on manipulative use of immunity claim); *Yates v. City of Cleveland*, 941 F.2d 444, 449 (6th Cir. 1991) (same).

[3] Sberbank agrees that the "core functions" test governs. *See* ECF No. 258 at 20.

- "State-owned central banks indisputably are included in the § 1603(b) definition of 'agency or instrumentality.'" *S & S Machinery Co. v. Masinexportimport*, 706 F.2d 411, 414 (2d Cir. 1983) (internal citation omitted).

- The central bank of Cuba "is an agency or instrumentality within the meaning of the FSIA." *Weininger v. Castro*, 462 F. Supp. 2d 457, 497-98 (S.D.N.Y. 2006).

- It is "clearly" the case that the central bank of Iran's "core functions are commercial, making it an agency or instrumentality of Iran." *Henkin v. Islamic Republic of Iran*, No. 1:18-cv-1273, 2021 WL 2914036, at *18 (D.D.C. July 12, 2021) (applying "core functions" test).

- Turkey's central bank is an "agency or instrumentality," and the "FSIA [] contemplated that a foreign state's central bank would constitute an 'agency or instrumentality.'" *Davoyan v. Republic of Turkey*, No. CV 10-5636, 2010 WL 11507885, at *3-4 (C.D. Cal. Dec. 7, 2010) (applying "core functions" test).

- The Bank of Japan, which was established and governed by legislation providing that it "shall serve as 'the central bank of Japan' and shall conduct business only as directed by the [legislation]," was "plainly an 'agency or instrumentality of a foreign state.'" *Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 275 (D.D.C. 2008).

Consistently, courts—including the Supreme Court and the Second Circuit—have repeatedly referred to and accepted that central banks are either an "agency" or an "instrumentality" of a foreign state, rather than a "political subdivision."[4] Notably, this roster of cases includes even a prior case involving a claim of immunity from Sberbank, where a court in this district determined that the Central Bank of Russia is an "agency or instrumentality" of the Russian Federation. *See Parex Bank v. Russian Sav. Bank*, 81 F. Supp. 2d 506, 507 (S.D.N.Y. 2000).

In contrast, Sberbank does not cite (and Plaintiffs have not found) a single case in which a court has concluded that a central bank was a "political subdivision." Instead, ignoring the cases cited above entirely, Sberbank relies on a handful of cases involving entities that look nothing like a central bank, such as the Swedish National Museum and the Argentinian space exploration agency. *See* ECF No. 258 at 22. But all of those cases concern ministry-level political departments, entities housed within those departments, or entities that do not engage in commerce at all.[5] It is cases

---

[4] *See, e.g.*, *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 482 (1983) (describing Central Bank of Nigeria as "an instrumentality of Nigeria"); *Chettri v. Nepal Rastra Bank*, 834 F.3d 50, 55 (2d Cir. 2016) (accepting that "Rastra Bank [Nepal's central bank] is an agency or instrumentality of a foreign state"); *Scheidemann v. Qatar Football Ass'n*, No. 04 CIV. 3432 (LAP), 2008 WL 144846, at *3 (S.D.N.Y. Jan. 15, 2008) ("The paradigmatic example of an organ [an "agency or instrumentality" under the FSIA] is a central bank.").

[5] *See Servaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 25 (2d Cir. 2011) (Iraqi Ministry of Industry), *as amended* (Feb. 16, 2011); *Taylor v. Kingdom of Sweden*, No. 18-1133 (RJL), 2019 WL 3536599, at *3 (D.D.C. Aug. 2, 2019) (Sweden's National Museums of World Culture, "a state agency within the Swedish Ministry of Culture, which is itself a department of the Government of the Kingdom of Sweden"); *NML Cap., Ltd. v. Space Expl. Techs. Corp.*, No. CV 14-02262 SVW, 2015 WL 1334291, at *6 (C.D. Cal. Mar. 6, 2015) (Argentinian space exploration agency with "nothing *commercial*" about its existence (emphasis in original)); *Berg v. Kingdom*

5

involving central banks, not the hodgepodge of other government agencies that Sberbank invokes, that control here.

Legislative history also cuts clearly against Sberbank's belated immunity defense. When Congress enacted the FSIA, it explicitly listed "a central bank" as a type of entity "which meet[s] the definition of an 'agency or instrumentality of a foreign state.'" H.R. Rep. No. 94-1487, at 15-16 (1976). Sberbank cites no contrary legislative history that supports its position and does not explain why this clear congressional intent should be discarded.

