IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS SCHANSMAN, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>SBERBANK OF RUSSIA, PJSC, *et al.*,<br><br>    *Defendants*. | Case No. 1:19-cv-02985-ALC-GWG<br><br>Hon. Andrew L. Carter, Jr. |

**SBERBANK'S OPPOSITION TO
PLAINTIFFS' PROPOSED PLAN FOR JURISDICTIONAL DISCOVERY**

Sberbank has provided Plaintiffs with over 3000 pages of factual evidence concerning Sberbank's ownership structure (at both the time the original complaint was filed and at the time the SAC was filed) and Russian legal authorities concerning the core functions of the Bank of Russia. Plaintiffs' revised jurisdictional discovery plan fails to "outlin[e] what specific facts *crucial to an immunity determination* remain at issue and what *specific category* of facts and/or expert evidence they seek that would prove those specific facts," as directed by this Court at the February 4, 2022 Status Conference. Feb. 4, 2022 Tr. at 3:18-21 (emphases added), ECF No. 287.

Instead, Plaintiffs identify three broad legal principles, designated as "Issues" in their proposed plan, and propound free-wheeling document requests that "*might*" result in the production of documents relating to those issues (including documents that have already have been disclosed and related to undisputed facts such as Sberbank's ownership structure). Because Plaintiffs fail to identify a single disputed fact, any additional jurisdictional discovery of Sberbank under the FSIA is unwarranted under the Court's Order and controlling law. *See* Order 1 (authorizing "limited" jurisdictional discovery "focused on the specific facts relevant to

1

determining whether Sberbank is a foreign sovereign"), ECF No. 266; *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 207 (2d Cir. 2016) ("When sovereign immunity is at issue, discovery is warranted only to verify allegations of specific facts crucial to an immunity determination." (quotation omitted)).  Accordingly, this Court should direct that the Parties expeditiously complete briefing on Sberbank's motion to dismiss for lack of subject-matter jurisdiction under the FSIA.

Beyond the failure to identify any disputed "specific facts," Plaintiffs' proposed jurisdictional discovery plan contains several other fundamental flaws:

***First***, Plaintiffs' proposed plan fails to explain why the Bank of Russia's core functions cannot be determined as a matter of Russian law, based on the detailed Russian law declaration of Professor Efimova (ECF No. 260) and any countervailing expert declaration that Plaintiffs may submit.  Plaintiffs acknowledge the relevance of Russian law by seeking documents concerning Professor Efimova's opinion on the relationship between the Bank of Russia and the Russian Federation (*see* Pls.' Proposed Plan Issue 1(B))—documents that Sberbank has already produced—but Plaintiffs fail to articulate any reason why this Court cannot resolve any questions about this relationship on the Russian law declarations alone.  In the absence of any specific disputed facts, the Parties' written submissions provide more than a sufficient record for application of the "core functions" test.  *See Garb v. Republic of Poland*, 440 F.3d 579, 594-95 (2d Cir. 2006) (relying on the Constitution of Poland, an academic article on Polish constitutional politics, and an expert affidavit to determine "political subdivision" status of entity); *SerVaas Inc. v. Republic of Iraq*, 653 F. App'x 22, 25 (2d Cir. 2011) (concluding with "no difficulty that the core functions of the" entity "are primarily governmental" based on Iraq's submissions of Iraqi law); *Gleissner v. Air China Airlines Ltd.*, No. 15-cv-9162-ER, 2019 WL 1369456, at *4 (S.D.N.Y.

Mar. 26, 2019) (finding that entity was "not a political subdivision" under the core functions test where its annual report described it as a "holding company" and "state-owned enterprise").

Further, Plaintiffs' proposed plan makes no effort to justify a deposition of Professor Efimova. U.S. courts routinely decide questions of foreign law on the parties' written submissions from foreign law experts, without the need for depositions. *See, e.g.*, *Kashef v. BNP Paribas SA*, No. 16-cv-3228-AJN, 2017 WL 2633580, at *2 (S.D.N.Y. June 15, 2017) (denying plaintiffs' request to lift discovery stay to depose defendants' Sudanese law expert, who submitted a declaration in support of defendants' motion to dismiss, and concluding that "the determination of foreign law is generally a question of law for the Court to decide"); *Wultz v. Islamic Republic of Iran*, No. 08-cv-1460, 2010 WL 4166773, at *2 (D.D.C. Oct. 20, 2010) (denying plaintiffs' motion for leave to depose defendant's Israeli law experts prior to court's adjudication of motion to dismiss claims based on Israeli law).

