**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS SCHANSMAN et al.,

Plaintiffs,

v.

SBERBANK OF RUSSIA PJSC et al.,

Defendants.

Case No. 19-cv-02985 (ALC) (GWG)

## STIPULATION AND PROPOSED ORDER ESTABLISHING THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")

Plaintiffs Thomas Schansman, Catharina Teunissen, Nerissa Schansman, and Xander

Schansman and Defendants The Western Union Company, Western Union Financial Services,

Inc., MoneyGram International, Inc., MoneyGram Payment Systems, Inc., VTB Bank PJSC,

and Sberbank of Russia ("Sberbank")[1]  (each a "Party" and collectively for purposes of this

stipulation and proposed order, the "Parties"), submit this stipulation and proposed order

establishing a protocol for the production of Documents and Electronically Stored Information

("ESI") among the Parties in this Action.  The failure of this ESI Protocol to address any

particular issue is without prejudice to any position that a Party may take on that issue.

**A.       Discovery Definitions**

1)      "Document" is defined to be synonymous in meaning and equal in scope to the

usage of the term "documents or electronically stored information" in Federal Rule

---

[1] Sberbank's agreement to this Stipulation and Proposed Order is subject to, and does not waive, its claim to sovereign immunity as an "agency or instrumentality" of a "foreign state or political subdivision thereof" within the meaning of 28 U.S.C. § 1603.

of Civil Procedure 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2)      "ESI" means all electronically stored information and materials.

3)      "Load File" relates to a set of scanned images or other files, and indicates where individual pages or files belong together, where each document begins, and what documents are attached to the document. A Load File may also contain metadata or extracted text associated with the documents. The Load File requirements are set forth in Appendix A.16.

**B.      Preservation of ESI**

1)      The Parties represent that pursuant to Federal Rule of Civil Procedure 26(b)(1) they have taken reasonable and proportional steps to preserve reasonably accessible Documents that are relevant to the claims and defenses in this action, including implementation of a litigation hold.

2)      Absent an agreement of the Parties, or Court order, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes.

3)      The Parties agree to exclude the following file types from preservation and collection: Standard system file extensions including BIN, CAB, CHK, CLASS, COD, COM, DLL DRV, EXE, INF, INI, JAVA, LIB, LOG, SYS and TMP and other filetypes unlikely to contain user generated content, including files identified by matching hash values to the National Software Reference Library reference data set of known system and application files (commonly referred to as

"de-NISTing").

## C.     Non-Discoverable ESI

Absent an order from this Court upon a showing of good cause, and consistent with the proportionality standard in Federal Rule of Civil Procedure 26(b)(1), a Producing Party shall not be required to search for responsive Documents or ESI from sources that are not reasonably accessible without undue burden or cost. The following categories of Documents or ESI are presumed to be inaccessible and not discoverable:

1) ESI deleted in the normal course of business before the time a preservation obligation in this matter came into effect;

2) Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN, and other forms of media;

3) Deleted, "slack," fragmented, or unallocated data only accessible by forensics;

4) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

5) On-line access data such as (without limitation) temporary internet files, history files, cache files, and cookies;

6) Data in metadata fields frequently updated automatically, such as author, last-opened, last-modified, or last-printed dates;

7) Electronic data (*e.g.*, call logs, email, calendars, contact data, notes, *etc.*) sent to or from mobile devices (*e.g.*, iPhone, iPad and Android, devices) to the extent that data is also maintained on a Party's company operating system;

8) Server, system, network, or software application logs;

9) Data remaining from systems no longer in use that are unreadable on the systems in use;

10) Software files included on the National Institute of Standards and Technology (NIST) Modern RDS (minimal) list obtained from https://www.nist.gov/itl/ssd/software-quality-group/national-software-reference- library-nsrl/nsrl-download/current-rds;

11) Structural files not material to individual file contents that do not contain substantive content (*e.g.*, .CSS, .XSL, .XML, .DTD, etc.);

12) Operating System files that do not store user-created content (*e.g.*, CAT, DLL, DMP,EXE, FON, PNF, OPS, SYS, etc.);

13) Application source code, configuration, and other similar files necessary for the function of an application that do not store user-created content during ordinary use(*e.g.* password-protected files including encrypted container files, BAK, BIN, CFG, DBF, DAT, JS, JSON, JAR, LUA, MSB, RES, WINNT, YTR, etc.).

