**JENNER&BLOCK** LLP

1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

Terri L. Mascherin
Tel +1 312 923 2799
TMascherin@jenner.com

April 18, 2022

VIA ECF

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

***Schansman et al. v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG (S.D.N.Y.) – Plaintiffs' Request for Pre-Motion Conference on Their Proposed Motion to Compel the Production of Documents from Defendant VTB Bank PJSC**

Dear Judge Gorenstein:

We write on behalf of Plaintiffs Thomas Schansman, individually, as surviving parent of Quinn Lucas Schansman; Catharina Teunissen, individually, as surviving parent of, and as personal representative of the Estate of Quinn Lucas Schansman ("Quinn"); Nerissa Schansman, individually, as surviving sibling of Quinn; and Xander Schansman, individually, as surviving sibling of Quinn (collectively, "Plaintiffs") in the above-captioned case to request a pre-motion conference concerning Plaintiffs' proposed motion to compel the production of documents from Defendant VTB Bank PJSC ("VTB") pursuant to Federal Rule of Civil Procedure 37.

Plaintiffs have served two sets of requests for production (dated November 29 and December 17, 2021) and one set of interrogatories (dated November 29, 2021). The Court required the parties to substantially complete all party document productions by July 19, 2022. ECF No. 197 at 1. To date, VTB has produced no documents. Instead, VTB's position is resolute that there is "not a production forthcoming," and that Plaintiffs should instead focus their efforts on obtaining discovery from third parties. Plaintiffs request the Court's assistance in light of VTB's refusal to produce *any* discovery in this case.

This case concerns the use of Defendants' banking or money transfer services by the Donetsk People's Republic ("DPR"), a terrorist group, to fundraise in order to procure weapons and other instruments to carry out its terrorist activity in eastern Ukraine. To encourage supporters from around the world to support their terrorist aims, the DPR advertised an extensive array of bank account and money transfer options—including specific names of financial institutions, account holders, and account numbers for Russian and New York correspondent banks—to encourage radicalized supporters to fund their activities. The DPR's fundraising campaign was successful, and deadly. On July 17, 2014, the DPR launched a surface-to-air missile at Malaysia Airlines

CHICAGO   LONDON   LOS ANGELES   NEW YORK   SAN FRANCISCO   WASHINGTON, DC

WWW.JENNER.COM

Flight 17 ("MH17"), a civilian passenger plane, killing all 298 passengers on board, and murdering Quinn, a young American.

Despite the DPR's extensive reliance on accounts at VTB to receive funds, VTB refuses to produce any documents.  VTB premises its refusal on three broad categories of objections.

First, in response to all but two of Plaintiffs' document requests and interrogatories, VTB claims that it is allegedly prohibited from producing any documents under Russian bank secrecy laws, along with other Russian confidentiality laws.  Second, VTB has refused to produce any documents outside a narrow four-month window, taking the unreasonable position that it will not produce any documents dated after the MH17 flight was downed by the DPR.  Third, VTB has taken the categorical position that it will not search for or produce documents regarding transactions through VTB by individuals and entities connected to the DPR unless those individuals or entities were expressly identified by name in the Second Amended Complaint, ECF No. 156 ("SAC").

Plaintiffs have attempted to resolve and narrow these disputes over the course of four months to no avail.  Since December 2021, the parties have engaged in lengthy correspondence concerning the applicability and effect of certain Russian laws and presidential decrees that VTB alleges prohibit the disclosure of responsive documents.  The Parties failed to reach a consensus on the issue because VTB claims it is prohibited from producing any documents at all under Russian law. The parties have also met and conferred regarding the scope of VTB's discovery were the Russian law issues resolved and exchanged letters crystallizing the disputes.  On March 10, 2022, Plaintiffs' counsel met and conferred with VTB's counsel for nearly two hours to discuss VTB's various objections to Plaintiffs' requests, including issues of foreign law.  From that call, it became clear that VTB did not intend to produce any documents.  Outside of the meet-and-confer process for filing this motion to compel, Plaintiffs have not heard from VTB or made any progress in narrowing the disputes since that date.  Unfortunately, despite Plaintiffs' attempts to engage with VTB in good faith to reasonably narrow the discovery requests, the correspondence and meet-and-confer process has been unsuccessful, and has only revealed that VTB does not intend to participate in discovery in this case.[1]

