**LATHAM&WATKINS**LLP

Plaintiffs' letters is any justification for why this issue presents such an emergency that briefing must begin next week.

Second, undersigned counsel has, with VTB's assent, moved to withdraw from representing VTB in this case. *See* Dkt. Nos. 316-319. VTB is in the process of identifying replacement counsel. During the parties' April 14, 2022 meet-and-confer, counsel for VTB informed Plaintiffs' counsel of their upcoming motion to withdraw and that VTB was in the process of engaging new counsel, and asked if Plaintiffs would provide VTB the courtesy of waiting for that transition to take place before attempting to brief a motion to compel. Notwithstanding that request, Plaintiffs filed their pre-motion and briefing schedule letters. Notably, however, Plaintiffs do not explain why briefing cannot wait until after VTB has transitioned to new counsel, who should be permitted the opportunity to address these important issues, to the extent the Court finds it necessary.

Third, VTB has sought permission from the Russian authorities to produce relevant documents, notwithstanding Russian legal obligations discussed further below. VTB is following up with those authorities in an effort to get a definitive response on its requests.

What makes most sense, and what VTB has proposed to Plaintiffs, is that jurisdictional discovery be prioritized first. If in fact there are no (or there are only insufficient) transactions in VTB's New York correspondent accounts before the MH17 crash, then there is no personal jurisdiction and the claims must be dismissed. And this jurisdictional discovery can be obtained from third parties—those New York banks who maintain the correspondent accounts—while VTB is waiting for permission from the Russian authorities to proceed with its own discovery, and while VTB is locating replacement counsel. As discussed below, VTB has offered to facilitate that third party discovery in any way possible.

Accordingly, in light of the Russian authorities' ongoing review of VTB's requests, the Plaintiffs' ability to obtain discovery from third parties, and VTB's need to transition to substitute counsel, VTB respectfully proposes that the Court hold briefing on Plaintiffs' proposed motion in abeyance for thirty days, at which time VTB will update the Court regarding the status of authorization from the Russian authorities, and will hopefully have obtained replacement counsel. A motion to compel may either be unnecessary then, or if it is necessary will be more fully informed and VTB could be represented by counsel who will handle this matter going forward.

### A. Plaintiffs Have Prematurely Manufactured The Dispute Over Russian Law

As a preliminary matter, briefing on this motion to compel should wait because it is premature—and might largely be moot. VTB has sought guidance on how to proceed with its productions from the relevant Russian authorities: the Russian Ministry of Finance and the Russian Central Bank. On December 28, 2021, VTB sent a letter request for guidance on these issues to the Russian Ministry of Finance, and on February 1, 2022, it sent a similar letter request to the Russian Central Bank. On February 7, 2022, VTB received a letter response from the Ministry of Finance confirming receipt of VTB's December 28, 2021 letter, and stating that the Ministry of Finance would be providing a substantive response to VTB's inquiry in due course. VTB is in the process of again asking the authorities for guidance, including the timing of when to expect a

LATHAM&WATKINS LLP

response.[2] It is premature to litigate the issue until VTB has received a definitive response from these authorities, which may moot much of this dispute, and if not, provide clarity as to what remains.

From the outset of discovery, VTB has made clear to Plaintiffs that it would need to obtain this guidance from the Russian government regarding what it could produce in this litigation. Indeed, in correspondence that VTB's counsel sent to Plaintiffs' counsel on December 21, 2021, VTB offered a series of proposals for ways to move discovery forward while it sought this guidance from these agencies. *First*, VTB told Plaintiffs that it would support a joint effort to pursue a letter rogatory seeking Russian court assistance to authorize the disclosure of information protected by applicable Russian bank secrecy laws. Ex. 1 (Dec. 21, 2021 letter from C. Harris to D. Pressman) at 3. *Second*, VTB asked for Plaintiffs to narrow their requests, as the breadth of the demands as-written might pose hurdles to getting approval from the Russian government to produce materials in response. *Id*. *Third*, VTB asked Plaintiffs to identify the steps it has taken to obtain the relevant information from other sources—including those located in New York. *Id*. Plaintiffs did not engage with those invitations.

