IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS SCHANSMAN, *et al.*, | Case No. 1:19-cv-02985-ALC-GWG |
| *Plaintiffs*, | Hon. Andrew L. Carter, Jr. |
| v. | ORAL ARGUMENT REQUESTED |
| SBERBANK OF RUSSIA, PJSC, *et al.*, | |
| *Defendants*. | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF SBERBANK'S
MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION
<u>UNDER THE FOREIGN SOVEREIGN IMMUNITIES ACT</u>**

**WHITE & CASE**
701 Thirteenth Street, NW
Washington, DC 20005

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022

April 21, 2022

*Counsel for Sberbank of Russia*

**TABLE OF CONTENTS**

I. SBERBANK IS ENTITLED TO PRESUMPTIVE SOVEREIGN IMMUNITY BASED ON ITS "AGENCY OR INSTRUMENTALITY" STATUS ................................. 1

    A. Sberbank's Direct Ownership By The Ministry Of Finance In April 2020 Entitles It To Immunity .............................................................................. 1

    B. Sberbank's Direct Ownership By The Bank of Russia in April 2019 Entitles It To Immunity .............................................................................. 3

II. NO EXCEPTION TO SBERBANK'S SOVEREIGN IMMUNITY APPLIES ................... 7

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**CASES**

*Abrams v. Societe Nationale Des Chemins De Fer Francsis*,
  389 F.3d 61 (2d Cir. 2004) ..................................................................................................... 1

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. MD 06-1775JGVVP, 2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ............................... 3

*Arch Trading Corp. v. Republic of Ecuador*,
  839 F.3d 193 (2d Cir. 2016) ................................................................................................. 10

*Bartlett v. Societe Generale de Banque au Liban SAL*,
  No. 19-cv-00007, 2021 WL 3706909 (E.D.N.Y. Aug. 6, 2021) ......................................... 2-3

*Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse*
  *(Fed Office of Culture of the Swiss Confederation)*,
  999 F.3d 808 (2d Cir. 2021) ................................................................................................. 10

*Berg v. Kingdom of the Netherlands*,
  24 F.4th 987 (4th Cir. 2022) ................................................................................................... 6

*Biton v. Palestinian Interim Self-Gov't Auth.*,
  510 F. Supp. 2d 144 (D.D.C. 2007) ....................................................................................... 3

*Boelens v. Redman Homes, Inc.*,
  759 F.2d 504 (5th Cir. 1985) .................................................................................................. 3

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017) ..................................................................................................... 1, 10

*Byrd v. Corporacion Forestal Y Indus De Olancho, S.A.*,
  974 F. Supp. 2d 264 (S.D.N.Y. 2013) .................................................................................... 9

*Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*,
  727 F.2d 274 (2d Cir. 1984) ................................................................................................. 10

*Chettri v. Nepal Rastra Bank*,
  834 F.3d 50 (2d Cir. 2016) ..................................................................................................... 3

*Conolly v. Taylor*,
  27 U.S. 556 (1829) ............................................................................................................. 1-2

*Davoyan v. Republic of Turkey*,
  No. CV 10-5636, 2010 WL 11507885 (C.D. Cal. Dec. 7, 2010) ........................................... 4

*Dluhos v. Floating & Abandoned Vessel, Known as N.Y.*,
  162 F.3d 63 (2d Cir. 1998) ..................................................................................................... 3

*Doe v. Bin Laden*,
    663 F.3d 64 (2d Cir. 2011)...........................................................................................7

*Dole Food Co. v. Patrickson*,
    538 U.S. 468 (2003).................................................................................................1, 2

*Estate of Klieman v. Palestinian Auth.*,
    424 F. Supp. 2d 153 (D.D.C. 2006)...........................................................................9

*Garb v. Republic of Poland*,
    207 F. Supp. 2d 16 (E.D.N.Y. 2002) .........................................................................9

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006)...................................................................................3, 6

*Gleissner v. Air China Airlines Ltd.*,
    No. 15-cv-9162, 2019 WL 1369456 (S.D.N.Y. Mar. 26, 2019)..................................6

