1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER&BLOCK LLP

May 25, 2022

VIA ECF

Terri L. Mascherin
Tel +1 312 923 2799
TMascherin@jenner.com

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

***Schansman et al. v. Sberbank of Russia PJSC et al.***, No. 1:19-cv-02985-ALC-GWG (S.D.N.Y.) – Plaintiffs' Request for Pre-Motion Conference on Their Proposed Motion to Compel the Production of Documents from Defendant Sberbank of Russia PJSC

Dear Judge Gorenstein:

We write on behalf of Plaintiffs Thomas Schansman, individually, as surviving parent of Quinn Lucas Schansman; Catharina Teunissen, individually, as surviving parent of, and as personal representative of the Estate of Quinn Lucas Schansman ("Quinn"); Nerissa Schansman, individually, as surviving sibling of Quinn; and Xander Schansman, individually, as surviving sibling of Quinn (collectively, "Plaintiffs") in the above-captioned case to request a pre-motion conference concerning Plaintiffs' proposed motion to compel the production of documents from Defendant Sberbank of Russia PJSC ("Sberbank of Russia") pursuant to Federal Rule of Civil Procedure 37.

Plaintiffs have served two sets of requests for production (dated December 5 and December 17, 2021) and one set of interrogatories (dated December 5, 2021) on Sberbank of Russia. The Court required the parties to substantially complete all party document productions by July 19, 2022. ECF No. 197 at 1. To date, Sberbank of Russia has produced no documents relevant to Plaintiffs' claims. Instead, Sberbank's productions have been limited to correspondence with the Central Bank of Russia in an attempt to justify its refusal to produce documents in this case, made-for-litigation organization charts that included almost no information, and publicly available documents relevant only to Sberbank's jurisdictional motion to dismiss.

This case concerns the use of banking or money transfer services by the Donetsk People's Republic ("DPR"), a terrorist group, to fundraise in order to procure weapons and other instruments to carry out its terrorist activity in eastern Ukraine. To encourage supporters from around the world to support their terrorist aims, the DPR advertised an extensive array of bank account options— including specific names of financial institutions, account holders, and account numbers for Russian and New York correspondent banks—to encourage radicalized supporters to fund their

activities. The DPR's fundraising campaign was successful, deadly, and largely funneled through Sberbank accounts. For example, despite Sberbank's complete refusal to produce responsive documents, Plaintiffs have already identified through third-party discovery and publicly available sources a significant number of payments through Sberbank to known DPR members. On July 17, 2014, the DPR launched a surface-to-air missile at Malaysia Airlines Flight 17 ("MH17"), a civilian passenger plane, killing all 298 passengers on board, and murdering Quinn, a young American.

Despite the DPR's extensive reliance on accounts at Sberbank of Russia to receive funds, Sberbank of Russia refuses to produce any documents. Sberbank of Russia premises its refusal on four broad categories of objections.

First, in response to 36 of Plaintiffs' document requests and interrogatories, Sberbank of Russia claims that it is allegedly prohibited from producing almost all responsive documents under Russian bank secrecy laws, along with other Russian confidentiality laws. Second, Sberbank of Russia has refused to produce any documents outside a seven-month window for transaction data and outside a one year window for non-transaction data. Third, Sberbank of Russia has taken the categorical position that it will not search for or produce documents regarding transactions through Sberbank of Russia by individuals and entities connected to the DPR unless those individuals or entities were expressly identified by name in the Second Amended Complaint, ECF No. 156 ("SAC"). Finally, Sberbank of Russia is refusing to produce documents in the possession, custody, and control of its wholly owned subsidiary Yandex.Money, which was used to facilitate transfers to the DPR in this case.

Plaintiffs have attempted to resolve and narrow these disputes over the course of five months to no avail. Since December 2021, the parties have engaged in lengthy correspondence concerning the applicability and effect of certain Russian laws and presidential decrees that Sberbank of Russia alleges prohibit the disclosure of responsive documents. The Parties failed to reach a consensus on the issue because Sberbank of Russia claims it is prohibited from producing the majority of documents under Russian law. The Parties have also met and conferred regarding the scope of Sberbank of Russia's discovery were the Russian law issues resolved, and have exchanged several letters crystallizing the disputes. On February 22, March 22, and March 24, 2022, Plaintiffs' counsel met and conferred with Sberbank of Russia's counsel for multiple hours to discuss Sberbank of Russia's various objections to Plaintiffs' requests, including issues of foreign law. The Parties exchanged further letters discussing their positions on April 26 and May 6, 2022.[1]

