1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER&BLOCK LLP

Terri L. Mascherin
Tel +1 312 923 2799
TMascherin@jenner.com

June 14, 2022

**VIA ECF**

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

***Schansman et al. v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG (S.D.N.Y.) – Plaintiffs' Request for Pre-Motion Conference on Their Proposed Motion to Compel the Production of Documents from Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.**

Dear Judge Gorenstein:

We write on behalf of Plaintiffs Thomas Schansman, individually, as surviving parent of Quinn Lucas Schansman; Catharina Teunissen, individually, as surviving parent of, and as personal representative of the Estate of Quinn Lucas Schansman ("Quinn"); Nerissa Schansman, individually, as surviving sibling of Quinn; and Xander Schansman, individually, as surviving sibling of Quinn (collectively, "Plaintiffs") in the above-captioned case to request a pre-motion conference concerning Plaintiffs' proposed motion to compel the production of documents from Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc. (collectively, "MoneyGram") pursuant to Federal Rule of Civil Procedure 37.

Plaintiffs have served three sets of requests for production (dated November 18, November 30, and December 17, 2021) and one set of interrogatories (dated November 18, 2021) on MoneyGram. The Court required the parties to substantially complete all party document productions by July 19, 2022. ECF No. 197 ¶ 3. But that is nowhere close to happening because MoneyGram has taken an unreasonably extreme and narrow view of its discovery obligations in this case. Absent judicial intervention, MoneyGram's productions will remain woefully incomplete. To date, MoneyGram has produced just 51 documents. These productions have included no transaction records, no records relating to internal investigations into the use of its services by the DPR or other terrorists, and no records responsive to many of Plaintiffs' other requests. Faced with MoneyGram's obstruction of significant relevant discovery about its support for Russian-backed separatists in Eastern Ukraine, Plaintiffs are left with no choice but to seek the Court's assistance.

This case concerns the use of Defendants' banking or money transfer services by the Donetsk People's Republic ("DPR"), a terrorist group, to raise funds from supporters from around the world

to support their terrorist aims. The DPR used and advertised an extensive array of international money transfer options—including specifically-identified money service businesses (such as MoneyGram)—through which radicalized supporters could send funds to entities and individuals to fund DPR activities. For example, by July 12, 2014, notorious DPR organization Save Donbass had solicited donations for "[t]he militia of the Donetsk People's Republic" through MoneyGram:[1]



Other DPR members posted similar solicitations in June and early July of 2014. *See, e.g.*, ECF No. 113-7 at 2; ECF No. 164-13 at 2. These solicitations for payments via MoneyGram continued after the downing of MH17. *See, e.g.*, Humanitarian Battalion, *03/26/15 Drone for LER - Humanitarian aid to the militia of Donbass*, YouTube (Mar. 23, 2015), https://www.youtube.com/watch?v=WnF7gLcZFqQ (soliciting donations through MoneyGram).

On July 17, 2014, the DPR shot down Malaysia Airlines Flight 17 ("MH17"), killing all 298 passengers on board, including Quinn Schansman. And despite MoneyGram's refusal to meaningfully participate in discovery, Plaintiffs have gathered evidence indicating that MoneyGram's services were used to transfer funds to the DPR (specifically, to Alexey Khudyakov, of the DPR organization Russian Choice) just days before the DPR shot down Quinn's plane and

---

[1] Annotated screenshot of Google translated version of Save Donbass website on Internet Archive, available at https://web-archive-org.translate.goog/web/20140712012214/http://spasidonbass.ru/?_x_tr_sl=ru&_x_tr_tl=en&_x_tr_hl=en&_x_tr_pto=wapp, also on file with the Court at ECF No. 113-5.

just three weeks after Russian Choice solicited funds on behalf of the DPR in an open and notorious internet advertisement. *See* ECF No. 113-2 at 5–6.

MoneyGram moved to dismiss Plaintiffs' Second Amended Complaint on the basis that it did not contain specific allegations of individual money transfers through MoneyGram. *See generally* ECF No. 162. The Court denied that motion on September 30, 2021. ECF No. 185. But instead of meaningfully participating in merits discovery, MoneyGram has used the discovery process to relitigate its failed motion to dismiss. In fact, in its responses and objections to Plaintiffs' discovery requests MoneyGram has repeatedly objected to the burden of producing *any* documents in response to virtually *any* of Plaintiffs' requests because "it has searched its internal transaction records and identified no money transfers received by any of the individuals identified in the [Second Amended Complaint] prior to the crash of Flight MH17"—mimicking the argument it made (and lost) in its motion to dismiss. *See* ECF No. 162 at 3 (asserting that the Second Amended Complaint failed to identify specific money transfers to the DPR through MoneyGram). In some cases, MoneyGram has imposed a series of heightened burdens that it claims Plaintiffs must satisfy before it will produce relevant documents, and in another it has imposed an arbitrary and legally unjustifiable temporal limitation on its production. That is not how the Federal Rules of Civil Procedure work, and the Court's intervention is necessary to end MoneyGram's discovery blockade.

