1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711

JENNER&BLOCK LLP

June 21, 2022

**VIA ECF**

Terri L. Mascherin
Tel +1 312 923 2799
TMascherin@jenner.com

The Honorable Gabriel W. Gorenstein
United States Magistrate Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

*Schansman et al. v. Sberbank of Russia PJSC et al.*, No. 1:19-cv-02985-ALC-GWG (S.D.N.Y.) – Plaintiffs' Reply to Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.'s Response to Their Request for Pre-Motion Conference

Dear Judge Gorenstein:

We write on behalf of Plaintiffs in the above-captioned case to respond briefly to Defendants MoneyGram International, Inc. and MoneyGram Payment Systems, Inc.'s (collectively, "MoneyGram") response to Plaintiffs' request for a pre-motion conference on their proposed motion to compel certain documents from MoneyGram. MoneyGram's submission contained numerous misrepresentations of law and fact that warrant response.

I. **MoneyGram Must Search Its Records for All Potential DPR-Associated Individuals and Fundraisers.**

*First*, as MoneyGram admits (ECF No. 362 ("Opp.") at 5), it is completely capable of searching its transactions databases for the DPR-related names identified in Appendix A; it simply refuses to do so, purportedly because Plaintiffs have declined to explain, to MoneyGram's sole satisfaction, the precise role and responsibilities of each DPR member and fundraiser. Once more, "[d]iscovery is not limited to the issues raised in the pleadings," *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (WCC), 2006 WL 8429110, at *2 (S.D.N.Y. June 21, 2006) (internal citation omitted), and it is "well-established within this Circuit" that discovery is appropriate "if there is '*any possibility*' that the information sought may be relevant to the subject matter of the action." *MacCartney v. O'Dell*, No. 14-CV-3925 (NSR), 2017 WL 766906, at *3 (S.D.N.Y. Feb. 27, 2017) (internal citation omitted and emphasis added). MoneyGram has not cited a single case to support its position that it alone may adjudicate the appropriateness of Plaintiffs' discovery requests.

The cases MoneyGram cites (Opp. 5) do nothing to advance its contention that it is somehow exempt from the broad discovery authorized by the Federal Rules of Civil Procedure. MoneyGram's citation to *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-1570 (GBD)(SN),

2021 WL 5449825 (S.D.N.Y. Nov. 22, 2021), misses the mark entirely. Opp. 5. In that case, the court did reject the plaintiffs' requests concerning certain individuals not explicitly named in the complaint—but in the context of highly circumscribed *jurisdictional* discovery, which "must . . . be 'limited to the essentials necessary to determining the preliminary question of jurisdiction.'" *Id.* at *2 (quoting *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 230 F. Supp. 2d 392, 400 (S.D.N.Y. 2002). Because the plaintiffs sought jurisdictional discovery about certain individuals who lacked a "reasonable connection" to the defendants and thus could not have served as the basis for the Court to exercise jurisdiction, the court denied the jurisdictional discovery request as to those individuals. *Id.* at *9. That is a far cry from here, where the parties are in merits discovery, MoneyGram has not asserted a personal jurisdiction defense, and the core question before the Court is the extent to which MoneyGram facilitated financial support for the DPR—a question that can only be answered through the production of MoneyGram transaction records involving individuals connected to the DPR.

MoneyGram's reliance on a cherry-picked line from *Strauss v. Lyonnais*, No. 06-CV-00702 (CPS) (MDG), 2009 WL 10702129 (E.D.N.Y. Aug. 10, 2009), fares no better. Opp. 5. In *Strauss*, the plaintiffs sought transaction information of individuals they *knew* were unrelated to the terrorist network at issue in the case, but requested that information anyway to probe the effectiveness of the bank's blocking regime generally. Contrary to MoneyGram's assertion, the court did not reject the motion to compel because these unrelated individuals were not named in the complaint. Rather, it did so because of "critical dissimilarities" between those individuals and the entities at the center of the plaintiffs' case. *Id.* at *1. It was thus "unpersuaded that the documents regarding the other blocked transactions and participants involved would be probative of [defendant's] knowledge . . . or would be likely to lead to admissible evidence regarding the defendant's state of mind or what it had reason to know." *Id.*

