Marc Agnifilo, being duly sworn, depose and says:

1. I am an attorney licensed in the State of New York.

2. I am "of counsel" to the firm Brafman & Associates P.C.

3. I am familiar with the facts in this affidavit.

4. I am likewise familiar with the facts set out in prior affidavits in this matter submitted by my colleague, Zach Intrater.

5. Over the course of our efforts in this matter, my colleague, Zach Intrater, and I have spoken repeatedly with the Office of Foreign Assets Control (OFAC), the division of the U.S. Treasury Department charged with enforcing economic and trade sanctions, concerning the applicable federal regulations regarding payments to attorneys representing named parties in active litigation.

6. In summary, OFAC has informed us that because we would be representing a named party in active litigation in a United States District Court, our firm would be permitted under the current sanctions to receive a legal fee from a blocked entity, in this case VTB Bank.  In other words, the legal fee paid to our firm would, under these circumstances, be legal and appropriate even given the sanctions.

7. We informed a representative of the bank utilized by our firm ("Financial Institution 1") of OFAC's assurance.  We were informed that the appropriate personnel at Financial Institution 1 would speak with OFAC directly.

8. I am informed that a representative of OFAC has spoken with personnel at Financial Institution 1 and has provided similar assurances of the legality of the payment.  Despite the assurances provided by OFAC to Financial Institution 1, on June 20, 2022, Financial Institution 1 informed our firm that it would not accept funds from Russia due to its own

internal "risk framework" regardless of the fact that such transaction was legally permitted.

9. Once Mr. Intrater and I realized that the firm's regular bank (Financial Institution 1) was not going to accept payment from Russia, Mr. Intrater and I set about attempting to locate another bank that would accept funds from Russia, consistent with the guidance provided by OFAC.

10. Between June 23 and June 27, 2022, conversations were initiated with this second bank ("Financial Institution 2"). Specifically, on June 23, 2022, Mr. Intrater and I were introduced by email to a high-level employee of Financial Institution 2, who was informed about the nature of the legal matter and the source of the funds. During the week of July 27, 2022, Financial Institution 2 expressed considerable concern with the prospect of accepting funds from a blocked entity in Russia despite the fact that OFAC clearly indicated that such transactions were legal and appropriate in these circumstances.

11. Given the hesitancy expressed by personnel at Financial Institution 2, Mr. Intrater and I started exploring a third financial institution ("Financial Institution 3") that might agree to accept funds from a blocked entity in Russia.

12. On or about July 6, 2022, we received confirmation that Financial Institution 2 had decided against accepting funds from Russia and that this was their final decision.

13. We are continuing to pursue the possibility that Financial Institution 3 would agree to accept funds under these circumstances. However, as of July 21, 2022 (today's date), we do not have a final answer from Financial Institution 3.

14. Following the last update to the Court, I contacted a fourth Financial Institution (Financial Institution 4). I asked Financial Institution 4 if it would be willing to take our

firm as a banking client with the understanding that we would be receiving funds in connection with the instant case.

15. On July 13, 2022, I corresponded with senior personnel at Financial Institution 4 and requested that it accept us as a banking client. On July 14, 2022, I was told that the bank personnel with whom I was required to speak was out of the bank and would return on July 17, 2022. The bank representative did not contact me on July 17, 2022. So, on July 18, 2022, I contacted the bankers at Financial Institution 4 and asked for a phone call. Later in the day on July 18, 2022, I heard back from a Senior Vice President in the Legal Specialty Group of Financial Institution 4 who stated, in substance, that Financial Institution 4 was not in a position to accept a law firm as small as ours as a banking client. I emailed the Legal Group's Senior VP back and asked essentially if it was the final position of Financial Institution 4 that it would not accept us as a banking client. On July 19, 2022, I heard back from the Senior VP in the Legal Group from Financial Institution 4, who said that it would not take us as a banking client.

16. Beginning on July 19, 2022 and again on July 20, 2022, Mr. Intrater, made initial inquiries regarding two more financial institutions (Financial Institution 5 and Financial Institution 6) to inquire whether they would accept the funds that VTB has earmarked for its representation in this matter.

I declare under penalty of perjury that the foregoing statements are true and correct.

Marc Agnifilo, Esq.
Of Counsel
Brafman & Associates, P.C.