UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Thomas Schansman, et al.,

                              Plaintiffs,

           -against-              :        1:19-CV-02985 (ALC) (GWG)

Sberbank of Russia PJSC et al.,      :        <u>ORDER</u>

                           Defendants :
------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Defendant Sberbank of Russia submits a motion to dismiss Plaintiffs' Second Amended Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA) and the Anti-Terrorism Act (ATA). For the following reasons, Sberbank's motion to dismiss is denied.

## I.    BACKGROUND

I assume the parties' familiarity with the facts, which are set forth more fully in the Memorandum and Order denying Defendants' previous motion to dismiss. ECF No. 185. In short, according to the original complaint and Second Amended Complaint ("SAC"), Defendants Sberbank and VTB Bank provided material support and financing to the Donetsk People's Republic, a terrorist group accused of downing a Malaysia Airlines flight over Eastern Ukraine in 2014.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a complaint for "lack of subject matter jurisdiction." The Second Circuit has held that a motion to dismiss for one of the

1

non-waivable defenses under Rule 12(h) (such as lack of subject matter jurisdiction, at FRCP 12(h)(3)), is valid even after the answer is filed and should be construed as a motion for judgment on the pleadings under Rule 12(c). *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Further, under Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")

### III.   DISCUSSION

#### A.   SOVEREIGN IMMUNITY CLAIMS

The FSIA "is the sole source for subject matter jurisdiction over any action against a foreign state." *Pablo Star Ltd. v. Welsh Government*, 378 F. Supp. 3d 300, 306 (S.D.N.Y. 2019)

As Sberbank noted in the Joint Status Report of Sept 13, 2022 at ECF No. 434: a sovereign defendant's waiver of immunity must "be 'unmistakable' and 'unambiguous.'" *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 326 (2d Cir. 1993) (quoting *Shapiro v. Republic of Bolivia*, 930 F.2d 1013, 1017 (2d Cir. 1991)). Here, although Sberbank repeatedly disclaimed sovereign immunity defenses at earlier stages of briefing, they raised the defense in the first paragraph of their answer to the second amended complaint. ECF No. 226. Therefore, the Court does not consider the question of whether Sberbank waived sovereign immunity at this time, and examines the merits of Sberbank's sovereign immunity defense.

The FSIA provides immunity to foreign states as well as to any "agency or instrumentality" of a foreign state. 28 U.S.C. § 1603(a); 28 U.S.C. § 1604. The FSIA defines "agency or instrumentality" as an entity:

(1) which is a separate legal person, corporate or otherwise, and

> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b).

The FSIA provides that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States" unless one of the limited exceptions enumerated in Sections 1605 through 1607 of the FSIA applies. 28 U.S.C. § 1604; *see Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); *Pablo Star Ltd.*, 378 F. Supp.3d at 306. "When [a] defendant claims immunity under the FSIA and 'presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign.'" *Figueroa v. Ministry for Foreign Affairs of Sweden*, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)).

Determining whether a plaintiff has satisfied his burden "involves a review of the allegations in the complaint, the undisputed facts, if any, placed before the court by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue—resolution of disputed issues of facts." *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008) (internal quotation marks and alterations omitted)). At this stage, "when considering a motion to dismiss for lack of subject matter jurisdiction on the basis of

sovereign immunity, 'the Court generally must accept the material factual allegations in the complaint as true, but does not draw all reasonable inferences in the plaintiff's favor.'" *Pablo Star Ltd.*, 378 F. Supp. 3d at 306, quoting *Figueroa*, 222 F. Supp. 3d at 307. "[W]here jurisdictional facts are disputed, the Court has the power and obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." *Figueroa*, 222 F. Supp. 3d at 307.

Sberbank claims they have qualified as an "agency or instrumentality" of Russia since at least April 2020, because at that time, the Ministry of Finance of Russia became the majority shareholder of Sberbank. *See* Memorandum of Law in Support of Sberbank's Motion to Dismiss for Lack of Subject-Matter Jurisdiction under the Foreign Sovereign Immunities Act ("Sberbank FSIA Memo" at ECF 258) at 4. Sberbank also claims that they were in fact an "agency or instrumentality" before April 30, 2020 "by virtue of [Sberbank's] direct majority ownership by the Central Bank of the Russian Federation ("Bank of Russia")." ECF 258 at 12-13.

