UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS SCHANSMAN, ET AL., | 19 Civ. 2985 (ALC)(GWG) |
| Plaintiffs, | Hon. Andrew L. Carter, Jr. |
| -against- | |
| SBERBANK OF RUSSIA PJSC, ET AL., | |
| Defendants. | |

**VTB BANK PJSC'S MEMORANDUM IN SUPPORT OF ITS MOTION REQUESTING CERTIFICATION FOR INTERLOCUTORY APPEAL**

July 19, 2023

Robert S. Landy
Adam C. Ford
Arthur Kutoroff
Nicolette T. Beuther
FORD O'BRIEN LANDY LLP
275 Madison Avenue, 24th Floor
New York, New York 10016
(212) 858-0040
rlandy@fordobrien.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND .............................................................................................................................4

ARGUMENT ...................................................................................................................................5

    I.    The September 30, 2021 Order Involves Controlling Questions of Law ............................6

    II.   There is Substantial Ground for Difference of Opinion Regarding Personal Jurisdiction in This Action..........................................................................................................................8

    III.  An Immediate Appeal Would Materially Advance the Ultimate Termination of This Litigation............................................................................................................................12

CONCLUSION..............................................................................................................................14

## TABLE OF AUTHORITIES

*AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*,
    68 Fed. Cl. 663 (2005) .................................................................................................13

*AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States*,
    81 F.3d 1351 (Fed. Cir. 2007)......................................................................................13

*Best Van Lines, Inc. v. Walker*,
    490 F.3d 239 (2d Cir. 2007)...........................................................................................6

*Daou v. BLC Bank SAL*,
    42 F.4th 120 (2d Cir. 2022) ...........................................................................................2

*Elghossain v. Bank Audi S.A.L.*,
    No. 21-CV-2162 (PGG) (BCM), 2023 WL 3005524 (S.D.N.Y. Feb. 23, 2023) .......10

*Henkin v. Charity*,
    No. 21-CV-5716 (AMD) (VMS), 2023 WL 2734788 (E.D.N.Y. Mar. 31, 2023) ....11

*Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*,
    331 F. Supp. 3d 130 (S.D.N.Y. 2018)...........................................................................8

*In re Worldcom, Inc.*,
    No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ....................................5

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
Amministrazione Straordinaria*,
    921 F.2d 21 (2d Cir. 1990)............................................................................................6

*Myles v. Schlesinger*,
    436 F. Supp. 8 (E.D. Pa. 1976) ...................................................................................12

*Pen American Center, Inc. v. Trump*,
    18-cv-9433, 2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020).............................................6

*Przewozman v. Charity*,
    No. 20-CV-6088 (NGG) (TAM), 2023 WL 2562537 (E.D.N.Y. Mar. 17, 2023).....11

*Reed Int'l, Inc. v. Afghanistan Int'l Bank*,
    No. 21-CV-10626 (ER), 2023 WL 2138600 (S.D.N.Y. Feb. 21, 2023)....................10

*Vidal v. Nielsen*,
    16-cv-4756, 2018 WL 333515 (E.D.N.Y. Jan. 8, 2018)...............................................8

*Waldman v. Palestine Liberation Org.*,
    835 F.3d 317 (2d Cir. 2016) ..................................................................................................8

*Yamaha Motor Corp., U.S.A. v. Calhoun*,
    516 U.S. 199 (1996) ..........................................................................................................6


Statutes and Rules:

28 U.S.C. § 1292(b) .......................................................................................................................6

New York State Civil Practice Law and Rule § 302(a)(1) .............................................................9

VTB Bank (PJSC) ("VTB") respectfully submits this memorandum of law in support of its motion for the Court to certify its September 30, 2021 Memorandum and Order ("September 30, 2021 Order") (ECF No. 185) denying VTB's motion to dismiss,[1] and states as follows:

## PRELIMINARY STATEMENT

This case relates to the tragic attack that downed Malaysia Airlines Flight 17 ("MH-17") on July 17, 2014. But the assailants who committed this attack – a Russian military brigade that was temporarily seconded to a Kremlin-supported separatist insurgency in Ukraine – are not before the Court. Instead, Plaintiffs have sought to hold VTB Bank PJSC ("VTB"), a Russia-based commercial bank, liable for this attack based solely on the allegations that: (1) VTB maintained a correspondent account with Deutsche Bank Trust Company Americas ("Deutsche Bank") in New York, and (2) a third-party supporter for the alleged Russian separatists responsible for the tragedy, Alexey Markov, claimed on a personal website that he received $1,673.55 in U.S. dollars from … somewhere (and so the transfer must have occurred and been connected to the tragedy).

