UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THOMAS SCHANSMAN, et al.,                          :

               Plaintiffs,          :              OPINION AND ORDER

  -v.-                                             :

                                                           19 Civ 2985 (ALC) (GWG)
SBERBANK OF RUSSIA PJSC, et al.,                   :

               Defendants.          :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

       Plaintiffs (the "Schansmans") brought this action under the Antiterrorism Act, 18 U.S.C.

§ 2331 et seq. (the "ATA"), against a number of financial institutions that are alleged to have

been involved in funding the terrorist activity that resulted in the death of Quinn Lucas

Schansman.  In a February 27, 2025, ruling, the Court granted Schansmans' motion to compel

the production of documents from defendant VTB Bank PJSC ("VTB").  See Schansman v.

Sberbank of Russia PJSC, 2025 WL 630810 (S.D.N.Y. Feb. 27, 2025).  Before the Court are

defendant VTB's motion for reconsideration of that ruling and plaintiffs' motion to strike a

declaration submitted with VTB's motion for reconsideration.[1]  For the following reasons, both

motions are denied.

---

[1] See VTB Bank (PJSC)'s Notice of Motion for Reconsideration, filed March 12, 2025
(Docket # 630); VTB Bank PJSC's Memorandum in Support of Its Motion for Reconsideration,
filed March 12, 2025 (Docket # 631) ("Mem."); Declaration of VTB Representative Alexey
Vladimirovich Lozovoy, filed March 12, 2025 (Docket # 632) ("Lozovoy Decl."); Plaintiffs'
Notice of Motion to Strike the Declaration of VTB Bank PJSC's General Counsel, Alexey
Lozovoy, filed March 26, 2025 (Docket # 633); Plaintiffs' Opposition to VTB Bank PJSC's
Motion for Reconsideration and Memorandum of Law in Support of Plaintiffs' Motion to Strike,
filed March 26, 2025 (Docket # 634) ("Opp."); VTB Bank PJSC's Reply Memorandum of Law
in Further Support of Its Motion for Reconsideration and in Opposition to Plaintiffs' Motion to
Strike, filed April 2, 2025 (Docket # 635) ("Reply").

I.    <u>MOTION TO STRIKE</u>

Plaintiffs move to strike from the record the sworn declaration of Alexey Vladimirovich Lozovoy submitted by VTB with its motion for reconsideration.  <u>See</u> Lozovoy Decl.; Opp. at 7-8.  To the extent the motion is based on VTB's alleged failure to comply with the requirement of Local Civil Rule 6.3 that advance permission be obtained before filing an affidavit in conjunction with a motion for reconsideration, we note that a district court "has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  <u>Commerzbank AG v. U.S. Bank, N.A.</u>, 100 F.4th 362, 377 (2d Cir. 2024) (citing <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001)).  We choose to exercise that discretion here as the affidavit has no effect on the outcome of the motion.  To the extent plaintiffs argue that the affidavit is improper because it relies on facts occurring after the Court's decision, it is best to address those points in the context of deciding whether the motion for reconsideration standard has been met.  Accordingly, the motion to strike is denied.[2]

II.    <u>MOTION FOR RECONSIDERATION</u>

A.    <u>Legal Standard</u>

Motions for reconsideration are governed by Local Civil Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has overlooked."  Thus, a motion to reconsider is generally denied "unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  <u>Shrader v. CSX Transp., Inc.</u>, 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted).  "The standard for

---

[2]    We reject plaintiffs' argument that the declaration cannot be considered because it is not accompanied by a certified translation.  <u>See</u> Opp. at 7 n.3.  The sworn declaration is in English and we consider only that declaration.  We do not consider the purported Russian translation.