The consistent conclusions of courts and Congress make good sense. Unlike entities that form "an integral part of a foreign state's political structure," *Transaero*, 30 F.3d at 151, modern central banks exist in parallel to the government rather than "*beneath* the central government," thereby falling outside the plain meaning of the term "political subdivision." *Garb*, 440 F.3d at (quoting H.R. Rep. No. 94-1487, at 15 (1976)). Central banks exercise their principal function—currency stabilization—through commercial conduct, such as the purchase and sale of assets on domestic and foreign exchanges and the issuance of loans. While this function bears a relation to government, "the FSIA's focus [is] on the 'nature' of the activity, rather than its 'purpose.'" *Holladay v. Islamic Republic of Iran*, 523 F. Supp. 3d 100, 114 (D.D.C. 2021) (holding that Iranian central bank is an "agency or instrumentality" of a foreign state); *see also Smith v. Overseas Korean Cultural Heritage Found.*, 279 F. Supp. 3d 293, 297 (D.D.C. 2018) (noting the FSIA's focus on the "nature" rather than the "purpose" of an entity's functions under "core functions" test). The "core functions" test was built around these realities and "designed . . . such that a central bank would be treated as an agency or instrumentality." *Davoyan*, 2010 WL 11507885, at *3 (citing *Transaero*, 30 F.3d at 152).

### B. The Central Bank Of Russia Is Legally And Politically Independent Of The Russian Federation.

Nothing about the Central Bank of Russia justifies a different outcome here. The "core functions" test was developed to separate those governmental bodies that "are an integral part of a foreign state's political structure" ("political subdivisions") from those that are not ("agencies or instrumentalities"). *Transaero*, 30 F.3d at 152. Courts have accordingly considered an entity's political, legal, and financial independence as highly probative of its status as an "agency or instrumentality." *See Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024, 1036 (9th Cir. 2007) (noting that an entity is an "agency or instrumentality" when it "is primarily responsible for its own finances," "is run as a distinct economic enterprise," and "operates with independence from close political control") (internal citation and quotation marks omitted), *rev'd sub nom. on other grounds Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009); *Holladay*, 523 F. Supp. 3d at 113 (noting that Iranian central bank's representations that it "is an independent and distinct legal entity, separate from the Iranian government" weighed in favor of "agency or instrumentality" finding).

---

*of the Netherlands*, No. 2:18-CV-3123-BHH, 2020 WL 2829757, at *1 (D.S.C. Mar. 6, 2020) (Dutch Ministry of Education, Science, and Culture and associated Cultural Heritage Agency), *reconsideration denied sub nom. Berg v. Kingdom of the Netherlands*, Civ. A. No. 2:18-3123-BHH, 2020 WL 3104699 (D.S.C. June 11, 2020).

With respect to the Central Bank, the "independence" analysis is not complicated: prominent leaders of the Russian Federation, the Central Bank itself, and even Sberbank (contrary to its representations in this Court) have all regularly touted the Central Bank's independence. Consider these examples:

- President Vladimir Putin stated that the "Central Bank, in accordance with the law and worldwide practice, is an independent entity, which in its core function is outside of Government control and acts exclusively independently."[6]

- The Central Bank of Russia's website proclaims unequivocally that it "is not a body of state power."[7]

- The current Chairwoman of the Central Bank, Elvira Nabiullina, stated that "[e]ven though the independence of the Bank of Russia is formalized in law, we had to prove it when we were confronted by serious external pressures in 2014," explaining that the Central Bank took "decisive actions, which were met by stinging criticism from . . . certain parts of the Government."[8]

- Alexey Zabotkin, Deputy Chairman of the Central Bank of Russia, stated that the "Bank of Russia is independent, and this independence is respected by other institutions of government. During the [past] two years at the Bank of Russia, I have already had enough opportunities to confirm that there is a complete understanding that the independence of the Central Bank is equally important during the 'peaceful' times as [it is] during the period of turbulence."[9]

- Sberbank's Chairman and CEO Herman Gref, in announcing the change of Sberbank's ownership from the Central Bank of Russia to the Ministry of Finance in April 2020, stated that "the whole nation of Russia is becoming a Sberbank shareholder and the main beneficiary of its operations."[10] Mr. Gref apparently understood that Sberbank's prior

---

[6] Большая пресс-конференция Президента РФ Владимира Путина [Russian President Vladimir Putin's Big News Conference], Official Website of the Plenipotentiary Representative of the President of the Russian Federation (Dec. 14, 2017), http://szfo.gov.ru/press/events/1743 (translated from original Russian language).