In any event, Plaintiffs' proposed plan is unworkable because it makes no provision for a deposition of any proposed rebuttal expert Plaintiffs may introduce. Thus, to the extent Plaintiffs intend to rely upon a Russian law expert and the Court deems expert depositions are necessary, Plaintiffs should produce their rebuttal declaration (together with materials on which their expert relies) *before* any deposition of Professor Efimova takes place. And Sberbank should have the opportunity to depose Plaintiffs' Russian law expert *before* submitting its reply brief in support of its Motion to Dismiss.

**Second**, Plaintiffs' proposed plan improperly focuses on the Bank of Russia's relationship *with Sberbank*, instead of the Bank of Russia's overall functions and relationship *with the Russian Federation*. The "core functions" test focuses on the latter. *See Garb*, 440 F.3d at 594 (considering whether the Ministry of the Treasury of Poland was an "integral part" of Poland's "political

3

structure"). Facts concerning interactions between the Bank of Russia and Sberbank are not crucial to a determination of whether the Bank of Russia engages in predominantly governmental functions, and Plaintiffs have failed to establish otherwise. *See, e.g.*, Pls.' Proposed Plan Issue 1(A); Issue 2(A)-(F).

In any event, the nature of Sberbank's relationship with its former majority shareholder is plain from the face of Sberbank's publicly available corporate governance documents. For example, Sberbank's Charter, approved by the Annual General Meeting of Shareholders Minutes No. 32 dated May 29, 2019, provides a wealth of information concerning the relationship between Sberbank and the Bank of Russia. *See, e.g.*, Sberbank Charter § 1.14 ("The Bank shall not be liable for the obligations of the Bank of Russia. The Bank of Russia shall not be liable for the obligations of the Bank unless the Bank of Russia has assumed such obligations."). Plaintiffs have failed to justify their proposed intrusive discovery into Sberbank's "communications and statements" concerning the governmental or commercial nature of the Bank of Russia or the workings of Sberbank's Supervisory Board, or explain how that discovery bears on this Court's determination of whether the Bank of Russia engages in predominantly governmental functions. *See* Pls.' Proposed Plan, Issue 1 (A), (C).

Plaintiffs' proposed plan also fails to articulate how any commercial function of the Bank of Russia vis-à-vis Sberbank would assist in the predominance analysis under *Garb*, which requires this Court to examine the Bank of Russia's overall functions to determine whether those functions are predominantly governmental or commercial. Moreover, Professor Efimova addresses the Bank of Russia's relationship with Sberbank in her declaration (¶¶ 20-21), and Plaintiffs have failed to articulate any specific facts about that relationship that are not covered in Professor Efimova's declaration and that are crucial to this Court's immunity determination.

4

***Third***, Plaintiffs target information that is self-evidently not discoverable from Sberbank—for example, information concerning the relationship of the Bank of Russia's employees to the Russian Federation and the Bank of Russia's corporate tax liabilities. *See, e.g.*, Pls.' Proposed Plan Issue 1(D); Issue 2(A)-(F). The Bank of Russia is not a party to this litigation and is immune from jurisdictional discovery. *See Uni-Top Asia Inv. Ltd. v. Sinopec Int'l Petroleum Expl. & Prod.*, No. 20-cv-1770, 2022 WL 252029, at *4 (D.D.C. Jan. 26, 2022) (explaining that "any discovery request is likely to be futile as to whether" an entity's "shareholders are 'political subdivisions'" where "[n]one of those shareholders [was] a party" to the case). Plaintiffs, however, do not require discovery to obtain this information, which can be found in the Bank of Russia's public reports and assessed as a matter of Russian law. *See, e.g.*, Efimova Decl. ¶¶ 27, 32 (explaining that, pursuant to the Law on the Bank of Russia, members of the Bank of Russia's Board of Directors are "full-time employees of the Bank of Russia" and that the National Financial Board is responsible for setting Bank of Russia employee compensation and benefits); Law on the Bank of Russia, ch. XIV ("Bank of Russia Employees"), ECF No. 260-5; Bank of Russia, 2019 Annual Report 295 (indicating negative tax liabilities under Article 284 of the Tax Code of the Russian Federation due to advance payment).[1]

***Fourth***, contrary to this Court's January 13 Order and Second Circuit law, Plaintiffs' proposed plan improperly seeks broad merits discovery couched as jurisdictional discovery under the FSIA's commercial-activity exception regarding Sberbank's "purely commercial activity in the United States." Pls.' Proposed Plan Issue 3. The January 13 Order directed "jurisdictional discovery limited to the specific facts relevant to determining whether Sberbank is a foreign

---

[1] The Bank of Russia's annual reports (1997-present) are accessible, in English, on the Bank of Russia's website: http://www.cbr.ru/eng/about_br/publ/god/ (last accessed Feb. 23, 2022).

sovereign." Order 1, ECF No. 266. Therefore, any discovery beyond what is necessary to determine whether Sberbank is an "agency or instrumentality" within the meaning of the FSIA is unwarranted. *Arch Trading*, 839 F.3d at 207; *Funk v. Belneftekhim*, 861 F.3d 354, 367 (2d Cir. 2017) (plaintiffs entitled only to "specific facts of ownership and structure that are crucial to an immunity determination" but were not "yet entitled to discovery as to whether the commercial activity exception applies" (citations omitted)).