The Parties agree to meet and confer regarding the preservation and production of voicemail, including telephone or VOIP messages, and text and instant messages.

### D.    No Designation of Discovery Requests

Productions of ESI produced as set forth in this Protocol need not be organized and labeled to correspond to the categories in the particular document requests. Should a Receiving Party make a reasonable request for identification by Bates number of groups of Documents that the Producing Party can easily and readily identify, the Producing Party shall cooperate and provide such information as soon as reasonably practicable considering the scope of the request and the volume of Documents implicated.

### E.    Format of Documents Produced

Except as otherwise provided herein, the Parties will produce Documents in black and white single-page TIFF Format with extracted or OCR text and associated metadata as set out in Attachment A ("TIFF-plus format"). Spreadsheets (*e.g.*, Excel, .csv), unless redacted, and audio/visual files (*e.g.*, .wav, .mpeg, .avi) shall be produced in Native Format. A Receiving Party may request the production of Native Files of other Documents where the production of the Native File is reasonably necessary to the Document's comprehension or use. Reasonable requests in good faith for Native File production will not be denied absent a showing of undue

burden or expense.

**F.**     **Documents That Exist in Hardcopy (Paper) Form**

1)   The Parties shall produce documents that exist in the ordinary course of business in hardcopy form either, at the Producing Party's option, (a) by making them available for inspection and copying in their original hardcopy form or (b) in scanned electronic format, redacted as necessary, in accordance with the procedures set out in Attachment A.  If a Producing Party elects to make such documents available for inspection and copying in their original hardcopy form, the parties will further meet and confer on the logistics for making the hardcopy documents available for inspection, including on the selection of jurisdiction that comports with any foreign data transfer laws, and on rendering the process cost-effective for all parties. The scanning of original hardcopy documents does not otherwise require that the scanned images be treated as ESI.

2)   Prior to copying/scanning and/or producing hardcopy documents as set forth under this provision, the Producing Party may give notice to the Requesting Party that the requested documents are maintained as hardcopy documents, the approximate volume of the documents to be copied/scanned, and the subject matter of the hardcopy documents, or at the Producing Party's option, the Producing Party will provide access to the documents for inspection. If a Producing Party elects to make hard copy documents available for inspection, the Parties will meet and confer regarding a procedure for the inspection and copying of those documents.  The Producing Party is under no obligation to copy, scan and/or produce the documents under this provision unless: (1) the Requesting Party agrees to share

reasonable copying, scanning, and production costs equally on a 50/50 basis; (2) the Parties reach an alternate agreement; or (3) the Court so Orders.

**G.      Structured Data**

To the extent a response to discovery requires production of discoverable electronic information contained in a database and such information cannot reasonably be produced in either Excel or .csv format, in advance of producing such information, the Parties agree to meet and confer in good faith regarding the format of the production (*e.g.*, commercial database, or some other agreed-upon format).

**H.      Procedures for Native Format Files**

1)      Procedures for assigning production numbers and confidentiality information to files produced in native format are addressed in Attachment A.

2)      Any Party seeking to use, in any proceeding in this litigation, files produced in native format shall do so subject to the following:

a)      A Party seeking to use the document shall ensure that if the document is printed in whole or in part, the native file will include its corresponding TIFF slip sheet. If the Parties so elect, they may also provide a complete TIFF-Plus image for the native files. Subsequent pages of the TIFF-Plus version shall include a suffix added to the Bates number to identify the particular page in the file (*e.g.*, XYZ00001_001). The Confidentiality designation shall be included on the slip sheet and on each page of the printed document.

b)      At deposition, trial, or in motion practice, any party may use a native file or TIFF-Plus image as an exhibit. Where a native file is used, the exhibit must include the TIFF slip sheet for identification purposes. Use of a file in native

format shall constitute a representation that the file being used is an accurate,

unaltered and complete depiction of the original native-format file as produced

or provided by the Producing Party.