---

[1] Because VTB has refused to engage meaningfully with Plaintiffs regarding how to narrow Plaintiffs' discovery requests (largely due to VTB's failure to conduct any due diligence or investigation into whether it possesses the documents Plaintiffs requested), Plaintiffs propose to focus this initial motion to compel on certain core requests, which Plaintiffs hope will guide the parties for other requests.  See RFP Nos. 1 & 52, 2 & 54, 6, 8, 11 (information regarding DPR transactions and other customer-specific requests); RFP Nos. 13-14, 28, 34, 37, 50 (documents related to VTB's monitoring of the 2013-14 political and social unrest in Ukraine, and documents concerning allegations that VTB financed terrorists or investigations into the same); RFP Nos. 25-27, 59-60 (documents concerning VTB's anti-money laundering or counter-terrorism policies, and obligations to comply with foreign laws or mandates regarding the same); RFP Nos. 33, 35, 44

In light of the significant disagreement among the Parties, counsel for Plaintiffs (Jason Hipp) emailed counsel for VTB (Christopher Harris) on April 5, 2022 to request a meet-and-confer prior to filing this request with the Court.  Counsel for Plaintiffs (Terri Mascherin and Mr. Hipp) conferred with counsel for VTB (Mr. Harris) by telephone on April 6, 2022 for approximately 15 minutes, and again on April 14, 2022 for the same amount of time.  Following this final meet-and-confer attempt, counsel mutually agreed that the Parties are at an impasse on the three issues raised here.  Given this impasse, Plaintiffs are filing this letter with the Court to request a pre-motion conference on Plaintiffs' motion to compel VTB's discovery responses.  In accordance with Your Honor's Individual Practices, Plaintiffs are also filing a separate letter requesting formal briefing on these issues.

## I.      VTB Is Improperly Refusing to Produce Any Documents, Citing Russian Law Objections.

VTB is stonewalling all discovery in this case, hiding behind assertions that Russian law prohibits the disclosure of all responsive documents—even though VTB has never identified which specific Russian laws prohibit VTB's production of documents responsive to which specific discovery requests, even though VTB's U.S. counsel has never reviewed the relevant documents, and even though VTB relied heavily on correspondent banks in the United States to conduct its business during the relevant period, subjecting it to the jurisdiction of this Court.  Citing these Russian law objections, VTB recently asserted that there is "not a production forthcoming."

VTB has conditioned its production of any documents in this action on whether it receives permission to produce any responsive documents from the Russian Ministry of Finance, the Central Bank of Russia, and VTB's own customers and employees.  VTB has sought approval from the Ministry of Finance and the Central Bank of Russia, but has informed Plaintiffs that it has yet to receive a substantive response from the Ministry of Finance, and that it has "no expectation or understanding" about the timing of such a response.  Sberbank of Russia's counsel informed Plaintiffs that on February 15, 2022, the Central Bank of Russia responded to Sberbank of Russia's request (on behalf of both Sberbank of Russia and VTB) that it was unable to grant permission to disclose Sberbank of Russia and VTB documents for the purposes of this litigation.  Additionally, despite VTB's prior representations that it was also seeking approval from its customers and employees, VTB admitted during the parties' March 10, 2022 meet-and-confer that it had not in fact taken any steps to do so.  VTB has also insisted that Plaintiffs obtain permission from a Russian court for letters rogatory, despite the State Department's unequivocal statement that "all such requests are returned unexecuted."  *Russia Judicial Assistance*, U.S. Dep't of State: Bureau of Consular Affairs, https://bit.ly/3jAvexe.  When asked, VTB could not provide any reason to think a letter rogatory might be returned executed here.

_____

(documents concerning VTB's employees and departments responsible for overseeing areas such as anti-money laundering and antiterrorism financing, and documents related to VTB's employees).

In light of VTB's untenable position, Plaintiffs require the Court's assistance to order VTB to produce documents notwithstanding its foreign law objections. Under both prongs of the governing *Aerospatiale* test, VTB cannot hide behind Russian law as a shield to avoid producing discovery. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987).