Once more, in an effort to find a path forward, VTB proposed on February 3, 2022, that the parties phase discovery to allow Plaintiffs to obtain documents located inside the United States while VTB awaited a response from the Russian authorities. As VTB noted, "[i]f any [relevant] transactions existed, then they had two sides—the correspondent bank side, and the VTB side." Ex. 2 (Feb. 3, 2022 letter from C. Harris and F. Belykh to D. Pressman) at 1. VTB confirmed that it had "as much interest as the Plaintiffs in obtaining this information immediately, as [it] expect[ed] it will end these claims as to VTB," and that it was willing to support efforts to obtain this discovery from the correspondent banks. *Id*. at 1-2. Once again, however, Plaintiffs did not engage in the offer.

As explained below, the restrictions imposed by Russian law are real, and pose severe consequences if violated. On four occasions, VTB catalogued for Plaintiffs the relevant Russian laws that restrict its ability to produce discovery in this case: (1) VTB's Initial Disclosures, dated December 3, 2021; (2) a letter to opposing counsel, dated December 21, 2021 (Ex. 1); (3) VTB's Responses and Objections to Plaintiffs' Requests for Production, dated January 17, 2022; and (4) a letter to opposing counsel, dated February 3, 2022 (Ex. 2). These laws include:

- Civil Code of the Russian Federation dated January 26, 1996, No. 14-FZ (Art. 857, as amended) and Federal Law dated December 2, 1990, No. 395-1 On Banks and Banking Activities (Art. 26, as amended) (together, the "Russian Bank Secrecy Laws"), which prohibit banks from disclosing information regarding the identity of its clients, the existence of accounts at

---

[2] Plaintiffs mention a February 15, 2022 letter from the Central Bank of Russia that purported to respond to a request by Sberbank on behalf of it and VTB. (Dkt. 313 at 3.) Plaintiffs have never mentioned or shown this correspondence to VTB; and VTB is unaware of and has never received this correspondence from the Central Bank of Russia.

LATHAM&WATKINS LLP

> VTB, and any details regarding the amount of funds in any accounts or any transactions involving the account;
>
> - Decree of the President of the Russian Federation dated September 12, 2012 No. 1285 and a related decree and implementing order, Order of the Ministry of Finance of the Russian Federation dated January 16, 2013, No. 6, that prohibit VTB from disclosing information about its operations;
>
> - Federal Law dated July 27, 2006, No. 152-FZ On Personal Data (as amended), which prohibits VTB from disclosing information regarding individuals' accounts or transactions; the private communications of its employees; and any of its employees identifying information without their consent; and
>
> - Criminal Procedure Code of the Russian Federation dated December 18, 2001, No. 174-FZ (Article 161), which prohibits VTB from disclosing communications between its employees and Russian law enforcement officials engaged in a criminal investigation.

Tellingly, to date, Plaintiffs have never denied VTB's description of Russian law or suggested that VTB wrongly asserts that these laws prohibit it from producing the very documents Plaintiffs seek.

In VTB's Responses and Objections to Plaintiffs' Requests For Production and in VTB's letters to opposing counsel, VTB also described the criminal penalties that may be imposed on VTB and/or its employees if these Russian laws are violated: over one million rubles in fines; seizure of income; prohibitions on holding certain professional positions; correctional labor for up to two years; compulsory labor for up to five years; and imprisonment for up to seven years. Indeed, VTB identified specific cases in which Russian authorities imposed criminal penalties for violations of the Russian laws implicated here.