*Grupo Dataflux v. Atlas Global Grp.*,
    541 U.S. 567 (2004)................................................................................................ 1-2

*Henkin v. Islamic Republic of Iran*,
    No. 1:18-cv-1273, 2021 WL 2914036,
    (D.D.C. July 12, 2021)...............................................................................................4

*Holladay v. Islamic Republic of Iran*,
    523 F. Supp. 3d 100 (D.D.C. 2021)...........................................................................4

*Jacubovich v. Israel*,
    816 F. App'x 505 (2d Cir. 2020) .............................................................................10

*Jam v. Int'l Fin. Corp.*,
    3 F.4th 405 (D.C. Cir. 2021)......................................................................................8

*Kaplan v. Lebanese Canadian Bank, SAL*,
    999 F.3d 842 (2d Cir. 2021).......................................................................................8

*Kline v. Kaneko*,
    685 F. Supp. 386 (S.D.N.Y. 1988) ............................................................................9

*Knox v. PLO*,
    306 F. Supp. 2d 424 (S.D.N.Y. 2004).......................................................................9

*Matton v. British Airways Board, Inc.*,
    No. 85-cv-1268, 1988 WL 117456 (S.D.N.Y. Oct. 27, 1988)...................................2

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015).....................................................................................................8

*Olympia Express, Inc. v. Linee Aeree Italiane, S.P.A.*,
  509 F.3d 347 (7th Cir. 2007) ................................................................................................. 2

*Parex Bank v. Russian Sav. Bank*,
  81 F. Supp. 2d 506 (S.D.N.Y. 2000) ................................................................................... 3-4

*Peterson v. Islamic Republic of Iran*,
  563 F. Supp. 2d 268 (D.D.C. 2008) ....................................................................................... 3

*Republic of Argentina v. Weltover, Inc.*,
  504 U.S. 607 (1992) ............................................................................................................... 4

*Republic of Austria v. Altmann*,
  541 U.S. 677 (2004) ............................................................................................................... 2

*Republic of Iraq v. Beaty*,
  556 U.S. 848 (2009) ............................................................................................................... 2

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ............................................................................................................... 3

*Rosner v. Bank of China*,
  528 F. Supp. 2d 419 (S.D.N.Y. 2007) ................................................................................... 8

*S & S Machinery Co. v. Masinexportimport*,
  706 F.2d 411 (2d Cir. 1983) ................................................................................................... 3

*Samantar v. Yousuf*,
  560 U.S. 305 (2010) ............................................................................................................... 9

*Saudi Arabia v. Nelson*,
  507 U.S. 349 (1993) ............................................................................................................... 8

*Servaas Inc. v. Republic of Iraq*,
  653 F. App'x 22 (2d Cir. 2011) ............................................................................................. 4

*Singh v. Caribbean Airlines Ltd.*,
  798 F.3d 1355 (11th Cir. 2015) ............................................................................................. 6

*Sokolow v. PLO*,
  583 F. Supp. 2d 451 (S.D.N.Y. 2008) ................................................................................... 9

*Taylor v. Kingdom of Sweden*,
  No. 18-1133 (RJL), 2019 WL 3536599 (D.D.C. Aug. 2, 2019) ............................................. 4

*Transaero, Inc. v. La Fuerza Aerea Boliviana*,
  30 F.3d 148 (D.C. Cir. 1994) ............................................................................................ 4, 6

*Ungar v. PLO*,
    402 F.3d 274 (1st Cir. 2005)..................................................................................................9

*United States v. Turkiye Halk Bankasi A.S.*,
    16 F.4th 336 (2d Cir. 2021) ...................................................................................................8

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983)..............................................................................................................3

*Weininger v. Castro*,
    462 F. Supp. 2d 457 (S.D.N.Y. 2006)...................................................................................3

*Zuza v. Office of the High Representative*,
    857 F.3d 935 (D.C. Cir. 2017)..............................................................................................2