---

[1] Plaintiffs propose to focus this initial motion to compel on certain core requests, which Plaintiffs hope will guide the parties for other requests. *See* RFP Nos. 1 & 57, 2 & 59, 7, 9, 12 (information regarding DPR transactions and other customer-specific requests); RFP Nos. 14-15, 36, 40, 55 (documents related to Sberbank of Russia's monitoring of the 2013-14 political and social unrest in Ukraine, and documents concerning allegations that Sberbank of Russia financed terrorists or

In light of the significant disagreement among the Parties, counsel for Plaintiffs (Jason Hipp) emailed counsel for Sberbank of Russia (William Taft) on May 23, 2022 to request a meet and confer prior to filing this request with the Court. Counsel for Plaintiffs (Terri Mascherin and Mr. Hipp) conferred with counsel for Sberbank of Russia (Mr. Taft) by telephone on May 24, 2022 for approximately 25 minutes, and again on May 25, 2022 for approximately 15 minutes. Following this final meet-and-confer attempt, counsel agreed that the Parties are at an impasse on all issues. Given this impasse, Plaintiffs request a pre-motion conference on Plaintiffs' motion to compel the production of documents from Sberbank of Russia. In accordance with Your Honor's Individual Practices, Plaintiffs are also filing a separate letter requesting formal briefing on these issues.

### I. Sberbank of Russia Is Improperly Refusing to Produce Certain Documents, Citing Russian Law Objections.

Sberbank of Russia is stonewalling the majority of discovery in this case, hiding behind assertions that Russian law prohibits the disclosure of virtually all responsive documents—even though Sberbank of Russia relied heavily on correspondent banks in the United States to conduct its business during the relevant period, subjecting it to the jurisdiction of this Court.

Sberbank of Russia has conditioned its production of documents in this action on its receipt of permission to produce any responsive documents from: (1) the Central Bank of Russia; (2) Sberbank of Russia's own customers and employees; (3) Russian Federation's Federal Financial Monitoring Service ("Rosfinmonitoring," which collects and analyzes information about financial transactions to combat money laundering, terrorist financing, and other financial crimes); and (4) an as-yet unknown "authority to be determined by the President of the Russian Federation," based on a new law enacted on May 1, 2022, *see* May 6, 2022 Sberbank of Russia Letter at 6. But these so-called approval processes are no basis to defer or deny Plaintiffs' motion to compel. Instead, they reflect Sberbank's transparent attempts to delay the inevitable. Each of Sberbank's four cited approval processes has either already been rejected, is indefinitely on hold pending Sberbank's lengthy search for replacement counsel, would not permit Sberbank to produce a meaningful volume of documents even if granted, or is the product of blocking statutes which do not receive deference in the United States.

First, Sberbank of Russia's counsel informed Plaintiffs that on February 15, 2022, the Central Bank of Russia stated that it was unable to grant permission to disclose Sberbank of Russia and VTB documents for the purposes of this litigation. Sberbank of Russia had long maintained to Plaintiffs that the Bank Secrecy Act prohibited disclosure of documents and information to

---

investigations into the same); RFP Nos. 27-29, 64-65 (documents concerning Sberbank of Russia's anti-money laundering or counter-terrorism policies, and obligations to comply with foreign laws or mandates regarding the same); RFP Nos. 35, 37, 48 (documents concerning Sberbank of Russia's employees and departments responsible for overseeing areas such as anti-money laundering and antiterrorism financing, and documents related to Sberbank of Russia's employees).

Plaintiffs but that it was seeking a waiver from the Central Bank. But Sberbank told the Central Bank something different, stating that the "laws of the Russian Federation do not expressly address the issue of a credit organization's provision of the details relating to its customers' accounts to a foreign court." In its response, the Central Bank took the position that it lacked any authority to waive the application of any laws.