Plaintiffs propose to address three overarching issues in their motion to compel against MoneyGram. <u>First</u>, MoneyGram has refused to produce any documents outside a narrow six-month window, taking the unreasonable position that it will not produce any documents dated after July 17, 2014, the day the MH17 flight was downed by the DPR. <u>Second</u>, MoneyGram has taken the categorical position that it will not search for or produce documents regarding transactions through MoneyGram by persons connected to the DPR unless either (i) those persons were expressly identified by name in the Second Amended Complaint, ECF No. 156 ("SAC"), or (ii) Plaintiffs demonstrate to MoneyGram's satisfaction that the persons were publicly affiliated with the DPR prior to the DPR's downing of MH17. <u>Third</u> (and relatedly), despite mounting evidence that individuals around the world played key roles in the flow of funds to the DPR, MoneyGram has refused to concede that the appropriate scope of a search for money transfers to and from the DPR should be global.

Plaintiffs have attempted to resolve and narrow these disputes over the course of five months, to no avail. Plaintiffs have repeatedly engaged with MoneyGram in good faith to reasonably narrow the discovery requests and offered a number of compromises. Unfortunately, the correspondence and meet-and-confer process has been unsuccessful—despite hours of meetings and nearly sixty pages of correspondence—as MoneyGram has refused to be swayed from its untenable positions. Plaintiffs are increasingly concerned that MoneyGram is intentionally stonewalling discovery in the hopes of preventing its unlawful conduct from coming to light. This concern has grown in recent weeks given new reports from MoneyGram's regulator that it repeatedly failed to follow the law during the period relevant to this action—that, in fact, MoneyGram suffered from "[m]ismanagement, including lax company policies and procedures" and violated a 2012 deferred

3

prosecution agreement with the Department of Justice in which it "admitt[ed] it criminally aided and abetted wire fraud and failed to maintain an effective anti-money laundering program."[2]

In light of the significant and persisting disagreements among the Parties, counsel for Plaintiffs (Jason Hipp) emailed counsel for MoneyGram (Christopher Manning, Amy McKinlay, Allison Eisen, David Zinn, and Haley Wasserman) on June 8, 2022 to request a meet-and-confer prior to filing this request with the Court. Counsel for Plaintiffs (Terri Mascherin, Mr. Hipp, Ali Alsarraf, and Sam Ungar) conferred with counsel for MoneyGram (Mr. Manning and Ms. McKinlay) by telephone on June 14, 2022 for approximately one hour. Following this final meet-and-confer attempt, counsel mutually agreed that the Parties are at an impasse on the issues raised below. Given this impasse, Plaintiffs are filing this letter with the Court to request a pre-motion conference on Plaintiffs' motion to compel MoneyGram's discovery responses.

### I. MoneyGram Must Produce Documents Outside a Narrow Six-Month Window.

Plaintiffs seek an order requiring MoneyGram to produce documents for the time period of November 21, 2013 to December 31, 2016 for relevant money transfers, and to December 31, 2018 for all other relevant documents. In response to Plaintiffs' reasonable proposed time period, MoneyGram has taken the extreme position of refusing to provide documents or information about any time period other than the narrow six-and-a-half-month window of January 1, 2014 to July 17, 2014 (the date the DPR shot down MH17). MoneyGram has categorically refused to produce *any* documents dated after the MH17 shootdown.

Plaintiffs' proposed start date of November 21, 2013 is appropriate, as that is the date that President Viktor Yanukovych's government abandoned the European Union-Ukraine Association agreement. That act set off the Euromaidan demonstrations and associated national protests across Ukraine, as well as the responses thereto by organized violent groups, including the group in Eastern Ukraine that led to Quinn's murder. Solicitations to fund these groups began soon thereafter.