Here, by contrast, Plaintiffs have a good faith basis for asserting that each of the names that they have identified in Appendix A is reasonably related to the DPR. Plaintiffs have produced to MoneyGram a substantial volume of publicly available documents compiled during the course of Plaintiffs' investigation of the DPR, as well as additional materials obtained from third parties. The majority of the individuals included in Appendix A appear in these produced materials. For example, Plaintiffs have produced many solicitations for contributions through MoneyGram to DPR individuals not identified by name in the SAC—individuals like Roman Kornilov (SCHANSMAN00000422), Dmitry Babich (SCHANSMAN00004227), and Vitaliy Ischenko (SCHANSMAN00000365). While MoneyGram asserts that it is not "aware of any information connecting the overwhelming majority of names to the DPR or a DPR fundraiser," Opp. 4, that is apparently because it has not reviewed Plaintiffs' productions.

*Second*, if MoneyGram is unable to conduct searches for organizations, email addresses, physical addresses, and other items included in Appendix A, then the total number of individuals Plaintiffs have asked MoneyGram to search for is not "more than 450," but approximately 360. That MoneyGram is dissatisfied with Plaintiffs' identification of a significant number of individuals potentially tying MoneyGram to a ruthless terror network simply cannot justify a refusal to conduct searches *at all*; the purpose of the Antiterrorism Act's ("ATA") private cause of action is to "harness the initiative and resources of the private sector in pursuit of the larger aims of U.S. counter terrorism policy." *Strauss v. Credit Lyonnais, S.A.*, 242 F.R.D. 199, 218 (E.D.N.Y. 2007)

2

(internal citation omitted). This is precisely what Plaintiffs have done, moving beyond the fifteen representative individuals cited in the Second Amended Complaint and into a broader network of DPR-related individuals identified through Plaintiffs' own effort and expense, with the goal of exposing the significant degree of wrongdoing by the defendants in this case.

*Third*, MoneyGram's concern (Opp. 7) that the searches will generate a large number of false positive results unless the Schansman family produces "detailed identifying information" typically supplied by law enforcement (such as phone numbers or date of birth) puts the cart before the horse, among other things. MoneyGram's counsel conceded shortly after the parties' June 14 meet and confer that MoneyGram has not actually searched its transaction records for the names listed in Appendix A, so its concerns about the potential volume of results from those searches amount to unsubstantiated conjecture.[1] And as Plaintiffs noted in their initial letter, ECF No. 357 at 8, should MoneyGram's searches result in a large volume of hits for certain names in Appendix A, Plaintiffs would welcome the opportunity to confer in good faith with MoneyGram about ways to work together to reduce the number of potentially responsive items. Nor is customer confidentiality a legitimate concern because the parties recently entered a supplemental protective order, ECF No. 355, which provides enhanced protections for precisely the type of documents MoneyGram refuses to search for and produce.

Congress has tasked ATA plaintiffs with "pursuit of the larger aims of U.S. counter terrorism policy." *Strauss*, 242 F.R.D. at 218 (internal citation omitted). Plaintiffs have taken up that mandate, working diligently to identify the names of individuals they reasonably believe are connected to the terrorist group that murdered their beloved son and brother in order to determine the extent of MoneyGram's reckless provision of financial services to the DPR. The result of that diligent (and ongoing) work is represented in Appendix A. Plaintiffs are now entitled to receive information from MoneyGram about the extent of its business with the DPR individuals that Plaintiffs have identified.

## II.  MoneyGram Must Produce Documents Outside a Narrow Six-Month Time Window

Post-crash transactional data (and relevant custodial documents) are obviously relevant to Plaintiffs' claims. While such transactions are likely to lead to admissible evidence about persons and entities who funded the DPR prior to the downing of MH17 (including new evidence about the DPR's overall financial network), as Plaintiffs noted in their June 14 letter, those transactions may also be admissible as similar-acts evidence under Federal Rule of Evidence 404(b). ECF No. 357 at 5.