However, as Chief Justice Marshall once wrote, "[w]here there is no change of party, a jurisdiction depending on the condition of the party, is governed by that condition as it was at the commencement of the suit*." Conolly v. Taylor*, 27 U.S. 556, 565 (1829) (Marshall, C.J.)

The Supreme Court and the Second Circuit have agreed with the venerable Chief Justice in this regard, and have held that the determination of "agency or instrumentality" status is made at the time of the filing of suit. In *Dole Food Co. v. Patrickson*, 538 U.S. 468, 478 (2003), the Supreme Court stated, "We think the plain text [of § 1603(b)(2)], because it is expressed in the present tense, requires that instrumentality status be determined at the time suit is filed." The Court grounded its holding in "the longstanding principle that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.'" *Id.; see also Bartlett v. Societe Generale de*

4

*Banque au Liban SAL*, 2021 WL 3706909, at *8 (E.D.N.Y. Aug. 6, 2021) The Second Circuit has followed the Supreme Court's ruling in *Dole*, stating that it "unequivocally [holds] that an entity's status as an instrumentality of a foreign state should be determined at the time of the filing of the complaint[.]" *Abrams v. Societe Nationale Des Chemins De Fer Francais*, 389 F.3d 61, 64 (2d Cir. 2004), *cert. denied,* 544 U.S. 975.

Therefore, the Ministry of Finance of the Russian Federation's acquisition of direct majority ownership of Sberbank as of April 30, 2020 is not at issue, and the Court does not consider whether this would confer "agency or instrumentality" status on Sberbank.

In turn, the Court now must examine Sberbank's argument that in fact, they were an "agency or instrumentality" of the Russian Federation before April 30, 2020 "by virtue of [Sberbank's] direct majority ownership by the Central Bank of the Russian Federation ("Bank of Russia")." ECF 258 at 12-13.

B. *SBERBANK'S STATUS BEFORE ITS ACQUISITION BY THE MINISTRY OF FINANCE*

Sberbank states that on April 4, 2019 (the date the original complaint was filed, ECF No. 1), Sberbank was directly, majority-owned by the Bank of Russia. *See* Tsvetkov Decl. ¶¶ 3-4 ("As of 4 April 2019 . . . the Bank of Russia (also called the Central Bank of Russia) owned a 50% plus one share stake of Sberbank's total authorized capital."); Tsvetkov Decl. Ex. A (Certificate from the Register of Securities Owners about Shareholders Holding One and More % of the Charter Capital as at 4 April 2019); *id.* Ex. B (excerpt from Sberbank's 2019 Annual Report). As such, Sberbank claims that they have been an "agency or instrumentality" of Russia all along, and are exempt from suit.

5

Plaintiffs contend that Sberbank was an "entity owned by an 'agency or instrumentality' at the time of filing," and therefore Sberbank is not entitled to a presumption of immunity. *See* Plaintiffs' Memorandum of Law in Opposition to Sberbank of Russia PJSC's Second Motion to Dismiss the Second Amended Complaint ("Pls.' Opp." at ECF No. 312) at 10.

If the Bank of Russia is an agency or instrumentality, then it is unlikely that Sberbank can also be one, as the Supreme Court has held that the chain of sovereign immunity does not extend beyond a direct link to a sovereign entity. ("We hold that only *direct* ownership of a majority of shares by the foreign state satisfies the statutory requirement." *Dole Food Co. v Patrickson*, 538 US 468, 474 (2003), emphasis added). Sberbank would then be subject to suit, without any need for further analysis of sovereign immunity.

In contrast, if Bank of Russia is a political subdivision, then Sberbank could be an agency or instrumentality majority owned by it, and thus covered by sovereign immunity.

The Court holds that 1) the Central Bank of Russia is a "political subdivision" of the Russian government, 2) Sberbank is an agency or instrumentality of the Russian government, and, crucially, 3) Sberbank is still subject to suit under the commercial-activity exception to the FSIA.

### C. *APPLYING THE SECOND CIRCUIT'S CORE FUNCTIONS TEST, CENTRAL BANK OF RUSSIA QUALIFIES AS A POLITICAL SUBDIVISION*

Courts within the Second Circuit use the "core functions test" from *Garb v. Republic of Poland*, 440 F.3d 579 (2d Cir. 2006) to decide whether an entity is a "political subdivision" or an "agency or instrumentality" of a state. The test examines whether the "core functions" of the entity "are predominantly governmental or commercial." *Garb v. Republic of Poland*, 440 F.3d

6

579, 594 (2d Cir. 2006). "If an entity's core functions are predominantly governmental, then it is a political subdivision. If the entity's core functions are predominantly commercial, then it is an agency or instrumentality." *NML Capital Ltd. v. Space Expl. Techs. Corp.*, No. 14-cv-2262, 2015 WL 1334291, at *5 (C.D. Cal. Mar. 6, 2015) (citing *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003)).