Setting aside whether Plaintiffs have stated a claim against VTB as a primary actor in the tragedy, the fundamental threshold flaw in their case is the failure to allege a connection between this $1,673.55 transfer and New York – rather they speculate that it *could* have come from New York, even though discovery from Deutsche Bank has shown it did not.

In effect, Plaintiffs are seeking an unprecedented expansion of the exercise of personal jurisdiction under New York's long-arm statute. Admittedly, this statute is a "single act statute,"

---

[1] If the Court does decide to grant VTB's request to certify its September 30, 2021 Order, VTB also respectfully requests that the Court clarify its June 22, 2023 Order denying reconsideration (the "June 22, 2023 Order") (ECF No. 520) as to be granting reconsideration, but affirming the September 30, 2021 Order denying VTB's motion to dismiss.

1

in the sense that a defendant's single transaction in New York is sufficient to establish jurisdiction over a defendant – but only when there is a *substantial* relationship between the transaction and the claims. Here, Plaintiffs have alleged not one, but *zero*, acts by VTB in New York sufficient to form a connection to the MH-17 crash or to any actual transaction that occurred in New York with a VTB correspondent account. Plaintiffs attempt to get from *zero* to a substantially connected *one* by speculating that the $1,673.55 transfer could have been routed through New York merely because a man named Aleksey Markov's website (the "Center for New Russia") "advertised" Markov's personal account with VTB in Moscow and VTB's New York based correspondent account as an available "channel" for "transfers in dollars". This speculation that funds *could* have been sent thought New York does not establish jurisdiction. There is no evidence alleged, or obtained from Deutsche Bank in discovery, that shows the $1,673.55 actually did travel through VTB's New York based account.

Just last year, in Daou v. BLC Bank SAL, 42 F.4th 120 (2d Cir. 2022), the Second Circuit rejected an attempt to base a claim of personal jurisdiction of a non-US-based bank on speculation alone. The trajectory of district court cases implementing Daou in the Anti-Terrorism Act ("ATA") context forecloses Plaintiffs' chance at jurisdiction here. But a year before the Second Circuit issued Daou, the Court issued its September 30, 2021 Order, finding that personal jurisdiction over VTB had been sufficiently alleged on a pleadings standard. But since then, the Second Circuit has provided new guidance, and the discovery obtained from Deutsche Bank showed no trace of the $1,673.55 transfer.

VTB appreciates that the Court has declined to revise its September 30, 2021 Order in light of Daou on reconsideration. However, VTB requests that the Court certify the September 30, 2021 Order for interlocutory appeal so that the Second Circuit may consider whether Daou

2

and its progeny will permit a U.S. district court to exercise jurisdiction over a foreign bank where the pleadings merely allege that a foreign non-party (who is indisputably beyond the reach of U.S. discovery) (1) claimed on a website to have utilized the bank for a transaction, (2) claimed to have forwarded the funds received in the transaction to support an entity that was not a designated Foreign Terrorist Organization ("FTO") and (3) where the pleading merely speculates that the funds for the transaction could have been sent through a New York correspondent account. Certification of this question would not only expedite review of a critical question in this proceeding but also would provide valuable clarification for other courts in the Second Circuit contemplating the scope of jurisdiction over banks with correspondent accounts maintained in New York. Moreover, any judgment in this case – whether obtained via a presumption of fact under Rule 37 sanction or not – will be unenforceable unless jurisdiction is established. However, after more than a year of jurisdictional discovery, Plaintiffs' subpoena power has not uncovered a single New York-based transaction that links VTB to MH-17. As such, judicial economy would be well served by early appellate review and guidance.