granting a motion for reconsideration is strict," <u>RCC Ventures, LLC v. Brandtone Holdings Ltd.</u>, 322 F.R.D. 442, 445 (S.D.N.Y. 2017), and therefore such a motion "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." <u>Analytical Surveys, Inc. v. Tonga Partners, L.P.</u>, 684 F.3d 36, 52 (2d Cir. 2012) (citation and citation marks omitted). The Second Circuit has held that "[a] motion for reconsideration should be granted only when the [moving party] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.</u>, 729 F.3d 99, 104 (2d Cir. 2013) (quoting <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Further, a party is "barred from making for the first time in a motion for reconsideration an argument it could readily have raised when the underlying issue was being briefed but chose not to do so." <u>Navigators Ins. Co. v. Goyard, Inc.</u>, 623 F. Supp. 3d 220, 222 (S.D.N.Y. 2022) (citation omitted). In other words, "'a party may not advance new facts, issues or arguments not previously presented to the Court' on a motion for reconsideration." <u>Steinberg v. Elkman</u>, 2016 WL 1604764, at *1 (S.D.N.Y. Apr. 6, 2016) (quoting <u>Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stroh Cos.</u>, 265 F.3d 97, 115 (2d Cir. 2001)); <u>accord</u> <u>Sigmon v. Goldman Sachs Mortg. Co.</u>, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017).

"Reconsideration 'is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" <u>Sigmon</u>, 229 F. Supp. 3d at 257 (citation omitted). The rule permitting reconsideration must be "narrowly construed and strictly applied so as to 'avoid duplicative rulings on previously considered issues.'" <u>Merced Irrigation Dist. v. Barclays Bank PLC</u>, 178 F. Supp. 3d 181, 183 (S.D.N.Y. 2016) (citation omitted). A narrow

application of the rule not only "helps 'to ensure the finality of decisions,'" but also "prevent[s]
the practice of a losing party examining a decision and then plugging the gaps of a lost motion
with additional matters." Henderson v. Metro. Bank & Tr. Co., 502 F. Supp. 2d 372, 376
(S.D.N.Y. 2007) (quoting Naiman v. N.Y. Univ. Hosps. Ctr., 2005 WL 926904, at *1 (S.D.N.Y.
Apr. 21, 2005)).

    B.    <u>Discussion</u>

        VTB "seeks reconsideration and modification" of the following aspects of the Court's
February 27, 2025, order: "(1) the portion of the Order that could be interpreted as compelling
VTB to produce material that Plaintiffs have already received from, or could obtain from, third
parties located in the United States; and (2) the 21-day deadline for VTB's production of
documents." Mem. at 1, 5. We will address each of the bases for reconsideration separately.

        1.    <u>Other Sources for the Records</u>

            a.    <u>Background</u>

        As the Court noted in its February 27, 2025, order, one of the factors considered by courts
in deciding whether to issue an order directing the production of information located abroad is
"the availability of alternative means of securing the information." Schansman, 2025 WL
630810, at *13 (citing Linde v. Arab Bank, PLC, 706 F.3d 92, 98-99 (2d Cir. 2013)). On this
issue, plaintiffs in their original briefing provided an extensive explanation as to why "no
reasonable alternative means exist to secure the information requested from VTB." Plaintiffs'
Memorandum of Law in Support of Their Renewed Motion to Compel the Production of
Documents from VTB Bank PJSC, filed August 23, 2024 (Docket # 594), at 30-32.

        In its opposition brief to plaintiffs' motion to compel, VTB argued that "[t]here is no
reason to offend foreign law here, where the documents plaintiffs are seeking to compel consist

of internal VTB documents (e.g., emails) that have no relevance to this litigation and

transactional records that plaintiffs already have obtained from third parties."  VTB Bank PJSC's

Memoranum [sic] of Law in Opposition to Motion to Compel, filed September 20, 2024 (Docket

# 606) ("Mot. to Compel VTB Opp."), at 53-54.  In the following sentence, VTB recounted that

"in response to a subpoena served by plaintiffs, Deutsche Bank has produced records of over

127,000 transactions, none of which reflect the alleged $1,673.55 transfer through VTB's

account at Deutsche Bank that serves as the sole basis for personal jurisdiction."  Id. at 54.  The

rest of this section in VTB's brief discusses the issue of personal jurisdiction.  See id.  No other

"transactional records" that were "obtained from third parties," id., are mentioned.  In its

opposition to plaintiffs' motion to compel, VTB also submitted copies of subpoenas served by

plaintiffs on a number of banks and a copy of a letter accompanying plaintiffs' transmission to

VTB of documents produced by Deutsche Bank, which included 128,000 rows of transactions.