[7] *Legal Status and Functions*, Bank of Russia, https://www.cbr.ru/eng/about_br/bankstatus (last accessed Jan. 27, 2022).

[8] Лекция Председателя Банка России Эльвиры Набиуллиной. Конференция МВФ в Вашингтоне [Russia's Difficult Path to the Inflation Target], Bank of Russia (Sept. 6, 2018), http://www.cbr.ru/press/event/?id=5227 (professionally translated from original Russian language).

[9] Интервью зампреда ЦБР Заботкина о ставке, нейтральном уровне, голубях и ястребах [Interview with CBR Deputy Chairman Zabotkin], Bank of Russia (July 16, 2020), https://www.cbr.ru/press/event/?id=6927 (professionally translated from original Russian language).

[10] Press Release, Sberbank, Sberbank Announces its Controlling Stake Sold to Russian Ministry of Finance as Part of National Wealth Fund Placement (Apr. 10, 2020),

ownership by the Central Bank did *not* equate to majority ownership by the Russian Federation, as Sberbank's argument now requires the Court to conclude.

These statements reflect well-established principles of Russian law that the Central Bank is legally and politically independent from the Russian Federation. The Russian Constitution provides that the Central Bank shall "fulfil independently" its goal of "protecti[ng] and ensuring the stability of the rouble." Konstitutsiia Rossiiskoi Federatsii [Russian Constitution] art. 75. Russian law provides that the Central Bank "fulfils the functions and exercises the powers stipulated in the Constitution of the Russian Federation and in the present Federal Law, independently" of all governmental bodies. "On the Central Bank of the Russian Federation (The Bank of Russia)", Federal Law No. 86-FZ of July 10, 2002, art. 1 ("Bank Law").[11]

In the teeth of this evidence, Sberbank contends principally that the Central Bank is coextensive with the Russian Federation because it must submit reports to the State Duma and is casually supervised by an entity called the National Financial Board. ECF No. 260 ¶¶ 38-39 (Declaration of L.G. Efimova). According to Sberbank's expert, the National Financial Board—composed of individuals appointed by Russian state power bodies like the Presidency and the Duma—"possesses and exercises in practice the ability to control" the Central Bank. *Id.* ¶ 39. But Sberbank fails to explain how a supervisory body composed of appointees from three separate—and conflicting—branches of government renders the Central Bank a "political subdivision" when such supervision is in fact characteristic of an "agency or instrumentality," and when, notwithstanding its supervision, the Government offers "stinging criticism" of the Central Bank's actions.[12] *See, e.g.*, *Filler*, 378 F.3d at 217 (describing an "agency or instrumentality" as an entity that has "many of its operations overseen by" the government); *NXP Semiconductors USA, Inc. v. Brevets*, No. C 14-1225 SI, 2014 WL 4621017, at *9 (N.D. Cal. Sept. 15, 2014) (holding that a French public depository that functions like a bank was an "agency or instrumentality" even though "France exercises some degree of control and involvement in the [entity] . . . [because] French law guarantees [its] autonomy").

Sberbank also suggests that the Central Bank is not independent because the Bank's Board of Directors is "accountable" to the State Duma through its powers of appointment and, allegedly, dismissal. *See* ECF No. 260 ¶ 34. However, Sberbank elides the numerous ways that the Central Bank's structure—including its intermediary oversight by entities *other* than state power bodies—was designed to keep the institution insulated from the politics of the Russian Federation.[13] This, in turn, supports a finding that the Central Bank's core function is not predominantly

---

https://www.sberbank.ru/en/press_center/all/article?newsID=c5272937-f2c4-4205-a606-38970f1e9042&blockID=1539&regionID=77&lang=en&type=NEWS.

[11] As Sberbank's own expert notes, this independence extends even to the Central Bank of Russia's finances: the Bank Law "establishes that the Bank of Russia has independent financial liability and its assets are separate from the State," and it is required to "cover its expenses with its own revenues," including "those pertaining to the performance of state functions." ECF No. 260 ¶ 24.