Moreover, as Sberbank has previously argued, the commercial-activity exception does not apply as a matter of law to Plaintiffs' complaint brought under the Anti-Terrorism Act ("ATA"). *See* MTD Br. 21-23 (explaining that 18 U.S.C. § 2337 bars ATA claims against foreign states unless, under 28 U.S.C. § 1605B, the terrorist attack at issue occurred in the United States), ECF No. 258. Before permitting burdensome discovery relating to alleged commercial activity in the United States, the Court should decide the threshold legal question of whether the commercial-activity exception even applies to ATA claims.

*Finally*, Plaintiffs' proposed plan also fails to articulate any specific justification for a Rule 30(b)(6) deposition. Jurisdictional discovery must be "circumspect" and narrowly tailored "only to verify allegations of specific facts crucial to an immunity determination." *Arch Trading*, 839 F.3d at 206, 207 (holding that "sovereign immunity protects" foreign states from "the expense, intrusiveness, and hassle of litigation"). Requests for depositions are regularly denied in similar jurisdictional discovery situations arising under the FSIA. *See, e.g.*, *Scheidemann v. Qatar Football Ass'n*, No. 04-cv-3432-LAP, 2008 WL 144846, at *6-7 (S.D.N.Y. Jan. 15, 2008) (denying deposition request where testimony had no bearing on threshold determination of whether defendants were "organs" under the FSIA); *Solgas Energy Ltd. v. Fed. Gov't of Nigeria*, No. H-09-368, 2010 WL 11679364, at *12-14 (S.D. Tex. Feb. 9, 2010) (quashing deposition

request on Central Bank of Nigeria).  The five topics designated for the proposed deposition suffer from the same flaws as Plaintiffs' document requests, in that they seek discovery of irrelevant material unrelated to any specified disputed fact.

For the reasons stated above and below in response to each of Plaintiffs' specific requests, Sberbank submits that the Court should deny Plaintiffs any further jurisdictional discovery and set the remaining briefing schedule proposed below on Sberbank's motion to dismiss for lack of subject-matter jurisdiction.

### SBERBANK'S RESPONSES TO PLAINTIFFS' SPECIFIC REQUESTS

**Plaintiffs' Proposed Issue 1**: The degree of independence the Central Bank of the Russian Federation enjoys vis-à-vis the Russian Federation's and the Federation's agencies of state power.[2]

**Sberbank's Response**:  Plaintiffs' document requests regarding the Bank of Russia's degree of independence are irrelevant under the core functions test.  By focusing on whether the Bank of Russia maintains an "independent" status, Plaintiffs mistakenly draw on the "legal characteristics" test, which asks whether "an entity could sue and be sued, own property, and contract in it its name."  *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 791 (S.D.N.Y. 2005).  But, in 2006 in *Garb*, the Second Circuit expressly "rejected the 'legal characteristics test' in favor of the 'core functions' test."  *Gleissner*, 2019 WL 1369456, at *4 n.3.  Under the core functions test, "a foreign entity's status as a 'separate legal person' from a foreign state depends on 'whether the core functions of the foreign entity are predominantly governmental or commercial.'"  *Garb*, 440 at 591 (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 151 (D.C. Cir. 1994)).

---

[2] Sberbank objects to Plaintiffs' use of the term "agencies of state power."  Plaintiffs apparently refer to the Russian law concept of "federal state power bodies," which are governmental entities or units that possess and use the sovereign authority of the Russian Federation.  *See, e.g.*, Constitution of the Russian Federation, art. 75(2), ECF No. 260-6.

Contrary to the implication of Plaintiffs' request, possessing hallmarks of independence within the Russian constitutional framework does not disqualify the Bank of Russia from being a "political subdivision" within the meaning of the FSIA. *See Singh v. Caribbean Airlines Ltd.*, 798 F.3d 1355, 1359 (11th Cir. 2015) (explaining that "separate legal identity does not foreclose political subdivision status" under the core functions test). Indeed, in the case cited by Plaintiffs, the Ninth Circuit expressly adopted the core functions test and held that the Iranian Ministry of Defense was "inherently a part of the political state," while rejecting distinctions turning on separate legal status. *See Ministry of Def. & Support for Armed Forces of Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 495 F.3d 1024, 1035 (9th Cir. 2007), *rev'd sub nom. on other grounds Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Elahi*, 556 U.S. 366 (2009). Because Plaintiffs apply the wrong test for determining if the Bank of Russia is a political subdivision, their individual requests seek irrelevant information.