3)    Nothing in this Protocol waives the right of any Party to object on any grounds to

use in any proceeding in this action of a native file, of any slip sheet or TIFF-

image associated with the native file, or of any summary, extract, or report of a

native file.

**I.    Search Methodology**

1)   The Parties agree to confer in good faith regarding the search methodology

employed by the Producing Party.

2)   A Receiving Party cannot compel a Producing Party to produce documents without

human review for information protected from disclosure pursuant to the Parties'

agreement, the Federal Rules or an Order of the Court over the Producing Party's

objection.

**J.    Duplicate ESI Need Not be Reviewed or Produced**

1)    ESI may be de-duplicated either globally or by custodian. ESI duplicates shall be

identified by using standard MD5 or SHA-1 algorithms. If global de-duplication

is employed, then the Global Custodian field shall contain the information

described in Attachment A. Deduplication of hard copy documents may not be set

at a threshold lower than 95%.

**K.    Document Family Relationships**

1)       Except as described in K. 2) below, the Parties agree to produce email families

intact absent a privilege or work product claim.

2)   If a non-responsive family member contains only non-responsive information that is protected from disclosure by data privacy or bank secrecy laws, or other laws or regulations, or by confidentiality agreements, that non-responsive family member may be withheld from production.  If a non-responsive family member is withheld from production pursuant to this section K. 2), a slipsheet will be included in the production that states: WITHHELD NON-RESPONSIVE FAMILY MEMBER.

3)   Documents withheld under K. 2) need not be logged for privilege.

**L.   Issues Related to Privilege and Redactions**

1)   Subject to the provisions below, any document falling within the scope of any request for production or subpoena that is withheld on the basis of a claim of attorney-client privilege, work product doctrine, or any other claim of immunity or privilege from discovery is to be identified by the Producing Party in a separate privilege log, in accordance with Local Civil Rule 26.2(c) ("when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category") or as agreed by the parties.  Nothing in this Protocol waives the right of any Party to object to the Producing Party's identification of documents in their privilege log by group or category, and to seek a Court order requiring the Producing Party to provide a privilege log identifying the basis for the claim of privilege for each document.

2)   The following categories of presumptively-privileged documents need not be produced or logged:

     i.   work product created by counsel, or by an agent of counsel, after receipt of a notice or demand in this Action, or commencement of this Action;

    ii.   internal communications within a law firm;

   iii.   privileged documents that were created after receipt of a notice or demand in this Action, or commencement of this Action.

3) Any document containing both privileged and non-privileged responsive content must be produced with the purportedly privileged portion redacted, with the redacted portion indicated on the document itself. Redacted documents need not be logged as long as the basis for the redaction is annotated on the redaction itself. For emails, the bibliographic information (to/from/cc/bcc/date sent/time sent/subject) will not be redacted unless that information is itself privileged. To avoid duplicative redactions of privileged emails, only the most inclusive email in a chain needs to be produced in redacted form.

4) Notwithstanding the foregoing, for withheld documents that were included on a privilege log that was provided in another litigation, the Producing Party may satisfy its obligation to provide a privilege log by providing that previously-provided privilege log. The Parties agree to meet and confer in good faith should the Receiving Party have questions regarding the previously provided log.

**M.**    **Production Format Shall Not Alter Authenticity, Admissibility, or Privilege Status**

1) No Party shall object that documents or ESI produced pursuant to this ESI Protocol are not authentic by virtue of the ESI having been converted to TIFF. The Parties otherwise reserve all rights regarding their ability to object to the authenticity of documents.

2) Nothing in this ESI Protocol shall be construed to affect in any way the rights of

any Party to make any objection as to the production, discoverability, admissibility, or confidentiality of documents and ESI.

3) Nothing in this ESI Protocol shall constitute a waiver by any Party of any claim or privilege or other protection from discovery.