First, VTB has not met its burden to prove the existence and applicability of a conflicting foreign law. A party invoking foreign law to resist discovery "bears the burden of demonstrating that such law actually bars the production or testimony at issue." *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993) (denying defendant's motion for a protective order on the grounds of foreign privacy laws). To meet that burden, the party must provide "information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Id.* VTB has come nowhere close to meeting this burden. In its responses and objections to Plaintiffs' discovery requests, VTB merely string-cited seven Russian laws and presidential decrees for every discovery request to which it objected on foreign law grounds, and during the March 10 meet-and-confer, counsel for VTB admitted that they had not reviewed any of the potentially responsive documents. It is thus unclear how counsel for VTB can maintain that seven separate Russian laws and decrees prohibit the disclosure of documents that they have not even reviewed.

Second, the U.S. interest in allowing Plaintiffs to litigate their claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, *et seq.* ("ATA"), strongly outweighs any purported interest of the Russian Federation in preventing the disclosure of the requested documents. It is "undisputed" that federal courts may order discovery even if compliance would violate foreign law. *Alfadda*, 149 F.R.D. at 33; *accord Aerospatiale*, 482 U.S. at 544 n.29. If the foreign law is found to conflict with a discovery request, "the court must perform a comity analysis 'to determine the weight to be given to the foreign jurisdiction's law,'" which, in this case, would balance the United States' interests against those of the Russian Federation in disclosure of the documents. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394, 2017 WL 7512815, at *5 (S.D.N.Y. Dec. 29, 2017) (internal citation omitted) (granting plaintiffs' motion to compel production of documents notwithstanding foreign law objections); *see also Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 210 (E.D.N.Y. 2007) (compelling bank to produce bank records and documents relating to the bank customer alleged to be the conduit for funds funneled to the foreign terrorist organization). In particular, in actions involving claims under the ATA, courts have emphasized that the United States' interest is "nearly [at] its highest point" and that foreign countries' own interests in prosecuting terrorism-related actions often diminish generally applicable privacy or secrecy laws. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 46 (E.D.N.Y. 2007) (internal citation omitted) (compelling bank to produce bank records and documents relating to bank customer

alleged to be the conduit for funds funneled to a foreign terrorist organization, notwithstanding the bank's British bank secrecy objections).[2]

Plaintiffs' discovery requests are apiece with this well-settled law governing ATA claims. Plaintiffs' requests are "focused on the vital issues in this case"—namely, "whether and to what extent [Defendants] knowingly provided 'material support and resources' . . . and/or 'financial services' to a terrorist organization." *Weiss*, 242 F.R.D. at 44 (internal citation omitted). This information is not just relevant but is "crucial to the litigation of [P]laintiffs' claims." *Strauss, S.A.*, 242 F.R.D. at 212. Absent court compulsion, the possibility that Plaintiffs will be able to obtain this information is nonexistent.[3]

Further, the protective order in this case, ECF No. 294, can adequately protect any confidentiality interests here. *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *15 (W.D. Ky. Mar. 19, 2019) (explaining that Russian Federation interest in enforcing commercial secrets and data protection laws is "mitigated" by the parties' protective order).

Accordingly, VTB should be required to produce documents notwithstanding its Russian law objections.

## II.    VTB Must Produce Documents Outside A Narrow, Four-Month Period.

In addition, Plaintiffs seek an order requiring VTB to produce documents for the time period of November 21, 2013 to December 31, 2016 for transactions and to December 31, 2018 for all other documents. In response to Plaintiffs' reasonable proposed time period, VTB has taken the extreme position of refusing to provide documents or information over any time period other than the narrow four-and-a-half-month window of March 3, 2014 (the alleged date of the DPR's formal founding) to July 17, 2014 (the date the DPR shot down MH17). VTB did not modify its position during the parties' meet and confers on April 6 and 14, 2022.

---

[2] *See also Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 208 (E.D.N.Y. 2010) (awarding sanctions for foreign bank's failure to comply with discovery order requiring production of bank account information in ATA case, notwithstanding bank's refusal on the basis of foreign bank secrecy laws), *appeal dismissed and mandamus denied*, 706 F.3d 92, 115 (2d Cir. 2013); *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 473 (S.D.N.Y. 2013) (compelling foreign bank in ATA case to produce bank account and other information over objections premised on foreign bank secrecy laws); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 227-28 (E.D.N.Y. 2007) (same).