Plaintiffs' discovery requests place VTB's obligations under Russian law into a "true conflict" with its discovery obligations under the Federal Rules of Civil Procedure—and the Court need look no further than the face of Plaintiffs' Requests for Production and the plain text of the relevant Russian laws to see it.  *See Doubleline Capital LP v. Odebrecht Finance, Ltd.*, 2021 WL 4596561, *10 (S.D.N.Y. Oct. 6, 2021) (granting defendant's motion for a protective order where a "true conflict" exists "between domestic and foreign law").  For example, Plaintiffs' Request For Production No. 2 seeks "all documents concerning any Transactions involving an account listed in Appendix B," which lists several account numbers that Plaintiffs assert are relevant to this case. But the Russian Bank Secrecy Laws forbid VTB from disclosing information regarding the identity of its clients, the existence of accounts, and any details regarding the amount of funds in any accounts or any transactions involving any account.  Likewise, Request for Production Nos. 33, 35, and 44 seek documents that would reveal information about VTB's operations and identifying

LATHAM&WATKINS LLP

information about VTB's employees. But Presidential Decree No. 1285 and Federal Law No. 152-FZ on Personal Data appear, on their face, to forbid the disclosure of such information.[3]

These laws are not sham "blocking statutes" intended to protect Russian parties from foreign discovery. Rather, they are drawn from the Russian constitutional guarantees of "privacy, inviolability of a personal secret, and inadmissibility or dissemination of information about a private life of a person without his or her consent."[4] *See Minpeco, S.A. v. Conticommodity Serv., Inc.*, 116 F.R.D. 517, 528 (S.D.N.Y. 1987) (denying motion to compel, and noting "this is not a situation in which the party resisting discovery has relied on a sham law such as a blocking statute"). VTB's demonstration that prior violations of these Russian laws were successfully criminally prosecuted in Russia only further supports this conclusion and would be a sufficiently "weighty" reason to excuse production under the Federal Rules. *See NML Capital*, 2013 WL 491522, *3-4 (S.D.N.Y. Feb. 8, 2013) ("If a foreign company is likely to face criminal prosecution in a foreign country for complying with a United States court order, that is a weighty excuse for nonproduction.").

Plaintiffs cite *Linde v. Arab Bank, PLC*, for the proposition that courts award sanctions where a foreign bank fails to comply with a discovery order requiring production of documents. *See* Dkt. No. 313 at 5, n.2 (citing 269 F.R.D. 186, 208 (E.D.N.Y. 2010)). If anything, the laws at issue in *Linde* and its procedural history reflect deference to foreign data privacy laws and highlight just how premature Plaintiffs' proposed motion is. In *Linde*, before the court held that the defendants had any obligation to produce documents, the court first had an objection process to balance the "defendant's foreign bank secrecy concerns" with "United States interests in combating terrorism." *Id*. at 193. Notably, unlike here, in *Linde*, two of the three foreign jurisdictions had "adopted a policy not to rely on bank secrecy laws as a basis for protecting information relating to money laundering or terrorist financing," which reduced the defendants' interest in complying with the applicable foreign laws. *Id*. at n.3. Only after this motion practice did the court determine, based on the particular facts and laws at issue there, that the balance of interests favored production. Most importantly, even after making that determination, "[r]ather than requiring defendant to immediately produce the previously-withheld documents," the magistrate judge "permitted the Bank to 'make a good faith effort to secure permission from the foreign authorities to make the information available,'" *id*. at 193-94 (citation omitted)—which is precisely the type of request VTB initiated with Russian authorities shortly after Plaintiffs' served their discovery requests. In *Linde*, it was only after defendants' subsequent refusal to produce the materials located abroad, and "*years of delay*" that the court issued sanctions. *Id.* at 194, 199-200 (emphasis added). Further, unlike the defendant in *Linde*—which the Court found did not engage in a good faith request to foreign authorities because their "letters [to foreign authorities] were

---

[3]   VTB is currently considering the engagement of an expert on Russian law to testify to these laws in furtherance of any briefing on this issue.

[4]   Clause 3 of Resolution of the Constitutional Court of the Russian Federation No. 8-P dated May 14, 2003 "On the Case of Inspection of Constitutionality of Clause 2, Article 14, of the Federal Law "On Court Bailiffs" in Connection with the Request of the Langepas City Court of the Khanty-Mansi Autonomous Area."

**LATHAM&WATKINS**LLP

calculated to fail" and they did not engage in "extensive effort" to secure the approval of foreign regulators, *id.* at 199—VTB has engaged in a good faith effort to seek a resolution that will allow it to comply with Russian law and still make productions in this case.