## STATUTES & RULES

Anti-Terrorism Act, 18 U.S.C. § 2331, *et seq.*

    18 U.S.C. § 2337(2) ......................................................................................................7, 8, 9

Fed. R. Civ. P. 12(b)(1)..................................................................................................................10

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602, *et seq.*

    28 U.S.C. § 1603 ..................................................................................................................9

    28 U.S.C. § 1603(b) .........................................................................................................1, 2

    28 U.S.C. § 1605(a)(1).........................................................................................................9

    28 U.S.C. § 1605(a)(2).........................................................................................................8

    28 U.S.C. § 1605B(c)..........................................................................................................7

Justice Against Sponsors of Terrorism Act,
    Pub. L. No. 114-222, 130 Stat. 852 (2016)..........................................................................7

## OTHER U.S. AUTHORITIES

H.R. Rep. No. 1487 (1976).............................................................................................................4

S. Rep. No. 102-342 (1992).............................................................................................................9

## RUSSIAN LAW AUTHORITIES

Constitution of the Russian Federation..................................................................................5, 6, 7

Federal Law of the Russian Federation on the Central Bank of the
   Russian Federation (Bank of Russia) SZ RF 2002, No. 86 ..............................................5, 6, 7

Civil Code of the Russian Federation ............................................................................................5

Plaintiffs do not dispute that, since at least April 2020, Sberbank has been an agency or instrumentality of the Russian Federation. As such, Sberbank is presumptively immune under the FSIA. Plaintiffs' reliance on *Dole* to oppose Sberbank's immunity based on Sberbank's ownership at the time of the filing of the original Complaint is not supported by *Dole*'s holding and contravenes the rationale underlying sovereign immunity. In any event, as demonstrated by both parties' experts, Sberbank was entitled to immunity at the time the original complaint was filed based on the Central Bank of Russia's status as a political subdivision of the Russian Federation.

## I. SBERBANK IS ENTITLED TO PRESUMPTIVE SOVEREIGN IMMUNITY BASED ON ITS "AGENCY OR INSTRUMENTALITY" STATUS

### A. Sberbank's Direct Ownership By The Ministry Of Finance In April 2020 Entitles It To Immunity

*Dole* (like *Abrams* (at 5-6)) addresses only whether an entity's status is measured from the time of the alleged wrongdoing or later at the time of the filing of the complaint. 538 U.S. at 470. *Dole* does not address a change in the entity's ownership during the litigation as is the case here. *Dole*, therefore, is not "dispositive" (at 5). Plaintiffs concede (at 6) that *Dole* keenly focuses on giving a "present tense" meaning to § 1603(b), supporting Sberbank's position that a change in ownership during litigation is relevant to the immunity determination. *See* MTD Mem. 6-9. But Plaintiffs' attempt to limit that focus to the timing of the original complaint is contradictory— § 1603(b) is not given "present tense" meaning if immunity status is fixed at a point in time.

The "time-of-filing" rule is irrelevant to jurisdictional questions under the FSIA, which is uniquely animated by principles of international law, comity, and respect for "the independence and dignity" of foreign states. *Helmerich*, 137 S. Ct. at 1319; *id.* at 1316-17 (rejecting application of "nonfrivolous" standard from federal question statute and jurisprudence to FSIA cases); *see* MTD Mem. 9. *Grupo Dataflux* (cited at 7), like *Conolly* (cited at 9), explains that the time-of-filing rule applies to "challenges to subject-matter jurisdiction premised upon diversity of

citizenship." 541 U.S. at 571; 27 U.S. at 564.  While relying on these inapposite cases, Plaintiffs dismiss post-*Dole* cases (at 7, n.3) —*Beaty* and *Zuza*—that uphold immunity based on changes in status during litigation because they do not specifically address FSIA immunity.  But these cases underscore the fundamental principle premised on comity that immunity determinations are not fixed at the start of litigation and must be assessed on the facts if they change later in order to afford present protection.