Second, despite Sberbank of Russia's prior representations dating back to December 21, 2021 that it was seeking approval from its customers and employees, Sberbank of Russia has now admitted that it has not in fact taken any steps to do so and has no intention of taking any such steps now, as it is waiting for new counsel for Sberbank of Russia to appear at some unknown time in the future.[2]

Third, Sberbank of Russia stated that it requested permission from Rosfinmonitoring on May 2, 2022 to produce a limited set of documents pertaining to Sberbank company policies; however, there is no indication when, if at all, Sberbank of Russia expects a response. Even if such approval is obtained, it will not resolve the dispute as to the vast majority of documents sought by Plaintiffs.

Fourth, Sberbank of Russia now claims that a new Russian law enacted on May 1, 2022, "prohibits Russian banks and credit organizations from providing customer information, data and transactions to foreign authorities," unless the banks go through a "yet to be designated" process through which to obtain approval. May 6, 2022 Sberbank of Russia Letter at 5-6. These types of statutes—commonly referred to as "blocking statutes"—are given little deference under the *Aerospatiale* test, as they entirely circumvent the balancing test explained below. *See Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. Of Iowa*, 482 U.S. 522, 544 n.29 (1987) ("Blocking statutes that frustrate this goal need not be given the same deference by courts of the United States as substantive rules of law at variance with the law of the United States." (cleaned up) (quoting Restatement, § 437, Reporter's Note 5, pp. 41, 42)). That is particularly the case here, where Russia enacted a blocking statute just as two of its largest banks face meaningful discovery obligations in a U.S. judicial proceeding.

Sberbank of Russia has also insisted that Plaintiffs seek permission from a Russian court for letters rogatory, despite the State Department's unequivocal statement that "all such requests are returned

---

[2] Sberbank of Russia requested on March 23, 2022 that the Court stay this action for 30 days pending substitution of counsel for Sberbank of Russia. ECF No. 303. Plaintiffs opposed that motion. ECF No. 308. The Court has not yet ruled on Sberbank of Russia's request. However, it has been over 60 days since counsel for Sberbank of Russia represented to the Court that it was seeking replacement counsel for Sberbank of Russia, and over 85 days since counsel for Sberbank of Russia began to search for replacement counsel, but replacement counsel have not appeared and Sberbank of Russia's current counsel continues to litigate this case. Sberbank of Russia's refusal to request permission from its own customers and employees on the basis that it hopes to locate replacement counsel at some unstated point in the future is yet another attempt to stonewall discovery in this case.

4

unexecuted." Russia Judicial Assistance, U.S. Dep't of State: Bureau of Consular Affairs, https://bit.ly/3jAvexe (last visited May 25, 2022). When asked, Sberbank of Russia could not provide any reason to think a letter rogatory might be returned executed here, and could not identify a single instance in which a letter rogatory originating from the U.S. has been returned executed by a Russian court. Sberbank has instead relied on cases in which letters rogatory from former Soviet countries (Belarus, Estonia, Romania, Poland, and Slovenia) or countries that recognize the Russian Federation's accession to the Hague Convention (Switzerland and France) were returned executed. Sberbank of Russia has admitted that a letter rogatory request by a U.S. court under the Hague Convention "might not be" effective, but nonetheless claims that Plaintiffs can submit a letter rogatory under a 1935 exchange of notes between the United States and the Union of Soviet Socialist Republics. However, Sberbank of Russia is unable to provide Plaintiffs with a single example of a request for a letter rogatory being returned executed under that agreement, and it defies credulity to think that the Russian Federation will authorize the disclosure of documents for a U.S. civil proceeding for the first time in history in a case involving its banks' support for terrorist activities in Ukraine, at the same time the United States is sanctioning those same banks for the Russian Federation's activities in Ukraine.

Thus, Plaintiffs are not required to delay discovery endlessly based on the "extraordinary exercise of legislative jurisdiction" by the Russian Federation in enacting its various blocking statutes or based on other futile approval processes. *Aerospatiale*, 482 U.S. at 544 n.29. Plaintiffs require the Court's assistance to order Sberbank of Russia to produce documents notwithstanding its foreign law objections.

Under both prongs of the governing *Aerospatiale* test, Sberbank of Russia cannot hide behind Russian law as a shield to avoid producing discovery. *Id.*

First, Sberbank of Russia has not met its burden to prove the existence and applicability of a conflicting foreign law. A party invoking foreign law to resist discovery "bears the burden of demonstrating that such law actually bars the production or testimony at issue." *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993) (denying defendant's motion for a protective order on the grounds of foreign privacy laws). To meet that burden, the party must provide "information of sufficient particularity and specificity to allow the Court to determine whether the discovery sought is indeed prohibited by foreign law." *Id.* Sberbank of Russia has come nowhere close to meeting this burden, with the possible exception of the newly-enacted blocking statute that appears designed to frustrate discovery in this case. *See Aerospatiale*, 482 U.S. 522, 544 n.29.