Plaintiffs' proposed end dates of December 31, 2016 for transactions, and of December 31, 2018 for all other documents, are similarly appropriate. MoneyGram insists that all documents created after the downing of the MH17 flight on July 17, 2014 are irrelevant to determining MoneyGram's liability under the ATA. But this is not the law, particularly under the circumstances here. Recent ATA cases in this district have held that documents created after a key event may be relevant to a defendant's knowledge of that event and therefore relevant to determining the defendant's liability. For example, in *In re Terrorist Attacks on Sept. 11, 2001*, the court, even in the context of narrow jurisdictional discovery, authorized discovery from a foreign bank regarding investigations into the defendant's conduct until the end of 2004 (more than three years after the September 11

---

[2] Press Release, Rohit Chopra, Dir., Consumer Financial Protection Bureau, *Director Chopra's Prepared Remarks on the Lawsuit Against MoneyGram* (Apr. 21, 2022), https://www.consumerfinance.gov/about-us/newsroom/director-chopras-prepared-remarks-on-the-lawsuit-against-moneygram/.

4

attacks) and until the end of December 2002 for all other discovery requests. No. 03-MD-1570 (GBD) (SN), 2021 WL 5449825, at *4–5 (S.D.N.Y. Nov. 22, 2021); *see also Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 237–38, 244 (D.D.C. 2013) (ATA case) (ordering production of documents created more than one year after the attack at issue).[3] Here, the later-in-time materials not only are likely to lead to admissible evidence about persons and entities who funded the DPR prior to the downing of MH17, but they also could be themselves be admissible as similar-acts evidence under Federal Rule of Evidence 404(b) (even if the funds were not used to murder Quinn Schansman) to show MoneyGram's reckless indifference to the risk of funding terrorism. *See United States v. Ramirez*, 894 F.2d 565, 569 (2d Cir. 1990) ("Relevancy cannot be reduced to mere chronology; whether the similar act evidence occurred prior or subsequent to the crime in question is not necessarily determinative to its admissibility.") (internal citation omitted).

Accordingly, Plaintiffs seek an order requiring MoneyGram to produce documents responsive to Plaintiffs' requests from November 21, 2013 to December 31, 2016 for money transfers, and to December 31, 2018 for all other documents.

## II. MoneyGram Must Search its Records for All Potential DPR-Associated Individuals and Fundraisers, Not Merely the Names Expressly Identified in the SAC.

Plaintiffs seek records, including money transfer records, from MoneyGram about any individuals associated with the DPR that used MoneyGram's financial services to fund terrorist activity. Indeed, these documents are the crux of Plaintiffs' claims. In ATA cases, this type of financing and transactional information is "crucial to the litigation of [P]laintiffs' claims." *Strauss, S.A. v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 212 (E.D.N.Y. 2007); *see also Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 311–12, 315 (E.D.N.Y. 2006) (compelling foreign bank to produce bank records and documents and noting that "proof concerning the arrangements for making such payments and the breadth of the payment scheme is also crucial").

Despite the importance of this discovery, MoneyGram has refused to engage in a reasonable search for documents concerning its awareness of and financial support to the DPR. Plaintiffs have attempted to facilitate MoneyGram's search of those clearly relevant documents by listing in

---

[3] In the context of tort claims more generally, discovery commonly extends beyond the date of the tortious act. *See, e.g.*, *Goodrich v. Fisher-Price, Inc.*, No. 1:16-CV-03116-TWT, 2018 WL 11343381, at *2 (N.D. Ga. March 19, 2018) (allowing plaintiffs to obtain discovery of similar incidents for the period of seven years prior to and three years after the wrongful death at issue); *Felicia v. Celebrity Cruises, Inc.*, 286 F.R.D. 667, 672 (S.D. Fla. 2012) (granting discovery regarding cruise line's investigative procedures for the period of two years prior to and 19 months after the tort at issue); *King v. E.F. Hutton & Co., Inc.*, 117 F.R.D. 2, 7 (D.D.C. 1987) (noting, in a securities fraud and civil RICO action, that "documents which bear a date after the filing of a complaint may relate to events occurring prior to the filing of the complaint bearing on the central issues in this case," as those documents may reflect the defendants' intent to commit their wrongful acts).

Appendix A to its document requests names of individuals and entities that Plaintiffs have identified through their own investigation as related to the DPR.[4] Nevertheless, MoneyGram has refused to conduct searches for responsive information. Instead, MoneyGram insists that it will only search for money transfer records where Plaintiffs have either (i) expressly alleged in the SAC a connection between the DPR and that individual; or (ii) proved to MoneyGram's own satisfaction that the individuals Plaintiffs identified were "publicly affiliated with the DPR" prior to July 17, 2014. May 6, 2022 Letter from A. Eisen to D. Pressman & J. Hipp at 3. Counsel for MoneyGram did not modify its position during the parties' most recent meet and confer on June 14, 2022. Their interpretation of MoneyGram's obligations with respect to this crucial area of discovery is insupportably narrow.