---

[1] Notably, MoneyGram asserts that an *internet search* for a DPR individual named Alexey Khudyakov returns hundreds of results. This is an obvious red herring. Plaintiffs merely ask MoneyGram to search *its own records*—not the entire World Wide Web—for transactions involving individuals bearing the names of DPR members. MoneyGram has asserted no basis for its premise that such searches would result in an exceptionally large volume of results, and it cannot possibly have one because it has not conducted the searches.

In its response, MoneyGram focuses on challenges to admissibility under Rule 404(b). Opp. 8. In doing so, it improperly conflates the heightened burden for admissibility at trial with the far lower burden of relevance in discovery. *See Estee Lauder, Inc. v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 274 (S.D.N.Y. 1999) ("[T]he concept of relevance for discovery purposes is not limited by considerations of evidentiary admissibility, but rather is broad enough to afford parties liberal access to evidence in advance of trial. It is well-settled within this Circuit that 'any possibility' that the sought-after information may be relevant to the subject-matter of the action will satisfy Rule 26(b)(1)'s requirements.") (internal citation omitted). MoneyGram apparently demands application of the heightened trial standard, but the law is clear that Plaintiffs need demonstrate only the lower relevance standard.

But even if the Court were to consider the heightened admissibility standard now, MoneyGram misconstrues Rule 404(b). That rule permits the introduction of evidence of "any other crime, wrong, or act" for any purpose other than proving a person's overall criminal character. Fed. R. Evid. 404(b)(1)–(2). MoneyGram first cites to *United States v. Carboni*, 204 F.3d 39 (2d Cir. 2000) for the proposition that "evidence that 'arose out of the same transaction or series of transactions,' 'is inextricably intertwined with the evidence regarding the charged offense,' or 'is necessary to complete the story' at trial is *inadmissible* under Rule 404(b)." Opp. 8. But that is not what *Carboni* actually says. *Carboni* says that evidence that fits these categories is not *excluded* as impermissible other-crimes evidence under Rule 404(b)(1) because it is evidence of the actual crime on trial and is admissible in its own right. *See* 204 F.3d at 44 (admitting evidence).

MoneyGram then cites *United States v. Curley*, 639 F.3d 50, 61 (2d Cir. 2011) for the proposition that subsequent-act evidence is admissible only when it "closely parallel[s]" the charged conduct. Opp. 8. But that is precisely the sort of evidence that Plaintiffs aim to discover. Plaintiffs are pursuing this case against MoneyGram arising out of its reckless facilitation of money transfers to the DPR before the downing of MH17. They now simply seek evidence of additional subsequent money transfers to the DPR—exactly the same conduct on which MoneyGram's liability is premised—to demonstrate that even after the terrorist attack that downed MH17 and killed nearly three hundred people, including Quinn, MoneyGram carried on doing business with the DPR anyway. This is precisely the kind of situation in which subsequent acts are admissible—where they are probative of the defendant's reckless intent. *See Curley*, 639 F.3d at 61 (citing multiple cases where defendant's subsequent conduct was admissible as evidence of their intent to commit the original offense).

\*   \*   \*

For the foregoing reasons and the reasons explained in Plaintiffs' initial letter to the Court, ECF No. 357, Plaintiffs respectfully seek to compel the production of documents from MoneyGram. Pursuant to Paragraph 2.A of Your Honor's Individual Practices, Plaintiffs maintain that this dispute need not be decided on formal briefing given the detailed letters that have been provided to the Court, and that this letter may thus serve as Plaintiffs' reply brief.

4

Respectfully submitted,

/s/ Terri L. Mascherin

Terri L. Mascherin (admitted *pro hac vice*)
David Pressman
Jason P. Hipp
JENNER & BLOCK LLP

*Counsel for Plaintiffs*

cc: Counsel of Record (via ECF)