Here, Bank of Russia's core functions are predominantly governmental. As noted in the Sberbank FSIA Memo, the Bank of Russia is a crucial market regulator within the Russian System. The Constitution of the Russian Federation states that the Bank of Russia is "exclusively" responsible for the issuance of rubles, and that "protecting and ensuring the stability of the ruble shall be the core function of the Central Bank of the Russian Federation[.]" Art. 75 of the Constitution of the Russian Federation; Decl. of Lyudmila G. Efimova ¶ 6. Further, the Bank of Russia is to exercise these duties "independently from other state power bodies." *Id.* Along with its currency stabilization role, "[t]he Bank of Russia formulates economic policy in coordination with other branches of government and possesses wide regulatory authority, including the issuance of legal normative acts and the imposition of administrative fines." Sberbank FSIA Memo at 14. Its governmental functions include acting as a last-resort creditor, setting the rules to conduct banking operations, managing the gold and currency reserves of the Russian Government, regulating the Russian banking and financial sectors, setting the exchange rate of foreign currencies against the ruble, and compiling various official statistics used in the forecasting and public communication of Russian economic policy. Efimova Decl. ¶ 8. These activities are all quintessentially governmental, and in line with the work of central banks in other countries. Therefore, the Court holds that the Bank of Russia is a "political subdivision" of the Russian government.

D. *SBERBANK IS AN AGENCY OR INSTRUMENTALITY OF RUSSIA*

As discussed above, under the "core functions" test from *Garb*, the Bank of Russia is a political subdivision. Its core functions – regulating the Russian economy, maintaining the value of the Ruble, and overseeing Russian banks are predominantly governmental. Because Bank of Russia is a political subdivision of Russia, Sberbank is presumptively covered by sovereign immunity because it is majority owned by it. *See e.g., Dole Food Co. v Patrickson,* 538 U.S. 468, 477 (2003) ("A corporation is an instrumentality of a foreign state under the FSIA only if the foreign state itself owns a majority of the corporation's shares.")

Sberbank's submissions show that Sberbank is majority owned by the Bank of Russia. *See, e.g.,* Oleg Tsvetkov Decl. ¶ 3: "As of 4 April 2019 . . . the Bank of Russia (also called the Central Bank of Russia) owned a 50% plus one share stake of Sberbank's total authorized capital."). Under §1603(b)(2) of the FSIA, Sberbank is then an entity "a majority of whose shares . . . [are] owned by a foreign state or political subdivision thereof," and therefore qualifies as an agency or instrumentality of the State of Russia.

E. *SBERBANK MAY STILL BE HELD LIABLE UNDER THE COMMERCIAL-ACTIVITY EXCEPTION TO THE FSIA*

Sberbank argues that by virtue of its status as an agency or instrumentality of a foreign state, it is presumptively immune from suit. Sberbank FSIA Memo at 3. Having determined that the 1) the Bank of Russia is a political subdivision, and 2) Sberbank is an agency or instrumentality of Russia, the Court next must decide whether an exception to sovereign immunity applies to Sberbank. The Court holds that the commercial-activity exception applies in this case, and Sberbank is thus subject to suit.

8

When considering an exception to the FSIA, Plaintiff carries the burden "of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted." *Freund v. Republic of France*, 592 F. Supp. 2d 540, 552-53 (S.D.N.Y. 2008) (quoting *Cabiri v. Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999)). Once Plaintiff satisfies this burden of production, the burden of persuasion passes to Defendants to show that an exception to the FSIA does not apply. *Freund*, 592 F. Supp. 2d at 552-53 (providing that "the ultimate burden of persuasion remains with the alleged foreign sovereign"); *Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1183 (D.C. Cir. 2013).

Section 1605(a)(2) of FSIA, the statute's commercial activity exception, provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case" in which the action is based upon (1) "a commercial activity carried on in the United States by the foreign state"; (2) "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." To fall within the commercial activity exception, [Defendant's] activities need to qualify for at least one of the categories specified in the three clauses of §1605(a)(2). *United States v. Turkiye Halk Bankasi A.S.*, 16 F.4th 336, 348 (2d Cir. 2021) (hereinafter, "*Halkbank*").