Under Daou, the alleged "relationship" between VTB's New York account, the supposed $1,673.55 transfer and the MH-17 tragedy is far too tangential to support jurisdiction. Moreover, in deciding the efficiency of addressing these issues at the appellate level now, the Court should keep in mind that the so-called "Center for New Russia" and Markov (the only individual allegedly connected to the Center) resided in Russia in 2015. They are not parties to this action and are not under the control of the parties. And because under the Hague Convention, the United States and the Russian Federation do not recognize each other's requests for the taking of evidence, the assertions in the advertisements that form the entire basis of the Plaintiffs' jurisdictional allegations can *never* be verified or subjected to discovery. Even if Mr. Markov

3

successfully convinced others to send him money, and even if a transfer were to have come through New York, there will never be a way to obtain admissible evidence as to what Mr. Markov did with the funds – especially because Mr. Markov's website says that he withdrew the funds in cash. As such, discovery will not create a record that sheds any light on Mr. Markov's actions.[2]

## BACKGROUND

### I.     Plaintiffs' Allegations of Jurisdiction

Plaintiffs allege that (i) between June 23 and July 27, 2014, the "Center for New Russia" website advertised Markov's personal account with VTB in Moscow and VTB's correspondent banking details at Deutsche Bank in New York, and (ii) between the same dates, the same entity reported that "its account with VTB [in Moscow]. . . received '1,673.55' in 'transfers in dollars,' followed by a withdrawal of $1,600 in cash." Second Amended Complaint ("SAC") ¶¶ 242-44. At no point does the SAC allege that this $1,673.55 was in fact transferred through a VTB correspondent account in New York. In addition, Plaintiffs make no allegation whatsoever about Markov's use of this $1,673.55. Id. (And records produced by Deutsche Bank from the time show no such transaction).

### II.    VTB's Motion to Dismiss for Lack of Personal Jurisdiction

On November 2, 2020, VTB moved to dismiss the SAC, including for lack of personal jurisdiction. ECF No. 117. On September 30, 2021, the Court denied this motion and found that Plaintiffs met their burden in establishing that personal jurisdiction was proper here (the

---

[2] According to the pro-Kremlin UK website "Morning Star for Peace and Socialism", Markov died in October 2020. See https://morningstaronline.co.uk/article/w/tributes-paid-after-death-ghost-brigade-commander-alexey-markov-donbass-accident (last visited July 19, 2023).

4

"September 30, 2021 Order"). ECF No. 185. VTB moved for reconsideration of this order, and then renewed its motion for reconsideration upon obtaining new counsel. ECF Nos. 214, 443.

In connection with its briefing on the motion for reconsideration, Plaintiffs abandoned their reliance on the 1,678.55 U.S. dollar transfer through a VTB account in New York to the DPR, because the account records produced in discovery by VTB correspondent bank, Deutsche Bank, reflect no such transaction. Instead, Plaintiffs directed the Court beyond the SAC to documents referencing other allegedly relevant transfers, without amending the SAC. ECF No. 474, p. 21 n.11. But in denying reconsideration, the Court limited its review to the single transaction that was the subject of the SAC and did not consider the other transactions and Plaintiffs' attempt to supplement the SAC without amending it a third time.

On October 7, 2022, VTB filed a premotion letter. ECF No. 441. During the June 21, 2023 conference, the Court denied VTB's motion for reconsideration but granted VTB's request to move for interlocutory appeal of the September 30, 2021 Order. ECF No. 520 based on the arguments made in the reconsideration motion. The Court construed the SAC as alleging "that VTB's New York correspondent account was used by VTB to transfer money to the DPR." Proposed Declaration of Robert Landy ("Landy Decl.") at 1; p. 13:10-14. Citing In re Worldcom, Inc., No. M-47 HB, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003), the Court also expressed concern that adjudication of the motion to dismiss for lack of personal jurisdiction involves "mixed questions of law [and] fact concerning VTB's conduct and its connection with New York's financial system that are not suitable for appellate review without a full record." Id. at 13: 10-16.

## ARGUMENT

Although ordinarily an appeal in federal court is reserved for a final judgment, Congress has specifically provided for the appeal of orders in advance of a final judgment when the court

5

determines that such orders (a) "involve[] a controlling question of law" (b) "as to which there is substantial ground for difference of opinion" and (c) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation … ." 28 U.S.C. § 1292(b). A judge certifies an order, not a question, for appeal. Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205 (1996). But a court but may frame a controlling question presented by the order being certified. Pen American Center, Inc. v. Trump, 18-cv-9433, 2020 WL 5836419, at *1 (S.D.N.Y. Oct. 1, 2020).