Declaration of Arthur Kutoroff in Support of Defendant VTB Bank PJSC's Memorandum of Law

in Opposition to Motion to Compel, filed September 20, 2024 (Docket # 608).

   In their reply brief in support of their motion to compel, plaintiffs acknowledged that

while the "Schansmans have obtained certain discovery from third parties, such as U.S.

correspondent banks, . . . to the extent records from the relevant time still exist, those records

reflect only the routing of funds through U.S. correspondent banking accounts."  Plaintiffs'

Reply Memorandum of Law in Further Support of Their Renewed Motion to Compel the

Production of Documents from VTB Bank PJSC, filed October 15, 2024 (Docket # 615), at 20.

   In its Opinion and Order, the Court recounted the parties' briefing on this issue as follows

> Plaintiffs argue that they have no other source for the documents they seek from
> VTB given that approval has not been given to release them.  VTB has no
> response to this argument other than to suggest that plaintiffs should be satisfied
> with the production made by VTB's correspondent bank, Deutsche Bank.

5

Schansman, 2025 WL 630810, at *16 (citations omitted).  The Court rejected VTB's argument "because [VTB] does not deny the fact that the responsive materials located in Russia are not available from any other source."  Id.  Accordingly, the Court concluded that "[b]ecause 'plaintiffs lack sufficient alternative means for obtaining their requested materials,' this 'factor weighs in favor of granting plaintiffs' motion to compel.'"  Id. (quoting Wultz v. Bank of China Ltd., 910 F. Supp. 2d 548, 558 (S.D.N.Y. 2012).

Today, VTB asks the Court to reconsider its conclusion on "the availability of alternative means of securing the information."  Mem. at 6.

In support, VTB argues that

since Plaintiffs have already received productions reflecting VTB's correspondent banking accounts in New York, any further production from VTB of similar records would be unreasonably duplicative.  That alone is a basis to reject Plaintiffs' attempt to compel the production of these records.  See Fed. R. Civ. P. 26(b)(2)(C)(i) ("the court must limit the frequency or extent of discovery … if … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source").

Id. at 6 (ellipses in original).  VTB highlights "[t]hat requiring VTB to provide cumulative or duplicative records would also require VTB to violate Russian law and impinge on international comity makes it even more unreasonably burdensome."  Id.  Accordingly, VTB requests "that the Court qualify its Order by limiting the order to compel to only those documents located in Russia, not documents Plaintiffs have already received, or could obtain, through third party subpoenas (even if similar records are also available in Russia)."  Id. at 7.  In a similar vein, VTB "requests that the Court reconsider the portion of its Order stating that 'the responsive materials located in Russia are not available from any other source' because certain responsive materials located in Russia (i.e., the correspondent banking records) are available from another source (the correspondent banks)."  Id. (citing Schansman, 2025 WL 630810, at *16).

In response, plaintiffs argue that VTB has "already made this argument in its opposition to the Renewed Motion, and it fails to identify any clear error or manifest injustice warranting a different result." Opp. at 4. Nor does VTB identify any "reason beyond the same arguments that the Court already considered and rejected." Id. at 5. As to the merits, plaintiffs acknowledge that they have "obtained certain discovery from third parties, such as U.S. correspondent banks." Id. They argue, however, that "without the benefit of discovery from VTB, the Schansman family simply cannot know whether that discovery captures the full extent of VTB's correspondent banking records." Id.

  b. Analysis

In its February 27, 2025, order, the Court rejected the gravamen of VTB's argument. Specifically, the Court has already rejected VTB's argument that plaintiffs were not entitled to VTB bank records on the ground that plaintiffs "have already received productions reflecting VTB's correspondent banking accounts in New York," Mem. at 6. See Schansman, 2025 WL 630810, at *16. We rejected the argument "because [VTB] does not deny the fact that the responsive materials located in Russia are not available from any other source." Id. VTB does not assert that the Court's conclusion on this point was based on a misreading of VTB's brief or erroneously reasoned. See Mem. at 6-7. In other words, VTB's motion for reconsideration confirms that in the original briefing VTB never denied "the fact that the responsive materials located in Russia are not available from any other source." Schansman, 2025 WL 630810, at *16. Accordingly, the Court sees no reason to reconsider its original conclusion.[3]