[12] *See supra* n.8 and accompanying text.

[13] For example, the Chairman of the Central Bank is entitled to a four-year term and can only be dismissed for cause, *see* Bank Law, art. 14; other members of the Board of Directors can only be dismissed upon recommendation of the Chairman, *id.*, art. 15; and the entirety of the Central Bank's Board of Directors is statutorily prohibited from maintaining membership in political or socio-political organizations, *id.*, art. 19.

"governmental" in nature.  *Cf. Davoyan*, 2010 WL 11507885, at *4 (finding that Turkish Central Bank Governor's five-year term and selection based on economic acumen "suggests that [the] Central Bank's function is economic rather than political"); *see also In re Terrorist Attacks on Sept. 11, 2001*, Civ. A. No. 03 MDL 1570 (GBD), 2011 WL 13244047, at *7 (S.D.N.Y. Dec. 22, 2011) (holding that Iranian central bank is an "organ" of Iran, *i.e.*, an "agency or instrumentality," even though it is "tightly connected to the government of Iran").

### C. The Central Bank Of Russia Exercises Predominantly Commercial Functions, Not Governmental Functions.

Sberbank's assertion of immunity also fails because the Central Bank of Russia's "core functions" are predominantly commercial rather than governmental.  *Garb*, 440 F.3d at 594.

Even a cursory review of relevant Russian law illustrates the breadth of commercial activity the Central Bank is authorized to undertake.  Article 46 of the Bank Law permits the Central Bank to "buy and sell state securities on the open market"; "buy and sell foreign currency, as well as the payment documents liabilities nominated in foreign currency, put out both by Russian and by foreign credit institutions"; "buy, [ ] store and [ ] sell noble medals and other kinds of currency valuables"; "carry out operations with financial instruments used to control financial risks"; "open accounts in Russian and in foreign credit institutions on the territory of the Russian Federation and on the territories of foreign states"; and "to perform other banking operations on its own behalf."  Article 48 also authorizes the Central Bank to "perform banking operations" for a large variety of customers, such as servicemembers in the Russian military.  This quintessential commercial activity can be carried out by purely private banks, regardless of their proximity to the Russian Federation.

The economic reality of these and other activities is reflected in the Central Bank's balance sheet, which, as of October 2021, included 38 trillion rubles in outstanding loans to the private sector alone.[14]  *See Holladay*, 523 F. Supp. 3d at 112-13 (D.D.C. 2021) (finding that Iranian central bank's outstanding loan balance of one trillion Rials supported finding that entity was predominantly "commercial").

The Central Bank's direct ownership of Sberbank for itself (and not for the Russian Federation) illustrates its predominantly commercial role.  At the time this lawsuit was filed, the Central Bank held Sberbank's stock on its own behalf.  *See* ECF No. 259-1 at 3 (listing Sberbank's owner as the "Central Bank of the Russian Federation").  In contrast, the Russian Ministry of Finance currently owns Sberbank's stock on a representative basis, on behalf of the Russian Federation.  *See* ECF No. 259-3 at 3 (listing stock owner as the "Russian Federation *represented by the Ministry of Finance of the Russian Federation*" (emphasis added)).  True "political subdivisions" "hold and administer the property of the [] state," not their own property.  *Garb*, 440 F.3d at 594 (concluding that Polish Ministry of the Treasury's ownership of state property renders its "core function" as governmental).  In contrast, the Central Bank's direct ownership of Sberbank indicates that it was acting not as a governmental steward but as "a private player within [the market]."  *Republic of Argentina v. Weltover*, 504 U.S. 607, 614-17 (1992) (holding that Argentinian central bank's issuance of debt instruments was "commercial activity" for purposes of the FSIA).

---

[14]   *Russian Central Bank Balance Sheet*, Trading Economics, https://tradingeconomics.com/russia/central-bank-balance-sheet (last visited Jan. 28, 2022).