> **Plaintiffs' Document Request A**: Communications and statements from Sberbank officers about (1) the Central Bank's independence from the Russian Federation, or (2) the governmental or commercial functions of the Central Bank, including in the context of the April 2020 transfer of Sberbank shares from the Central Bank to the Ministry of Finance.

**Sberbank's Response:** The Bank of Russia's relationship with the Russian Federation is a matter of Russian law. "Communications and statements from Sberbank officers" regarding the Bank of Russia's relationship with the Russian Federation do not inform the core functions inquiry where Sberbank officers do not bind, control, or speak for the Bank of Russia. Plaintiffs' reliance on *Intelsat Glob. Sales & Mktg., Ltd. v. Cmt. of Yugoslav Posts Tels. & Tels.*, 534 F. Supp. 2d 32 (D.D.C. 2008)—which did not apply the core functions test—is misplaced. The "relevant" communications in *Intelsat* were representations and statements made by *the defendant about the defendant itself* and not statements about a third party. In contrast, "the context" of the transfer of Sberbank shares from the Bank of Russia to the Ministry of Finance is irrelevant to the question

8

of whether the Bank of Russia's functions are predominantly governmental such that it is an "integral part" of the Russian Federation's political structure. *See Garb*, 440 F.3d at 594.

In any event, Plaintiffs do not explain why discovery of Sberbank's internal and external "communications and statements"—which will yield, at best, circumstantial evidence concerning the Bank of Russia's status—is necessary when Russian law and publicly available documents address these topics directly and authoritatively. Plaintiffs' overly broad request would also implicate Russian data privacy laws by requiring the production of communications of senior Russian executives and officials, which would unnecessarily slow and complicate jurisdictional discovery. Upon a minimal amount of due diligence and without resort to party discovery, Plaintiffs can obtain the following publicly available information—however irrelevant—concerning the share transfer, and which Sberbank is willing to provide as the Court may deem necessary:

- Bank of Russia Press Release, Draft law for Bank of Russia's divestment from Sberbank's equity, dated February 11, 2020.
- Federal Law No. 49-FZ, dated March 18, 2020, "On the Transfer of Part of the Income Received by the Central Bank of the Russian Federation from the Sale of Ordinary Shares of Sberbank of Russia."
- Federal Law No. 50-FZ, dated March 18, 2020, "On the Acquisition by the Government of the Russian Federation of Ordinary Shares of Public Joint-Stock Company Sberbank of Russia from the Central Bank of the Russian Federation and on Invalidating Certain Provisions of Legislative Acts of the Russian Federation."
- Bank of Russia Press Release, Bank of Russia commentary on FX operations related to the acquisition of Sberbank shares by the National Wealth Fund, dated March 19, 2020.
- Bank of Russia Press Release, Bank of Russia sells its equity stake in Sberbank, dated April 10, 2020.
- Bank of Russia Press Release, Bank of Russia and Government sign shareholder agreement on equity stake in Sberbank, dated May 7, 2020.

**Plaintiffs' Document Request B: Documents that concern or relate to Professor Efimova's opinion that the Russian Federation "possesses and exercises in practice the ability to control the operation of the" Central Bank through "the formation and operation of the National Financial board."**

9

**Sberbank's Response:** Plaintiffs' request is duplicative of completed discovery. On February 7, 2022, Sberbank produced all documents Professor Efimova relied upon in her declaration. *See* ECF No. 270 at 15-17.

> **Plaintiffs' Document Request C:** Documents sufficient to show the independence (or lack thereof) of the members of Sberbank's Supervisory Board from 2019 to present who are officers or personnel of the Central Bank or the Russian Federation, including the "agreement on representation of interests of the Government of the Russian Federation" referred to in Federal Law No. 50-FZ of March 18, 2020, which governs the Ministry of Finance's acquisition of Sberbank shares from the Central Bank.

**Sberbank's Response:** Plaintiffs erroneously focus on the relationship between the Bank of Russia and Sberbank, which is not crucial to a determination of whether the Bank of Russia's core functions are predominantly governmental such that the Bank of Russia is an integral part of the Russian Federation. The operations of Sberbank's Supervisory Board simply do not bear on the core functions of the Bank of Russia. Moreover, Plaintiffs' request is unclear as to what documents could illustrate the "independence" of Sberbank's Supervisory Board beyond those documents that are publicly available. For example, Article 5(5) of Federal Law No. 50-FZ provides that government employees acting on Sberbank's Supervisory Board shall be independent, "except as specified, if they are instructed by the Government of the Russian Federation." The members of the Supervisory Board, including positions they hold outside of Sberbank, are published on Sberbank's website.[3] Even if this information were relevant (it is not), Sberbank is willing to provide to Plaintiffs the following corporate governance documents, illustrating the duties and functioning of Sberbank's Supervisory Board:

- Regulations on the Supervisory Board of Sberbank of Russia.
- Regulations on the Supervisory Board Committees of Sberbank of Russia.