4) Nothing in this ESI Protocol shall be interpreted to in any way limit a Producing Party's right and ability to review documents for responsiveness and privilege prior to production.

5) Nothing in this Protocol shall require disclosure of irrelevant information (as defined in Paragraph K. 2) above) or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

**N.      Previously Produced ESI**

If documents or ESI discoverable in this proceeding were previously produced in another legal proceeding, the Producing Party may elect to produce that information in the form in which it was previously produced.

**O.      Costs**

This Protocol shall have no effect on any Party's right to seek costs associated with any aspect of discovery, including but not limited to collection, processing, review, or production of the Party's own documents or ESI.

**P.      Disputes**

The Parties agree to meet and confer to resolve any dispute regarding the application of this ESI Protocol before seeking Court intervention.

Dated: February 24, 2022
      New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By: _Andrew J. Lichtman/ecc_

David J. Pressman
Andrew J. Lichtman
919 Third Avenue
New York, New York 10022
dpressman@jenner.com
alichtman@jenner.com
(212) 891-1654

Terri L. Mascherin*
353 North Clark Street
Chicago, Illinois 60654
tmascherin@jenner.com
(312) 923-2799

*Counsel for Plaintiffs Thomas Schansman,
Catharina Teunissen, Nerissa Schansman, and
Xander Schansman*

LATHAM & WATKINS LLP

By:_____
Christopher Harris
Zachary L. Rowen
1271 Avenue of the Americas
New York, New York 10020
Christopher.Harris@lw.com
Thomas.Heiden@lw.com
Zachary.Rowen@lw.com
(212) 906-1200

*Counsel for Defendant VTB Bank PJSC*

WILLIAMS & CONNOLLY LLP

By:_____
David M. Zinn*
Christopher N. Manning
Amy B. McKinlay*
Haley L. Wasserman
725 Twelfth Street, N.W.
Washington, D.C. 20005
DZinn@wc.com
CManning@wc.com
AMcKinlay@wc.com
HWasserman@wc.com
(202) 434-5000

*Counsel for Defendants MoneyGram
International, Inc. and MoneyGram Payment
Systems, Inc.*

Dated: February 24, 2022
      New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By:_____
David J. Pressman
Andrew J. Lichtman
919 Third Avenue
New York, New York 10022
dpressman@jenner.com
alichtman@jenner.com
(212) 891-1654

Terri L. Mascherin*
353 North Clark Street
Chicago, Illinois 60654
tmascherin@jenner.com
(312) 923-2799

*Counsel for Plaintiffs Thomas Schansman, Catharina Teunissen, Nerissa Schansman, and Xander Schansman*

LATHAM & WATKINS LLP

By:_____
Christopher Harris
Zachary L. Rowen
1271 Avenue of the Americas
New York, New York 10020
Christopher.Harris@lw.com
Thomas.Heiden@lw.com
Zachary.Rowen@lw.com
(212) 906-1200

*Counsel for Defendant VTB Bank PJSC*

WILLIAMS & CONNOLLY LLP

By:_____
David M. Zinn*
Christopher N. Manning
Amy B. McKinlay*
Haley L. Wasserman
725 Twelfth Street, N.W.
Washington, D.C. 20005
DZinn@wc.com
CManning@wc.com
AMcKinlay@wc.com
HWasserman@wc.com
(202) 434-5000

*Counsel for Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*

Dated: February 24, 2022
     New York, New York

Respectfully submitted,

JENNER & BLOCK LLP

By:_____
David J. Pressman
Andrew J. Lichtman
919 Third Avenue
New York, New York 10022
dpressman@jenner.com
alichtman@jenner.com
(212) 891-1654

Terri L. Mascherin*
353 North Clark Street
Chicago, Illinois 60654
tmascherin@jenner.com
(312) 923-2799

*Counsel for Plaintiffs Thomas Schansman, Catharina Teunissen, Nerissa Schansman, and Xander Schansman*