[3] As Your Honor has previously recognized, the alternative procedures of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters are unavailable for obtaining evidence from the Russian Federation for use in United States courts, rendering the most obvious (if inefficient) option unavailable. *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CIV-4355, 2020 WL 4034733, at *3 (S.D.N.Y. July 17, 2020) (Gorenstein, J.). Additionally, as noted above, a potential letter rogatory fares no better.

Plaintiffs' proposed start date of November 21, 2013 is appropriate, as that is the date that President Viktor Yanukovych's government abandoned the European Union-Ukraine Association agreement. That act set off the Euromaidan demonstrations and associated national protests across Ukraine, as well as the responses thereto by organized violent groups, including the group in eastern Ukraine that led to Quinn's murder. Solicitations to fund these groups began soon thereafter.

Plaintiffs' proposed end dates of December 31, 2016 for transactions and December 31, 2018 for all other documents are similarly appropriate. VTB insists that all documents created after the downing of the MH17 flight on July 17, 2014 are irrelevant to determining VTB's liability under the ATA. But this is not the law, particularly under the unique circumstances here. Under recent ATA case law in this district, documents created after a key event at issue may be relevant to a defendant's knowledge of that event and therefore relevant to determining the defendant's liability. For example, in *In re Terrorist Attacks on Sept. 11, 2001*, the court, in the context of narrow jurisdictional discovery, authorized discovery from a foreign bank regarding investigations into the defendant's conduct until the end of 2004 (more than three years after the September 11 attacks) and until the end of December 2002 for all other requests. No. 03-MD-1570 (GBD)(SN), 2021 WL 5449825, at *4-5 (S.D.N.Y. Nov. 22, 2021); *see also Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 237-38, 244 (D.D.C. 2013) (ATA case) (ordering production of documents created more than one year after the attack at issue).[4] Here, the later-in-time materials are not only likely to lead to admissible evidence about persons and entities who funded the DPR during the relevant time period, but could be admissible evidence (even if the funds were not used to murder Quinn Schansman) as similar-acts evidence under Federal Rule of Evidence 404(b) to show VTB's reckless indifference to the risk of funding terrorism. *See United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility.") (internal citation omitted).

Accordingly, Plaintiffs seek an order requiring VTB to produce documents responsive to Plaintiffs' requests from November 21, 2013 to December 31, 2016 for transactions and to December 31, 2018 for all other documents.

---

[4] In the context of tort claims more generally, discovery commonly extends beyond the date of the tortious act. *See, e.g.*, *Goodrich v. Fisher-Price, Inc.*, No. 1:16-CV-03116-TWT, 2018 WL 11343381, at *2 (N.D. Ga. Mar. 19, 2018) (allowing plaintiffs to obtain discovery of similar incidents for the period of seven years prior to and three years after the wrongful death at issue); *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 672 (S.D. Fla. 2012) (granting discovery regarding cruise line's investigative procedures for the period of two years prior to and 19 months after the tort at issue); *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 7 (D.D.C. 1987) (noting, in a securities fraud and civil RICO action, that "documents which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on the central issues in this case," as those documents may reflect the defendants' intent to commit their wrongful acts).

### III.   VTB Must Search its Records for all Potential DPR-Associated Individuals and Fundraisers, Not Merely The Handful of Names Expressly Identified in the SAC.

Plaintiffs seek records, including transaction records, from VTB about the individuals and entities associated with the DPR that used VTB's financial services to fund terrorist activity.  Indeed, these documents are the crux of Plaintiffs' claims.  In ATA cases, this type of financing and transactional information is "crucial to the litigation of [P]laintiffs' claims."  *Strauss, S.A.*, 242 F.R.D. at 212; *see also Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 315 (E.D.N.Y. 2006) (compelling foreign bank to produce bank records and documents, and noting that "proof concerning the arrangements for making such payments and the breadth of the payment scheme is also crucial").