Finally, Plaintiffs' own statement in their letter is telling: they assert that "VTB relied heavily on correspondent banks in the United States to conduct its business." (Dkt. 313 at 3). Noticeably absent from Plaintiffs' letter, however—or any of their correspondence with VTB—is any explanation as to what efforts they have made to obtain relevant discovery from the banks located in New York. To the extent Plaintiffs' claims against VTB are true, Plaintiffs can establish jurisdiction on this third-party discovery alone. But nothing in the third-party discovery that Plaintiffs have done to date supports their claims against VTB. And Plaintiffs have not explained, as they must, why the "availability of alternative means of securing the [requested] information" should not weigh against compelling VTB's production. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, 2017 WL 7512815, *10 (S.D.N.Y. Dec. 29, 2017).

B.  **Plaintiffs Other Discovery Demands Are Unreasonable**

Aside from the premature issue on Russian law, Plaintiffs seek to brief two discovery-related items that are based upon unreasonable demands. First, Plaintiffs insist that VTB search for over three years of transactional data, and over five years of "all other documents." Dkt. No. 313 at 6. But as in the parties' meet-and-confers, Plaintiffs' letter does not articulate why transactional data two-and-half years *after* the MH17 plane crash is relevant to their claims. And the case on which they rely for this demand—*In re Terrorist Attacks on Sept. 11, 2001*—belies their position. *See* 2021 WL 5449825, at *4-5 (S.D.N.Y. Nov. 22, 2021) (citing favorably to case law holding that "post-attack financial support to the families of terrorists" was not sufficient to show a violation of the ATA and "[a]fter-the-fact payments are not sufficient for a reasonable jury to conclude that defendants proximately caused [a terrorist attack]") (citations and internal quotation marks omitted). Put simply, if there were no (or insufficient) transactions before the MH17 crash, there cannot be personal jurisdiction much less causation and other substantive elements, and the existence of any transactions afterwards is irrelevant.

Similarly, although VTB acknowledges that it might be appropriate to search for custodial data for *a limited period of time* post-dating the MH17 crash, Plaintiffs' position that VTB extend its search for information four-and-a-half years after the date of the MH17 crash is unjustified. Indeed, Plaintiffs have not provided any justification for this overly-broad date range—and tellingly, none of the cases on which Plaintiffs rely go so far. *See* Dkt. 313 at 6.

Second, Plaintiffs have insisted that VTB search for hundreds of individuals and entities as part of its discovery obligations—but have rejected VTB's invitation for them to explain *why* Plaintiffs believe that these names have anything to do with their lawsuit. At their meet and confer, VTB asked Plaintiffs to simply provide a description as to the relevance of each individual, as Plaintiffs must know that in order to have listed them; Plaintiffs refused, asserting such a chart would be work product. While that may or may not be true, it is a red herring. Every counsel does work to determine what documents might be relevant, but a party is still required to explain the relevance of each of its discovery requests before imposing the burden of discovery on others. Just as a party would have to explain the relevance of a person before deposing them, a party must

**LATHAM&WATKINS**LLP

likewise be able to explain the relevance of a search term and a name before imposing a burden on another party to search for such documents.

*          *          *

Plaintiffs have prematurely manufactured a dispute, at a time that imposes maximum leverage over VTB. A thirty-day delay in briefing this issue will hopefully allow time for VTB to locate counsel who will handle the litigation going forward, and for further developments from Russian authorities, which may either moot much of the dispute, or provide guidance of aid to the Court with respect to VTB's Russian legal obligations. And no prejudice would result, given the realities that Plaintiffs waited five years to bring this lawsuit and any documents will be preserved during the intervening thirty days.

Sincerely,

/s/ Christopher R. Harris
Christopher R. Harris

The Court's Order of April 19, 2022 (Docket # 315) is hereby stayed. The contemplated motion shall not be filed until further Order of the Court. Plaintiffs should respond to the instant letter at their convenience.

So Ordered.

GABRIEL W. GORENSTEIN
United States Magistrate Judge
April 21, 2022