Further, in *Olympia* (at 7), the Seventh Circuit afforded *greater* immunity to a former agency or instrumentality than may have been permitted under the FSIA.  509 F.3d at 348.  If anything, the court's rationale *supports* Sberbank because comity is served by affording an "agency or instrumentality" its due protections under the FSIA when it so qualifies.  *See Dole*, 538 U.S. at 478-79; *see also Altmann*, 541 U.S. at 696 (quoting *Dole* and explaining that the FSIA is intended to provide "present" protection to foreign states and their agencies or instrumentalities). *Olympia* concedes that *Dole* does *not* address whether the FSIA applies to an entity that ceases to be a "foreign state" during the litigation.  509 F.3d at 349.  And *Olympia* does not analyze the text of § 1603(b) or heed *Dole*'s focus on construing § 1603(b) "so that the present tense has real significance." *Dole*, 538 U.S. at 478.  Indeed, *Olympia* should hold little sway in this Court because the panel there, 509 F.3d at 349-50, rejected this Court's contrary conclusion in *Matton v. British Airways Board, Inc.*: "Once a foreign state sells its interest in a defendant agency or instrumentality, congressional concern with the sensitivity of actions involving foreign states is no longer implicated." No. 85-cv-1268, 1988 WL 117456, at *3 (S.D.N.Y. Oct. 27, 1988).

Plaintiffs' reliance on *Bartlett* (at 7-8) is similarly misplaced.  There, defendants argued only that *Dole* is limited to entities "a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof," not to organs or political subdivisions of a foreign state.  2021 WL 3706909, at *8 (quoting 28 U.S.C. § 1603(b)).  The *Bartlett* court

criticized *that* argument as a "cabined reading" of *Dole*, not, as Plaintiffs assert, the argument that *Dole* applies to post-filing changes in status. *Id.* In any event, *Bartlett* is pending on appeal (No. 21-2019). The report and recommendation in *Air Cargo* (at 8) does not help Plaintiffs either because it relied heavily on *Olympia*, a flawed decision for the reasons already discussed. *See* 2008 WL 5958061, at *39-40. Moreover, neither the district court nor the Second Circuit addressed sovereign immunity. *See id.*, 2009 WL 3443405, at *1 (E.D.N.Y. Aug. 21, 2009), *aff'd*, 697 F.3d 154 (2d Cir. 2012). *Biton* (at 7) is also easily distinguishable; the defendants there were collaterally estopped from asserting sovereign immunity. 510 F. Supp. 2d at 147. Finally, Sberbank did not "admit" (at 9) that courts have rejected the argument that courts look to the amended complaint to determine subject-matter jurisdiction. To the contrary, Sberbank cited *Rockwell*, *Dluhos*, and *Boelens*, which stand for the opposite proposition. MTD Mem. 11-12. That these cases do not involve the FSIA is unpersuasive; they address the consequences of voluntary amendment, which applies in any context.

### B. Sberbank's Direct Ownership By The Bank of Russia in April 2019 Entitles It To Immunity

Russian law and the evidence submitted by Sberbank mandate the conclusion that the Bank of Russia (or the "Bank") is a political subdivision under *Garb*'s core functions test, meaning Sberbank was presumptively immune even at the time the original Complaint was filed. Plaintiffs' arguments to the contrary are misplaced. *First*, the supposed "wall of authority" (at 11-14), comprising *Verlinden*, *S&S Machinery*, *Weininger*, *Peterson*, and *Parex*, predate or did not apply the core functions test. In *Parex*, the plaintiff conceded the Central Bank's status as an "agency or instrumentality," thus qualifying Sberbank for immunity in this pre-*Dole* case without the need to decide whether the Bank was more appropriately a political subdivision. 81 F. Supp. 2d at 507.

And *Chettri* also did not concern the core functions test, but only whether an exception to immunity applied. 834 F.3d at 55.