Second, the U.S. interest in allowing Plaintiffs to litigate their claims under the Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq.* ("ATA"), strongly outweighs any purported interest of the Russian Federation in preventing the disclosure of the requested documents. It is "undisputed" that federal courts may order discovery even if compliance would violate foreign law. *Alfadda*, 149 F.R.D. at 33; *accord Aerospatiale*, 482 U.S. at 544 n.29. If the foreign law is found to conflict with a discovery request, "the court must perform a comity analysis 'to determine the weight to be given to the foreign jurisdiction's law,'" which, in this case, would balance the United States' interests against those of the Russian Federation in disclosure of the documents. *Royal Park Invs. SA/NV*

*v. Deutsche Bank Nat'l Tr. Co.*, No. 14-CV-04394, 2017 WL 7512815, at *5 (S.D.N.Y. Dec. 29, 2017) (internal citation omitted) (granting plaintiffs' motion to compel production of documents notwithstanding foreign law objections); *see also Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 210 (E.D.N.Y. 2007) (compelling bank to produce bank records and documents relating to the bank customer alleged to be the conduit for funds funneled to the foreign terrorist organization). In particular, in actions involving claims under the ATA, courts have emphasized that the United States' interest is "nearly [at] its highest point" and that foreign countries' own interests in prosecuting terrorism-related actions often diminish generally applicable privacy or secrecy laws. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 46 (E.D.N.Y. 2007) (internal citation omitted) (compelling bank to produce bank records and documents relating to bank customer alleged to be the conduit for funds funneled to a foreign terrorist organization, notwithstanding the bank's British bank secrecy objections).[3]

Plaintiffs' discovery requests are apiece with this well-settled law governing ATA claims. Plaintiffs' requests are "focused on the vital issues in this case"—namely, "whether and to what extent [Defendants] knowingly provided 'material support and resources' . . . and/or 'financial services' to a terrorist organization." *Weiss*, 242 F.R.D. at 44 (internal citation omitted). This information is not just relevant but is "crucial to the litigation of [P]laintiffs' claims." *Strauss, S.A.*, 242 F.R.D. at 212. Absent court compulsion, the possibility that Plaintiffs will be able to obtain this information is nonexistent.[4]

Further, the protective order in this case, ECF No. 294, can adequately protect any confidentiality interests here. *Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, No. 3:16CV-00024-RGJ-RSE, 2019 WL 1261352, at *15 (W.D. Ky. Mar. 19, 2019) (explaining that Russian Federation interest in enforcing commercial secrets and data protection laws is "mitigated" by the parties' protective order).

---

[3] *See also Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 208 (E.D.N.Y. 2010) (awarding sanctions for foreign bank's failure to comply with discovery order requiring production of bank account information in ATA case, notwithstanding bank's refusal on the basis of foreign bank secrecy laws), *appeal dismissed and mandamus denied*, 706 F.3d 92, 115 (2d Cir. 2013); *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 473 (S.D.N.Y. 2013) (compelling foreign bank in ATA case to produce bank account and other information over objections premised on foreign bank secrecy laws); *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 227-28 (E.D.N.Y. 2007) (same).

[4] As Your Honor has previously recognized, the alternative procedures of the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters are unavailable for obtaining evidence from the Russian Federation for use in United States courts, rendering the most obvious (if inefficient) option unavailable. *See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19-CIV-4355, 2020 WL 4034733, at *3 (S.D.N.Y. July 17, 2020) (Gorenstein, J.). Additionally, as noted above, a potential letter rogatory fares no better.

Accordingly, Sberbank of Russia should be required to produce documents notwithstanding its Russian law objections.

## II. Sberbank of Russia Must Produce Documents Outside an Overly Narrow Period.

In addition, Plaintiffs seek an order requiring Sberbank of Russia to produce documents for the time period of November 21, 2013 to December 31, 2016 for transactions and to December 31, 2018 for all other documents. In response to Plaintiffs' reasonable proposed time period, Sberbank of Russia has taken the extreme position of refusing to search for and produce documents prior to January 1, 2014 and after July 31, 2014 for transactions, and after December 31, 2014 for all other documents.