The scope of discovery "is necessarily broad . . . in order 'to encompass any matter that bears on, or that reasonably could lead to [an] other matter that could bear on, any issue that is or may be in the case.'" *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) (internal citation omitted and alteration in original). It is black letter law that "[d]iscovery is not limited to the issues raised in the pleadings," as "[d]iscovery itself is designed to help define and clarify the issues." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02 CIV. 3400 (WCC), 2006 WL 8429110, at *2 (S.D.N.Y. June 21, 2006) (internal citation omitted). It is "well-established within this Circuit" that discovery is appropriate "if there is '*any possibility*' that the information sought to be obtained may be relevant to the subject matter of the action." *MacCartney*, 2017 WL 766906, at *3 (internal citation omitted and emphasis added).

Records related to the DPR individuals identified in Appendix A are likely to provide information that goes to the heart of Plaintiffs' claims. *See Strauss*, 242 F.R.D. at 212 (ordering production of bank records and documents, noting that the defendant's "provision of financial services to CBSP for more than thirteen years, including accepting deposits from and/or distributing funds to alleged terrorist organizations on behalf of CBSP" were "highly relevant and important to the claims and defenses in this action"). Those records will demonstrate the extent to which MoneyGram facilitated transfers to, from, and within the DPR. But MoneyGram simply refuses to produce *any* information about these individuals unless Plaintiffs justify to MoneyGram's satisfaction not only that each and every name they have identified is actually linked to the DPR, but that each name was *publicly linked* to the terrorist group before July 17, 2014. This frustrates the very purpose of discovery: "[A] broad search for facts, the names of witnesses, or any other matters, which may aid a party in the preparation or presentation of his case." *Asante-Addae v. Sodexo, Inc.*, No. 13-CV-489, 2014 WL 2013443, at *3 (D. Conn. May 16, 2014) (citing cases). The production of documents which will make clear MoneyGram's facilitation of terrorist financing will unquestionably advance these purposes. *See Strauss*, 242 F.R.D. at 212 (ordering production of financial records documenting "the collection or distribution of funds by [the defendant financial

---

[4] Appendices A, A-2, and A-3 identify persons and entities associated with the DPR, which Plaintiffs identified based on further investigation since filing the SAC.

institution] that may have been used by [the terrorist group] and/or its associates to support terrorism"); *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 44 (E.D.N.Y. 2007) (same).

Fundamentally, in requesting fact discovery, Plaintiffs are not required to satisfy trial-level evidentiary burdens of proof relating to a particular person's involvement with the DPR, or to disclose attorney work product demonstrating the methods by which their involvement was identified. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14-CIV-9792, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, No. 14-CV-9792, 2016 WL 4530890 (S.D.N.Y. March 24, 2016). That is what MoneyGram unreasonably demands, but it is not what the law requires. Accordingly, Plaintiffs respectfully request an order requiring MoneyGram to search for and produce documents responsive to Plaintiffs' requests, including documents concerning the names identified in Appendices A, A-2, and A-3, and also to conduct an independent search for all documents and transactions involving DPR and DPR-related individuals.

### III. MoneyGram Must Search Its Records for Money Transfers to and From the DPR, Without Geographic Limitation.

In granting Plaintiffs' request for an order directing MoneyGram to produce records concerning persons associated with the DPR, *supra* Part II, the Could should clarify that MoneyGram must search for these records (i) without geographic limitation,[5] and (ii) for money transfers both to and from the DPR.

There is already copious evidence demonstrating that funds destined for the DPR likely passed through the hands of recipients outside the borders of Ukraine. As one example, many of the DPR's fundraising solicitations instructed prospective donors to send funds through financial institutions, including MoneyGram, to DPR recipients in the Russian Federation. MoneyGram has already filed with the court a copy of a June 8, 2014 solicitation by the Fund for Assistance to the Southeast for funds to "assist[] the DPR and LPR self-defense units." ECF No. 164-13. That solicitation instructed donors to send funds through MoneyGram to Vitaliy Ischenko in the city of "Rostov-on-Don" in the "Russian Federation." *Id.* Plaintiffs have identified many similar instances in which the DPR instructed that funds should be channeled through their agents outside Ukraine. *See, e.g.*,

---

[5] During the parties' meet and confer call on June 14, 2022, MoneyGram for the first time suggested that its longstanding objection to searching for money transfers to the DPR on a global basis is not an independent objection, but is instead connected to its objection to searching for the DPR individuals and fundraisers listed in Appendix A. This is inconsistent with MoneyGram's repeated assertion in correspondence and during prior discussions that "searching for money transfers without geographic limitations would yield irrelevant results and would be unduly burdensome." Mar. 18, 2022 Letter from A. Eisen to A. Lichtman at 3; *see also* May 6, 2022 Letter from A. Eisen to D. Pressman & J. Hipp at 3 ("MoneyGram maintains that money transfers without geographic limitations would yield irrelevant results and would be unduly burdensome."). MoneyGram nevertheless reiterated this very same concern on the call. Plaintiffs thus seek direction from the Court on this issue concurrently with its resolution of the dispute over Appendix A in order to ensure that the dispute is addressed in full.