As the Second Circuit stated in *Halkbank*, the commercial activity inquiry begins with identifying an act that is based upon the particular conduct that constitutes the 'gravamen' of the suit." *Id.*; *see also Barnet as Tr. Of 2012 Saretta Barnet Revocable Trust v. Ministry of Culture and Sports of the Hellenic Republic*, 961 F.3d at 200 ("We first must identify [the] predicate act that serves as the basis for plaintiff's claims.") (internal quotation marks omitted).

9

Plaintiffs' Second Amended Complaint ("SAC") alleges that Sberbank provided material support and financing to the DPR (SAC ¶ 79), in part by operating correspondent accounts in New York (SAC ¶¶ 58-59), and by allowing transfers to a specific Sberbank bank card (SAC ¶¶ 317, 318). The money raised through these transfers then allowed the DPR and its senior leadership to procure lethal weapons. SAC ¶¶ 293, 296-305. This conduct constitutes the "gravamen" of the allegations against Sberbank, and the conduct related to the correspondent banks in New York took place in the United States.

The FSIA provides that "the commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d). The Second Circuit has held that "*purpose* is the reason why the foreign state engages in the activity and *nature* is the outward form of the conduct that the foreign state performs or agrees to perform. Put another way, the issue is whether the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in trade and traffic or commerce." *Halkbank*, 26 F.4th at 349 (other emphases and internal quotation marks omitted).

Here, Plaintiffs have alleged that Sberbank and the other defendants provided material support and financing to the DPR. SAC ¶ 79. The DPR used Defendants' services to raise money and advertised ways to donate money to accounts or bank cards associated with Defendants Sberbank and VTB Bank. SAC ¶¶ 143-150. Media outlets reported that Sberbank facilitated payments to soldiers to assist Russian Separatists in East Ukraine. SAC ¶¶ 167-169. Further, the DPR published online detailed ledgers reflecting the funds that the DPR received using Defendants' services, and the DPR also detailed how the funds were used to purchase equipment and weaponry "necessary for the DPR's terrorist activities." *Id.* at ¶¶ 179-180. A senior leader of

10

the DPR indicated that transfers could be made to a specific Sberbank bank card or via Western Union and solicited funds through transfers utilizing Sberbank and other defendants. SAC ¶¶ 317, 318. Plaintiffs also allege that prior to the attack on MH17, the DPR provided instructions on how to send transfers in U.S. Dollars to Sberbank and VTB Bank's correspondent accounts in New York. *Id.* at ¶¶ 58-59.

The use of correspondent accounts and authorization of money transfers is classic commercial behavior for an international bank and does not qualify as sovereign conduct. A bank that is acting in a commercial manner, as Sberbank is alleged to have done, is not presumptively excused from suit. As the Supreme Court has held, "when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). Therefore, the first two clauses of §1605(a)(2) are satisfied, and the defense of sovereign immunity is denied.

### F. ALTERNATE GROUNDS OF DISMISSAL UNDER THE ATA

As stated in the Supreme Court's decision, *Republic of Austria* v. *Altmann*, 541 U.S. 677, 691 (2004), "courts should decide claims of sovereign immunity in conformity with [FSIA's] principles." Because of this, courts have regarded "an assertion of sovereign immunity under the ATA as being functionally equivalent to an assertion of sovereign immunity under the FSIA." *Ungar v. Palestinian Liberation Org.*, 402 F.3d 274, 283 (1st Cir. 2005) (internal citation omitted); e.g., *Sokolow v. Palestine Liberation Org.*, 583 F.Supp.2d 451, 457 (S.D.N.Y. 2008) ("The ATA's exclusion, of foreign states and governmental actors from its coverage, is consistent with, and to be applied in accordance with, the ordinary sovereign immunity principles codified in the FSIA."),

*vacated on different grounds sub nom. Waldman v. Palestinian Liberation Org.*, 835 F.3d 317 (2d Cir. 2016). Sberbank's argument to read the ATA's sovereign immunity provision more broadly than the FSIA are thus counter to the practice of the federal courts. For that reason, Sberbank's motion to dismiss under the ATA's sovereign immunity provision is denied.

### IV. CONCLUSION

For the reasons set forth above, Sberbank's second motion to dismiss is denied. The parties are to continue with discovery and proceedings before Judge Gorenstein's Chambers.

**SO ORDERED.**

**Dated:** **New York, New York**
**December 6, 2022**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**