The September 30, 2021 Order meets all three conditions with respect to at least one question: <u>Is personal jurisdiction in New York proper over a foreign-bank that maintains a New York correspondent account but where the only allegations that link the New York account to the plaintiff's injury are hearsay statements posted online by a non-party suggesting that US dollars from an unspecified source were received and also suggesting the funds were withdrawn in cash and then used to support a cause associated with the events that led to the plaintiff's injury?</u>

**I.   The September 30, 2021 Order Involves Controlling Questions of Law**

"[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990). The September 30, 2021 Order easily meets this criterion, including the questions identified above, since an action must be dismissed if the court lacks personal jurisdiction. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007).

And although VTB need not show the legal issues here have any impact on other cases to be considered "controlling," a court "may properly consider the system-wide costs and benefits of allowing the appeal." Klinghoffer, 921 F.2d at 24 ("[i]n other words, the impact that an appeal

6

will have on other cases is a factor that we may take into account in deciding whether to accept an appeal that has been properly certified by the district court."). Certifying this question would present an opportunity for the Second Circuit to clarify what Plaintiffs in these types of cases must allege (1) to meet the single-transaction statute standard, and (2) to *substantially connect* a single transfer (or in this case no transfer) enough to the underlying events, as to exercise jurisdiction over a foreign bank whose sole contact with New York is the maintenance of a correspondent account.

Clarification on these issues would be valuable to reduce uncertainty over New York's jurisdictional reach, given the significant role New York has in the global financial system, and to have the Second Circuit opine on the extent to which a plaintiff may rely on internet-based hearsay to allege facts that could establish jurisdiction when the declarant is beyond the reach of U.S. discovery.

Further, VTB appreciates that to be certified, the September 30, 2021 Order must not only involve a controlling question, but also a question *of law*. VTB recognizes that the Court expressed concern during the June 21, 2023 conference that VTB's relationship with the New York financial system is a question so intertwined with factual matters that interlocutory appellate review may be inappropriate, and cited Worldcom, 2003 WL 21498904, at *10. Landy Decl. 1, p. 13:10-14. The Worldcom Court found there was no "pure … question of law" proposed by a motion for an interlocutory appeal because the issue there related to whether a disclosure statement involved "adequate information." Id. This determination of whether there is adequate information is "subjective," "made on a case by case basis," and "within the discretion of the [] court." Id.

7

Here, however, the relevant portion of the September 30, 2021 Order relates to questions of personal jurisdiction, which are "essentially legal questions that should be reviewed *de novo*." Waldman v. Palestine Liberation Org., 835 F.3d 317, 327 n.5 (2d Cir. 2016). Adjudication of motions to dismiss for lack of personal jurisdiction do not involve a "subjective" exercise of discretion. Worldcom, 2003 WL 21498904, at *10. Instead, to survive such a motion, a complaint "*must* make a prima facie showing that jurisdiction exists, which entails making *legally sufficient* allegations of jurisdiction … ." Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 331 F. Supp. 3d 130, 140 (S.D.N.Y. 2018) (emphasis added but internal quotation marks removed). Plaintiffs here have failed to sufficiently connect the alleged 1,673.55 U.S. dollar transaction referenced in Markov's Center for New Russia advertisement, to an actual transfer through VTB's account in New York or the underlying claims to support jurisdiction. Moreover, because personal jurisdiction is considered under Fed. R. Civ. P 12(b)(2) as opposed to 12(b)(6), the Court need not presume all allegations to be trues where, as here, documentary evidence from Deutsche Bank contradicts the allegation that the $1,673.55 moved through VTB's Deutsche Bank account. Id. ("On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), the Court may look beyond the four corners of the complaint and consider all pleadings and accompanying affidavits and declarations … ." ) (internal quotation marks omitted).

## II. There is Substantial Ground for Difference of Opinion Regarding Personal Jurisdiction in This Action

The second prong of Section 1292(b)—the existence of substantial grounds for a difference of opinion—is satisfied when the issue is particularly difficult and of first impression for the Second Circuit. Klinghoffer, 921 F.2d at 25; Vidal v. Nielsen, 16-cv-4756, 2018 WL 333515, at *2 (E.D.N.Y. Jan. 8, 2018). The issues here – whether personal jurisdiction exists

over a foreign bank, where no transaction occurred in New York to meet the single-transaction statute standard, and where a foreign non-party advertised the foreign bank's New York correspondent account and claimed on the internet to have received a U.S. dollar transfer–are both difficult questions of first impression for the Second Circuit. The broader question is whether jurisdiction can be properly alleged solely relying upon unverifiable statements made somewhere on the internet.