---

[3] VTB acknowledges that it has "made a similar argument in its opposition to the Motion to Compel." Mem. at 6 n.3 (citing Mot. to Compel VTB Opp. at 53-54). VTB explains that it "makes this argument on reconsideration to ensure the Court does not overlook that its Order could be read as mandating VTB violate Russian law to provide Plaintiffs with duplicative documents." Id. In its reply brief, VTB further clarifies that it seeks reconsideration because the

VTB seeks a different outcome by arguing that "production from VTB of similar records would be unreasonably duplicative." Mem. at 6. VTB invokes Fed. R. Civ. P. 26(b)(2)(C)(i), which provides that a "court must limit the frequency or extent of discovery … if … the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source." VTB invokes this rule to argue that the allegedly duplicative nature of the requested production "alone is a basis to reject Plaintiffs' attempt to compel the production of these records." Mem. at 6. But in its opposition to the original motion to compel, VTB made no argument grounded in Fed. R. Civ. P. 26's reference to "duplicative" production and it provides no reason now why it may properly be considered for the first time here. See Mot. to Compel VTB Opp. Indeed, VTB appeared to have specifically disclaimed such an argument in its opposition to the original motion, writing that "this is not a motion about the limits of Rule 26." Id. at 44 ("The document requests at issue . . . are arguably subject to discovery under Rule 26 because, after a meet-and-confer, the parties agreed on a range of material that VTB would search for and seek permission to produce. But this is not a motion about the limits of Rule 26.").

VTB also suggests, for the first time, that the Court should "limit the order to compel to only those documents located in Russia, not documents Plaintiffs have already received, or could obtain, through third party subpoenas (even if similar records are also available in Russia)." Mem. at 7. VTB provides no explanation as to why this suggestion was not raised in its opposition to plaintiffs' motion to compel and no explanation for how such a suggestion could

---

"Order did not directly address the implications of Plaintiffs' possession of the documents they requested." Reply at 1. However, a motion for reconsideration is not granted simply because a court has overlooked one potential implication of its ruling; if it were so Local Rule 6.3 could lead to a "practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." Henderson, 502 F. Supp. 2d at 376.

feasibly be implemented.  Additionally, VTB does not allege any "clear error" or "manifest injustice."  Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 104.  Accordingly, VTB's suggestion does not warrant reconsideration of the Court's February 27, 2025, order.

Furthermore, VTB proffers, for the first time, that "certain responsive materials located in Russia (i.e., the correspondent banking records) are available from another source (the correspondent banks)."  Mem. at 6.  But VTB does not explain why it did not present this factual assertion in its opposition to plaintiffs' motion to compel.  Accordingly, this assertion does not warrant reconsideration of the Court's February 27, 2025, order.

In sum, in asking the Court to reconsider its conclusion on the "availability of alternative means of securing the information," Schansman, 2025 WL 630810, at *13 (citing Linde, 706 F.3d at 98-99), VTB does not allege that there has been "an intervening change of controlling law," that "new evidence" has become available, that the Court made a "clear error," or that reconsideration is necessary to "prevent manifest injustice."  Kolel Beth Yechiel Mechil of Tartikov, Inc., 729 F.3d at 104.  Instead, VTB repeats an old argument previously rejected and makes new arguments that it could have previously advanced.  Accordingly, we reject VTB's motion for reconsideration on this point.  See Associated Press v. U.S. Dep't of Def., 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005) ("It is settled law in this District that a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." (citing cases)).

Even on the merits, VTB's argument is lacking: VTB provides no support for its conclusory factual assertions that the "productions reflecting VTB's correspondent banking accounts in New York," received by plaintiffs are "duplicative" or "similar" to the production at

issue here.  Mem. at 6.  Nor does VTB provide the Court with any suggestions for how to identify which requests for production are duplicative.  Most importantly, VTB fails to explain how producing the (allegedly) duplicative records would require VTB to violate additional Russian laws or expose it to higher penalties — in other words, VTB offers no showing as to why compelling VTB to produce records that may be duplicative would create any new burdens for VTB.