Sberbank resists the extensive commercial nature of the Central Bank's activities by demonstrating the uncontroversial proposition that the Central Bank (like all central banks) exercises *some* regulatory functions as part of its portfolio. *See* ECF No. 260 ¶¶ 9-15. This does not render a central bank's activities *predominantly* governmental, for the "core functions" test asks not whether a regulatory function can be identified at all, but whether that function "predomina[tes]." *Garb*, 440 F.3d at 594. For example, the district court in *Henkin* determined that Iran's central bank's "functions are undisputedly commercial," even though the bank serves as "the principal regulator of other banks," "issues currency," and "provides more banking services to the Iranian government than other commercial banks." 2021 WL 2914036, at *18. Simply put, the Central Bank, like other central banks, is predominantly an economic engine that exists independent from the Government.[15] It thus cannot qualify as a "political subdivision."

In any event, the Court should not grant Sberbank's motion given the existing record. Briefing on the underlying motion has not concluded—in part to allow Plaintiffs time to more fully develop facts relevant to Sberbank's purported defense and prepare rebuttal expert evidence necessitated by Sberbank's eleventh-hour production of expert evidence on which its baseless motion relies.[16] This Court can rely on the pendency of that briefing to deny without prejudice Sberbank's motion to stay discovery, or it can hold that motion in abeyance until the briefing is complete. *See Morgan Art Found. Ltd. v. McKenzie*, No. 18-CV-4438, 2020 WL 6135113, at *3 (S.D.N.Y. Oct. 18, 2020) (denying request for stay where, among other things, the underlying motion had yet to be fully briefed); *Republic of Turkey v. Christie's, Inc.*, 316 F. Supp. 3d 675, 678 (S.D.N.Y. 2018) (denying stay motion where, among other things, the court was "unable to fully assess the strength of the pending motion, since it only recently was filed, and opposition papers are not yet due").

### D. Sberbank's New Argument Does Not Establish A "Strong Showing" Because The Commercial Activity Exception Applies.

Even if Sberbank were entitled to a presumption of immunity, Sberbank still could not make a "strong showing" for immunity because the commercial activity exception applies. As the Court considers the ultimate immunity decision, Plaintiffs are entitled to marshal evidence supporting

---

[15] Plaintiffs are currently in the process of evaluating the content of the declaration provided by Sberbank's expert, Professor Lyudmila Efimova. *See* ECF No. 260. Contrary to the rigid conclusion presented in her declaration, Professor Efimova has previously written about the "internal contradiction[s]" in the Bank Law and difficulties in ascertaining the precise nature of the Central Bank's status. *See generally* L.G. Efimova, Again on the Legal Personality of the Bank of Russia, Business and Banks. (1999) (reflected in L.G. Efimova, Banking Law, Banking System of the Russian Federation (Moscow: Statut Publishing 2010)) (translated from original Russian language). For example, Professor Efimova's declaration in this case emphasizes the governmental nature of the Central Bank by highlighting Article 3 of the Bank Law, which states that "deriving profit shall not be the purpose of the Bank of Russia's activity," ECF No. 260 ¶ 32, but she has previously described the same language as "inaccurate at best" given the Central Bank's self-funding obligations. *See* Efimova, Again on the Legal Personality of the Bank of Russia, at 1 (translated from original Russian language).

[16] Judge Carter adjourned the deadlines related to the motion to dismiss *sine die* and ordered the parties to conduct jurisdictional discovery "for purposes of making an immunity determination with regard to Sberbank." ECF No. 266 (Jan. 13, 2022 Order).

the commercial activity exception, and "the ultimate burden of persuasion remains with the alleged foreign sovereign." *Figueroa v. Ministry for Foreign Affs. of Sweden*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)).  Here, Sberbank materially supported and financed a known terrorist group through its provision of financial services—quintessential commercial conduct. *See* ECF No. 156 at 98-102.  The FSIA's commercial activity exception thus strips Sberbank of any claim of immunity it would possess. *See, e.g.*, ECF No. 248 at 7-9; *cf.* ECF No. 185 at 9-10 (Sept. 30, 2021 Opinion and Order) (holding that Sberbank's domestic financial transactions aiding the DPR were sufficient to vest the Court with personal jurisdiction).

***

For the foregoing reasons, and the reasons previously stated in Plaintiffs' prior opposition brief, ECF No. 248, Plaintiffs respectfully request that Sberbank's motion for a protective order staying discovery be denied.


Respectfully submitted,



/s/  David J. Pressman


David J. Pressman
Terri L. Mascherin (admitted *pro hac vice*)
Jason P. Hipp
JENNER & BLOCK LLP

*Counsel for Plaintiffs*


cc:     Counsel of Record (via ECF)