---

[3] *See* Sberbank Supervisory Board, https://www.sberbank.com/investor-relations/corporate-governance/supervisory-board (last accessed Feb. 23, 2022).

- Regulations on Remuneration and Compensation Paid to Members of the Supervisory Board of Sberbank of Russia.

- Amendments No. 2 to the Regulations on Remuneration and Compensation Paid to Members of the Supervisory Board of Sberbank of Russia.

- Succession Policy for Members of the Supervisory Board of Sberbank of Russia.

- Federal Law No. 50-FZ, dated March 18, 2020 (listed above).

- Charter of Sberbank of Russia, approved by the Annual General Meeting of Shareholders on May 24, 2019.

- Amendments No. 1 introduced to the Charter of Sberbank of Russia, approved by the Annual General Meeting of Shareholders on May 24, 2019.

- Code of Corporate Governance of Sberbank of Russia.

- Shareholder Agreement Between the Ministry of Finance of the Russian Federation and the Central Bank of the Russian Federation, dated April 30, 2020.

- Regulations on the General Meeting of Shareholders of Sberbank of Russia.

- Regulations on the Executive Board of Sberbank of Russia.

- Corporate Secretary Regulations of Sberbank of Russia.

**Plaintiffs' Document Request D:** **Documents sufficient to show whether and to what extent employees of the Central Bank are considered employees of the Russian Federation or an agency of state power and are entitled to the benefits of said employment, such as documents describing the terms of employment or employee manuals.**

**Sberbank's Response:** Documents pertaining to the Bank of Russia's employment policies are properly directed to the Bank of Russia, and not to Sberbank. *See Sinopec*, 2022 WL 252029, at *4 (explaining that "political subdivision" discovery on defendant's shareholders was likely "futile" as "none of those shareholders [was] a party" to the case). In any event, this information can be found in the following laws and documents, which Sberbank is willing to provide should the Court deem necessary:

- Federal Law No. 86-FZ, dated 10 July 2002, "On the Central Bank of the Russian Federation (Bank of Russia)" (previously produced), including specifically Chapter XIV "Bank of Russia Servants" (Arts. 88-92).

- Bank of Russia, "Allocation of duties between the Governor and Deputy Governors of the Bank of Russia."

11

- Bank of Russia, Annual Reports including (without limitation) for 2020 and 2019.
- Decree of the President of the Russian Federation No. 32, dated January 11, 1995, "On the Public Office Positions of the Russian Federation."

**Plaintiffs' Issue 2**: Whether the Bank of Russia's core functions are "predominantly" governmental or commercial in nature under *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006).

**Sberbank's Response**: Plaintiffs have not identified any factual disputes relating to this legal inquiry, nor have they articulated why the Court should not decide issues of Russian law pursuant to Rule 44.1 on the Parties' written briefing and expert declarations. Fed. R. Civ. P. 44.1 ("The court's determination" of foreign law "must be treated as a ruling on a question law."). The issue of an entity's legal status under the FSIA "presents a question of law for the court to decide." *Funnekotter v. Agric. Dev. Bank of Zimbabwe*, No. 13-cv-1917-CM, 2015 WL 3526661, at *8 (S.D.N.Y. June 3, 2015). Indeed, and as discussed above, courts ordinarily determine an entity's core functions on the basis of foreign law, expert declarations, and corporate documents. *See Garb*, 440 F.3d at 594-95; *SerVaas*, 635 F. App'x at 25; *Gleissner*, 2019 WL 1369456, at *4.

> **Plaintiffs' Document Request A**: Documents sufficient to show any commercial benefits accruing to the Central Bank from the sale of Sberbank's shares to the Ministry of Finance, including documents reflecting the Central Bank's profits generated by the sale of said shares and taxes paid on said profits pursuant to Article 284(5) of the Russian Tax Code, if applicable.

**Sberbank's Response**: Document requests pertaining to any alleged "commercial benefits accruing to" the Bank of Russia are properly directed to the Bank of Russia, and not to Sberbank. *See Sinopec*, 2022 WL 252029, at *4. In any event, voluminous publicly available information provides Plaintiffs what they purport to need to know. For example, the Bank of Russia's 2020 Annual Report explains that the federal budget received 1.1 trillion rubles as a result of the Bank of Russia's sale of its equity stake in Sberbank to the Ministry of Finance. *See* Bank of Russia,

12

2020 Annual Report 39, 229, 254, 267 (addressing revenue from the sale of its stake in Sberbank).[4]

Sberbank is willing to provide the following information should the Court deem it necessary:

- Federal Law No. 49-FZ, dated March 18, 2020 (listed above).
- Federal Law No. 50-FZ, dated March 18, 2020 (listed above).
- Bank of Russia, Annual Reports (listed above).