LATHAM & WATKINS LLP

By:_____
Christopher Harris
Zachary L. Rowen
1271 Avenue of the Americas
New York, New York 10020
Christopher.Harris@lw.com
Thomas.Heiden@lw.com
Zachary.Rowen@lw.com
(212) 906-1200

*Counsel for Defendant VTB Bank PJSC*

WILLIAMS & CONNOLLY LLP

By: _____
David M. Zinn*
Christopher N. Manning
Amy B. McKinlay*
Haley L. Wasserman
725 Twelfth Street, N.W.
Washington, D.C. 20005
DZinn@wc.com
CManning@wc.com
AMcKinlay@wc.com
HWasserman@wc.com
(202) 434-5000

*Counsel for Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.*

SIDLEY AUSTIN LLP

DEBEVOISE & PLIMPTON LLP

By:_____

By:_____

Timothy J. Treanor
Melissa Colón-Bosolet
787 Seventh Avenue
New York, New York 10019
ttreanor@sidley.com
mcolon-bosolet@sidley.com
(212) 839-5300

Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, New York 10022
mpgoodman@debevoise.com
whtaft@debevoise.com
(212) 909-6000

Hille R. Sheppard*
Colleen M. Kenney*
One South Dearborn
Chicago, Illinois 60603
hsheppard@sidley.com
ckenney@sidley.com
(312) 853-7850

*Counsel for Defendants The Western Union Company and Western Union Financial Services, Inc.*
*\* admitted pro hac vice*

SIDLEY AUSTIN LLP

By:_____
Timothy J. Treanor
Melissa Colón-Bosolet
787 Seventh Avenue
New York, New York 10019
ttreanor@sidley.com
mcolon-bosolet@sidley.com
(212) 839-5300

Hille R. Sheppard*
Colleen M. Kenney*
One South Dearborn
Chicago, Illinois 60603
hsheppard@sidley.com
ckenney@sidley.com
(312) 853-7850

*Counsel for Defendants The Western Union Company and Western Union Financial Services, Inc.*
*\* admitted pro hac vice*

DEBEVOISE & PLIMPTON LLP

By: _____
Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, New York 10022
mpgoodman@debevoise.com
whtaft@debevoise.com
(212) 909-6000

**SO ORDERED:**


Dated: _____                    _____

## ATTACHMENT A

**A.1**     **Image Files**. Files produced in *.tif format will be single page black and white *.tif images at 300 DPI, Group IV compression. To the extent possible, original orientation will be maintained (i.e., portrait-to-portrait and landscape-to-landscape). Each *.tif image will be assigned a unique name matching the production number of the corresponding page. Such files will be grouped in folders of no more than 1,000 *.tif files each unless necessary to prevent a file from splitting across folders. If a file, *e.g.*, a PDF file, exceeds 1,000 *.tif images, the Producing Party may produce the file natively rather than in *.tif format. Files will not be split across folders and separate folders will not be created for each file. Production ("Bates") numbers shall be endorsed on the lower rightcorner of all images. This number shall be a unique, consistently formatted identifier that will:

> i.        be consistent across the production;
>
> ii.       contain no special characters; and
>
> iii.      be numerically sequential within a given file.

Bates numbers should be a combination of an alpha prefix along with an 8 digit number (*e.g.*, ABC00000001). The number of digits in the numeric portion of the Bates number format should not change in subsequent productions. Confidentiality designations, if any, will be endorsed on the lower left corner of all images and shall not obscure any portion of the original file.

**A.2.**    **File Text**. Except where a file's full text cannot be extracted, full extracted text will be provided in the format of a single *.txt file for each file (*i.e.*, not one *.txt file per *.tif image). Where ESI contains text that cannot be extracted, the available TIFF image will be OCR'd or, as applicable, the redacted native file will have its text re-extracted, and file-level text will be provided in lieu of extracted text.   Searchable text will be produced as Document-level multi-page

UTF-8 text files with the text file named to match the beginning production number of the Document. The full path of the text file must be provided in the *.dat data load file.