Despite the importance of this discovery, VTB has refused to engage in a reasonable search for documents showing its financial support to the DPR.  Plaintiffs have attempted to facilitate VTB's search of those clearly relevant documents by listing in Appendices A and B to its document requests certain names and account numbers of individuals and entities that Plaintiffs have identified as related to the DPR.[5]  Nevertheless, VTB has refused to conduct searches for responsive information.  Instead, VTB insists that it will only search for transaction records if Plaintiffs expressly alleged a connection in the SAC between the DPR and a particular individual or entity, or if Plaintiffs prove to VTB's satisfaction that the individuals and account numbers Plaintiffs identified are connected to the DPR.  VTB did not modify its position during the parties' meet and confers on April 6 and 14, 2022.  Its interpretation of VTB's obligations is insupportably narrow.

It is black letter law that "[d]iscovery is not limited to the issues raised in the pleadings," as "[d]iscovery itself is designed to help define and clarify the issues."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 CIV. 3400 (WCC), 2006 WL 8429110, at *2 (S.D.N.Y. June 21, 2006) (internal citation omitted).  The scope of discovery "is necessarily broad . . . in order 'to encompass any matter that bears on, or that reasonably could lead to [an] other matter that could bear on, any issue that is or may be in the case.'"  *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) (internal citation omitted and alteration in original).  It is "well-established within this Circuit" that discovery is appropriate "if there is '*any possibility*' that the information sought to be obtained may be relevant to the subject matter of the action."  *MacCartney*, 2018 WL 5023947, at *2 (internal citation omitted and emphasis added).

---

[5] Appendices A and A-2 identify persons and entities associated with the DPR, which Plaintiffs identified based on further investigation since filing the SAC.  Appendices B and B-2 identify account numbers of individuals and entities associated with the DPR, including nine accounts at VTB or VTB 24, which Plaintiffs collected based on that same investigation.  VTB 24 is the retail banking arm of VTB.  *See* VTB 2019 Annual Report at 34, https://tinyurl.com/3wbh69sz (explaining that in 2018, VTB merged with VTB 24 "to create a single bank," which was "the biggest integration project to take place in the Russian market in 2018").  On March 18, March 25, and April 7, 2022, Plaintiffs produced documents showing the DPR's connection to the majority of the names and accounts in the appendices, yet VTB has refused to change its position.

Records related to the names and account numbers identified in Appendices A and B are likely to provide information that goes to the heart of Plaintiffs' claims; indeed, VTB does not meaningfully dispute that records it possesses concerning names and account numbers associated with the DPR would be highly relevant to Plaintiffs' claims and VTB's anticipated defenses.  *See Strauss*, 242 F.R.D. at 212 (ordering production of bank records and documents, noting that the defendant's "provision of financial services to CBSP for more than thirteen years, including accepting deposits from and/or distributing funds to alleged terrorist organizations on behalf of CBSP" were "highly relevant and important to the claims and defenses in this action").  Rather, VTB simply refuses to produce any information unless Plaintiffs justify to VTB's satisfaction that each and every name and account number is specifically linked to the DPR.  In requesting fact discovery, Plaintiffs are not required to satisfy trial-level evidentiary burdens of proof relating to these persons' involvement with the DPR or to disclose attorney work product.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CIV-9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, No. 14-CV-9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016).  During the meet-and-confer, VTB refused to confirm whether it had conducted any investigation or efforts to identify and trace any funds solicited by DPR or its leadership, or affiliates, through VTB.  VTB cannot refuse to search for the very transactions at the center of Plaintiffs' claims.

Accordingly, Plaintiffs respectfully request an order requiring VTB to search for and produce documents responsive to Plaintiffs' requests, including documents concerning the names and accounts identified in Appendices A, A-2, B, and B-2, as well as conduct an independent search for all transactions involving DPR individuals and fundraisers.

* * *

For the foregoing reasons, Plaintiffs respectfully request permission to file a motion to compel the production of documents from VTB.

Respectfully submitted,


/s/ Terri L. Mascherin

Terri L. Mascherin (admitted *pro hac vice*)
David Pressman
Jason P. Hipp
JENNER & BLOCK LLP

*Counsel for Plaintiffs*


cc:      Counsel of Record (via ECF)

8