Although *Henkin, Holladay*, and *Davoyan* apply the core functions test, they confirm that the inquiry is specific to each central bank. 2021 WL 2914036, at *17-18 (summarily concluding that "clearly Bank Markazi's core functions are commercial"); 523 F. Supp. 3d at 111-14 (same); 2010 WL 11507885, at *3-4 (analyzing specifics of the Central Bank of Turkey's legal status and functions). Here, the Bank's functions and unique status described below distinguish it from the banks in those cases, where, unlike Iran's central bank, the Bank is not treated as a joint stock company and, unlike Turkey's central bank, is not subject to private law. And the Court can rightly draw guidance from cases that do not involve central banks (at n.12) because they establish that the core functions test has been "applied beyond foreign military forces to include other necessary concomitants of sovereignty" (*Taylor*, 2019 WL 3536599, at *4 (citation omitted)), and hold that "a regulatory function" is "quintessentially governmental" (*SerVaas*, 653 F. App'x at 25).

The FSIA's legislative history cannot bear the weight Plaintiffs place on it (at 13). Indeed, the *Transaero* court found that H.R. Rep. No. 1487 "is at odds with itself" and adopted the core functions test to avoid the inconsistent outcomes resulting from application of the "separate legal person" criterion (set forth in H.R. Rep. No. 1487) to a determination of "agency or instrumentality" status. 30 F.3d at 152. And *Holladay* (cited at 13) observes that "[c]entral banks by their nature straddle the line between governmental and commercial activity; they often both set the parameters for financial markets and operate within those markets." 523 F. Supp. at 111. *Weltover* (cited at 13) does not even apply the core functions test or consider whether an entity was a "political subdivision." Even so, *Weltover* assists Sberbank by making clear that activity is governmental when the foreign state serves as a "regulator of a market." 504 U.S. at 614.

–4–

*Second*, the Bank's core functions are predominantly governmental, *not* commercial. Both Profs. Efimova and Butler agree that the Bank's core (or principal) function is to stabilize the ruble. Butler Decl. ¶ 7, ECF No. 305; Efimova Decl. ¶¶ 5-7, ECF No. 260; Russian Constitution, art. 75, ECF No. 260-6; Law No. 86-FZ, arts. 3-4, ECF Nos. 260-4, 260-5 (detailing Bank's functions and primary objectives, which are not aimed at generating profits per art. 3); *see also* Erb Ex. 2, Butler Tr. 67:21-68:3, 93:20-95:17, 98:5-99:13 (same); Russian Civil Code, art. 50 (defining commercial organizations as entities that "derive profits as the chief goal of their activity"). Plaintiffs have not shown that the Bank's purported commercial functions predominate over these core governmental functions. Indeed, Prof. Butler admits he did not conduct any quantitative or statistical analysis or examine any transactions of any kind. Butler Tr. 57:11-58:7.

Plaintiffs cherry pick a handful of figures (at 14-15) from the Bank's Notes to Annual Financial Statements for 2020. Yet those notes account for only 36 pages (or less than 10%) of the Bank's Annual Report. The vast majority of the Report covers the Bank's governmental functions, e.g., ensuring price stability (at 82-88), ensuring financial market resilience (at 89-168), and financial consumer protection (at 169-94). Moreover, as Plaintiffs acknowledge, even the Bank's so-called "commercial activities" allow the Bank to "effectively perform its public law functions." Butler Decl. ¶¶ 4, 27 (the Bank "could not effectively perform its public law functions without the private-law dimension to its activities"); Efimova Decl. ¶¶ 23 (Bank is required to transfer to the federal budget 75% of its annual profit), 32 (Bank's private-law activities are "auxiliary to performing" its "public law functions" and "public law function clearly prevails").[1]

---

[1] The scale of the Bank's banking and financial operations is consistent with other State bodies (i.e., political subdivisions) concerned with economic policy. For example, as of April 14, 2022, the Ministry of Finance of the Russian Federation had more than 9 trillion rubles in fixed-rate government bonds outstanding. *See* Ministry of Finance of the Russian Federation, Volumes of Issues 14.04.2022 *accessible at* https://minfin.gov.ru/en/document/?id_4=56386-volumes_of_issues_14.04.2022 (last accessed Apr. 18, 2022).