Plaintiffs' proposed start date of November 21, 2013 is appropriate, as that is the date that President Viktor Yanukovych's government abandoned the European Union-Ukraine Association agreement. That act set off the Euromaidan demonstrations and associated national protests across Ukraine, as well as the responses thereto by organized violent groups, including the group in eastern Ukraine that led to Quinn's murder. Solicitations to fund these groups began soon thereafter.

Plaintiffs' proposed end dates of December 31, 2016 for transactions and December 31, 2018 for all other documents are similarly appropriate. Sberbank of Russia insists that transaction documents created after the downing of the MH17 flight on July 17, 2014 are irrelevant to determining Sberbank of Russia's liability under the ATA, and after months of negotiations, agreed to search for transactions through July 31, 2014, only two weeks after the downing. But that is not the law, particularly under the unique circumstances here. Under recent ATA case law in this district, documents created after a key event at issue may be relevant to a defendant's knowledge of that event and therefore relevant to determining the defendant's liability. For example, in *In re Terrorist Attacks on Sept. 11, 2001*, the court, in the context of narrow jurisdictional discovery, authorized discovery from a foreign bank regarding investigations into the defendant's conduct until the end of 2004 (more than three years after the September 11 attacks) and until the end of December 2002 for all other requests. No. 03-MD-1570 (GBD)(SN), 2021 WL 5449825, at *4-5 (S.D.N.Y. Nov. 22, 2021); *see also Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 237-38, 244 (D.D.C. 2013) (ATA case) (ordering production of documents created more than one year after the attack at issue).[5] Here, the later-in-time materials are not only

---

[5] In the context of tort claims more generally, discovery commonly extends beyond the date of the tortious act. *See, e.g., Goodrich v. Fisher-Price, Inc.*, No. 1:16-CV-03116-TWT, 2018 WL 11343381, at *2 (N.D. Ga. Mar. 19, 2018) (allowing plaintiffs to obtain discovery of similar incidents for the period of seven years prior to and three years after the wrongful death at issue); *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 672 (S.D. Fla. 2012) (granting discovery regarding cruise line's investigative procedures for the period of two years prior to and 19 months after the tort at issue); *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 7 (D.D.C. 1987) (noting, in a securities fraud and civil RICO action, that "documents which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on the central

7

likely to lead to admissible evidence about persons and entities who funded the DPR during the relevant time period, but could be admissible evidence (even if the funds were not used to murder Quinn Schansman) as similar-acts evidence under Federal Rule of Evidence 404(b) to show Sberbank of Russia's reckless indifference to the risk of funding terrorism. *See United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility." (internal citation omitted)).

Accordingly, Plaintiffs seek an order requiring Sberbank of Russia to produce documents responsive to Plaintiffs' requests from November 21, 2013 to December 31, 2016 for transactions and to December 31, 2018 for all other documents.

> III. **Sberbank of Russia Must Search its Records for All Potential DPR-Associated Individuals and Fundraisers, Not Merely the Handful of Names Expressly Identified in the SAC.**

Plaintiffs seek records, including transaction records, from Sberbank of Russia about the individuals and entities associated with the DPR that used Sberbank of Russia's financial services to fund terrorist activity. Indeed, these documents are the crux of Plaintiffs' claims. In ATA cases, this type of financing and transactional information is "crucial to the litigation of [P]laintiffs' claims." *Strauss, S.A.*, 242 F.R.D. at 212; *see also Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 315 (E.D.N.Y. 2006) (compelling foreign bank to produce bank records and documents, and noting that "proof concerning the arrangements for making such payments and the breadth of the payment scheme is also crucial").

Despite the importance of this discovery, Sberbank of Russia has refused to engage in a reasonable search for documents showing its financial support to the DPR. Plaintiffs have attempted to facilitate Sberbank of Russia's search of those clearly relevant documents by listing in Appendices A and B to its document requests certain names and account numbers of individuals and entities that Plaintiffs have identified as related to the DPR.[6] Nevertheless, Sberbank of Russia has refused to conduct searches for responsive information. Instead, Sberbank of Russia insists that it will only search for transaction records if Plaintiffs expressly alleged a connection in the SAC between

---

issues in this case," as those documents may reflect the defendants' intent to commit their wrongful acts).