7

ECF No. 113-5 (DPR solicitation for money transfers to Gleb Kornilov in Moscow through MoneyGram); ECF No. 113-7 (same).

This is not the only type of evidence demonstrating the global reach of the DPR and hence the necessarily more global scope of discovery. For example, independent and public reporting has uncovered a network of financial institutions funneling funds to and from the DPR and LPR through territory in Georgia. *See The independent republic where everything depends on Moscow: How a Kremlin lifeline aided by separatist Ukraine is developing South Ossetia*, Meduza (Oct. 9, 2018), https://meduza.io/en/feature/2018/10/10/the-independent-republic-where-everything-depends-on-moscow. And discovery obtained from third parties in this case makes clear that donors actively contributed to the DPR from all around the world, including from the United States itself as well as from offshore havens like St. Kitts and Nevis.

There is thus ample support for conducting a geographically unrestricted search for money transfers involving the DPR, which is likely to lead to additional evidence "crucial to the litigation of [P]laintiffs' claims." *Strauss, S.A.*, 242 F.R.D. at 212. Courts permit discovery without geographic limitation in circumstances where relevant financial transactions span the globe. *See, e.g.*, *Linde v. Arab Bank, PLC*, No. 04-CV-2799-BMC-VVP (E.D.N.Y. Mar. 3, 2006) (No. 160) (ATA case) (ordering production of documents related to financial transactions and accounts connected to terrorist acts "without limitation"); *In re Vitamins Antitrust Litig.*, No. 99-197-TFH, 2001 WL 1049433, at *14 (D.D.C. June 20, 2001) (rejecting special master's recommended geographic limitation on merits discovery for financial transaction data in favor of geographically limitless discovery).

Moreover, Plaintiffs do not understand how it would pose an undue burden to require MoneyGram to search its global database of money transfers for individuals related to the DPR. Indeed, by performing their own extensive investigation (almost entirely without the benefit of discovery materials from any of the defendants), Plaintiffs have done much of the work needed to narrowly tailor these searches: MoneyGram need only find and produce transactions to and from individuals Plaintiffs have already identified as affiliated with the DPR (and, of course, any other individuals that MoneyGram itself already has reason to believe are so affiliated). To the extent MoneyGram's concern is that its searches for the names on Appendix A will yield false positives, that concern can be addressed by MoneyGram's designation of money transfer records as confidential under the protective order and good faith discussions between the parties following MoneyGram's searches. Instead, MoneyGram has refused to share the results of its searches for all but a self-selected handful of names.

As to MoneyGram's refusal to search for money transfers sent from individuals affiliated with the DPR, MoneyGram has simply refused to concede that such transfers bear any relevance to this litigation—even where MoneyGram agrees that the sender was a known member of the DPR. This remains a puzzling assertion given that such records are clearly relevant to the "nature and extent of the services that [MoneyGram] provided to [the DPR]" and "the collection or distribution of funds by [MoneyGram] that may have been used by [the DPR] and/or its associates to support terrorism[.]" *See Strauss*, 242 F.R.D. at 212; *Weiss*, 242 F.R.D. at 44. Moreover, the identification

of the counterparties to such transactions is likely to assist Plaintiffs in further understanding the flow of funds to, from, and within the DPR, as well as MoneyGram's knowledge of such funding networks. There is self-evidently more than a mere "possibility" that these materials will be relevant to Plaintiffs' case. *See MacCartney*, 2018 WL 5023947, at *2.

\*   \*   \*

For the foregoing reasons, Plaintiffs respectfully request permission to move to compel the production of documents from MoneyGram. Pursuant to Paragraph 2.A of Your Honor's Individual Practices, Plaintiffs submit that this dispute need not be decided on formal briefing and that this letter may thus serve as Plaintiffs' opening brief.

Respectfully submitted,


/s/ Terri L. Mascherin

Terri L. Mascherin (admitted *pro hac vice*)
David Pressman
Jason P. Hipp
JENNER & BLOCK LLP

*Counsel for Plaintiffs*

cc: Counsel of Record (via ECF)