Namely, here Plaintiffs' jurisdictional allegations rest entirely on what a non-party in Russia *said* he received (from somewhere) and what he said he did with the funds. Because the Deutsche Bank records do not support the allegations of the Second Amended Complaint, jurisdiction stands or falls entirely on Markov's ipse dixit, and the presumption that any US dollars he received to his VTB account in Moscow must have come through New York. Moreover, unlike the many cases discussing personal jurisdiction in the Anti-Terrorism Act context, this case does not involve a designated FTO and does not involve the demonstrable transfer of funds through a New York account to an account associated with a designated FTO or to the account of an individual or entity alleged to have committed and act of terrorism. In sum, the number of conceptual leaps of faith needed to connect the alleged funds to the MH-17 tragedy and Plaintiff's injuries are too far and too many to comply with the Second Circuit's requirement of a *substantial connection*.

Federal courts in New York apply New York's long arm statute, New York State Civil Practice Law and Rule § 302(a)(1), to assess personal jurisdiction over a defendant. Daou, 42 F.4th at 129. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." Id. (internal quotation marks omitted). Under the

9

first prong (transacting business), personal jurisdiction requires "proof of one transaction" or more in New York to establish jurisdiction—arguable there are zero alleged here based on discovery, —but for jurisdiction to be proper, the defendant's activities in New York must be purposeful. Id. Yet a defendant does not "transact[] business within the state" when it used its correspondent accounts "only adventitiously." Id.

Under the second prong (articulable nexus), for jurisdiction to be proper, "there must be an articulable nexus or substantial relationship between the business transaction and the claim asserted." Id. at 130 (internal quotation marks omitted). Daou concerned breach of contract claims where Lebanese banks, who used their New York correspondent accounts to handle plaintiffs' money in the past, failed to return plaintiffs' deposits. Id. There, the Second Circuit found that allegations of past and potential future use of a correspondent account in New York alone did not establish substantial relationship between the Lebanese banks' use of the New York correspondent accounts and the plaintiff's claims. Id. The Daou Court deemed the connection between the past use of the New York correspondent accounts and the plaintiffs' claims in their complaint "merely coincidental." Id.

District courts implementing Daou have not hesitated to dismiss cases where the necessary relatedness is lacking—where plaintiffs have failed to show that their claims "arose from" the use of defendant foreign-banks correspondent accounts in New York. Elghossain v. Bank Audi S.A.L., No. 21-CV-2162 (PGG) (BCM), 2023 WL 3005524, at *11 (S.D.N.Y. Feb. 23, 2023) (no personal jurisdiction over a non-US bank that advertised or directed transfers through New York correspondent accounts, but whose conduct giving rise to the breach of contract claims for failing to return money to plaintiffs all occurred outside the U.S.); Reed Int'l, Inc. v. Afghanistan Int'l Bank, No. 21-CV-10626 (ER), 2023 WL 2138600, at *1 (S.D.N.Y. Feb.

10

21, 2023) (same). But they have also applied Daou in the ATA context to reject claims of personal jurisdiction that have a stronger jurisdictional hook than this action does, including in Przewozman v. Charity, No. 20-CV-6088 (NGG) (TAM), 2023 WL 2562537, at *11 (E.D.N.Y. Mar. 17, 2023).

In Przewozman, the court found there was no personal jurisdiction in the Eastern District of New York in an ATA case against a Qatar-based bank that donated money to an alleged terrorist fundraising organization, maintained bank accounts for Hamas-related individuals who committed the acts of terrorism, and even participated in an alleged conspiracy with the other defendants. Id. at *3, *11, *15-16. The court emphasized that plaintiffs' failure to "allege that the transactions using the correspondent account transferred money to and from New York or the United States" was a fatal defect in its theory of personal jurisdiction. Id. at *12. Although this decision is recent, it is already gaining influence in the Second Circuit. Henkin v. Charity, No. 21-CV-5716 (AMD) (VMS), 2023 WL 2734788, at *10 (E.D.N.Y. Mar. 31, 2023) ("adopt[ing] that thorough and cogent analysis" in Przewozman and dismissing claims against a Qatar-based bank for lack of personal jurisdiction in a separate ATA case where allegations of general use of correspondent bank accounts in New York to fund Hamas's terrorist activities were too unspecific to establish a connection between the bank and the transfers). Hamas, unlike the DRP, is a designated FTO. (See, https://www.state.gov/foreign-terrorist-organizations/ (last visited July 19, 2023).