        2.  <u>Request for an Extension</u>

           a.  <u>Background</u>

The February 27, 2025, order required "VTB to produce information responsive to plaintiffs' discovery requests 1, 2, 5, 13, 25-27, 30, 32, 40, 50, 52-54, and 59-60 within 21 days of the filing of this Opinion and Order."  <u>Schansman</u>, 2025 WL 630810, at *19.  That deadline expired on March 20, 2025, without VTB having filed any request for an extension under Fed. R. Civ. P. 6(b).

Instead, VTB asks the Court to "reconsider" this deadline, adding that the Court should "permit VTB to have 61 days after the filing of this motion (<u>i.e.</u>, until May 12, 2025) to produce documents."  Mem. at 7.  VTB gives three reasons for its request: (1) VTB is hopeful that certain upcoming meetings with representatives of the Ministry and the Central Bank may increase the likelihood of Russian regulators changing their mind on whether to approve production; (2) it is "possible" that the 2024 United States Presidential election may result in an increasing inclination to approve production; (3) because a discovery stay applicable to a co-defendant, Sberbank of Russia PJSC, is still in effect pending the final resolution of its appeal, "allowing for the modest requested additional time would provide for greater clarity as to the status of Sberbank in this litigation."  <u>Id.</u> at 7-8.

b. <u>Discussion</u>

The Court rejects VTB's motion for reconsideration on this point.

Most importantly, VTB does not identify "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." <u>Kolel Beth Yechiel Mechil of Tartikov, Inc.</u>, 729 F.3d at 104. This alone is ground for denial. <u>See</u> <u>id.</u> Instead, VTB points to three developments that have occurred since the Court issued its prior decision. <u>See</u> Mem. at 7-9. These developments constitute "new facts" which "may not [be] advance[d] . . . on a motion for reconsideration." <u>Steinberg</u>, 2016 WL 1604764, at *1 (citation marks omitted); <u>Cambridge Valley Machining, Inc. v. Hudson MFG LLC</u>, 2020 WL 5878444, at *3 (N.D.N.Y. Oct. 2, 2020) ("motion for reconsideration cannot be used to advance new facts, issues or arguments not previously presented to the Court" (citation and internal quotation marks omitted)); <u>Edible Arrangements Intern., Inc. v. JHRV Enterprises, Inc.</u>, 2011 WL 63474, at *1 (D. Conn. Jan. 3, 2011) ("Facts that arise after a court issues a ruling can hardly constitute overlooked facts that would prompt reconsideration of a ruling.").

Even if we were to consider the new information presented by VTB, it would not counsel granting the motion for reconsideration. First, as the Court concluded in its February 27, 2025, order, "plaintiffs have waited more than three years for the production of these critical documents. It would be unjust to require plaintiffs to wait any longer." <u>Schansman</u>, 2025 WL 630810, at *19. Second, while it may be "possible" that "additional time will lead to a result that could not have been obtained in the geopolitical environment that existed in 2024," Mem. at 8, VTB has provided no evidence that would allow this Court to find that such a changed result is likely. The Court is unwilling to delay production any further based on mere speculation. Finally, VTB's argument that its case should track the claims against Sberbank — which are

currently stayed — lacks force, since the stay was already in effect when plaintiffs moved to compel.  In any event, there is no reason to further delay discovery against VTB, given that plaintiffs have been seeking this material for years.[4]

III.    <u>CONCLUSION</u>

For the above reasons, VTB's motion for reconsideration (Docket # 630) is denied and plaintiffs' motion to strike (Docket # 633) is denied.

Dated:  May 5, 2025

New York, New York

_____

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[4]  Long after briefing on the motion for reconsideration was complete, VTB filed a letter suggesting that documents that are the subject of the motion to compel might be produced shortly.  <u>See</u> Letter, filed April 29, 2025 (Docket # 647).  Given VTB's past record of inaccurate predictions about the timing of actions by Russian authorities, we give this letter no weight.  Obviously, if the required documents are promptly produced, VTB will be free to argue that the production should affect the disposition of plaintiffs' planned motion for sanctions.