**Plaintiffs' Document Request B**: **Communications with the Central Bank concerning the Central Bank's dual regulatory and commercial functions or the commercial effects of a transfer of a majority of Sberbank's shares from the Central Bank to the Ministry of Finance, including any alleged conflict of interest generated by the Central Bank's ownership and control of Sberbank.**

**AND**

**Plaintiffs' Document Request C**: **Documents (other than registration certificates provided as exhibits to Sberbank's motion to dismiss) that describe the Central Bank's ownership of Sberbank's shares in a manner that bears on the Central Bank's governmental or commercial roles.**

**Sberbank's Response:** As discussed above, the relationship between Sberbank and the Bank of Russia is not relevant to the core functions inquiry, which asks whether the Bank of Russia's core functions are predominantly governmental such that it is an "integral part" of the Russian Federation's political structure. *Garb*, 440 F.3d at 594. To the extent the relationship between Sberbank and the Bank of Russia is considered relevant, Russian law, as explained by Professor Efimova, describes the Bank of Russia's regulatory authority over Sberbank and other aspects of the Russian economy. *See, e.g.*, Efimova Decl. ¶¶ 9-13 (describing the Bank of Russia's regulatory authority); ECF No. 289 n.11 (explaining the Bank of Russia's role as a "mega-regulator"). Similarly, publicly available Sberbank and Bank of Russia documents discuss at length the nature of the Bank of Russia's former majority ownership of Sberbank. For example, the Bank of Russia's 2019 Annual Report details the Bank of Russia's activities vis-à-vis Sberbank (*e.g.*,

---

[4] *See* Bank of Russia, 2020 Annual Report, http://www.cbr.ru/Collection/Collection/File/39294/ar_2020.pdf (last accessed Feb. 23, 2022).

approval of a new Sberbank charter) under the heading "Bank of Russia stakeholdings in Russian Economic Entities." Bank of Russia, 2019 Annual Report 224.[5] Likewise, Sberbank's 2019 Annual Report provides a chart explaining Sberbank's corporate governance, including the shareholders' competencies and noting that the Bank of Russia maintained (as of 2019) a controlling interest. Sberbank, 2019 Annual Report 88; *see also id.* at 121 (describing the Bank of Russia as "the strategic investor" and differentiating "legal entities and private investors").

Plaintiffs again fail to explain why invasive and facially overbroad discovery of Sberbank's communications (and the barely probative evidence they may provide) is necessary when the scope of the Bank of Russia's regulatory activities, as well as Sberbank's regulatory compliance, is detailed extensively in public documents, which Sberbank is willing to provide should the Court deem necessary:

- Federal Law No. 86-FZ, dated July 10, 2002, "On the Central Bank of the Russian Federation (Bank of Russia)" (previously produced).
- Bank of Russia, Annual Reports (listed above).
- Bank of Russia, Banking Regulation, Quarterly Information Bulletin.
- Bank of Russia, Webpage, "Financial Consumer Protection."
- Bank of Russia, Webpage, "Information Security."
- Bank of Russia, Webpage, "Countering Unfair Practices."
- Bank of Russia, Webpage, "Countering Money Laundering and Currency Control."
- Bank of Russia, Webpage, "Business Reputation."
- Sberbank, Annual Reports for 2020 and 2019 (previously produced).
- Federal Law No. 208-FZ, dated December 26, 1995, "On Joint Stock Companies."
- Federal Law No. 395-1-FZ dated December 2, 1990 (as last amended on December 30, 2021), "On Banks and Banking activity."

---

[5] *See* Bank of Russia, 2019 Annual Report, http://www.cbr.ru/Collection/Collection/File/29420/ar_2019.pdf (last accessed Feb. 23, 2022).

**Plaintiffs' Document Request D**: Documents sufficient to show the volume and scope of services authorized by Article 46 (permitting banking operations and transactions with Russian and foreign credit institutions) and Article 48 (permitting banking operations and services to certain governmental bodies and natural persons) of Federal Law No. 86-FZ and provided to juridical and private individuals by the Central Bank from 2019 to present, including the amount of "profit" generated by said services as defined by Article 11 of Federal Law No. 86-FZ, and any communications with the Central Bank concerning these subjects.

AND

**Plaintiffs' Document Request E**: Documents sufficient to show the extent of the Central Bank's activities from January 1, 2019 through December 31, 2019 generating corporate tax liability under Article 284(5) of the Russian Tax Code (providing that Central Bank "[p]rofits" earned from activities undertaken outside of the scope of Federal Law No. 86-FZ shall be taxed in accordance with the provisions of that Article).