**A.3**     **TIFFs of Redacted ESI.** TIFFs of redacted ESI shall convey the same information and image as the original document, to the extent possible and available, including all non-redacted elements and formatting which are visible in any view of the document in its native application (*i.e.*, track changes).

**A.4.**     **Redactions**. For ESI that is redacted, all metadata fields listed in A.16 will be provided in the .dat file and will include all non-redacted metadata. Metadata may be redacted as appropriate pursuant to the Stipulated Protective Order and this Protocol. Redacted documents shall be identified as such in the load file provided with the production as required in A.16. A Document's status as redacted does not relieve the Parties from providing the metadata required herein.

**A.5.**     **Word Processing Files**. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx),  produced in TIFF-plus format will display tracked changes, comments, and hidden text.

**A.6.**     **Presentation Files**. Presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), shall be produced in in TIFF-plus format, such TIFF-plus imageswill display comments, hidden slides, speakers' notes, and similar data in such files.

**A.7.**     **Spreadsheet or Worksheet Files**. If spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), are produced in TIFF-plus format, such TIFF-plus images will display hidden rows, columns, and worksheets, if any, in such files.

**A.8.**     **Parent-Child Relationships**. Subject to the terms of "Document Family Relationships," above, parent-child relationships (*e.g.*, the associations between emails and their attachments) will be preserved. Email and other ESI attachments will be produced

as independent files immediately following the parent email or ESI record. Parent-child relationships will be identified in the data load file pursuant to Paragraph A.16 below.

**A.9.**   **Dynamic Fields.** Documents containing dynamic fields such as file names, dates, and times will be produced showing the field type (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the Document is processed.

**A.10.**   **Embedded Objects**.   Some Microsoft Office and .RTF files may contain embedded objects. Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, and Access; and PDF. Objects with those identified file types shall not be extracted as separate files or produced as attachments to the file in which they were embedded. Following production of documents containing embedded objects  the Parties may meet and confer on reasonable requests to produce certain embedded objects on a file-by-file basis.

**A.11.**   **Compressed Files.** Compressed file types (*e.g.*, .CAB, .GZ, .TAR. .Z, .ZIP) shall be decompressed.  All files that exist within the compressed containers will be extracted to individual files.  If compressed container files are found within compressed container files, those files should be further decompressed an extracted to individual files .

**A.12.**   **Encrypted or Corrupt Files** The Parties will take reasonable steps, prior to production, to unencrypt or restore any discoverable ESI that is encrypted (e.g., password-protected) or corrupt, and will produce relevant, non-privileged Documents that can be reasonably unencrypted or restored. This provision does not require any forensic level tool or password cracking software to be utilized to decrypt a document.

**A.13.**   **Scanned Hardcopy Documents.**

   a.   In scanning hardcopy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple

records (*i.e.*, hard copy documents should be logically unitized).

b.    For scanned images of hard copy documents, OCR should be performed on a Document level and provided in Document-level *.txt files named to match the production number of the first page of the Document to which the OCR text corresponds. OCR text should not be delivered in the data load file or any other delimited text file.

**A.14.**  **Production Numbering.**  In following the requirements of Paragraph A.1, the Producing Party shall take reasonablesteps to ensure that attachments to Documents or electronic files are assigned production numbersthat directly follow the production numbers on the Documents or files to which they were attached.If a production number or set of production numbers is skipped, the skipped number or set of numbers will be noted. In addition, wherever possible, each TIFF image will have its assigned production number electronically "burned" onto the image.