Contrary to Plaintiffs' suggestion (at 14), the Bank's banking operations are "limited," possess "significant differences" from ordinary banks, and are linked to governmental concerns. Efimova Decl. ¶ 30; *see also* Erb Ex. 1, Efimova Tr. 149:4-151:2 (explaining the Bank services "specific categories" of natural persons "as an exception," for *inter alia* anti-corruption and State security purposes). And the Bank performs more than merely "some" (at 15) regulatory functions. The Bank wields "wide regulatory authority" over Russian credit and non-credit institutions (e.g., inspecting issuers of securities and protecting minority shareholder rights), and holds powers "inherent to executive power bodies" given the "application of measures of state coercion." Efimova Decl. ¶¶ 9-15, 42; Law No. 86-FZ, arts. 7, 56-57, 59, 62, 74, 76.1; *see also* Butler Tr. 70:1-71:19; 109:20-110:11, 113:7-122:13, 123:16-19, 148:1-149:7, 159:2-11 (acknowledging regulatory functions, 2013 expansion of those functions, and that own book says Bank is "principal agency of state control and supervision" over commercial banking activities); *contra* Opp'n 14 n.7, 14-16 (citing to articles predating 2013 amendments and even 2002 Law on Bank of Russia).

*Third*, Plaintiffs improperly fixate (at 16-18) on the Bank's purported independent *status*, mistakenly drawing on the "legal characteristics" test that *Garb* expressly "rejected" "in favor of the 'core functions' test." *Gleissner v. Air China Airlines Ltd.*, No. 15-cv-9162, 2019 WL 1369456, at *4 n.3 (S.D.N.Y. Mar. 26, 2019). Under the core functions test, "a foreign entity's status as 'a separate legal person' from a foreign state depends on 'whether the core functions of the foreign entity are predominantly governmental or commercial.'" *Garb*, 440 F.3d at 591 (quoting *Transaero*, 30 F.3d at 151). Indeed, a "separate legal identity does not foreclose political subdivision status" under the core functions test. *Singh*, 798 F.3d at 1359.

To the extent "structure informs function," *Berg*, 24 F.4th at 995, the Constitution and the Law on the Bank of Russia "establish[] the distinctive status of the Bank of Russia by placing it at the same level with 'other federal state power bodies.'" Efimova Decl. ¶ 16; *see also* Russian

Constitution, art. 75(2); Law No. 86-FZ, art. 1.[2]  Contrary to Plaintiffs' mischaracterization (at 14), Prof. Efimova testified that the Bank "has *operational* independence in using the [monetary] tools at its disposal . . . . But *the State decides* on [the Bank's] policy."  Efimova Tr. 105:23-106:3 (emphases added), 119:7-9 ("the Central Bank is like a ministry on the financial market"); *see also* Efimova Decl. ¶¶ 26, 40.  Moreover, Plaintiffs' conclusion (at 18) that the State's oversight of the Bank "is both casual and removed" is supported by only Prof. Butler's opinion and not the Law on the Bank of Russia.  *See* Law No. 86-FZ, art. 5 (State Duma appoints and may dismiss the Bank's Governor and board members), 12 (composition of National Financial Board), 21; Butler Tr. 130:1-133:18, 138:14-142:6 (acknowledging same); Efimova Decl. ¶¶ 33-34.  Indeed, Prof. Efimova describes "multiple ways" that the Bank is "directly accountable to the State," including the National Financial Board's competence to approve employee salaries and benefits, which Plaintiffs fail to rebut.  *See* Efimova Decl. ¶¶ 33-41; Law No. 86-FZ, art. 13.  Plaintiffs' reliance (at 16-17) on random quotations cannot alter what Russian law expressly provides:  The Bank operates "independently from *other* state power bodies."  *See also* ECF No. 289 at 9-10 (explaining how each statement in context affirms Sberbank's argument).  All told, Plaintiffs cannot overcome the weight of Russian law that warrant the conclusion that the Bank is a political subdivision.