[6] Appendices A and A-2 identify persons and entities associated with the DPR, which Plaintiffs identified based on further investigation since filing the SAC. Appendices B and B-2 identify account numbers of individuals and entities associated with the DPR, which Plaintiffs collected based on that same investigation. On May 10, 2022, in response to Sberbank's requests, Plaintiffs additionally provided an updated version of Appendices A and B, which contained additional identifying information about the individuals and account numbers included in Appendices A and B. Despite this additional information intended to aid Sberbank's searches, Sberbank has not changed its position.

the DPR and a particular individual or entity, or if Plaintiffs prove to Sberbank of Russia's satisfaction that the individuals and account numbers Plaintiffs identified are connected to the DPR.

On March 18, March 25, and April 7, 2022, Plaintiffs produced documents showing the DPR's connection to the majority of the names and accounts in the appendices, yet Sberbank of Russia has refused to change its position. Sberbank of Russia has refused to even review Plaintiffs' productions, taking the patently unreasonable position that it is not required to undertake its own efforts to assess the relevance of the names and account numbers that Plaintiffs provided as a courtesy. *See* May 6, 2022 Sberbank of Russia Letter at 10-11 (taking the position that "Sberbank is not obligated to sift through documents of entirely unclear relevance and credibility, let alone evaluate documents in foreign languages" to determine the relevance of the names and account numbers Plaintiffs provided in Appendices A and B).

Sberbank of Russia did not modify its position during the parties' various meet and confers, and its interpretation of its discovery obligations is insupportably narrow.

It is black letter law that "[d]iscovery is not limited to the issues raised in the pleadings," as "[d]iscovery itself is designed to help define and clarify the issues." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 CIV. 3400 (WCC), 2006 WL 8429110, at *2 (S.D.N.Y. June 21, 2006) (internal citation omitted). The scope of discovery "is necessarily broad . . . in order 'to encompass any matter that bears on, or that reasonably could lead to [an] other matter that could bear on, any issue that is or may be in the case.'" *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) (internal citation omitted and alteration in original). It is "well-established within this Circuit" that discovery is appropriate "if there is '*any possibility*' that the information sought to be obtained may be relevant to the subject matter of the action." *MacCartney*, 2018 WL 5023947, at *2 (internal citation omitted and emphasis added).

Records related to the names and account numbers identified in Appendices A, A-2, B, and B-2 (collectively, "Appendices A and B") are likely to provide information that goes to the heart of Plaintiffs' claims; indeed, Sberbank of Russia does not meaningfully dispute that records it possesses concerning names and account numbers associated with the DPR would be highly relevant to Plaintiffs' claims and Sberbank of Russia's anticipated defenses. *See Strauss*, 242 F.R.D. at 212 (ordering production of bank records and documents, noting that the defendant's "provision of financial services to CBSP for more than thirteen years, including accepting deposits from and/or distributing funds to alleged terrorist organizations on behalf of CBSP" were "highly relevant and important to the claims and defenses in this action"). Rather, Sberbank of Russia simply refuses to produce any information unless Plaintiffs justify to Sberbank of Russia's satisfaction that each and every name and account number is specifically linked to the DPR. In requesting fact discovery, Plaintiffs are not required to satisfy trial-level evidentiary burdens of proof relating to these persons' involvement with the DPR or to disclose attorney work product. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CIV-9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, No. 14-CV-9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016). During the meet and confers, Sberbank of Russia refused to confirm whether it had conducted any investigation or undertaken any effort to identify and trace any funds solicited by the DPR, its

9

leadership, or its affiliates, through Sberbank of Russia. Sberbank of Russia cannot refuse to search for the very transactions at the center of Plaintiffs' claims.

Accordingly, Plaintiffs respectfully request an order requiring Sberbank of Russia to search for and produce documents responsive to Plaintiffs' requests, including documents concerning the names and accounts identified in Appendices A and B, as well as to conduct an independent search for all transactions involving DPR individuals and fundraisers.

### IV. Sberbank of Russia is Obligated to Produce Documents Within the Possession, Custody, and Control of its Wholly-Owned Subsidiary Yandex.Money.