Plaintiffs' allegations suffer from the same conclusory deficiencies as the cases above, and the law of personal jurisdiction in the Second Circuit is thus evolving in a trajectory that precludes this type of jurisdictional overreach extending to foreign banks. Here, the sole basis for personal jurisdiction here over VTB in the SAC is that VTB maintains a correspondent account

11

in New York, and that Markov listed his Moscow-based account as well as correspondent banking instructions at the same time the Moscow account received "+ 1,673,55 – transfers in dollars" from…somewhere, SAC ¶ 61, but at no point does the SAC allege that this $1,673,55 transfer was transferred through the VTB correspondent account in New York. That much is left to imagination. The Center for New Russia advertisement claims the funds were collected for the benefit of the DPR generally. SAC ¶¶ 212-213. The DRP – a known proxy for the Russian military and not a designated Foreign Terrorist Organization – is alleged to have been a responsible for the MH-17 disaster. The MH-17 disaster is alleged to have been an act of terrorism, as opposed to an act of war or – as has been widely reported by the press and determined by investigating authorities – a case of mistaken identity where the attackers believed they were engaging a military target.

Although the Court may in its discretion find that New York's "single transaction" long-arm statute applies to Plaintiffs' allegations that a single $1,673,55 transfer potentially occurred and so VTB "transacts business" in New York, the Court cannot overlook that nothing in the SAC connects the alleged $1,673,55 transfer to an actual transfer occurred in New York, or connects the transfer to the downing of MH-17. Further, Plaintiffs have not alleged VTB played any role with respect to the alleged transfer and therefore VTB cannot be expected to be hailed into New York courts based solely on someone else's advertisement and solicitations.

### III. An Immediate Appeal Would Materially Advance the Ultimate Termination of This Litigation

Should the Second Circuit disagree with the September 30, 2021 Order, this case would be dismissed at an early stage in the litigation, prior to the expenditure of the large amount of judicial and party resources that would otherwise be expended in litigating these claims. Myles v. Schlesinger, 436 F. Supp. 8, 22 (E.D. Pa. 1976) ("There is no purpose in proceeding with costly

and time-consuming litigation if the Third Circuit will eventually hold that there was no jurisdiction. Therefore, we will certify our decision under 28 U.S.C. § 1292(b) for interlocutory appeal."); see also AD Global Fund, LLC ex rel. N. Hills Holding, Inc. v. United States, 68 Fed. Cl. 663, 665-66 (2005), aff'd, 481 F.3d 1351 (Fed. Cir. 2007) (question materially advances litigation where it could result in entire litigation being dismissed).

      Here, the Court is aware of the restrictions that Russian law places on VTB in connection with discovery and the requirement that all information it produces be first approved by the Ministry of Finance of the Russian Federation. In addition, there are certain types of information that are considered "bank secrets" which ever the Ministry of Finance lacks the authority to disclose. As such, early appellate guidance would avoid the possibility that this Court might be asked to fashion remedies for non-production under Fed. R. 37 in a case were jurisdiction itself has not been established.

      Finally, the expenses of time and other resources to build a discovery process within a Russia-based bank that is unaccustomed to U.S. discovery have already been considerable, even without considering the substantial judicial resources expended as well. An expeditious ruling from the Second Circuit could also obviate the need for expending further resources on a case with such a thin basis for jurisdiction.

## CONCLUSION

VTB respectfully requests that this Court grant its motion requesting the Court certify its September 30, 2021 Order for interlocutory appeal.

Dated: July 19, 2023
      New York, New York

                           FORD O'BRIEN LANDY LLP

                           */s/ Robert S. Landy*
                           Robert S. Landy
                           Adam C. Ford
                           Arthur Kutoroff
                           Nicolette T. Beuther
                           275 Madison Avenue, 24th Floor
                           New York, New York 10016
                           rlandy@fordobrien.com
                           (212) 256-1047
                           *Attorneys for Defendant VTB Bank PJSC*