AND

**Plaintiffs' Document Request F:** Documents sufficient to show the volume and type of securities acquired by the Central Bank at the direction of its Board of Directors, including the identity and sectors of the entities issuing said securities.

**Sberbank's Response:** For the reasons explained above, requests for "documents sufficient to show" anything about the Bank of Russia's core functions or activities are properly directed to the Bank of Russia. *See Sinopec*, 2022 WL 252029, at *4. In any event, Plaintiffs again fail to explain why discovery is required beyond publicly available documents and the undisputed evidence of Russian law. For example, the Bank of Russia's 2019 Annual Report details the Bank of Russia's provision of credit lines to "systemically important credit institutions" and the "emergency liquidity assistance mechanism" (Bank of Russia, 2019 Annual Report 318), describes the Bank of Russia's tax liabilities (*id.* at 295 (profit statement, including line for "taxes and duties paid from the Bank of Russia's profit")), and provides a detailed "Statement of Bank of Russia management of securities and stakeholdings in organisations constituting Bank of Russia property"

15

(*id.* at 298).[6] Notwithstanding these objections, Sberbank is willing to provide the documents listed above in response to the other Issue (2) requests should the Court deem them necessary.

**Plaintiffs' Issue 3: Whether this "action is based upon a commercial activity carried on in the United States" by Sberbank.**

This request exceeds the scope of the Court's January 13 Order, directing that jurisdictional discovery be "limited to the specific facts relevant to determining whether Sberbank is a foreign sovereign," and not whether an exception to that immunity applies. ECF No. 266; *see also Funk*, 861 F.3d at 367.

In any event, as Sberbank has previously explained, the FSIA's commercial-activity exception is not available here because the Anti-Terrorism Act expressly bars claims against foreign states. *See* 18 U.S.C. § 2337(2); *see also* MTD Br. 19-20, ECF No. 258. The FSIA provides a single exception to that bar for injury or death "occurring *in the United States*." 28 U.S.C. § 1605B(b) (emphasis added); *see, e.g.*, *Ashton v. Al Qaeda Islamic Army (In re Terrorist Attacks on Sept. 11, 2001)*, 298 F. Supp. 3d 631, 642 & n.6 (S.D.N.Y. 2018) (citing 28 U.S.C. § 1605B(b) and (c)). There is no dispute that the death and physical injuries alleged here occurred over eastern Ukraine. *See* SAC ¶¶ 1, 75, ECF No. 156.

Further the SAC does not allege facts sufficient to support the application of the commercial-activity exception. Rather, the gravamen of Plaintiffs' claims is necessarily a terrorist act outside of the United States, not commercial activity in the United States. *See* Sberbank Ltr. to Court in Supp. of Mot. to Stay Discovery (Feb. 14, 2022) 13 (explaining that the commercial-activity exception's "based upon" language requires the gravamen of the complaint be the United

---

[6] As Professor Efimova explains, "the charter capital and other property of the Bank of Russia shall be in federal ownership. Efimova Decl. ¶ 18 (quoting Article 2 of the Law on the Bank of Russia).

States), ECF No. 289. Accordingly, the commercial-activity exception is not available here as a matter of law and jurisdictional discovery as to its application is improper.

> **Plaintiffs' Document Request A**: Documents related to any banking transaction routed through Sberbank's correspondent bank accounts at U.S.-based correspondent banks involving the "DPR Individuals and Fundraisers" (as defined and identified in Plaintiffs' RFPs).

**Sberbank's Response**: This request far exceeds the scope of the Court's January 13 Order, directing that jurisdictional discovery be "limited to the specific facts relevant to determining whether Sberbank is a foreign sovereign." This document request clearly and impermissibly targets merits discovery as to the underlying ATA claims and the Court should reject it as such. In addition, as Plaintiffs are well-aware based on extensive and on-going correspondence and a meet-and-confer session between the parties, Russian law prohibits Sberbank from disclosing the bank customer transactions covered by this request. *See, e.g.*, Federal Law No. 395-1 of December 2, 1990) (the "Law on Banks"), art. 26 & Russian Civil Code (enacted as No. 14-FZ of January 26, 1996), art. 857 (restricting disclosure of the existence and ownership of customers' accounts along with the balances, deposits, transactions, and withdrawals relating to those accounts). The Court need not unnecessarily complicate and slow jurisdictional discovery to address these issues before it determines both whether Sberbank is an agency or instrumentality under the FSIA and whether the commercial-activity exception applies to Plaintiffs' ATA claims.