**A.15.**  **Data and Image Load Files.**

a.    **Load Files Required**. Unless otherwise agreed, each production will include a data load file in Concordance (*.dat) format and an image load file in Opticon (*.opt) format.

b.    **Load File Formats.**

i.    Load file names should contain the volume name of the production media. Additional descriptive information may be provided after the volume name. For example, both ABC001.dat or ABC001_metadata.dat would be acceptable.

ii.    Unless other delimiters are specified, any fielded data provided in a load file should use Concordance default delimiters. Semicolon (;) should be

used as multi-entry separator.

iii.    Any delimited text file containing fielded data should contain in the first line a list of the fields provided in the order in which they are organized in the file.

c.    **<u>Fields to be Included in Data Load File</u>.** For all Documents or electronic files produced, the following metadata fields for each Document or electronic file, if available at the time of collection and processing and unless such metadata fields are protected from disclosure by attorney-client privilege or work-product doctrine or otherwise prohibited from disclosure by law or regulation, will be provided in the data load file pursuant to subparagraph (a) above. The term "Scanned Docs" refers to Documents that are in hard copy form at the time of collection and have been scanned into TIFF images. The term "Email and E-Docs" refers to files that are in electronic form at the time of their collection, irrespective of the form (TIFF-Plus or native format) in which they are produced.

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of last page of the last attachment in a family |
| ATTACH | Attach1.doc; Attach2.doc | N/A | Yes | Filenames of all attached records, separated by semi-colons |
| NUMATTACH | 2 | N/A | Yes | Total number of records attached to the document |
| GLOBAL CUSTODIAN | Smith, John; Doe, Jane; Jones, James | Yes | Yes | Name of Custodian/Source that possessed the document or electronic file. (When global de-duplication is used, all custodian(s)/source(s) that possess duplicate copies of the Document are listed, separated by semicolons.) |
| NATIVEFILE | Natives\001\ 001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| DOCTYPE | Microsoft Office 2007 Document | N/A | Yes | Description of the type file for the produced record. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Date on which non-email file was modified as extracted from file system metadata |
| DOCTITLE | Meeting Minutes | N/A | Yes | "Title" field extracted from metadata properties of the Document |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 18:33 | N/A | Yes | Sent time of email message, time zone set to UTC |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 18:33 | N/A | Yes | Received time of email message, time zone set to UTC |
| CONFIDENTIALITY | CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCED_IN_NATIVE_AND_TIFF | Yes | N/A | YES | Limited to documents reproduced in native format |
| MD5_HASH VALUE | 309997447f...... | N/A | Yes | MD5 Hash value for ESI – Unique Identifier |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |

**A.16.   Files Produced in Native Format.**

a.     For any electronic file produced or provided in native format, the file shall be given a file name consisting of a unique Bates number.  For each such native file, the production will include a TIFF image slip sheet (i) indicating the production number of the native file, (ii) with respect to any confidential document, setting forth the full confidentiality language applicable to the native file as set out in the protective order, and (iii) stating "File Provided Natively." The text contained on the slip sheet shall be provided in the *.txt file with the text path provided in the *.dat file.

b.     For any electronic file produced in native file format following production of a TIFF-image, the file shall be given a file name consisting of the Bates number of the first page of the associated TIFF-image. For each such native file, the production will include a new .DAT file

(i) indicating the production number of the native file, (ii) identifying the path to the native file,

(iii) adding a field stating "Yes," indicating that the file was produced in both native and TIFF formats, and (iv) linking the metadata associated with the originally produced TIFF image to the newly produced native file.

**A.17.   Production Media.** Unless otherwise agreed, Documents and ESI will be produced on optical media (CD/DVD), external hard drive, secure FTP site, or similar electronic format. Such media should have an alphanumeric volume name; if a hard drive contains multiple volumes, each volume should be contained in an appropriately named folder at the root of the drive. Volumes should be numbered consecutively (*e.g.*, ABC001, ABC002, etc.). Deliverable media should be labeled with the name of this action, the identity of the Producing Party, and the following

information: Volume name, production range(s), and date of delivery. The Parties will also provide correspondence identifying the bates range for each production.

**A.18.  Encryption of Production Media**. To maximize the security of information in transit, any media on which Documents or electronic files are produced may be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the requesting Party under separate cover, contemporaneously with sending the encrypted media, and shall provide a tracking number for the encrypted media to the Receiving Party. The Receiving Parties in this matter are on notice that certain data produced may originate from Custodians/Sources in the European Union or other foreign jurisdiction and the Receiving Partiestherefore agree to follow the strictest security standards in guarding access to said data.