II.  **NO EXCEPTION TO SBERBANK'S SOVEREIGN IMMUNITY APPLIES**

Regardless of when immunity status is determined, the SAC still fails because the ATA expressly bars claims against foreign states.  18 U.S.C. § 2337.  The sole exclusion to § 2337 is created by FSIA § 1605B(c), which manifestly does not apply here.  If, as Plaintiffs assert (at 21), ATA claims are available through other immunity exceptions (like the commercial-activity

---

[2] Plaintiffs confusingly state (at 17) that the Bank's status is "well-established."  But even Prof. Butler—who has never taught a course or authored a book on Russian banking law—describes the Bank's status as a "curiosity" and "cryptic" and that neither he nor anyone else can explain the Bank's status.  *See* Butler Tr. 43:19-44:3, 158:6-158:20.

–7–

exception (at 19)), Congress had no need to explicitly lift § 2337's immunity provision in § 1605B(c).  *Doe* (cited at 21) does not address § 2337 or JASTA (which was enacted five years after *Doe*) and stands for the limited proposition that a *common-law tort claim* arising from certain terrorist acts may be brought under the FSIA's non-commercial tort exception, even if the terrorism exception is arguably a better fit.  663 F.3d at 70.  *Kaplan* similarly does not address § 2337, and its recitation of JASTA's stated purpose cannot swallow whole § 2337(2)'s bar on claims against foreign states.  999 F.3d at 855.

Even if the commercial-activity exception were available, Plaintiffs do not establish that the "gravamen" of their complaint sounds in commercial activity and not tort.  *See* MTD Mem. 21-23 (discussing *Sachs* and *Nelson*).  Instead, Plaintiffs make only the conclusory assertion (at 19) that Sberbank's alleged material support to the DPR through banking services to private customers satisfies § 1605(a)(2).  But Plaintiffs do not explain *how* such alleged activity satisfies the "based upon" inquiry, nor do they make any effort to substantiate their assertion regarding the volume of that activity.  And, to the extent that Plaintiffs suggest (at 19, citing ECF No. 185 at 2) they have satisfied that inquiry based on the Court's specific jurisdiction finding, they are wrong. *See Jam*, 3 F.4th at 411 (noting "defendant-focused minimum contacts inquiry" "is markedly not the approach that the Supreme Court has taken to the FSIA" (citations omitted)).

Neither *Turkiye Halk Bankasi* nor *Bank of China* (cited at 19) involved claims for injury caused by terrorist attacks.  And the claims in both cases were "based upon" upon commercial activities that directly injured the plaintiffs, i.e., participation in money laundering.  Here, Plaintiffs attempt to do what *Sachs* and *Nelson* preclude:  allege commercial activities that Plaintiffs assert "led to the conduct that eventually injured" them.  *Sachs*, 577 U.S. at 34 (quoting *Nelson*, 507 U.S. at 358).  Those activities were not what the suits were "based upon."  No amount of commercial

activity uncovered through continued discovery could alter the gravamen of Plaintiffs' complaint, which is indisputably "based upon" the downing of MH17.[3]

Plaintiffs' last resort is a myopic reading of § 2337(2) to exclude Sberbank as an "instrumentality" not covered by § 2337(2). Courts have held that the FSIA uses "agency" and "instrumentality" "interchangeably" to mean the same thing, "quasi-independent commercial instrumentalities." *Garb v. Republic of Poland*, 207 F. Supp. 2d 16, 36 (E.D.N.Y. 2002).

And § 1603 of the FSIA does not limit its definitions "*only*" to that chapter. Opp'n 22. In any event, the Congress that enacted the ATA adopted the same meanings. S. Rep. No. 102-342, at 47 (1992) (explaining that § 2337(2) "maintains the status quo, in accordance with the [FSIA], with respect to sovereign states and their officials. There can be no cause of action for international terrorism against them"). Plaintiffs attempt to distinguish *Ungar* by citing *Samantar* (at 22); but it cannot be that, because the Supreme Court held in 2010 that officials do not fall within the FSIA, Congress in 1992 could not have intended § 2337(2) to be read consistently with the FSIA because § 2337(2) includes officials. Indeed, in 1992 the prevailing law *was* that the FSIA covered officials. *See, e.g.*, *Kline v. Kaneko*, 685 F. Supp. 386, 390 (S.D.N.Y. 1988) (dismissing Mexico's Secretary of Government as immune under the FSIA). Plaintiffs have no response to the cases from several other courts that held, like *Ungar*, that § 2337 should be read consistently with the FSIA. MTD Mem. 11 (citing *Sokolow*, *Estate of Klieman*, *Knox*).