Sberbank of Russia has taken the position that it will not produce documents or information in the possession of any of its subsidiaries or agents, including Yandex.Money.[7] Yandex.Money, a wholly owned subsidiary of Sberbank of Russia, is an electronic payment service that allows users to easily transfer money online, and was used extensively to fund the DPR. *See, e.g.*, SCHANSMAN00000005 (July 10, 2014 webpage identifying Novorossia Assistance Fund's Yandex.Money account number); SCHANSMAN00000044 (March 31, 2014 webpage identifying Veche's Yandex.Money account number); SCHANSMAN00000051 (March 13, 2014 webpage identifying the Voice of Sevastopol's Yandex.Money account number). Sberbank of Russia claims that such documents are not within the possession, custody, or control of Sberbank of Russia because Yandex.Money is separately incorporated and run, Sberbank of Russia does not have day-to-day control over its operations, and Sberbank of Russia does not have access to Yandex Money's records in the normal course of business.

Sberbank of Russia's position is unsupported by governing legal standards, which recognize that "[c]ontrol for the purposes of discovery . . . includes situations where the party 'has the practical ability to obtain the documents from another, irrespective of his legal entitlement,'" including when documents are in the possession of a third party. *Raimey v. Wright Nat'l Flood Ins. Co.*, 76 F. Supp. 3d 452, 470 (E.D.N.Y. 2014) (quoting *Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 525 (S.D.N.Y. 1992)).[8] Courts in this circuit have repeatedly found that parent banks have "control" over their subsidiaries, and have ordered, on that basis, that "a parent company doing business in New York is required to produce documents held by its subsidiary, even if located overseas." *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458(RJS)(THK), 2010 WL 808639, at *7 (S.D.N.Y. Mar. 8, 2010).[9] For example, in *Motorola Credit Corp. v. Uzan*, the court

---

[7] In 2020, Yandex.Money was renamed as YooMoney and became wholly owned by Sberbank of Russia. *See* YooMoney, *YooMoney: Yandex.Checkout's New Name* (Nov. 19, 2020), https://youmoney.ru/page?id=536919.

[8] *See also Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 90 Civ. 7811 (AGS), 1994 WL 510043, at *3 (S.D.N.Y. Sept. 16, 1994) (control includes the "legal right or practical ability to obtain [documents] from another source on demand").

[9] *See also, e.g., Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, No. 04 CIV. 7844 BSJ DFE, 2006 WL 1699566, at *1 (S.D.N.Y. June 20, 2006) (noting that "[n]umerous courts have concluded that

held that the parent bank had "control" over subsidiaries even though the parent could not "legally compel" its subsidiaries to produce responsive documents, and even though the entities "maintain[ed] separate customer-account databases and observe[d] corporate formalities." No. 02 CIV. 666(JSR), 2013 WL 6098388, at *4 (S.D.N.Y. Nov. 20, 2013); *see also Ssangyong Corp. v. Vida Shoes Int'l, Inc.*, No. 03 Civ. 5014 KMW DFE, 2004 WL 1125659, at *12-13 (S.D.N.Y. May 20, 2004) (ordering New York branch of Hong Kong bank to produce documents located in Hong Kong headquarters based on New York branch's "control"). Sberbank of Russia's categorical refusal to produce documents from its wholly owned subsidiary that are within the possession, custody, or control of Sberbank of Russia violates this established precedent.

Accordingly, Plaintiffs respectfully request an order requiring Sberbank of Russia to search for and produce documents responsive to Plaintiffs' requests that are within the possession, custody, and control of its subsidiaries, including Yandex.Money.

\* \* \*

For the foregoing reasons, Plaintiffs respectfully request permission to file a motion to compel the production of documents from Sberbank of Russia.

Respectfully submitted,


/s/  Terri L. Mascherin

Terri L. Mascherin (admitted *pro hac vice*)
David Pressman
Jason P. Hipp
JENNER & BLOCK LLP

*Counsel for Plaintiffs*

cc:       Counsel of Record (via ECF)

---

a parent corporation has a sufficient degree of ownership and control over a wholly-owned subsidiary that it must be deemed to have control over documents located with this subsidiary," and ordering even non-party banks "to produce documents that are located with any of their wholly-owned subsidiaries"); *Dietrich v. Bauer*, No. 95 CIV. 7051 (RWS), 2000 WL 1171132, at *3 (S.D.N.Y. Aug. 16, 2000), *on reconsideration in part*, 198 F.R.D. 397 (S.D.N.Y. 2001) (ordering parent company to produce documents from its wholly owned subsidiary).