**Rule 30(b)(6) Deposition of Sberbank:**

Plaintiffs' request for a Rule 30(b)(6) deposition is groundless, wasteful of party and judicial resources, and contrary to the law's preference for limited jurisdictional discovery under the FSIA. Plaintiffs' proposed plan lists five deposition topics that (i) are not appropriately addressed to Sberbank or are properly addressed as a matter of Russian law, (ii) are irrelevant to the determination of Sberbank's status under the FSIA, or (iii) abuse the Court's grant of

jurisdictional discovery by seeking expedited merits discovery regarding alleged "DPR Individuals and Fundraisers with Sberbank accounts or transactions."

**Plaintiffs' Deposition Topic (1):  The Central Bank's commercial functions relevant to Sberbank, including banking services provided by the Central Bank to Sberbank, as a Russian credit institution, pursuant to Federal Law No. 86-FZ.**

**AND**

**Plaintiffs' Deposition Topic (2): The scope and nature of the Central Bank's regulatory or governmental functions relevant to Sberbank, including the functions described in Federal Law No. 86-FZ, the manner in which that regulatory authority is exercised over Sberbank as a Russian credit institution, and the degree of governmental oversight and/or interference in Sberbank's operations, including through Supervisory Board seats held by representatives of the Central Bank.**

**Sberbank's Response:**  As discussed above, the relationship between Sberbank and the Bank of Russia is not relevant to the core functions inquiry, which asks whether the Bank of Russia's core functions are predominantly governmental such that it is an "integral part" part of the Russian Federation's political structure.  *Garb*, 440 F.3d at 594.  Moreover, Topic (1) impermissibly requires the drawing of a legal conclusion as to what constitutes the Bank of Russia's alleged "commercial functions relevant to Sberbank."  And Topic (2) asks for information available in Professor Efimova's Declaration and the documents identified above.

**Plaintiffs' Deposition Topic (3):  Sberbank's statements and communications about the independence of the Central Bank from the Russian Federation.**

**Sberbank's Response:**  As discussed above, Sberbank's "communications and statements" regarding the Bank of Russia's relationship with the Russian Federation are not authoritative and thus are not probative of the core functions inquiry.  Moreover, Plaintiffs' overly broad request would also implicate Russian privacy laws that would unnecessarily complicate and slow jurisdictional discovery.

**Plaintiffs' Deposition Topic (4): The sale of Sberbank's shares from the Central Bank to the Ministry of Finance.**

**Sberbank's Response:** The core functions test asks whether the Bank of Russia's core functions are predominantly governmental such that it is an "integral part" of the Russian Federation's political structure. *Garb*, 440 F.3d at 594. The fact that the Bank of Russia sold its stake in Sberbank to the Ministry of Finance in 2020 is undisputed. Questions of "why" or "how" the Bank of Russia transferred ownership of one of its holdings are simply irrelevant to whether the Bank of Russia is a "political subdivision" within the meaning of the FSIA. *See* 28 U.S.C. § 1603.

> **Plaintiffs' Deposition Topic (5):** Sberbank's recordkeeping practices concerning banking transactions routed through Sberbank's correspondent bank accounts at U.S.-based correspondent banks and internal investigation(s), audits, reports, or discussions concerning the DPR Individuals and Fundraisers with Sberbank accounts or transactions.

**Sberbank's Response:** This topic exceeds the scope of the Court's January 13 Order, directing that jurisdictional discovery be "limited to the specific facts relevant to determining whether Sberbank is a foreign sovereign." This topic clearly and impermissibly seeks expedited merits discovery as to the underlying ATA claims and the Court should reject it.

\* \* \*

For the reasons stated above, Sberbank respectfully submits the following Proposed Schedule to Complete Jurisdictional Discovery and Briefing on its Motion to Dismiss under the FSIA:

> **March 4, 2022**: Sberbank to produce the documents identified above if the Court deems them necessary to the determination of Sberbank's status as an "agency or instrumentality" under the FSIA.
>
> **March 18, 2022**: Plaintiffs file their opposition brief, along with any supporting expert or fact declarations and the materials upon which those expert or fact declarations rely.[7]
>
> **March 31, 2022**: Sberbank files its reply brief, along with any rebuttal declarations and the materials upon which those rebuttal declarations rely.

---

[7] If the Court grants Plaintiffs' request to depose Sberbank's expert, Sberbank request that the Court also authorize a deposition of any expert presented by Plaintiffs' prior to Sberbank's date for filing its reply brief.

19

February 23, 2022                                    Respectfully submitted,

**WHITE & CASE**

 /s/ *Nicole Erb*
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (admitted *pro hac vice*)
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:   + 1 202 626 3600
Facsimile:    + 1 202 639 9355
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com

DEBEVOISE & PLIMPTON LLP
Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, New York 10022
Telephone:   + 1 212 909 6000
mpgoodman@debevoise.com
whtaft@debevoise.com

*Counsel for Sberbank of Russia*