Finally, Sberbank has not waived its immunity defense under § 1605(a)(1). Sberbank unequivocally raised the FSIA defense *prior to* and *as part of* its Answer to the SAC, and made

---

[3] Plaintiffs' assertion (at 20 n.24) that "[o]ngoing third-party discovery has already revealed more than three hundred instances of Sberbank's using the New York banking system to provide material support and financing to the DPR" asks the Court to rely on nothing more than Plaintiffs' counsel's *ipse dixit*. Plaintiffs have not placed any evidence or detail for this assertion before the Court, and the Court need not—and should not—credit it. *See, e.g., Byrd v. Corporacion Forestal Y Indus. De Olancho, S.A.*, 974 F. Supp. 2d 264, 272 (S.D.N.Y. 2013) (rejecting arguments for denial of FSIA immunity when based on factual assertions when "Plaintiffs do not support their *ipse dixit* with documents or affidavits. Instead, they rely on the averments of counsel").

clear its immunity was based on its direct ownership by "a foreign state or political subdivision thereof." *See* ECF No. 206 at 1 (requesting pre-motion conference to move for FSIA dismissal); ECF No. 226 at 2, 155 (asserting FSIA defense in Answer). Sberbank has never "disclaimed" its immunity; as Sberbank has repeatedly explained, the footnotes cited by Plaintiffs (at 24) refute Plaintiffs' unfounded allegations that Sberbank was furthering the Russian Federation's foreign policy in eastern Ukraine. *See* ECF No. 254 at 3:16-4:14. As Plaintiffs' own case establishes, the Second Circuit has rejected the argument that "the filing of a variety of motions, including a motion to dismiss," waives immunity. Opp'n 24 (citing *Canadian Overseas*, 727 F.2d at 277). Moreover, none of the limited implicit-waiver situations applies here. *See Jacubovich v. Israel*, 816 F. App'x 505, 508-09 (2d Cir. 2020) (defining implicit waiver as agreeing to arbitrate in another country, agreeing that the laws of a particular country govern a contract, or by filing responsive pleading without asserting the defense). Plaintiffs' accusations of "manipulative tactics" and calls for postponement of the immunity determination are as baseless. *See Beierwaltes v. L'Office Federale de la Culture de la Confederation Suisse (Fed. Office of Culture of the Swiss Confederation)*, 999 F.3d 808, 817 (2d Cir. 2021) (quoting *Helmerich* and *Arch Trading*: "a court must be circumspect in allowing discovery before the plaintiff has established that the court has jurisdiction over a foreign sovereign defendant under the FSIA").

## CONCLUSION

For the foregoing reasons, and the reasons in the motion to dismiss, Sberbank respectfully requests that the Court dismiss the SAC in its entirety with prejudice as against Sberbank pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction under the FSIA.

| | |
|---|---|
| April 21, 2022 | Respectfully submitted, |

**WHITE & CASE**

/s/ *Nicole Erb*
Nicole Erb
Claire A. DeLelle
Matthew S. Leddicotte (admitted *pro hac vice*)
701 Thirteenth Street, NW
Washington, DC 20005
Telephone:   + 1 202 626 3600
Facsimile:   + 1 202 639 9355
nerb@whitecase.com
cdelelle@whitecase.com
mleddicotte@whitecase.com

DEBEVOISE & PLIMPTON LLP
Mark P. Goodman
William H. Taft V
919 Third Avenue
New York, New York 10022
Telephone:   + 1 212 909 6000
mpgoodman@debevoise.com
whtaft@debevoise.com

*Counsel for Sberbank of Russia*